**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
hayley@gutridesafier.com
Kali R. Backer (State Bar No. 342492)
kali@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Petitioner*

**UNITED STATES DISTRICT COURT FOR THE**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BENJAMIN PAUL DE AYORA, an individual, on behalf of himself, the general public, and those similarly situated,<br><br>Petitioner,<br><br>v.<br><br>INSPIRE BRANDS, INC. AND ARBY'S RESTAURANT GROUP, INC.,<br><br>Respondents. | Case No. 3:25-cv-03645-AGT<br><br>**PETITIONER'S OPPOSITION TO RESPONDENTS' MOTION TO VACATE ARBITRATION AWARD**<br><br>Hon. Alex G. Tse<br><br>Hearing Date: July 18, 2025<br>Hearing Time: 10:00 AM<br>Courtroom: A |

## I. INTRODUCTION

Petitioner filed this action to confirm an arbitral award he obtained following full briefing and oral argument on a single, threshold issue—whether an agreement existed between Petitioner and Respondents that would require Petitioner to arbitrate his claims against Respondents rather than bring those claims as a class action in court. Respondents now move to vacate that award, arguing in essence that, by determining that there was no agreement between Petitioner and Respondents to arbitrate the underlying claims, the Arbitrator divested himself of the authority to decide that very issue. At the same time, Respondents have argued that, had the Arbitrator found that Petitioner's claims were subject to arbitration, he would have the authority to decide the issue.

This untenable conclusion is the result of two fundamental flaws to Respondent's position: First, the record in the arbitration makes clear that all Parties agreed to submit the question of arbitrability to the Arbitrator. The Parties set a briefing schedule on the arbitrability question at the preliminary hearing, submitted briefs, and attended oral argument. Indeed, the sole focus of the arbitration was the arbitrability question. Still, Respondents' only objection to submitting the arbitrability question to the Arbitrator was a conditional one: Respondents objected only in the event that the Arbitrator found that Petitioner had not waived his right to contest arbitrability. If the Arbitrator had found in Respondents' favor on either the contractual issue or waiver, Respondents would have accepted the decision and proceeded with arbitration on the merits. Respondents' cannot make their agreement to submit a question to an arbitrator conditional on their success on that issue. Respondents agreed to submit the issue and are bound by that decision.

Second, the result called for by Respondents obtains from Respondents conflation of two separate agreements—the agreement of the Parties to arbitrate the threshold contractual formation issue and the separate purported agreement to arbitrate in the Arby's Website's Terms of Use. The Parties intentionally agreed to submit the issue of arbitrability to the Arbitrator. And Arbitrator Nadler's decision was clearly based on the Parties' agreement. The Arbitrator's analysis looked to and interpreted Ninth Circuit law regarding waiver and determinations of arbitrability—both arguments raised by the Parties. That Respondents disagree with the Arbitrator's interpretation of those laws is not a reason to vacate the award.

Accordingly, the Court should deny Respondents' motion to vacate and enforce the award.

## II. FACTUAL BACKGROUND

### A. The Underlying Arbitration.

Respondents own and operate several websites (specifically, www.arbys.com, www.inspirebrands.com, www.baskinrobbins.com, www.dunkindonuts.com, and order.sonicdrivein.com; each a "Website" and collectively referred to as the "Websites"), which allow visitors to, among other things, view and order food served in Respondent's fast food restaurant chains. ECF 1 ("Pet.") ¶ 2. Respondents integrated the Websites with cookies from third parties, which, among other things, track users' behavior on these and other websites across the internet. *Id.* ¶¶ 3, 5. Respondents' Websites purport to offer all visiting consumers the choice to browse the Websites without being tracked, followed, and targeted by third party data brokers and advertisers. *Id.* ¶ 3 The Websites do this by displaying a popup cookie consent banner to Website visitors, which expressly tells visitors that they can decline cookies (the "Cookie Banner"). *Id.*




Unbeknownst to the users, even when a user expressly declines cookies, Respondent nonetheless causes cookies to be stored on the visitors' devices, which cause the transmission of users' personal data to undisclosed third parties. *Id.* In so doing, Respondent violated state statutes and its common law duties to Petitioner and those visitors to the Websites. *Id.* ¶ 5.

On April 29, 2024, Petitioner commenced an arbitration and challenged whether he was subject to Respondent's arbitration and class action waiver provisions in the Arby's Website's Terms of Use ("TOU"). *Id.* ¶ 6. The TOU purport to bind users of the Website to arbitration. Backer Decl., Ex. 1 (Claimant's Mot. Re Non-Arbitrability), at 2. But, other than agreeing to or declining cookies

other than those that were strictly necessary or clicking the link to the Privacy Policy, there is no hyperlink or check-box agreement to Respondents' TOU in the Cookie Banner. *Id*. at 3–4. Indeed, the Cookie Banner does not even mention the TOU. *Id*. Instead, the Cookie Banner leads users to believe one thing: that they have rejected all but strictly necessary cookies; that they did not consent to the placement of such third-party cookies from the Website; and that their further use of the Website was done per this agreement with Respondents—i.e., no unnecessary cookies, no tracking. *Id*. at 4. Moreover, once a user moves past the banner, the link for the "Terms of Use" does not appear until a user scrolls to the very bottom of the page The "Terms of Use" link could hardly be described as conspicuous: Respondents did not bother to make it a different color or font or size from surrounding text. It is not highlighted or emboldened either. *Id*. Instead, it is very small and much less conspicuous than the images and text elsewhere on the Website. *Id*. at 4–5.

Accordingly, Petitoner did not know or have reasonably conspicuous notice that his continued use of the Website was subject to arbitration with Respondents. *Id*. at 5. Indeed, Petitioner's understanding was that he and Respondents had agreed only that his continued use of the Websites would not be tracked. *Id*. An agreement which Respondents violated. *Id*.

Immediately, and at all times, Petitioner disputed that he agreed to the TOU and the arbitration provision contained therein. *See* Backer Decl. Ex. 2 (Report of Preliminary Conference and Order No. One) at 2 ("Claimant objects to arbitration of this matter"). Rather, Petitioner immediately sought to submit the question of whether he agreed to the TOU to the Arbitrator. *Id*. Following an initial conference on November 6, 2024, the Arbitrator ordered briefing regarding his jurisdiction and arbitrability. *Id*. The Parties fully briefed the issue, with Petitioner argument a lack of actual or constructive notice of the TOU (Backer Decl. Ex. 1 at 7–10) and Respondent arguing that Petitioner waived his ability to object to arbitrate his underlying claims and, that "[i]f the Arbitrator does not find that Claimant waived his objection to arbitration . . . the Arbitrator should defer the question of arbitrability to the courts," (Backer Decl. Ex. 3 (Resps.' Opp'n to Claimant's Mot. re Non-Arbitrability) at 3–7). Critically, Respondents only objected to the Arbitrator's authority to decide the question of arbitrability *if they lost*. *Id*. In the event that Respondents succeeded with their waiver argument, they fully intended to proceed in arbitration based on that determination.

**B. Arbitrator Nadler's Decision.**

On February 24, 2025, following full briefing and oral argument, Arbitrator Nadler issued a decision. *See* Pet., Ex. A. Arbitrator Nadler first found that "Claimant has not intentionally relinquished or abandoned his right to object to arbitration. *Id.* at 7. In so holding, Arbitrator Nadler described his interpretation of both Parties' arguments and provided a detailed analysis of the caselaw proffered by Respondents. *Id.* at 3–7. Next, Arbitrator Nadler found that "the question of arbitrability shall be determined by the Arbitrator without the involvement of the court." *Id.* at 8. In so holding, Arbitrator Nadler considered Respondents' argument that "[w]hen a ruling on arbitrability involves determining the applicability of conflicting dispute resolution methods, that decision must be made by a court, not an arbitrator." Backer Decl. Ex. 3 at 6; Pet. Ex. A at 7–8.[1] Arbitrator Nadler explained, in detail, his consideration of the caselaw cited by Respondents, as well as the applicable JAMS rules, before determining that he could determine the arbitrability questions. *Id.* Finally, Arbitrator Nadler determined that he was without jurisdiction to proceed with the arbitration because "there is no evidence presented by Respondents which would support that any visit to the website here involved might lead to any knowledge of the Terms of Use." *Id.* at 9. In so holding, Arbitrator Nadler considered and explained his interpretation of the arguments of the Parties and considered whether further discovery was required. *Id.* at 8–9. Ultimately, Arbitrator Nadler found in favor of Claimant/Petitioner.

**III. LEGAL STANDARD**

"The [Federal Arbitration Act] gives federal courts only limited authority to review arbitration decisions, because broad judicial review would diminish the benefits of arbitration." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). The party seeking to vacate an award bears the burden of establishing grounds to vacate. *U.S. Life Ins. v. Super. Nat. Ins. Co.*, 591 F.3d 1167, 1173 (9th Cir. 2010). "[M]otions to vacate will be granted only in very unusual

[1] To the extent Respondent raises other arguments regarding the Arbitrator's authority to determine his jurisdiction, those are waived. *See Wellman v. Writers Guild of Am., W., Inc.*, 146 F.3d 666, 673 (9th Cir. 1998) ("[I]t is well settled that a party may not sit idle through an arbitration proceeding and then collaterally attack that procedure on grounds not raised before the arbitrators when the result turns out to be adverse.").

circumstances to prevent arbitration from becoming merely a prelude to a more cumbersome and time-consuming judicial review process." *In re Sussex*, 781 F.3d 1065, 1072 (9th Cir. 2015).

## IV. ARGUMENT

### A. The Parties Agreed to Arbitrate the Question of Arbitrability.

It is well-established that "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–70 (2010); *accord Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67–68 (2019); *see also Aanderud v. Superior Court*, 13 Cal. App. 5th 880, 892 (2017) (explaining that parties can agree to arbitrate arbitrability issues, if their agreement to do so is clear and unmistakable). Indeed, "'[w]hether the court or the arbitrator decides arbitrability is an issue for judicial determination *unless the parties clearly and unmistakably provide otherwise*.'" *Suski*, 55 F.4th 1227, 1229 (quoting Oracle Am. Inc. v. Myriad Grp. A.G., 724 F.3d 1069, 1072 (9th Cir. 2013)) (emphasis added). "[A]n agreement to arbitrate an issue need not be express; it may be implied from the conduct of the parties." *Fortune, Alsweet & Eldridge, Inc. v. Daniel*, 724 F.2d 1355, 1356 (9th Cir. 1983) (emphasis added) (alteration omitted)

Here, the Parties agreed to arbitrate the issue of whether they formed an agreement to arbitrate. Claimant filed his demand—which challenged whether he entered into an agreement at the outset. Respondent participated in arbitrator selection, paid fees, and fully briefed the issue of arbitrability. Thus, the Parties' agreement to arbitrate contract formation is clear and unmistakable. *Cf. First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 947 (1995) ("We conclude that, because the Kaplans did not clearly agree to submit the question of arbitrability to arbitration . . . , the arbitrability of the [parties'] was subject to independent review by the courts.") (emphasis added).

Respondents may argue that they objected to the Arbitrator's authority to determine the threshold issue of contract formation in their briefing. Critically, however, that objection was conditional: Respondents objected only in the event that the Arbitrator found that Petitioner had not waived his right to contest arbitrability. *See* Backer Decl. Ex. 3 at 6–7. If the Arbitrator had found in Respondents' favor on either the contractual issue or waiver, Respondents would have accepted the decision and proceeded with arbitration on the merits. Respondents cite no law supporting their ability

to submit an issue to an arbitrator only in the event the arbitrator finds in their favor. Thus, despite their hollow objection, Respondents clearly agreed to have the Arbitrator determine the threshold issue of whether the underlying dispute was subject to arbitration. In fact, before Petitioner filed an arbitration on the issue of arbitrability, he asked if Respondent preferred to litigate the issue. Respondent demurred, stating that the arbitration was enforceable; thereby, it opted for arbitration.

**B. The Arbitrator's Decision Was Based on the Parties' Agreement**

Respondents argue that the Arbitrator exceeded his authority and reached a decision that was completely irrational and exhibited a manifest disregard of the law. This requires them to show that the award "fails to draw its essence from the agreement," or that it is "clear from the record that the arbitrators recognized the applicable law and then ignored it." *Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277, 1290 (9th Cir. 2009)). Here, the Parties submitted full briefing on the arbitrability issue, and the award draws its essence from that agreement—i.e., it determined that Petitioner did not agree to arbitrate his underlying dispute. Respondents do not claim that Arbitrator Nadler misapplied the law. Rather they simply argue that the absence of an agreement to arbitrate the underlying dispute divested the arbitrator of jurisdiction to determine the absence of that agreement. This reasoning is nonsensical, however, because it would mean that if the Arbitrator had found that there was an agreement to arbitrate the underlying dispute then he would have authority to determine his jurisdiction. Thus, under Respondents' reasoning, the Arbitrator had the authority to find in Respondents' favor but lacked the authority to find for Petitioner.

The absurd result called for by Respondents results from their conflation of two separate agreements—the agreement of the Parties to arbitrate the threshold contractual formation issue and the separate purported agreement to arbitrate in the TOU. As demonstrated, the Parties intentionally submitted the issue of arbitrability to the Arbitrator. And Arbitrator Nadler's decision was clearly based on that agreement. *See Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 642 (9th Cir. 2010) (an "arbitration award draws its essence from the agreement if the award is derived from the agreement, viewed in light of the agreement's language and context, as well as other indications of the parties' intentions." (quoting *Bosack v. Soward*, 586 F.3d 1096, 1106 (9th Cir. 2009))). The Arbitrator's analysis looked to Ninth Circuit law regarding waiver and determinations

of arbitrability—both arguments raised by the Parties. *See* Pet. Ex. A. That Respondents disagree with the Arbitrator's interpretation of those laws is not a reason to vacate the award. *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 994 (9th Cir. 2003) (en banc) ("Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award.").

Thus, in essence, Respondents are asking this Court to vacate the award because they only agreed to win, not lose, the threshold arbitrability issue. This Court should summarily reject such a conclusion.

**C. Respondents' Waived Their Right to Challenge Arbitrability.**

Even if Respondents had not agreed to arbitrate the threshold arbitrability issue, their conduct in the arbitration waived any objection to the Arbitrator's authority. Waiver is "the intentional relinquishment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993). Two overarching legal principles control an arbitrability challenge. First, "an agreement to arbitrate an issue need not be express; it may be implied from the conduct of the parties." *Fortune, Alsweet & Eldridge, Inc. v. Daniel*, 724 F.2d 1355, 1356 (9th Cir. 1983) (emphasis added) (alteration omitted). Second, parties "are always free to voluntarily submit their dispute to arbitration on their own terms." *Rivera*, 54 Cal. App. 5th at 91. Accordingly, submission of an issue to arbitration can be interpreted as waiver of any objection over the authority of the arbitrator." *Nghiem v. NEC Elec.*, 25 F.3d 1437, 1440 (9th Cir. 1994). Indeed, caselaw is replete with examples of courts finding waiver where a party fully arbitrates an issue and only after losing on that issue challenges the authority of the arbitrator. *See, e.g.*, Ficek, 338 F.2d at 657 ("[a] claimant may not voluntarily submit his claim to arbitration, await the outcome, and, if the decision is unfavorable, then challenge the authority of the arbitrators to act"); *Daniel*, 724 F.2d at 1356–57 (Plaintiff could not reject arbitration after Plaintiff's representative attended two hearings, heard all of the union's evidence, presented some evidence, and requested two continuances, including one continuance to "secure witnesses to refute the evidence presented by the union"); *Nghiem*, 25 F.3d at 1440 (Plaintiff could not challenge the authority of the arbitrator because Plaintiff "initiated the arbitration, attended the hearings with representation, presented evidence, and submitted a closing brief of fifty pages"). So too here. Respondents fully participated in this

arbitration and fully briefed the arbitrability issue. Indeed, had Respondents succeeded with their arguments they would not be contesting the Arbitrator's authority to so decide. Instead, they would be enforcing the terms of the arbitration provision they included in the contract they drafted. It is only because Respondents did not succeed that they now cry foul. Thus, Respondents have waived their right to challenge the Arbitrators authority to decide the arbitrability issue.

## V. CONCLUSION

For the foregoing reasons, Respondents' motion to vacate the award must be denied and the arbitration award enforced.

Dated: June 17, 2025

**GUTRIDE SAFIER LLP**

*/s/ Kali R. Backer* ____________________
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
hayley@gutridesafier.com
Kali R. Backer (State Bar No. 342492)
kali@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Petitioner*