Bethany G. Lukitsch (SBN 314376)
Alexis Cruz (SBN 312842)
**BAKER & HOSTETLER LLP**
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067
Telephone: 310.820.8800
Facsimile: 310.820.8859
Emails: *blukitsch@bakerlaw.com*
*acruz@bakerlaw.com*

*Attorneys for Respondents*
INSPIRE BRANDS, INC. and ARBY'S RESTAURANT GROUP, INC.

**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

BENJAMIN PAUL DE AYORA, an individual, on behalf of himself, the general public, and those similarly situated,

Petitioner,

v.

INSPIRE BRANDS, INC. and ARBY'S RESTAURANT GROUP, INC.,

Respondents.

Case No.: 3:25-CV-03645-AGT

**REPLY IN SUPPORT OF INSPIRE BRANDS, INC. AND ARBY'S RESTAURANT GROUP, INC.'S MOTION TO VACATE ARBITRATION AWARD**

Date: July 18, 2025
Time: 10:00 a.m.
Dept: Courtroom A

Petition filed: February 24, 2025

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## TABLE OF CONTENTS

**Page**

I. THE MOTION TO VACATE THE ARBITRATION AWARD SHOULD BE GRANTED .......... 2

A. Petitioner Fails to Show the Arbitrator Did Not Exceed His Authority to Determine Arbitrability or Waiver .......... 2

1. No Agreement to Arbitrate Anything Existed Between Petitioner and Inspire .......... 2

2. Respondents Are Within Their Rights to Challenge Arbitrability Here .......... 6

II. CONCLUSION .......... 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aanderud v. Super. Ct.*,
13 Cal. App. 5th 880 (2017) ....................3

*Coinbase, Inc. v. Suski*,
602 U.S. 143 (2024) ....................3, 5, 7

*Comedy Club, Inc. v. Improv W. Assocs.*,
553 F.3d 1277 (9th Cir. 2009) ....................5, 6

*Ficek v. S. Pacific Co.*,
338 F.2d 655 (9th Cir. 1964) ....................6

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995) ....................5

*Fortune, Alsweet & Eldridge, Inc. v. Daniel*,
724 F.2d 1355 (9th Cir. 1983) ....................3, 4, 7

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019) ....................2

*Nghiem v. NEC Elec., Inc.*,
25 F.3d 1437 (9th Cir. 1994) ....................3, 7

*PoweragentInc. v. Elec. Data Sys. Corp.*,
358 F.3d 1187 (9th Cir. 2004) ....................5

*Rent-A-Center, West, Inc. v. Jackson*,
561 U.S. 63 (2010) ....................2

**Statutes**

9 USC §§ 10(a)(4) ....................1, 6, 7, 8

**Rules**

JAMS Rule 5(c) ....................3

JAMS Rule 22(j) ....................4

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Respondents Inspire Brands, Inc. ("Inspire") and Arby's Restaurant Group, Inc. ("Arby's," and together with Inspire, "Respondents") submit this Reply in support of their Motion to Vacate Arbitration Award ("Motion"). With his Opposition ("Opp."), Petitioner Benjamin Paul de Ayora ("Petitioner" or "de Ayora") attempts to obscure the issues before the Court to try to circumvent the arbitrator's (the "Arbitrator" or "Judge Nadler") lack of authority to decide issues of waiver and "arbitrability". De Ayora improperly combines under the term "arbitrability" issues of "jurisdiction," "contract formation," and scope of the contractual terms. All three are distinct and only the last, scope of the contractual terms, constitutes "arbitrability." Respondents' participation in the arbitration—i.e., responding to the demand filed by de Ayora and objecting to Judge Nadler's authority over Inspire in the very first instance—also does not constitute a separate agreement to arbitrate these issues. If true, every person who responded to an arbitration demand merely to reserve their rights and challenge the jurisdiction of the arbitrator would implicitly agree to the arbitration. The law, and the freedom of contract, do not support such a result.

Nor can de Ayora show that Respondents waived their right to challenge the issue of arbitrability in court by "participating" in the Arbitration. The Federal Arbitration Act (the "FAA") empowers this Court to vacate an arbitration award where the arbitrator exceeded his powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 USC §§ 10(a)(4). The Motion is thus a valid method by which Respondents can challenge Judge Nadler's authority and request that this Court examine how the Award was issued in excess of that authority. As set forth in the Motion, there was no agreement of any kind between de Ayora and Inspire, let alone an arbitration agreement from which Judge Nadler could draw any authority from. And Judge Nadler lacked jurisdiction to determine the issue of "arbitrability" as to Arby's since it was a question of contract formation, a determination reserved for the Court as a matter of law. Because there was also no separate agreement to arbitrate the threshold issues before the Arbitrator, Judge Nadler should not and could not have determined such issues as to Inspire or Arby's.

Accordingly, based on well-established principles of arbitration law and precedent, the Court should vacate the Award as to both Inspire and Arby's.

## I. THE MOTION TO VACATE THE ARBITRATION AWARD SHOULD BE GRANTED

### A. Petitioner Fails to Show the Arbitrator Did Not Exceed His Authority to Determine Arbitrability or Waiver

#### 1. No Agreement to Arbitrate Anything Existed Between Petitioner and Inspire

As the Motion explains, there was no contract of any kind between de Ayora and Inspire. (Motion at 10-11.) Petitioner attempts to distract the Court from this fact by arguing that *Respondents* are conflating two separate agreements and now claiming all along that the Arbitration really only applied to Arby's and Arby's Website Terms of Use ("TOU"). Petitioner distorts the facts. (*See* Exhibit 2 to Backer Declaration attached to de Aroya's Opposition to Motion, ECF No. 19-1 ("Backer Decl.") at 1 (showing that the original demand was directed at Inspire Brands, LLC and that Inspire preserved all defenses).) Throughout the Arbitration proceedings, Inspire consistently advocated that (1) no agreement existed between de Ayora and Inspire and each of Inspire's brands had their own website terms of use, (2) de Ayora waived the right to make jurisdiction objections as to Arby's by filing in arbitration originally (against Inspire LLC where there was no colorable claim of any agreement), and that (3) at most, any decision on "arbitrability" should be limited to Arby's if rendered at all.

Most notably, de Ayora's Opposition completely ignores that he never alleged he visited Inspire's website, which is how any contract between de Ayora and Inspire would have been formed. Instead, de Ayora attempts to frame the "agreement" from which Judge Nadler would have drawn his authority to decide the question of arbitrability as an entirely separate "agreement by conduct." (*See* Opp. at 6-7.) In doing so, de Ayora fails to recognize the irony of his position—that participation in the Arbitration briefing process equals waiver. If this was true, Judge Nadler also erred by finding de Ayora *did not* waive his right to proceed in Court by filing his dispute in Arbitration in the first place.

While parties can agree to arbitrate the threshold issue of ***arbitrability***, the cases de Ayora cites, including *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–70 (2010), *Henry Schein,*



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67-68 (2019), and *Aanderud v. Super. Ct.*, 13 Cal. App. 5th 880, 892 (2017), which pre-date the Supreme Court's *Coinbase* ruling, all involved a purported arbitration agreement in which the parties had specifically delegated the "gateway issue" of arbitrability to an arbitrator and the parties merely disputed whether the agreement (which no one denied existed between the parties) covered their dispute. (*Id.* at 5.) In other words, the cases de Ayora cites did not involve contract formation disputes or a situation in which there were two *separate* agreements or one party with a potential agreement and another with none. To the contrary, there was a single arbitration agreement that specifically delegated to an arbitrator the authority to decide the issue of arbitrability (not contract formation). That is not the case here. There was *no* arbitration agreement with Inspire and the parties thus did *not* agree to have an arbitrator decide the gateway issue of contract formation.[1]

De Ayora does not cite to *any* case where a court found an agreement to arbitrate was implied from a party merely *responding* to an arbitration demand. *Compare Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1440 (9th Cir. 1994) (finding that the *initiator of arbitration* (here de Ayora) can waive his right to object to jurisdiction). Instead, de Ayora relies on *Fortune, Alsweet & Eldridge, Inc. v. Daniel*, 724 F.2d 1355, 1356 (9th Cir. 1983), which is inapposite, to support his position. In *Fortune*, the court found the appellant's participation in the arbitration constituted an agreement to arbitrate where the appellant participated in the arbitration on the merits *for months* and then, shortly before the arbitrator rendered a ruling, sent a letter to the Arbitration Board denying his obligation to arbitrate and refusing to attend any further hearings. *Id.* at 1356–57. That is, the appellant did not object to the arbitrator's authority until the last minute. *Id.*

Here, Arby's and Inspire objected to Judge Nadler's authority to hear the dispute *in the very first instance*. (*See* Exhibit 3 to Backer Decl.at 6–7.) Arby's and Inspire were obligated to respond to de Ayora's initiation of the Arbitration. *See* JAMS Rule 5(c) (providing that "[i]f a Party that is obligated to arbitrate […] fails to agree to participate in the Arbitration process, JAMS

[1] De Ayora's position also makes no sense from a practical standpoint. If Inspire had just refused to pay JAMS fees and not litigate the issue of jurisdiction, de Ayora would have marched into Court and suggested that he was entitled to default for failure to participate in the very problem he created by filing the action in Arbitration in the first place.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

shall confirm in writing that Party's failure to respond or participate, and, pursuant to Rule 22(j), the Arbitrator, once appointed, shall schedule, and provide appropriate notice of, a Hearing or other opportunity for the Party demanding the Arbitration to demonstrate its entitlement to relief"). To reserve their rights, Arby's and Inspire accordingly responded to de Ayora's demand and initiation of the Arbitration and filed their opposition to de Ayora's motion regarding arbitrability. (*See generally* Exhibit 3 to Backer Decl.) In this opposition, Arby's and Inspire objected to Judge Nadler's authority to rule on the issue of contract formation, which de Ayora framed as an "arbitrability" issue. (*See id.* at 6–7.) Thus, unlike the appellant in *Fortune*, Arby's and Inspire did not wait until the last minute to challenge Judge Nadler's authority to determine the gateway issue of contract formation but did so at the first opportunity they had.

Moreover, de Ayora is essentially arguing that Respondents should not have responded to his arbitration demand. Put mildly, this would undermine the arbitration process as a whole. *De Ayora* initiated Arbitration by submitting fourteen claims against a different Inspire entity to the Arbitrator, and then, only after amending his Complaint to name Arby's and substitute in Inspire, did de Ayora subsequently file a motion regarding non-arbitrability. Despite the fact that de Ayora failed to allege any visits to Inspire's website, Inspire responded to de Ayora's filing as required by JAMS, and to ensure its rights were not waived if the Arbitrator ultimately disagreed with its challenges. The entire point of Respondents' response was to challenge and object to de Ayora's submission of the issue of arbitrability to the Arbitrator.[2]

Even if Petitioner's cited authorities were applicable here (they are not), de Ayora fails to show how Arby's and Inspire's participation in the Arbitration was a "clear and unmistakable" agreement to arbitrate the issue of contract formation, which was required for the Arbitrator instead of the Court to decide the issue. (*See* Opp. at 5.) Again, de Ayora again does not cite to a single authority where a court found that a responding party's participation in the arbitration is a *clear*

[2] De Ayora's argument that Respondents only made a conditional objection and thus still agreed to have the Arbitrator determine the threshold issue of arbitrability is nonsensical. (*See* Opp. at 5-6.) Respondents properly made their challenges against the Arbitrator's authority to rule on the issue of contract formation and arbitrability and thereby covered their bases with alternative theories. De Ayora fails to show why Respondents cannot make what he characterizes as "conditional" objection when Respondents appropriately made all possible arguments to reserve their rights.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*and unmistakable* expression of agreement to submit to the Arbitration. De Ayora cites *First Options of Chi., Inc. v. Kaplan* ("*First Options*"), 514 U.S. 938, 947 (1995) as a comparison to the present case, but *First Options* actually supports Respondents' position. In *First Options*, the court found there was no clear and unmistakable agreement to have the arbitrators decide the question of arbitrability, even though respondents filed with the arbitrators a written memorandum objecting to the arbitrators' jurisdiction. *Id.* at 946. That is, the court did *not* find a party's objection to the arbitrator's authority to decide on the issue of arbitrability as a "clear and unmistakable" agreement to the arbitration. *Id.* Hence, de Ayora fails to demonstrate how any conduct of Arby's and Inspire, including their responsive briefing in the Arbitration, so clearly and unmistakably implied an agreement to submit the issue of contract formation or arbitrability to the Arbitrator. To the contrary, as in *First Options*, Respondents' Opposition included an objection to the Arbitrator's jurisdiction. Since there was no clear and unmistakable agreement to arbitrate the gateway questions of contract formation, whether the court or the arbitrator decides arbitrability was an issue for judicial determination only. *See Coinbase, Inc. v. Suski,* 602 U.S. 143, 151 (2024) ("[W]here a challenge applies 'equally' to the whole contract and to an arbitration or delegation provision, a court must address that challenge.") (citations omitted).[3]

Thus, Judge Nadler clearly exceeded his authority in issuing the Award because (1) no arbitration agreement of any kind ever existed with Inspire and (2) no agreement to arbitrate the threshold issue of contract formation existed between him and Arby's. *See Comedy Club, Inc. v. Improv W. Assocs*., 553 F.3d 1277, 1286, 1288 (9th Cir. 2009) (quoting *PoweragentInc. v. Elec. Data Sys. Corp*., 358 F.3d 1187, 1193 (9th Cir. 2004)). At the absolute minimum, the issue of arbitrability simply could not be ruled on as there was no underlying arbitration agreement with Inspire that Judge Nadler could draw any authority from to make such a decision as to de Ayora's entire dispute as it was framed against Respondents. This is further supported by the fact that de

[3] Judge Nadler lacked jurisdiction to determine the issue of arbitrability as to Arby's, as such issue was in fact one of contract formation, an issue reserved for a court to resolve. *Coinbase,* 602 U.S. at 151 ("[W]here a challenge applies 'equally' to the whole contract and to an arbitration or delegation provision, a court must address that challenge."). In making this *Coinbase* argument during the Arbitration, Respondents properly challenged Judge Nadler's authority to rule on the issue of arbitrability and clearly did not agree to arbitrate the issue.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Ayora interchangeably uses "Respondent" and "Respondents" throughout his Opposition. (*See generally* Opp.) He does so without clarifying whether "Respondent" refers to Arby's or Inspire. Not only does this fail to give Respondents sufficient notice of which allegations and arguments are being made against Inspire or Arby's—a particularly important distinction given Respondents' argument that no agreement was ever alleged as to Inspire—but it also demonstrates de Ayora's own acknowledgement that there are two separate Respondents he must distinguish and address individually for the purposes of the Award. Accordingly, because Judge Nadler ruled on the issue of arbitrability when there was no agreement of any kind that granted him such authority, the Award failed to "draw its essence from the agreement" and there is a clear statutory ground for the Court to grant Respondents' Motion and vacate the Award as to both Inspire and Arby's. *See* 9 USC § 10(a)(4); *see also Comedy Club, Inc.,* 553 F.3d at 1288.

2. Respondents Are Within Their Rights to Challenge Arbitrability Here

De Ayora's argument that Respondents waived their right to challenge arbitrability by voluntarily submitting the dispute to arbitration also fails. (*See* Opp. at 7-8.) In making this argument, de Ayora simply reuses the authorities and arguments he makes to claim that Respondents implicitly agreed to a separate agreement to arbitrate the gateway issue of arbitrability. As set forth above, Respondents did *not* waive the right to challenge arbitrability because, under de Ayora's logic, anyone who responds to an arbitration initiated by another party automatically waives the right to challenge the arbitrator's authority to rule on the issue. Respondents were procedurally required to respond one way or another, and Respondents chose to do so by filing a brief that challenged and objected to Judge Nadler's authority to rule on the issue—that is, Respondents appropriately argued during the Arbitration that the issue of contract formation, characterized by de Ayora as an issue of arbitrability, was reserved for the Court and thus Judge Nadler could not rule on the submitted issue.

In arguing that submission of the issue to an arbitration can be interpreted as a waiver of any objection over the authority of the arbitrator, de Ayora cites to a series of cases (which Plaintiff in the proceedings before Judge Nadler originally argued were inapplicable to de Ayora's initiation of arbitration), including *Ficek v. S. Pacific Co.*, 338 F.2d 655, 657 (9th Cir. 1964), *Fortune,* 724

F. 2d at 1356-57, and *Nghiem*, 25 F.3d at 1440, where courts found waiver because a party fully arbitrated an issue and only *after* losing that issue, brought challenges against the authority of the arbitrator. (Opp. at 7.) However, in these cases, the party challenging the award was the one that initiated the arbitration. That is not the case here. The present case does *not* involve a situation where *Respondents* initially submitted their claims to Arbitration, fully arbitrated their claims, and only after losing are challenging the authority of the Arbitrator. It was *de Ayora* who initiated the Arbitration by submitting his fourteen claims against Respondents, and Respondents simply responded to this demand. Ironically, under the cited cases, it is in fact *de Ayora* that has waived his right to challenge the Arbitrator's authority to decide the arbitrability issue and would be prohibited from contesting the Arbitrator's jurisdiction in any way.

Furthermore, a motion to vacate is the very mechanism through which a party can appeal the underlying Award. A court may indeed vacate an award, albeit only on specific grounds, such as (i) where the award was procured by corruption, fraud, or undue means; (ii) where there was evident partiality or corruption among the arbitrators; (iii) where the arbitrators were guilty of misconduct, such as refusing to postpone the hearing or refusing to hear pertinent evidence; or (iv) where the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final, and definite award was not made. *See* 9 U.S.C.A. § 10(a)-(4). In other words, a motion to vacate is a valid way for a party to dispute the underlying decision made by an arbitrator or an arbitration panel, as long as at least one of the statutory grounds is present. *See id.*

Here, Respondents are not asking this Court to vacate the Award only because they disagree with the Arbitrator's interpretation of the laws regarding waiver and determinations of arbitrability. Contrary to de Ayora's characterization, Respondents request that this Court vacate the Award because Judge Nadler exceeded his authority in issuing the Award where there was no arbitration agreement with Inspire, and where neither Arby's nor Inspire separately agreed to arbitrate the issue of contract formation. Respondents raised *Coinbase* and the contract formation issue (characterized by de Ayora as an arbitrability issue as to Arby's) below and again here to emphasize the fact that Respondents objected to Judge Nadler's authority to determine the issue of arbitrability and thus there was no agreement to arbitrate the issue as de Ayora argues. Because

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Respondents' arguments are grounded in the fact that de Ayora never alleged he visited Inspire's website as to bind the parties to any contract, and that Respondents never separately agreed to arbitrate the issue of contract formation, Respondents are within their right to challenge the underlying rationale of the Award and respectfully request that this Court accordingly vacate the Award.

## II. **CONCLUSION**

For the foregoing reasons, the entire Award should be vacated under 9 U.S.C. § 10(a)(4) as wholly exceeding the Arbitrator's power to analyze de Ayora's claims.

Dated: July 1, 2025

**BAKER & HOSTETLER LLP**

By: */s/ Bethany G. Lukitsch*
Bethany G. Lukitsch
Alexis Cruz

*Attorneys for Respondents*
INSPIRE BRANDS, INC. and ARBY'S RESTAURANT GROUP, INC.