UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Alex G. Tse, Magistrate Judge

| | |
|---|---|
| PAUL DE AYORA,<br>Plaintiff,<br>vs.<br>INSPIRE BRANDS, INC., et al.,<br>Defendants. | No. C 25-03645-AGT |

San Francisco, California
Friday, July 18, 2025

TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND RECORDING 9:59 - 10:42 = 43 MINUTES

APPEARANCES:

For Plaintiff:
Gutride Safier, LLP
100 Pine Street, Suite 1250
San Francisco, California 94111
BY: ANTHONY J. PATEK, ESQ.

For Defendants:
Baker & Hostetler, LLP
1900 Avenue of the Stars
Suite 2700
Los Angeles, California 90067
BY: BETHANY G. LUKITSCH, ESQ.
BY: ALEXIS B. CRUZ, ESQ.

Transcribed by:
Echo Reporting, Inc.
Contracted Court Reporter/Transcriber
echoreporting@yahoo.com

Friday, July 18, 2025 9:59 a.m.

P-R-O-C-E-E-D-I-N-G-S

--oOo--

THE CLERK: Now calling 25-CV-3645, Paul de Ayora versus Inspire Brands, Inc., et al.

Counsel, please approach the podiums and state your appearances.

MR. PATEK: Good morning, your Honor. This is Anthony Patek from Gutride Safier, appearing on behalf of the Plaintiff/Petitioner.

THE COURT: Okay. Go ahead.

MS. LUKITSCH: Good morning, your Honor. Bethany Lukitsch from Baker Hostetler. I'm also supported by Alexis Cruz from my office. We represent the Respondents, Inspire and Arby's.

THE COURT: Okay. Great. All right. In tackling this problem, I -- I think I still want to build upon what was in the joint statement presented to the Court, and that was really triggered by what you drafted about how you think really the case proceeds going forward.

I -- I can reveal what I'm thinking about the actual arbitrator's award, and -- but I'm not convinced that resolving that issue necessarily resolves the lawsuit. It doesn't seem like it does. It seems like, in fact, it's a hurdle to getting you there, and -- but I want to hear from

you as to where ultimately this case goes.

My reaction to the arbitrator's award is I have concerns about the award. You know, I -- I did not see that the arbitrator had an agreement to arbitrate with Inspire. It wasn't before me. There was not reference to any agreement, and yet it seems like the arbitrator kind of lumped it in with Arby's.

That said, you know, maybe the arbitrator reached that same conclusion, that he doesn't have jurisdiction with you because there was no agreement with Inspire. It's just not as clearly drafted. I actually don't really have a clear sense of what the agreement is with Arby's.

So, ultimately, though, the arbitrator's decision to say that there's no jurisdiction, whatever, for him to hear it kind of presents back to us today as to where this case is going to go.

So, let me speak to the Petitioner's counsel first since you are really the driving force of the case, and that is, if I were to grant your request and confirm the arbitrator's award, which I've already gone through and said I have concerns about that or to deny the motion to vacate, what would you be doing in that -- in the -- the next step? Would you be filing or attempt too file an initiating complaint in District Court?

MR. PATEK: Yes, your Honor.

THE COURT: Okay. And do you feel like you can do that without court leave to do that? And let me ask you this way. What's to stop you from doing that now?

MR. PATEK: Well, I think, your Honor, that it's an issue of making sure that the arbitration issue is all ironed out before we go to the District Court with the full on complaint.

THE COURT: Right.

MR. PATEK: Because typically what happens is --

THE COURT: Meaning you want to find that there's no agreement to arbitrate?

MR. PATEK: Yes.

THE COURT: Is that what you mean?

MR. PATEK: Yes.

THE COURT: Okay. So, that -- and that's what you want to take away from the arbitrator's award?

MR. PATEK: Yes. Or, for that matter, even if you ruled against us in this motion --

THE COURT: Yes.

MR. PATEK: -- I will simply note that that would require accepting their position that there's no agreement that requires to arbitrate, which would then judicially estop them from moving to compel arbitration when we filed in District Court.

THE COURT: I'm not -- I'm not sure I agree with

you, but --

MR. PATEK: Okay.

THE COURT: -- but, putting that aside, my -- my focus is -- my -- my last question was whether -- what's to stop you from filing a complaint in this court now? I know that you would like to resolve the arbitration issues, and that may -- there may be good reason for that, because you think it might come up again, which I'm competent it will through -- if there's a complaint. The Defendants are going to assert a right to file a motion to compel arbitration.

But, again, what -- what I'm trying to get ahead of is if all you're going to do is file a complaint that you feel like as a matter of law, you can do, then why not get to that now?

MR. PATEK: Well, so, to be clear, I don't think there's anything that would prohibit us --

THE COURT: Yes.

MR. PATEK: -- from doing that.

THE COURT: Correct.

MR. PATEK: I would agree with you on that.

THE COURT: Okay.

MR. PATEK: I think that the issue from our perspective is more one of addressing the issues in the case in bite size chunks, right? So --

THE COURT: But why should we do that? That's --

that screams at judicial inefficiency to do that.

MR. PATEK: I'm not sure that I agree with that --

THE COURT: Okay.

MR. PATEK: -- given -- given that the issues of whether or not there's an agreement to arbitrate and whether or not the --

THE COURT: I agree that kind of is the threshold issue.

MR. PATEK: Right.

THE COURT: But what other thing do you want to say you'd want to do it in chunks? I mean, the issue is --

MR. PATEK: Well --

THE COURT: -- if I -- if you're allowed to file a complaint, I would like to know who the parties are. I would like to know what the claims you're bringing. Those are things that I think do not need to come in chunks. They can come in one document. You've already filed a complaint with the arbitrator. So, you have some idea.

What I'm speculating you're going to do is potentially add more Defendants or you think there are more Defendants that are not in the arbitrator's complaint but would be in a District Court complaint? I'm -- I'm speculating at this point.

MR. PATEK: Right. It's not clear to me that we would be adding more Defendants.

THE COURT: Okay.

MR. PATEK: I mean, I can see why you might think that, and now that you raise the issue, I suppose it's one that we would consider if the individual --

THE COURT: I'm not looking for more work. So --

MR. PATEK: No, no.

THE COURT: So, the issue is what were you intending to do? Maybe I should walk you from there, because what I don't know what I'm going to hear from Defendants is whether or not you can actually do this. They may oppose your ability to initiate a complaint. I don't see how that can be, but you might do that. So, I would think you right now, based on the evidence you have, in order to file a complaint in District Court, you must have some claims against certain Defendants, and maybe it just mirrors the additional complaint, but -- but you were the one to tell me that you wanted to file an amended complaint, which is a bit of a misnomer. It's a little confusing because there is no initial -- initial complaint here in this report. There is one with the arbitrator, but -- but, so, what -- what is this complaint -- proposed complaint that you would file if I were to say -- and it does sound like what you're saying to me, it doesn't matter if you confirm or not, that's your next step. Your next step is to initiate a complaint.

MR. PATEK: Right. So, to be clear, we have filed similar complaints against other Defendants --

THE COURT: Okay.

MR. PATEK: -- on the merits of the underlying claims --

THE COURT: And where are those --

MR. PATEK: -- such as the invasion of privacy.

THE COURT: -- complaints?

MR. PATEK: The most -- I think all of those have been here in the Northern District of California.

THE COURT: Okay.

MR. PATEK: There's one that just past -- a motion to dismiss, I believe --

THE COURT: So, maybe this case is actually related to those cases.

MR. PATEK: Well, not entity wise.

THE COURT: Okay.

MR. PATEK: Right. I mean, they --

THE COURT: But claim wise.

MR. PATEK: -- present similar -- similar misconduct and similar theories.

THE COURT: By -- by these Defendants?

MR. PATEK: Again, not the same -- I'm just saying we have filed similar complaints --

THE COURT: Oh, I'm sure. I'm sure. Yes, yes,

yes. Okay.

MR. PATEK: -- that -- that would --

THE COURT: I have no doubt you have, yes.

MR. PATEK: Yes -- that would present the basic theories of the case, right. All of the claims have identified Defendants.

THE COURT: Okay.

MR. PATEK: And we've been doing the same --

THE COURT: I -- I don't know how that's relevant to this discussion.

MR. PATEK: You were asking what the next step would be.

THE COURT: That you would do in this case, not what you would do in theory. What are you going to do in this case?

MR. PATEK: We are going to file a complaint that is --

THE COURT: And what are those claims, claims that are similar to cases you filed but are not related? So, what are those claims?

MR. PATEK: Invasion of privacy --

THE COURT: Okay.

MR. PATEK: -- claims.

THE COURT: Okay.

MR. PATEK: SIPA claims.

THE COURT: Okay.

MR. PATEK: Breach of the --

THE COURT: Okay.

MR. PATEK: -- covenant of good faith and fair dealing.

THE COURT: Okay.

MR. PATEK: Right. So, there are con -- concrete claims --

THE COURT: No, I --

MR. PATEK: -- identified.

THE COURT: And I don't -- I don't dispute that. And right now you -- you are saying that the Defendants would be the same. It would be Inspire and Arby's?

MR. PATEK: That we filed, my understanding currently is that it would be the same Defendants, yes.

THE COURT: Okay. Okay. All right. And then, so -- and then in that case, it would just be like a normal litigation. The Defendants would appear, and they could in that instance file an initial motion to dismiss?

MR. PATEK: Correct.

THE COURT: Right?

MR. PATEK: Right.

THE COURT: And then assuming -- if that's denied, then their next motion could be a motion to compel arbitration. And that is where I suspect you might have

some disagreement as to whether -- whether or not their motion to compel arbitration has merit?

MR. PATEK: Right. So, without agreeing that the motion would have merit --

THE COURT: No. I -- I wouldn't ask you to do that.

MR. PATEK: Sure. But I -- I agree with you that that is a plausible prediction of how the case would proceed once filed.

THE COURT: Okay. Okay. And then the motion to compel arbitration, taking it one step further, you would then bring back the arbitration, the arbitrator's award, to -- to argue and advocate before me that there should be a certain result, that the motion to compel arbitration should be denied either on -- on the same -- on the grounds that you want to allege in the traditional opposition to a motion or would you be trying to draw back from what happened at the arbitration and saying, Well, the arbitrator decided this, and, therefore, it's -- is there some estoppel argument that you believe is in play with the arbitrator's award?

MR. PATEK: I'm not a hundred percent sure, but I --

THE COURT: Okay. I'm trying to see what -- what from the arbitration process you would bring back in

connection with the motion to compel arbitration.

MR. PATEK: So, from the arbitration process that has already been completed --

THE COURT: Correct.

MR. PATEK: -- I assume that if they file the motion to compel, we would raise the prior arbitration proceeding as, you know, either a response in opposition to the motion to compel --

THE COURT: Okay.

MR. PATEK: Or I suppose in theory -- I mean, maybe this wouldn't be the right way to do it, but I could see someone saying, you know, file it as a motion to strike the motion to compel. I mean, the particulars I think are not so important. But I -- but I do think what you're trying to get at is that, yes, we would be raising the arbitration proceeding --

THE COURT: Okay.

MR. PATEK: -- saying that this has already been dealt with by an arbitrator and that there's no reason to believe the outcome would be any different. The arbitration was done properly in terms of the analysis of the facts, like there was some limited discovery I believe into just, you know, what the cookie banner presented and whether or not it created a browsewrap or a clickwrap, agreement to arbitrate, things like that.

And, you know, then I think also that we would point out -- I mean, you may disagree that they're judicially estopped, but I certainly think there is a colorable argument that --

THE COURT: Yeah, I -- I would allow you to raise all the arguments that you're -- you're saying right now. My -- my question, though, is procedurally, that if I were to rule and say what the arbitrator did was in excess of his jurisdiction, isn't that a bit of -- either it's going to be -- I -- I don't know how your filing a complaint does -- or takes away -- I mean, that's not the right word, but it seems like we're getting ahead of ourselves by ruling on the arbitration, the impact of the arbitration, because if you can just file a complaint, then I -- I'm a little concerned that what we've done now is kind of wasted, which is why I sent out that order, to see what it is that I can do now or should not do now.

MR. PATEK: Right. So, I think that part of the difference between how you and me are viewing this is -- is that if you granted our petition and they then proceeded to file a motion to compel arbitration --

THE COURT: But they -- they could only do that after you file a complaint. There's nothing otherwise to compel arbitration, right?

MR. PATEK: I understand what you're saying there.

What I was trying to get at is at that point -- and you may disagree, but I would argue that any motion to compel arbitration they filed at that point would be in bad faith because you would already -- like both an arbitrator and a court -- you know, an arbitrator had ruled --

THE COURT: Which I will tell you right now my inclination is not to do for that reason, because I don't feel like the Defendants have had an opportunity to actually litigate the issue of compelling arbitration. What -- what did they have to do? The arbitrator just came in and said, I don't have jurisdiction. The order that I read doesn't have a lot of analysis in it, and it didn't have an agreement between Inspire, which was not the gravamen of your facts. Your facts were in Arby's. So, I'm not sure that I want to rely on the arbitrator's award and put the Defendants in the position of basically not giving them an opportunity to litigate the issue of whether or not this should go to arbitration, and maybe it's just how I view the record and my -- my own personal impression of what I would want to see in the record, but I would feel like what happened at the arbitration for that period of time did not fully and fairly litigate that issue on a motion to compel arbitration.

I don't even have what's before the arbitrator in the agreement. I don't know what's in the language in the

Arby's arbitration agreement. I don't know if it incorporated the JAMS rule. I mean, there are things that are missing from that record that I don't even have, and I would feel uncomfortable saying, Well, the Defendants are bound by that and, therefore, just because, yes, the arbitrator -- I could see where you'd argue on your side, but that's why the Defendants I could see are making a colorable claim that they don't want that award, and that's why they're moving to vacate it.

So, I think that it -- it's worth addressing Arby's and Inspire separately, just to walk through some of the concerns that you just raised. So, let's focus for a --

THE COURT: But you want to litigate the arbitrator's award as opposed to going to the next step of -- of filing a complaint, and my concern that I have letting you do that is you're going to file a complaint anyway. In order for this case to go forward, you have to file a complaint. And the question is where do you arbitrate or not, and that is an issue that I'm wondering why not get that done after the complaint is filed.

Now, the Defendants may have their own views, which I'm going to ask them to educate me on, but I -- I do think -- and, unfortunately, because the purpose of arbitration was to streamline it, was to make this go more quickly, and here we are potentially I'm saying, well, we're -- we're back at

square one now, and you're litigating, and my understanding of the record is you actually did approach the Defendants and say, Do you want to litigate or do you want to arbitrate? And the decision was to go to arbitration.

Now, I understand the Defendants have reasons why they did that and they feel like they had no choice but to arbitrate. So, but I -- we can spend time, and I'm happy to hear the argument on what -- on what happened at that arbitration, but it still seems not persuasive to me if all you're going to do at the end of this particular procedural point is to file a complaint, and, therefore, we're -- why don't we just get to that?

The real issue is what is the impact of what happened at the arbitration after your complaint has been filed, because you need a complaint.

MR. PATEK: Right.

THE COURT: Right.

MR. PATEK: Sure.

THE COURT: Yeah.

MR. PATEK: So, I mean, if we file a complaint and they file a motion to compel arbitration, I think we're still going to be arguing that --

THE COURT: Yes, I can see that.

MR. PATEK: -- the arbitration had some frequence of effects or at least created some kind of estoppel because

they are arguing contradictory positions between the arbitrator and here.

So, again, I want to make clear like perhaps it was a mistake not to submit the agreement to you, but there was definitely an agreement that was submitted to the arbitrator.

THE COURT: Which one?

MR. PATEK: The Arbys.com.

THE COURT: So -- so, you -- so, there was no agreement with Inspire. I didn't see one.

MR. PATEK: So --

THE COURT: They're arguing there wasn't one.

MR. PATEK: So, I concede there was not a separate agreement --

THE COURT: Okay.

MR. PATEK: -- with Inspire.

THE COURT: Okay.

MR. PATEK: But the assumption was -- and, again, you have to understand that our perception with this process is colored by how Defendants behave when we do exactly what you're proposing, which is to file a complaint in Federal Court directly.

THE COURT: Um-hmm.

MR. PATEK: Whenever we do that, they come in, and they argue that we are wasting the Court's time and that we

are misbehaving because we're ignoring this binding agreement to arbitrate and that they're going to be moving us to compel. And the fact that it's a parent company does not stop them from asserting that the parent company is a third party beneficiary of their subsidiary's arbitration agreement.

So, I mean, if they want to come in here and say, No, Inspire has absolutely no relationship to the Arby's, you know, terms of use such that Inspire cannot rely on that agreement to compel arbitration, then I have no beef with that. My beef is with them going into a Federal Court --

THE COURT: Um-hmm.

MR. PATEK: -- and saying, like, Oh, like that arbitration award has absolutely no merit, and -- because there was no agreement with Inspire. But, actually, there was an agreement with Inspire, and we can now rely on that to compel arbitration.

In my view, that's the waste of time, right, because they're just going to come back, and they're going to argue whatever position they want to try to get out of Federal Court, and they will contradict themselves if given the opportunity. And I understand that this is perhaps a little bit unusual to how many firms have done this in the past, but, you know, we've had a lot of experience with this, and we're tired of getting bogged down in the arbitration

procedures in the midst of all of the other things that have to be done in order to proceed with a federal case, right, in terms of the motion to dismiss and starting discovery, working out protective orders, working out ESI orders, I mean, all of the things that you have to do once the litigation has begun. It -- from our perspective, it is more efficient to try to resolve the issue of arbitration first, get a clear ruling on whether or not such arbitration agreements existed, and then we can go and we can proceed with all of the other things that we need to do in Federal Court.

THE COURT: Okay. All right. So, your -- your argument now to confirm the award then since that's what you wanted to do, and I'll give you your opportunity to do that.

MR. PATEK: Sure. So, I think in --

THE COURT: Knowing that we -- we agree there's no agreement with Inspire.

MR. PATEK: Sure.

THE COURT: So, do you think it was beyond the arbitrator's jurisdiction to make the decision regarding Inspire when it didn't have an agreement?

MR. PATEK: Well, I think at that point the agreement becomes one that's created through conduct, right. I mean, if the shoes were reversed --

THE COURT: But what law is there that says that I

can -- can figure out or review that on -- on the basis of my review of any arbitrator's decision, that I can impute conduct when there's no agreement? The law seems fairly clear that I have to at least examine an agreement or that the arbitrator should have.

MR. PATEK: But, again, there -- there is an agreement with Arby's.

THE COURT: Right.

MR. PATEK: Or at least there's a putative agreement with Arby's. I guess that's the way to say it.

THE COURT: Okay.

MR. PATEK: And, you know, Inspire had an opportunity to say, We have nothing to do with that. We're not going to be involved in this arbitration at all, right. And they didn't. They participated in the arbitration, and the whole time that they were participating --

THE COURT: But they participated in the arbitration for what purpose? Not to get to the merits. It was just to adjudicate the issue of whether or not there was jurisdiction? I mean, there was a fairly limited charge for this arbitrator, was there not? And -- and that seems to be where the Defendants are coming to is like, you know, we're only here for the purpose of -- the limited purpose of doing that.

MR. PATEK: The demand was written to focus on the

threshold issue of whether or not there was an arbitration agreement.

THE COURT: Okay.

MR. PATEK: But it would have been binding. If like we had lost, we wouldn't be coming in here arguing that the arbitrator had no jurisdiction to decide that threshold issue and that, therefore, we can still go to Federal Court on the merits. I mean, we would have had to amend the demand --

THE COURT: But you could at that point --

MR. PATEK: -- right, or filed --

THE COURT: But you could at that point, you could still -- nothing prohibits you from going to Federal Court. The issue is where and at what point --

MR. PATEK: No.

THE COURT: -- do you argue arbitration.

MR. PATEK: No, but I disagree that --

THE COURT: Okay.

MR. PATEK: -- we could have gone to Federal Court at that point, because this was their argument is that by participating in the arbitration, even on the threshold issue arbitrability --

THE COURT: Yes.

MR. PATEK: -- that we were waiving our right to contest arbitrability as to --

THE COURT: Right, right.

MR. PATEK: -- the merits.

THE COURT: Right. But you're -- you're -- you could always bring a case in Federal Court. In fact, that's your -- that's your --

MR. PATEK: But we would --

THE COURT: You might not want to be in Federal Court, but you want to litigate without arbitrating.

MR. PATEK: But -- but if we had litigated through the issue of arbitrability and lost and then gone to Federal Court --

THE COURT: Yes.

MR. PATEK: -- we would get crucified. If we had lost, right, if the arbitrator had ruled that there was an agreement to arbitrate and that we were bound to arbitrate in JAMS and then we filed the case in Federal Court --

THE COURT: Um-hmm.

MR. PATEK: -- and said like, Oh, no, that -- that's not actually a binding decision because there was no agreement to arbitrate, for example, with Inspire, like, there's no doubt in my mind that Inspire would turn around, argue that we had agreed to arbitrate at minimum through our conduct in participating at the arbitration and that we could not turn around and then after getting to a resolution on the issue that we wanted a resolution of, go to the

Federal Court and say that resolution is not binding just because we don't like it.

THE COURT: But -- but the result there is you don't want to arbitrate, correct? I mean, that's not a secret. You --

MR. PATEK: Right.

THE COURT: You want to litigate in -- in court.

MR. PATEK: Sure.

THE COURT: Here in Federal Court?

MR. PATEK: Sure.

THE COURT: So, I'm not sure I -- I track you that somehow you would be punished from being in Federal Court pursuing a complaint.

MR. PATEK: Well --

THE COURT: I mean, yes, you would be probably -- punished would be your word, not mine --

MR. PATEK: Well --

THE COURT: -- that -- that, you know, you would have to undo a position that you took in arbitration, so that that would -- you would still be here on the terms that you want to be here.

MR. PATEK: Well, not exactly, right. I mean, and maybe punished is the wrong term. I mean, I guess maybe the -- the more accurate way to frame it is when we came here, they would do the motion to compel arbitration, and --

THE COURT: Yeah.

MR. PATEK: -- if we had lost, they would be saying that we were just sore losers and that the law was clear that we couldn't turn around and reject the arbitration -- the arbitrator's decision just because we lost. And -- and, so, maybe punished is not the right word.

THE COURT: Well, I -- I think --

MR. PATEK: We'd probably --

THE COURT: I think what --

MR. PATEK: -- lose on the merits.

THE COURT: Well, what -- well, I think what would happen is that the Defendants would come back and say, We litigated this issue. We're going to arbitration. So, the fact that they filed a complaint after they lost, I assume that's the scenario, right, if the arbitrator came in and said you have to arbitrate.

MR. PATEK: Okay.

THE COURT: And then you come in and say, Nope. I'm going to go to District Court. That's the scenario you -- you're depicting, right?

MR. PATEK: Right.

THE COURT: Then I could see, yeah, they have an arbitrator's award that says --

MR. PATEK: Sure.

THE COURT: -- you got to arbitrate. So --

MR. PATEK: Right. And they would --

THE COURT: Right.

MR. PATEK: -- pursue it because they want to be in arbitration.

THE COURT: Right.

MR. PATEK: The same place --

THE COURT: But -- but the arbitrator agrees with them and says that they should be in arbitration. So, what your point is telling me that you just want to disregard the arbitrator's award. You would be punished. And, similarly, you want to hold them to the same standard, that you believe the arbitrator has -- has said -- did the arbitrator actually say, though, that they're not entitled to arbitrate?

MR. PATEK: Uh, I would have to go back and reread the reward.

THE COURT: I mean, maybe it's the same result because there's no jurisdiction, but is there actually a finding that -- that the way you interpret the agreements is that there's no right to arbitration? Is that what the arbitrator did in his award?

MR. PATEK: It's not a question of whether or not the agreements compel a right to arbitration.

THE COURT: But isn't that what they're going to ask in their motion to compel arbitration?

MR. PATEK: But the question is -- I mean, it's one of contract formation, right.

THE COURT: Yes.

MR. PATEK: So, it's whether or not the cookie banner was required -- you know, involved a clear disclosure of the arbitration agreement and required an unambiguous manifestation to consent to that provision. I mean, that's --

THE COURT: Do we have to arbitrate?

MR. PATEK: -- that's what was primarily litigated was whether or not the cookie banner created an agreement to arbitrate, right. So, then we're just going to go in, and we're going to -- we're going to litigate the exact same issue in Federal Court, right, if the arbitrator's award is not confirmed.

THE COURT: I -- I don't know what you're intending to argue in Federal Court, but assuming that you get there, I'm -- I would tell you that as the Judge, that I would allow you to argue whatever preclusive effect you think that arbitration has, and that was the reason for my question is that what do you think that arbitrator's award actually does have in terms of preclusive effect.

MR. PATEK: Right. Well, I think it has preclusive effect -- I mean, again, I'm sorry. I'm trying to think back to what the arbitrator's award said exactly.

I know if you ruled on the issue of whether or not we waived the right to object to arbitration by filing the demand, I -- I thought you ruled on whether or not our participation in the arbitration on the threshold issue of contract formation amounted to consent through action to arbitration of everything all the way through on the merits of the invasion of privacy claims. And, so, he ruled that does not exist. And I believe he also ruled that there was no unambiguous consent, right. So, there's no -- there was no formation of a contract, right. So, between --

THE COURT: Between who, though? Between Inspire --

MR. PATEK: Between -- between the Plaintiff and the -- the Defendants, right. I mean, in essence, I guess the way that I think of it is --

THE COURT: I'll tell you the biggest problem I have is that, you know, they're -- Inspire and Arby's are two different Defendants, and I can't necessarily from reading that ward figure out what applies to which one other than its conclusion that obviously applied to both. There -- there is no pathway for you to -- you know, to break that apart. And it wasn't -- now, maybe if it was in the order -- I'm speculating here -- that, you know, the absence of an agreement presented to him is why he ruled the way that he did, because there's nothing for him to track. But that's

-- that's speculative on my part. I mean, if we had to pick apart that order to do that, which I find is just perilous, quite frankly, to do that, but -- but, you know, I -- I would -- anyway. But -- but go ahead.

You -- you still want to advocate to confirm the award and -- and then to -- I assume it's to get leave to file a complaint?

MR. PATEK: Yes.

THE COURT: Okay. And it would be a brand new complaint. Okay. Is there anything you wish to add to your papers? I think I -- I have your arguments.

MR. PATEK: Yeah. I don't think there's anything that we need to add at this point.

THE COURT: Okay.

MR. PATEK: You know, when the other side gets up, I'll go back and take another look at the arbitration --

THE COURT: Sure. Sure.

MR. PATEK: -- agreement to see if there's anything that I missed.

THE COURT: Okay.

MR. PATEK: But, otherwise --

THE COURT: Okay. All right.

MR. PATEK: -- I've made my points.

THE COURT: Let's hear from the Respondents.

MS. LUKITSCH: Good morning, your Honor.

THE COURT: Good morning.

MS. LUKITSCH: I'm going to give Mr. Patek some leeway today because he has not been involved in this particular arbitration since the beginning --

THE COURT: Okay.

MS. LUKITSCH: -- which was handled by predominantly his colleagues, Kali Backer and Seth Safier.

THE COURT: Okay.

MS. LUKITSCH: But I think it's important to have a big picture which --

THE COURT: Yes.

MS. LUKITSCH: -- I think the Court is looking at, on this case, and where we are and why we're here and the incredibly convoluted inefficient judicial position that, quite honestly, since, I don't know, over a year and a half ago, when the parties were exchanging, you know, predispute communications, I never -- I never quite understood what Plaintiffs' counsel and Plaintiffs were doing. And here is --

THE COURT: I think we heard a little bit about it, which is --

MS. LUKITSCH: But I think --

THE COURT: -- they tried to avoid it.

MS. LUKITSCH: -- what you heard is not --

THE COURT: Sure.

MS. LUKITSCH: -- is not correct.

THE COURT: Sure. Okay.

MS. LUKITSCH: So, that's why I'm going to give him leeway.

THE COURT: Yes.

MS. LUKITSCH: You know, we actually participated in a mediation before even the arbitration process started.

THE COURT: Okay.

MS. LUKITSCH: The arbitration process started with a complaint which, unfortunately, is not before you. You only got the amended complaint.

THE COURT: Right.

MS. LUKITSCH: The initial complaint, which was not initiated because we said we are going to move to compel arbitration, our position was we know -- we don't know anything about your person. And, so -- and we don't know what claims you're going to ultimately put to paper.

THE COURT: Um-hmm.

MS. LUKITSCH: So, if you think there is no binding agreement, go file your complaint.

THE COURT: Um-hmm.

MS. LUKITSCH: If you want to try some other way, try some other way, and we'll look at it, and then we'll respond.

THE COURT: Um-hmm.

MS. LUKITSCH: So, the first thing that got procedurally put to paper was a 14-count demand against a single entity, an Inspire Brands Holding Company.

THE COURT: Um-hmm.

MS. LUKITSCH: To which we paid JAMS fees.

THE COURT: Um-hmm.

MS. LUKITSCH: So that we could contest, and there was a lot of --

THE COURT: So, Arby's -- Arby's was not in that initial --

MS. LUKITSCH: No.

THE COURT: It was just Inspire?

MS. LUKITSCH: It was Inspire Brands, but it was --

THE COURT: And was it still --

MS. LUKITSCH: -- Inspire Brands, LLC.

THE COURT: Okay.

MS. LUKITSCH: A different entity.

THE COURT: And was it still the factual predicate based on going onto the Arby's website?

MS. LUKITSCH: It was confusing.

THE COURT: Okay.

MS. LUKITSCH: So, Plaintiffs kind of want their cake and eat it too, right? They claim --

THE COURT: I gather that is your position, yes.

MS. LUKITSCH: -- that this -- this Plaintiff, right, Mr. Ayora, who was the only Plaintiff in the -- in the arbitration --

THE COURT: Okay. And still the only Plaintiff. There's no --

MS. LUKITSCH: Correct.

THE COURT: Yes.

MS. LUKITSCH: In this.

THE COURT: Yes.

MS. LUKITSCH: Although, we'll get to the proposed amended complaint that was circulated and what that looked like, which is very different from what's -- what Mr. Patek is --

THE COURT: Okay.

MS. LUKITSCH: -- representing.

THE COURT: Okay.

MS. LUKITSCH: So, that Plaintiff claims to have visited the Arby's website, but they lumped in sort of the amorphous -- and you can see it in the amended complaint, which you do have, which is attached as Exhibit 2 to the original petition.

THE COURT: Um-hmm.

MS. LUKITSCH: There's all this discussion about, you know, Dunkin's and Baskin's --

THE COURT: Yes.

MS. LUKITSCH: -- and all of these other --

THE COURT: Which, of course, led me to believe I'm right, there's a bunch of other Defendants that are possibly coming into this.

MS. LUKITSCH: Correct.

THE COURT: Yes.

MS. LUKITSCH: But they were never named, right. And they were never brought in.

THE COURT: Are they in the amended -- are they in the proposed amended complaint?

MS. LUKITSCH: There are three Plaintiffs --

THE COURT: Okay.

MS. LUKITSCH: -- in the proposed amended complaint that I saw, and whether this is the final one, I don't know. But it also includes Arby's, Jimmy Johns, which is another Inspire Brand --

THE COURT: Yes.

MS. LUKITSCH: -- I'll say.

THE COURT: Yes.

MS. LUKITSCH: They're allo independently, you know, operated companies with their own website. They all have different dispute resolution terms. They have, you know, at various times had different management systems with their cookie banners. They have different technology --

THE COURT: So, let me --

(Simultaneous speaking.)

THE COURT: -- interrupt you just for a second to ask how is it that I can confirm an arbitrator's award that had no awareness and then you have these entities?

MS. LUKITSCH: I don't think you can.

THE COURT: I don't think I can.

MS. LUKITSCH: And that's our point --

THE COURT: I don't think I can, correct.

MS. LUKITSCH: -- of --

THE COURT: Okay.

MS. LUKITSCH: -- of the arbitration, you know, we said --

THE COURT: But what is stopping them from actually wanting to litigate that case?

MS. LUKITSCH: I have no clue other than --

THE COURT: I don't think I can do that either. I don't think I can tell them, oops, you've already committed to Inspire or -- or you're -- you're Plaintiff --

MS. LUKITSCH: Well --

THE COURT: -- versus Inspire, and that's the end of the day, and that might resolve that particular very tiny lawsuit, but my concern is that they're just going to file another complaint, and you're going to be all back here again.

MS. LUKITSCH: I -- I don't --

THE COURT: In a very different posture.

MS. LUKITSCH: I don't disagree, and --

THE COURT: Yeah, and that's --

MS. LUKITSCH: -- we've been --

THE COURT: -- my concern.

MS. LUKITSCH: -- saying all along throughout this like if you think you have a complaint, go file your complaint.

THE COURT: Yeah.

MS. LUKITSCH: Now, there is this issue which we researched and really couldn't find anything exactly on point.

THE COURT: Uh-huh.

MS. LUKITSCH: Where they have amended their complaint --

THE COURT: Before the arbitrator.

MS. LUKITSCH: -- before the arbitrator at least once.

THE COURT: Okay.

MS. LUKITSCH: We preserved all of our objections to it, and that's when they substituted this other Inspire entity and added Arby's at that point because we said to the arbitrator, we don't -- you know, Inspire, LLC has --

THE COURT: Yeah.

MS. LUKITSCH: -- no arbitration provision. We

have no relationship with this Plaintiff. You can amend however you want.

THE COURT: Yeah.

MS. LUKITSCH: But we preserve all of our defenses. So, they amended. They brought this other Inspire Brands entity. They brought Arby's in at this point, but they didn't drop all of their loose stuff in their complaint about all these other entities and all of these different causes of action.

So, we don't really know what they were going to do here in court. And, to be honest, I don't really know. But as to -- as to Arby's and Inspire, I think if this had proceeded with those three complaints in court, they would have to seek leave. I don't know how -- to be completely candid, I couldn't find anything on point that says you absolutely have to have leave, but we've been saying --

THE COURT: We couldn't either.

MS. LUKITSCH: -- all --

THE COURT: We couldn't either.

MS. LUKITSCH: We've been saying --

THE COURT: Yes.

MS. LUKITSCH: -- all along --

THE COURT: But I think that would --

MS. LUKITSCH: -- if you have a complaint, go file your complaint. This petition makes absolutely zero sense

to me.

THE COURT: Yeah.

MS. LUKITSCH: The arbitrator's award is very confusing. We think that he didn't have jurisdiction to make any award as to Inspire, and we think it's wrong as to even Arby's because contract formation under Coinbase is clearly delegated to a court to decide which Plaintiffs' counsel if they -- you know, that's U.S. Supreme Court law. The only thing I can surmise out of this whole procedural mess is that there was an attempt, because this is not a unique case, at the beginning to try and push for early resolution of a bunch of these cookie banner cases. And the increased pressure from a failed mediation or a failed informal discussion was to then try and arbitrate because arbitration was still not in the public purview --

THE COURT: Um-hmm.

MS. LUKITSCH: -- would put pressure on Defendants to have to pay money, respond, deal with the procedural posture of arbitration. And, so, they chose to then go that route, which is why we said, Well, you made this affirmative choice. You could have said -- started in court. You made this choice to start in arbitration. So, now you can't say there was no contract.

THE COURT: Well, in the papers -- and you can help clarify that -- the way that -- that I understand it

from the papers is that they took the opportunity and said, Do you want to litigate or arbitrate? And you --

MS. LUKITSCH: That is not true.

THE COURT: Okay.

MS. LUKITSCH: And you will find no -- you will find --

THE COURT: And I'm not sure if it's relevant to what we're doing.

MS. LUKITSCH: You will find no document --

THE COURT: Right.

MS. LUKITSCH: -- that says go to arbitration.

THE COURT: Yes.

MS. LUKITSCH: Once they decided to file an arbitration, we said, Okay. You -- you chose your forum.

THE COURT: Yeah.

MS. LUKITSCH: You filed -- unlike some other cases where they filed a limited declaratory judgment action --

THE COURT: Uh-huh.

MS. LUKITSCH: -- this case started with a full demand.

THE COURT: Yeah.

MS. LUKITSCH: And, to be honest, you know, if the dispute is narrow and related to just Arby's, we have an arbitration provision in Arby's terms of use, and if they

decided they wanted to go and arbitrate against Arby's and they chose to file an arbitration instead of coming to court, we said under existing law, which is cited in our brief --

THE COURT: Um-hmm.

MS. LUKITSCH: -- you have -- you are represented by counsel.

THE COURT: Um-hmm.

MS. LUKITSCH: You had a choice of where to file.

THE COURT: Um-hmm.

MS. LUKITSCH: You chose to file your full complaint in arbitration, and, therefore, you have waived your right to contest contract formation and arbitrability.

I also think there is a ton of confusion in the papers between what is arbitrability --

THE COURT: Um-hmm.

MS. LUKITSCH: -- and what is contract formation.

THE COURT: Um-hmm.

MS. LUKITSCH: As I understand the case law, contract formation under Coinbase is clearly delegated to a court.

THE COURT: Um-hmm.

MS. LUKITSCH: And cannot be delegated --

THE COURT: To the arbitrator.

MS. LUKITSCH: -- to the arbitrator.

THE COURT: Um-hmm.

MS. LUKITSCH: Arbitrability is what happens once you agree there is a contract --

THE COURT: Um-hmm.

MS. LUKITSCH: -- and you look at that contract and say, Is this dispute covered under the terms of --

THE COURT: Right.

MS. LUKITSCH: -- the contract.

THE COURT: Right.

MS. LUKITSCH: And that --

THE COURT: That is my experience is that --

MS. LUKITSCH: -- is what arbitrability is.

THE COURT: Yes, right.

MS. LUKITSCH: And, so, when they said to the judge -- or the arbitrator, We want to do arbitrability, without seeing papers and without everything, now, we -- we kind of told them like there's -- we've said from the get go there's no contract with Inspire, and we quite honestly, don't know anything about -- you'll see in our underlying briefing we don't know anything about Plaintiff. We don't know has he made purchases from Arby's online that would have had something that was other than clickwrap, was he a rewards member, did he have some other sort of relationship, are we proceeding against Arby's, are we proceeding against perhaps these other entities.

So, even if they file this amended complaint --

THE COURT: Um-hmm.

MS. LUKITSCH: -- based on what we currently know about Mr. de Ayora and if he only visited the website, clicked on the cookie banner and left, I would argue he doesn't have any injury, but that's a whole nother thing. But we may not move to compel that specific scenario.

But if Mr. de Ayora is now suing Jimmy Johns and Dunkin Brand and there are other Plaintiffs that get added that we know nothing about and there are arbitration clauses that are different -- Dunkin's, for example, has always been with the AAA.

THE COURT: Um-hmm.

MS. LUKITSCH: We were in JAMS. So, there is like this whole -- there's this whole puzzle that, quite honestly, is a creature of their own making that brings us here today. So, we don't think that, you know, the petition can be granted because the award should be vacated. And at the end of the day, we just don't know where this gets us. I think the petition --

THE COURT: Well, I think what I still am thinking is I still need to see a complaint and that maybe there's some preclusive effect you would have in arbitration, but maybe I'm going to say there's none.

MS. LUKITSCH: Right.

THE COURT: And we're going to go forward, and then we can figure out if there is a claim for relief that survives a motion to dismiss, and then we can take each step because, as you say, you might not bring your motion to compel. That's just --

MS. LUKITSCH: Right.

THE COURT: -- a positional -- and, certainly, what this tees up is the likelihood that there will be, but you're not forced to proceed that way.

MS. LUKITSCH: No. We can --

THE COURT: Right.

MS. LUKITSCH: -- look at a complaint and --

THE COURT: Correct.

MS. LUKITSCH: -- decide, hey, you know --

THE COURT: We're okay defending in --

MS. LUKITSCH: -- we're happy in Federal Court --

THE COURT: Yes.

MS. LUKITSCH: -- and let's -- let's do this here.

THE COURT: Correct. Okay. All right. Anything else you wish to respond to or argue? I mean, I -- I'm -- do I have to rule on the arbitrator's award, whether or not it is actually confirm or vacate, the -- the way that you guys have both argued it, allow the complaint -- I would give you the opportunity to oppose leave to file an -- I don't think it's appropriate to say it's an amended

complaint because that is too confusing for the record. There is no original -- there's no operative complaint in District Court.

MS. LUKITSCH: Right.

THE COURT: I mean, whatever was filed with the arbitrator was filed in the arbitration, and that's part of that process. And whether or not any of those allegations are germane to this action, I -- I can't -- I'm not going to incorporate that. I'm not going to just say, Oh, yeah, I like that complaint. You have to ultimately put the case at issue, say that there's an operative complaint, do whatever you're going to do first, either dismiss or answer, and then we can tackle the issue of arbitration.

And then you, the Petitioner, soon to be Plaintiff or maybe multiple Plaintiffs, can then argue, Oh, but we had this arbitration and, therefore, this -- whatever issue gets teed up can be argued in preclusive effect, and we can tackle it then.

MS. LUKITSCH: We did have a time limit to file a motion to vacate. So, that's why we --

THE COURT: Why -- why it's --

MS. LUKITSCH: -- filed the motion to vacate --

THE COURT: -- all teed up. Sure. I understand. I understand.

MS. LUKITSCH: -- as part of this whole --

THE COURT: Yes.

MS. LUKITSCH: -- procedure.

THE COURT: Yes. Yes. And, therefore, not to waive any --

MS. LUKITSCH: Yes.

THE COURT: -- arguments you vacate.

MS. LUKITSCH: So, that's why, you know, we --

THE COURT: You did what you did.

MS. LUKITSCH: -- also put it at issue, but, you know, they put it at issue by, you know, starting with this petition, which I still don't understand, but --

THE COURT: Okay. Okay. All right. Anything you want to respond?

MR. PATEK: I don't think so, your Honor.

THE COURT: Okay. All right. All right. I think I can submit this. Parties submit?

MS. LUKITSCH: Yes, we do, your Honor.

THE COURT: Okay. Submitted? Okay. Great. Thank you.

THE CLERK: Court is in recess.

(Proceedings recessed at 10:42 a.m.)

CERTIFICATE OF TRANSCRIBER

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.



Echo Reporting, Inc., Transcriber

Tuesday, September 30, 2025