**BAKER & HOSTETLER LLP**
Bethany G. Lukitsch (SBN 314376)
Alexis Cruz (SBN 312842)
Kamran B. Ahmadian (SBN 314566)
1900 Avenue of the Stars | Suite 2700
Los Angeles, CA 90067-4508
Telephone: 310.820.8800
Facsimile: 310.820.8859
*blukitsch@bakerlaw.com*
*acruz@bakerlaw.com*
*kahmadian@bakerlaw.com*

*Attorneys for Defendants*
INSPIRE BRANDS, INC., ARBY'S RESTAURANT GROUP, INC., JIMMY JOHN'S FRANCHISOR SPV, LLC, SONIC INDUSTRIES SERVICES, LLC, and DUNKIN' BRANDS, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

BENJAMIN PAUL DE AYORA, CHRISTINE WILEY, MIKHAIL GERSHZON, AND GEORGE NINO as individuals, on behalf of themselves, the general public, and those similarly situated,

Plaintiffs,

v.

INSPIRE BRANDS, INC., ARBY'S RESTAURANT GROUP, INC., JIMMY JOHN'S FRANCHISOR SPV, LLC, SONIC INDUSTRIES SERVICES, LLC, and DUNKIN' BRANDS, INC.,

Defendant.

Case No.: 3:25-cv-03645-AGT

[*Assigned to Hon. Alex G. Tse*]

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS AND STRIKE THE CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

*[Filed Concurrently with Declaration of Kamran B. Ahmadian; and Request for Judicial Notice]*

**Date: December 5, 2025**
**Time: 10:00 a.m.**
**Dept: Courtroom A**

Action Filed: April 25, 2025

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on December 5, 2025, at 10:00 a.m., in Courtroom A of the above-entitled Court located on the 15th Floor of the San Francisco Courthouse, at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Inspire Brands, Inc., Arby's Restaurant Group, Inc., Jimmy John's Franchisor SPV, LLC, Sonic Industries Services, LLC, Dunkin' Brands, Inc. ("Defendants") will and hereby move to dismiss with prejudice the Class Action Complaint ("Complaint") of Plaintiffs Benjamin Paul de Ayora, Christine Wiley, Mikhail Gershzon, and George Nino ("Plaintiffs") [Dkt. No. 1].

Defendants respectfully submits this Motion pursuant to Fed. R. Civ. P. 9(b), 12(b)(1) and 12(b)(6) on the grounds that Plaintiffs fail to plead their fraud-based claims with sufficient particularity, Plaintiffs lack Article III standing, and Plaintiffs fail to allege sufficient facts to plead: (1) invasion of privacy or intrusion upon seclusion; (2) a violation of the California Invasion of Privacy Act ("CIPA"), California Penal Code § 631(a); (3) a violation of CIPA, California Penal Code § 638.51, (4) fraud, deceit and/or misrepresentation, (5) unjust enrichment, and (6) trespass to chattels. Defendants further move the Court for an order pursuant to Fed. R. of Civ. P. 12(f): (i) striking immaterial or impertinent allegations; and (ii) striking Plaintiffs' class definition because it is facially overbroad and can never satisfy Rule 23.

This Motion is based on this Notice, the Memorandum of Points and Authorities, the Declaration of Kamran B. Ahmadian, and Request for Judicial Notice, all pleadings, papers and records on file in this Action, and such other oral argument and documentary evidence as may be presented at or before the time of adjudication of this Motion.

\\

\\

\\

\\

\\

Dated: October 1, 2025,

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: */s/ Bethany G. Lukitsch*

Bethany G. Lukitsch
Alexis Cruz
Kamran B. Ahmadian

*Attorneys for Defendants*
INSPIRE BRANDS, INC., ARBY'S RESTAURANT GROUP, INC., JIMMY JOHN'S FRANCHISOR SPV, LLC, SONIC INDUSTRIES SERVICES, LLC, and DUNKIN' BRANDS, INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION ..... 1

II. STATEMENT OF ISSUES TO BE DECIDED ..... 2

III. BACKGROUND ..... 2

A. Defendants Lawfully Use Third-Party Cookies and Sufficiently Notify Visitors About Their Privacy Practices. ..... 2

B. Plaintiffs' Limited Allegations Regarding The Websites. ..... 4

IV. LEGAL STANDARD ..... 5

V. ARGUMENT ..... 6

A. Plaintiffs Fail to Allege Concrete Injury to Establish Article III Standing. ..... 6

1. Plaintiffs Have Not Alleged any facts about Inspire Brands, Inc. ..... 6

2. Plaintiffs Have Not Alleged a Concrete Privacy Injury. ..... 6

3. Plaintiffs Have Not Alleged a Loss of Value or Control Injury. ..... 9

4. Plaintiffs Have Not Alleged the Reduction of Storage and Value of Their Computing Devices. ..... 9

B. Plaintiffs Fail to Meet the Heightened Pleading Standard of Rule 9(b). ..... 11

C. Plaintiffs' Common Law Privacy Claims Fail (Counts I and II). ..... 12

1. Plaintiffs cannot allege a reasonable expectation of privacy. ..... 12

2. Nothing Defendants Did Was Highly Offensive. ..... 14

D. Plaintiffs' CIPA Claims Fails (Count III and IV). ..... 15

1. Plaintiff Ayora and Wiley's CIPA claims are time barred. ..... 15

2. Plaintiffs' CIPA §631(a) wiretapping claim fails. ..... 16

3. Plaintiffs' CIPA §638.51 Pen Register Claim Fails ..... 20

E. Plaintiffs' Common-Law Fraud/Misrepresentation Claim Fails (Count V). ..... 22

F. Plaintiffs' Unjust Enrichment Claim is Barred as a Matter of Law. ..... 22

G. Plaintiffs' Trespass to Chattels Claim Should Be Dismissed. ..... 23

H. Class Allegations Should Be Dismissed or Stricken Pursuant to Rule 12(f)........ 24

VI. CONCLUSION ........................................................................................................ 25

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*Addison v. State of California*,
21 Cal. 3d 313 (1978) ........ 15

*In re Application of U.S. of Am. For an Order Authorizing Use of a Cellular Tel. Digit. Analyzer*,
885 F. Supp. 197 (C.D. Cal. 1995) ........ 21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 5, 22

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) ........ 23

*Aviles v. LiveRamp, Inc.*,
No. 24STCV19869, 2025 WL 487196 (L.A. Super. Ct. Jan. 28, 2025) ........ 21

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) (Alsup, J.) ........ 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 5, 22

*Best Carpet Values, Inc. v. Google LLC*,
90 F.4th 962 (9th Cir. 2024) ........ 22

*Boris v. Wal-Mart Stores, Inc.*,
35 F. Supp. 3d 1163 (C.D. Cal. 2014) ........ 12

*Brazil v. Dell Inc.*,
585 F. Supp. 2d 1158 (N.D. Cal. 2008) (Whyte, J.) ........ 24

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) (Koh, J.) ........ 15, 17, 18

*Bui-Ford v. Tesla, Inc.*,
2024 WL 694485 (N.D. Cal. Feb. 20, 2024) (Tigar, J.) ........ 23

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) ........ 6

*California Crane Sch., Inc. v. Google LLC*,
722 F. Supp. 3d 1026 (N.D. Cal. 2024) (Pitts, J.) ........ 23


BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Casillas v. Berkshire Hathaway Homestate Ins. Co.*,
79 Cal. App. 5th 755 (2022) ..... 11

*Cervantes v. City of San Diego*,
5 F.3d 1273 (9th Cir. 1993) ..... 15

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) (Martínez-Olguín, J.) ..... 19

*Colgate v. JUUL Labs, Inc.*,
402 F. Supp. 3d 728 (N.D. Cal. 2019) (Orrick, J.) ..... 11

*D'Angelo v. FCA US, LLC*,
726 F. Supp. 3d 1179 (S.D. Cal. 2024) ..... 13

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) (Chhabria, J.) ..... 10, 16

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) (Orrick, J.) ..... 10

*In re Facebook Priv. Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011) (Ware, C.J.) ..... 22

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ..... 12

*Ferry v. DF Growth REIT*,
2024 WL 5011949 (S.D. Cal. Dec. 6, 2024) ..... 5

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App .4th 986, 992 (2011) ..... 14

*Gabrielli v. Haleon US Inc.*,
2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) (Orrick, J.) ..... 10, 16, 24

*Gabrielli v. Motorola Mobility LLC*,
2025 WL 1939957 (N.D. Cal. July 14, 2025) (Tigar, J.) ..... 10, 24

*General Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982) ..... 24

*In re Gilead Sciences Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ..... 5

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) (Davila, J.) ..... 13

*In re Google Inc. Priv. Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) (Grewal, J.) ..... 14

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Gutierrez v. Converse Inc.*,
2025 WL 1895315 (9th Cir. July 9, 2025) .......... 17

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) (Breyer, J.) .......... 12, 14

*Hart v. TWC Prod. & Tech. LLC*,
526 F. Supp. 3d 592 (N.D. Cal. 2021) (Tigar, J.) .......... 9

*Hartley v. Urb. Outfitters, Inc.*,
2024 WL 3445004 (E.D. Pa. July 17, 2024) .......... 7

*Heeger v. Facebook, Inc.*,
2019 WL 7282477 (N.D. Cal. Dec. 27, 2019) (Donato, J.) .......... 13

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) .......... 19, 22

*Hinton v. Pac. Enters.*,
5 F.3d 391 (9th Cir. 1993) .......... 15

*Hoey v. Sony Elecs. Inc.*,
515 F. Supp. 2d 1099 (N.D. Cal. 2007) (Whyte, J.) .......... 23

*Holland-Hewitt v. Allstate Life Ins. Co.*,
343 F.R.D. 154, 171 (E.D. Cal. 2022) .......... 6

*Holt v. Cnty. of Orange*,
91 F. 4th 1013 (9th Cir. 2024) .......... 15

*Hooked Media Grp. v. Apple Inc.*,
55 Cal. App. 5th 323 (2020) .......... 22

*Hospevian v. Apple Inc.*,
2009 WL 5069144 (N.D. Cal. Dec. 17, 2009) (Fogel, J.) .......... 24

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024) (Van Keulen, M.J.) .......... 9

*Hughes v. Vivint, Inc.*,
2024 WL 5179916 (C.D. Cal. July 12, 2024) .......... 7

*Intel Corp. v. Hamidi*,
30 Cal. 4th 1342 (2003) .......... 23

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) (Koh, J.) .......... 14, 23

*Jones v. Peloton Interactive, Inc.*
720 F. Supp. 3d 940 (S.D. Cal. 2024) .......... 12

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Jones v. Tonal Sys., Inc.*,
2024 WL 4357558 (S.D. Cal. Sept. 30, 2024) .......... 17

*Joseph v. J.J. Mac Intyre Cos., LLC*,
238 F. Supp. 2d 1158 (N.D. Cal. 2002) (Chen, M.J.) .......... 10

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .......... 11

*Khamooshi v. Politico LLC*,
2025 WL 1408896 (N.D. Cal. May 13, 2025) (Kim, M.J.) .......... 7, 13

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) .......... 17, 18

*Lau v. Gen Digit. Inc.*,
2024 WL 1880161 (N.D. Cal. Apr. 3, 2024) (Lin, J.) .......... 17

*Licea v. Hickory Farms LLC*,
No. 23STCV26148, 2024 WL 1698147 (L.A. Super. Ct. Mar. 13, 2024) .......... 21

*Lightoller v. Jetblue Airways Corp.*,
2023 WL 3963823 (S.D. Cal. June 12, 2023) .......... 7

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) (Koh, J.) .......... 9

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 5

*Marich v. MGM/UA Telecomm, Inc.*,
113 Cal. App. 4th 415 (2003) .......... 10

*Matera v. Google Inc.*,
2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) (Koh, J.) .......... 17

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) .......... 10

*McDonald v. Antelope Valley Cmty. Coll. Dist.*,
45 Cal. 4th 88 (2008) .......... 16

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024) .......... 18

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) .......... 8

*Pirozzi v. Apple Inc.*,
913 F. Supp. 2d 840 (N.D. Cal. 2012) (Rogers, J.) .......... 11

*Popa v. Microsoft Corp.*,
2025 WL 2448824 (9th Cir. Aug. 26, 2025)........................................................*passim*

*R.D. Reeder Lathing Co. v. Cypress Ins. Co.*,
3 Cal. App. 3d 995 (1970)..................................................................................... 10

*Rice-Sherman v. Big Heart Pet Brands, Inc.*,
2020 WL 1245130 (N.D. Cal. Mar. 16, 2020) (Orrick, J.) ...................................... 24

*Rodriguez v. Google LLC*,
2022 WL 214552 (N.D. Cal. 2022) (Seeborg, C.J.)................................................. 18

*Rojas-Lozano v. Google, Inc.*,
159 F. Supp. 3d 1101 (N.D. Cal. 2016) (Corley, M.J.)........................................... 23

*Rosenow v. Facebook, Inc.*,
2020 WL 1984062 (S.D. Cal. 2020) ........................................................................ 18

*Ruiz v. Gap, Inc.*,
540 F. Supp. 2d 1121 (N.D. Cal. 2008) (Conti, J.) ................................................. 14

*Saint Francis Mem'l Hosp. v. State Dep't of Pub. Health*,
9 Cal. 5th 710 (2020) ............................................................................................... 15

*Sanders v. Apple Inc.*,
672 F. Supp. 2d 978 (N.D. Cal. 2009) (Fogel, J.)................................................... 24

*Segen v Rickey*,
2008 WL 590505 (N.D. Cal. Feb. 29, 2008) (Jenkins, J.) ...................................... 20

*Shah v. Cap. One Fin. Corp.*,
2025 WL 714252 (N.D. Cal. Mar. 3, 2025) (Thompson, J.)..................................... 9

*Smith v. YETI Coolers, LLC*,
2024 WL 4539578 (N.D. Cal. Oct. 21, 2024) (Lin, J.)........................................... 19

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016).................................................................................................. 5

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021).................................................................................................. 6

*U.S. v. Ritchie*,
342 F.3d 903 (9th Cir. 2003).................................................................................... 22

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F.Supp.3d 751 (N.D. Cal. 2023) (Corley, J.) ................................................... 17

*Vess Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003).................................................................................. 11


BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) .......... 18

*White v. Soc. Sec. Admin.*,
111 F. Supp. 3d 1041 (N.D. Cal. 2015) (Tigar, J.) .......... 13

*Williams v. Facebook, Inc.*,
498 F. Supp. 3d 1189 (N.D. Cal. 2019) (Seeborg, J.) .......... 11

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) (Alsup, J.) .......... 17

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*,
62 F.4th 517 (9th Cir. 2023) .......... 7

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) (Koh, J.) .......... 12

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 18

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 13, 17

**Statutes**

Cal. Civ. Code § 1798.140 .......... 13

Cal. Penal Code § 631(a) .......... 16, 17, 18

Cal. Penal Code § 637.2(a) .......... 10

Cal. Penal Code § 638.50(b) .......... 19

Cal. Penal Code § 638.51, *et seq.* .......... 19, 20, 21

Cal. Penal Code § 638.52, *et seq.* .......... 20

**Rules**

Fed. R. Civ. P. 9(b) .......... *passim*

Fed. R. Civ. P. 12(b), *et seq.* .......... 5

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

This case is the latest in a series of lawsuits filed by the same firm whose clients test the functionality of companies' voluntary "cookie banners" then assert boilerplate allegations claiming that the firing of any allegedly unwanted cookies amounts to "outright lies" and "egregious privacy violations." Here, Plaintiffs Benjamin Paul de Ayora, Christine Wiley, Mikhail Gershzon, and George Nino ("Plaintiffs") target the "cookie banners" of five quick service restaurant websites allegedly operated by Defendants Inspire Brands, Inc., Arby's Restaurant Group, Inc., Jimmy John's Franchisor SPV, LLC, Sonic Industries Services, LLC, and Dunkin' Brands, Inc. (collectively "Defendants"). Plaintiffs generally allege that upon visiting the Websites[1] certain third-party cookies were placed on their devices despite Plaintiffs selecting options on the cookie banner to disable "Online Advertising" and/or "Performance and Analytics," and/or choosing to "Decline All."

Aside from inflammatory rhetoric and sweeping accusations of deception, however, the Complaint is devoid of substantive allegations. Plaintiffs fail to allege even the most basic facts regarding their interactions with the Websites—such as *when* they visited, *which* pages they viewed, or what (if any) user content, sensitive or not, they input into the Websites when they visited. Moreover, there are no factual assertions explaining how Plaintiffs' routine browsing of Defendants' benign restaurant websites—which offer content like menus, locations, and promotional offers—could plausibly result in the "egregious privacy violations" they claim. Further, the Complaint lacks any detail about the devices or browsers Plaintiffs used, their cookie or privacy settings, whether any cookies were installed or triggered on their devices ***after*** they made their selections, or what "personal information" or "private communications" were even potentially transmitted. In addition, despite including screenshots of various cookie banners that incorporate the full Privacy Policies of Defendants, Plaintiffs offer no explanation as to how any specific statements in any cookie banner

---

[1] The websites at issue in the Complaint are www.arbys.com; www.baskinrobbins.com; www.dunkindonuts.com; www.jimmyjohns.com; www.dunkindonuts.com; and order.sonicdrivein.com (referred herein individually as "Website" and collectively as the "Websites"). Plaintiffs also target Defendant Inspire Brands, Inc.'s corporate website, www.inspirebrands.com, despite no allegations that a single Plaintiff visited that website.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

or Privacy Policy are false or misleading. These deficiencies are fatal under any federal pleading standard. And because the gravamen of the Complaint is that Defendants made "outright lies," Compl. ¶ 2, Plaintiffs must—but do not—meet the heightened specificity required for claims sounding in fraud under Rule 9(b).

The same pleading failures preclude Plaintiffs from establishing a concrete injury, which is required both for Article III standing and as an essential element of each claim. Numerous additional grounds warrant dismissal with prejudice, including: Plaintiffs have no legally protectable privacy interest in the scant data allegedly transmitted via third-party cookies (for privacy claims); none of the data allegedly collected constitutes the "content" of "communications" (for the CIPA wiretap claim); and Plaintiffs' trespass to chattels claim fails as courts have consistently declined to extend this tort to website tracking claims. Lastly, Plaintiffs' facially overbroad class allegations should be dismissed or stricken.

## II. STATEMENT OF ISSUES TO BE DECIDED

1. Do Plaintiffs allege an injury-in-fact to establish Article III or statutory standing?
2. Do Plaintiffs plead with sufficient particularity as required under Rule 9(b)?
3. Do Plaintiffs plausibly allege each cause of action against Defendants?
4. Should Plaintiffs' overbroad class allegations be dismissed or stricken?

## III. BACKGROUND

### A. Defendants Lawfully Use Third-Party Cookies and Sufficiently Notify Visitors About Their Privacy Practices.

Defendant Inspire Brands, Inc. is a multi-brand restaurant company whose portfolio includes Arby's, Baskin-Robbins, Dunkin', Jimmy John's, and Sonic Drive-In restaurants, each of which independently owns and operates its own website. *See* Compl., ¶ 41. The precise features of each Website vary, but in general, they allow visitors to find their nearest restaurant location, view the current and seasonal menu, place online orders, and join rewards programs. Like virtually all companies, Defendants embed first-party and third-party code on its Websites for analytics, website functionality, security, advertising, and marketing purposes. *See id.*, ¶¶ 42-44. This code may deploy additional small text files of code, referred to as "cookies," that website servers may cause

to be placed on an Internet user's browser. Cookies can perform a variety of functions such as helping websites operate effectively and assist website owners to personalize advertisements. Internet browsers (i.e., Chrome, Edge, Safari) and certain privacy focused add-ons (like uBlock Origin or "Incognito Mode") contain settings that users can set to *automatically accept* all or only certain cookies, and also to *automatically delete* the browser's cookie cache at the end of the browsing session, daily, weekly, monthly (or whenever the system is rebooted), or on-demand by the user. And cookies, including those at issue here, have an expiration date, which can vary from as soon as the browsing session ends to several years after the visit.

Starting in January 2023, although ***not required by law***, Defendants voluntarily began the roll out of a cookie management tool—including a "cookie banner" pop-up notification—to promote transparency and offer users a simple, low-burden way to opt out of certain third-party technologies used on their Websites. This was not done uniformly—e.g., the "go live" date for each Websites' cookie banner varies, the updates to code vary from banner to banner, and the cookie consent tool was updated for each Website at various times.[2] The Complaint contains undated screenshots of the cookie banners on the Websites, but Plaintiffs do not allege they took these screenshots during their visit; instead, they were taken at an unknown date and time, by an unidentified "Website user." Compl., ¶¶1, 45. As depicted, Defendants' cookie banners provide a conspicuous link to each respective "Privacy Policy" and a link to Defendants' "Cookie Settings" *Id*. The linked Privacy Policy informs visitors that Defendants use cookies on the Websites, informs them of the categories of information Defendants may collect, how it is collected, how it may be shared, and how it may be used.[3] *See* Compl., ¶¶ 43-44; *see generally* Request for Judicial Notice ("RJN"), Exhs. A-E. Nowhere on the cookie banners or the Privacy Policies do Defendants state that they will not place

[2] For example, a cookie banner was first added to one of the Websites (Arby's) in January 2023, whereas a cookie banner was not added to the Jimmy John's website *until ten months later*. Additionally, Defendants began transitioning to a different cookie consent tool starting in September 2024, however, several of the Websites were not fully switched until December 2024.

[3] The California Consumer Privacy Act ("CCPA") California law does not prohibit companies from placing third-party technology on their websites or prohibit the placement of a cookie by the third-party technology. Rather, California law only provides that a company must give consumers the ability to *opt out* of the collection of data by that third-party technology if it is "sold" or used for the purpose of cross-context behavioral advertising, as defined by the California Consumer Privacy Act.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

(or have not already placed) cookies on a visitor's device, or that it will delete any cookies already placed on a visitor's device. *See id.* And nowhere on the cookie banners do Defendants state that a visitor can decline other categories of cookies, such as essential cookies. *See id.*

**B. Plaintiffs' Limited Allegations Regarding The Websites.**

Plaintiff Ayora alleges he visited four of the Websites: Arby's, Baskin Robbins, Dunkin, and Jimmy John's at some point "during the last four years". Compl. ¶ 106. Notably, a cookie banner did not exist on these Websites for at least half that period. *See supra*, at pg. 3 n 2. Ayora does not provide screenshots of anything he actually saw during his visits and ***only alleges an interaction with the Arby's cookie banner***. *Id.*, ¶¶ 107-112. Ayora does not identify the device(s) or browser(s) he used to visit the Websites, state whether his cookie settings were set to automatically accept some or all cookies and/or automatically delete cookies at some discrete point in time, nor does he allege that he clicked and viewed the "Privacy Policy" conspicuously linked on each Website cookie banner. Other than clicking the cookie banner, Ayora does not describe with specificity any of his actions taken on any of the Websites. *Id.* ¶¶ 107, 108. He does not describe what pages he viewed, how long he spent browsing, if he made a purchase or entered any content such as his name, email, or other information into any field, used a search bar, or sent any messages or communications through any Website. *See generally*, Compl. He does not allege what cookies were allegedly placed or fired after he made his privacy selections on either Website, or what information was collected by which cookie. *Id.* He does not allege that he has suffered *any* harm whatsoever from any alleged misrepresentation, other than to say that he would not have visited the free websites or "would have interacted with the Websites differently." *Id.*, ¶112. He provides no facts alleging any loss in value of any device or of his personal information.

Plaintiff Wiley alleges that she visited three of the Websites—Jimmy John's, Baskin Robbins, and Dunkin—at some point "during the last four years." *See* Compl., ¶ 114. Again, a cookie banner did not exist on the Websites for at least half that period. *See supra*, at pg. 3 n 2. Wiley does not include screenshots of the cookie banners she encountered during those visits and ***only alleges an interaction with the Jimmy John's banner***. *Id.*, ¶¶ 116–121. The remainder of her allegations merely echo those of Plaintiff Ayora and fail to provide comparable details regarding

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

any user content she may have entered, her device and browser settings, browsing sessions, cookies, or any alleged injury. Similarly, Plaintiff Gershzon, who allegedly visited the Baskin Robbins and Arby's Websites (*Id.*, ¶¶ 123–126), and Plaintiff Nino, who claims to have visited all of the Websites (*Id.*, ¶¶ 132–135), do not offer specific facts about their respective visits.

## IV. LEGAL STANDARD

Under Federal Rule 12(b)(1), the Court must dismiss any action that lacks subject matter jurisdiction. At the core of the Court's jurisdictional inquiry is Article III's standing requirement. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-60 (1992). The "'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (quoting *Lujan*, 504 U.S. at 560-61). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* Where, as here, a case is "at the pleading stage, the plaintiff must clearly allege facts demonstrating[] each element." *Ferry v. DF Growth REIT*, 2024 WL 5011949, at *3 (S.D. Cal. Dec. 6, 2024) (cit. omitted).

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that threadbare allegations and conclusory statements are insufficient to withstand scrutiny). Pleadings that contain "no more than conclusions … are not entitled to the assumption of truth" that would be otherwise applicable on a motion to dismiss. *Iqbal*, 556 U.S. at 679. Thus, the Court need not "accept as true… allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

\\

\\

\\

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## V. ARGUMENT

### A. Plaintiffs Fail to Allege Concrete Injury to Establish Article III Standing.

#### *1. Plaintiffs Have Not Alleged any facts about Inspire Brands, Inc.*

As explained above, to establish Article III standing, Plaintiffs must allege facts connecting each defendant to the harm they claim to have suffered. The Complaint, however, contains no factual allegations implicating Inspire Brands, Inc. or its website, www.inspirebrands.com. Plaintiffs do not allege that they visited Inspire Brands, Inc.'s website, interacted with its cookie banner, or that Inspire Brands, Inc. operates any of the other websites at issue. *See generally*, Compl. In short, there are no facts linking Inspire Brands, Inc. to the conduct alleged in the Complaint. Accordingly, Inspire Brands, Inc. must be dismissed. *See Holland-Hewitt v. Allstate Life Ins. Co.*, 343 F.R.D. 154, 171 (E.D. Cal. 2022) ("[A]bsent a showing that she was directly injured by [defendant], Plaintiff does not have the requisite standing to sue [defendant].") (citing *Henry v. Circus Casinos*, 223 F.R.D. 541, 544 (D. Nev. 2004) ("[T]o establish Article III standing in a class action ... for every named defendant there [must] be at least one named plaintiff who can assert a claim directly against that defendant.").

#### *2. Plaintiffs Have Not Alleged a Concrete Privacy Injury.*

To establish Article III standing, Plaintiffs must show they "suffered an injury in fact that is concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021) ("Article III standing requires a concrete injury even in the context of a statutory violation.") (quoting *Spokeo*, 578 U.S. at 341)); *see also Popa v. Microsoft Corp.*, 2025 WL 2448824, at *7 (9th Cir. Aug. 26, 2025) (confirming *Spokeo* and *Transunion* require "a plaintiff to demonstrate more than just a statutory violation when evaluating whether a plaintiff has alleged a concrete injury."). A harm is "concrete" only if the injury bears a "close relationship" to a harm "traditionally" recognized as providing a basis for a lawsuit. TransUnion, 594 U.S. at 426. Naked assertions of harm that is "traditionally recognized as providing a basis for American courts," is not enough. *Id.* at 417. Accordingly, to establish Article III standing, Plaintiffs must "identify the specific personal information" that "implicates a protectable privacy interest" that was then intercepted by or improperly disclosed to a third party. *Byars v. Sterling Jewelers, Inc.*, 2023 WL



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

2996686, at *1 (C.D. Cal. Apr. 5, 2023) (finding lack of Article III standing where "[p]laintiff does not identify any personal or sensitive information she disclosed on the website"); *Popa, supra*, 2025 WL 2448824, at *7; *Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) ("Plaintiff has failed to adequately allege that she suffered any concrete harm that bears a close relationship to the right to control personal information, meaning Plaintiff has failed to establish an injury in fact.").

No such concrete injury exists here. Plaintiffs fail to allege ***any*** facts describing their visits to the Websites—let alone facts showing they suffered any harm. They do not allege *when* they visited the Websites, *what* pages they viewed, *how* they interacted with them, whether they input any information into a Website, or whether *their own* information was even collected by Defendants during those visits. And, Plaintiffs certainly failed to identify any sensitive or personal data that could plausibly be considered "highly offensive to a reasonable person." This omission is dispositive. *See Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 523 (9th Cir. 2023) ("[P]laintiffs must … show that they ***personally have been injured***.") (emph. added); *Popa*, 2025 WL 2448824, at *5 (plaintiff lacked Article III standing because she failed to explain how the tracking of her pet store website interactions "caused her to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law.").

Instead, Plaintiffs heavily rely on broad generic allegations about how certain cookies—Google, Facebook, TikTok, and Microsoft Clarity—allegedly function and what they *might be capable* of collecting. *See Compl.*, ¶¶ 55–98. But these speculative allegations about what the technologies are "enabled" to do or "could" collect fall short of establishing what—if anything—was *actually collected* from Plaintiffs during their visits. Courts routinely reject such vague and conclusory allegations, holding that far more detail than Plaintiffs provide in the Complaint is required to determine whether a protectable privacy interest has been alleged. *See e.g., Hartley v. Urb. Outfitters, Inc.*, 2024 WL 3445004, at *7 (E.D. Pa. July 17, 2024) ("[A]llegations of what a technology is merely capable of collecting do not equate to sufficient allegations of what that technology actually collected."); *Hughes v. Vivint, Inc.*, 2024 WL 5179916, at *4 (C.D. Cal. July

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

12, 2024) (finding no standing where plaintiff did not specify the actual information collected and only alleged what information software "could" capture); *Khamooshi v. Politico LLC*, 2025 WL 1408896, at *3 (N.D. Cal. May 13, 2025) (Kim, M.J.) ("Plaintiffs also allege that Defendant disclosed their 'browser and device data' and 'other identifying information' … but fail to provide any more detail. Those allegations are ***too vague to assert a protectable privacy interest***.") (emph. added); *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) ("Plaintiff's conclusory allegation that she disclosed 'personal information' does not allow the Court to determine whether Plaintiff has a protectable privacy interest in that information.")

Even accepting Plaintiffs' conclusory allegations as true, the mere collection of browsing history, page views, and IP addresses does not constitute a sufficient privacy injury. *See Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1036, 1040 (N.D. Cal. 2019) (Alsup, J.). As the Ninth Circuit recently reaffirmed, simply alleging a statutory privacy violation—without more—is insufficient to establish Article III standing, and after a context specific inquiry, even the collection of *some* user content still may be insufficient. *See Popa*, 2025 WL 2448824 at *6–7. In evaluating a complaint involving privacy claims and Microsoft Clarity—one of the same technologies at issue here—the court held that generalized allegations about the tracking of plaintiff's interactions with a retail website—specifically, a pet store website—were not sufficient to establish harm "remotely similar to the highly offensive interferences or disclosures that were actionable at common law." *Id.* at *5 ("Microsoft's conduct in this case does not implicate a similarly sensitive sphere. At most, Popa alleges that Clarity gathered her pet-store preferences and her street name.").

Just as in *Popa*, Plaintiffs here fail to allege that any "embarrassing, invasive, or otherwise private information" was actually—or even plausibly—collected by the challenged cookies. Given that these are quick-serve restaurant websites, which are arguably even more innocuous than a pet store website, it is unsurprising that Plaintiffs do not (and cannot) allege that they input their own "personal" or "sensitive" information into the Websites. Indeed, their Complaint fails to allege that they input ***any*** content during their visits at all, let alone specific content that could give rise to a concrete privacy injury.

\\

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

3. *Plaintiffs Have Not Alleged a Loss of Value or Control Injury.*

Plaintiffs also summarily state that they have suffered a diminution of value in their information, as well as loss of property right to control the dissemination and use of their information. *See* Compl., ¶ 200. However, Plaintiffs fail to allege any facts showing that *their* information has independent economic value, or that any purported loss of control of such data caused *them* personal harm. Courts have consistently rejected the proposition that a loss of value or control over unpled, nonspecific personal information, without more, can constitute a viable theory of damages. *See e.g.*, *Hubbard v. Google LLC*, 2024 WL 3302066, at *9 (N.D. Cal. July 1, 2024) (Van Keulen, M.J.) (granting motion to dismiss for lack of injury where plaintiffs did not allege facts explaining *how* defendant's collection and use of plaintiffs' information reduced the value of that information). Plaintiffs must plead what economic value the allegedly transmitted information held *to them* and how that value was lost through Defendants' alleged misconduct. *See e.g.*, *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1032 (N.D. Cal. 2012) (Koh, J.) (Plaintiffs failed to allege facts showing how he was "foreclosed from capitalizing on the value of his personal data."). It is irrelevant that Plaintiffs allege Defendants *can* monetize the collected data and maximize revenue, as Plaintiffs do not claim *they* seek (or have sought) to monetize their data. *See Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 603 (N.D. Cal. 2021) (Tigar, J.) ("That the information has external value, but no economic value to plaintiff, cannot serve to establish that plaintiff has personally lost money or property."); *Shah v. Cap. One Fin. Corp.*, 2025 WL 714252, at *7 (N.D. Cal. Mar. 3, 2025) (Thompson, J.) ("[E]ven if a company made money off of the sharing or use of a plaintiff's information, that company's gain of money does not equal a plaintiff's loss of money or property"). Indeed, the Complaint indicates that Plaintiffs had no interest in selling their data, as they allege this information is so private and personal that they are somehow injured by third parties knowing it.

4. *Plaintiffs Have Not Alleged the Reduction of Storage and Value of Their Computing Devices.*

Plaintiffs vaguely allege that they suffered a reduction in the storage capacity and value of their devices, *see* Compl., ¶ 240, yet they fail to identify the devices at issue or describe any actual

loss of storage or value. Nor could they plausibly allege such injury, as third-party cookies are temporary by nature—typically deleted automatically by the user's browser over time, subject to expiration, or removable manually at any time. Indeed, "[n]othing about the ... existence of cookies physically impairs the functioning of Plaintiffs' or other users' computing devices in any way." *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 846 (N.D. Cal. 2024) (Chhabria, J.) (granting motion to dismiss); *see also Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *15 (N.D. Cal. July 14, 2025) (Tigar, J.) (finding substantially similar complaint brought by Plaintiffs' counsel failed to allege damage to computing device based on existence of cookies); *Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, at *14 (N.D. Cal. Aug. 29, 2025) (Orrick, J.) ("Unless Gabrielli can plausibly allege that the non-consensual storage of cookies by Haleon 'impaired the condition, quality, or value of [his computer]" … this claim does not appear plausible.") (int. cit. omitted).

Plaintiffs' assertion that they are no longer willing to visit the Websites due to fear of alleged further interceptions does not constitute a cognizable injury. *See* Compl., ¶ 202. As the court explained in *Doe I*, "the decision not to use one's computer to communicate with a specific entity is not the same as actually being deprived of the ability to use one's computer." 741 F. Supp. 3d at 846; *see also Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1088 (N.D. Cal. 2023) (Orrick, J.) (holding that plaintiffs' reluctance to use their devices to communicate with healthcare providers was insufficient to support a trespass to chattels claim). Mere allegations that the placement of tracking cookies interfered with the intended use of Plaintiffs' devices—without any factual support—are conclusory and inadequate to state an injury.

In sum, because Plaintiffs have not alleged a concrete injury, they have failed to satisfy the injury in fact requirement for Article III standing. Without standing, this Court lacks subject matter jurisdiction and must dismiss the Complaint in its entirety. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) ("lack of Article III standing requires dismissal").[4]

[4] Plaintiffs' failure to allege a cognizable injury not only deprives this Court of subject matter jurisdiction but also defeats each of their claims—every one of which requires a showing of actual harm. *See Marich v. MGM/UA Telecomm, Inc.*, 113 Cal. App. 4th 415, 423 (2003) (an essential element of a claim for invasion of privacy is that "[t]he intrusion caused plaintiff to sustain injury, damage, loss or harm"); *Joseph v. J.J. Mac Intyre Cos., LLC*, 238 F. Supp. 2d 1158, 1169 (N.D. Cal. 2002) (Chen, M.J.) (same for intrusion upon seclusion claim); Cal. Penal Code § 637.2(a) (CIPA statutory standing requires plaintiff has been "injured by" a violation of CIPA); *R.D. Reeder*



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**B. Plaintiffs Fail to Meet the Heightened Pleading Standard of Rule 9(b).**

All of Plaintiffs' claims are subject to—and fail to satisfy—the heightened pleading standard under Rule 9(b) for claims that "sound in fraud." *See* Fed. R. Civ. P. 9(b). As made clear in the opening allegations of the Complaint, Plaintiffs' claims are premised on alleged "outright lies" by Defendants—that Defendants falsely represented Plaintiffs could avoid tracking and data sharing while browsing the Websites, and then deliberately disregarded those preferences. *See, e.g.*, Compl., ¶¶ 2, 5. Where, as here, a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct," the pleaded claims "sound in fraud" and are each subject to the heightened pleading requirements of Rule 9(b). *Vess Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1103–04 (9th Cir. 2003); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (the word "fraud" need not be used); *see also Williams v. Facebook, Inc.*, 498 F. Supp. 3d 1189, 1200–01 (N.D. Cal. 2019) (Seeborg, J.) (applying Rule 9(b) to misrepresentation-based claims including intrusion upon seclusion and invasion of privacy claims).

Plaintiffs fall far short of satisfying Rule 9(b)'s heightened pleading standard, which requires them to "state with particularity the circumstances constituting fraud or mistake, including the who, what, when, where, and how of the misconduct charged." *Colgate v. JUUL Labs, Inc.,* 402 F. Supp. 3d 728, 744 (N.D. Cal. 2019) (Orrick, J.). As discussed above, the Complaint contains no specific factual allegations about *Plaintiffs' own visits* to the Websites or how they personally were defrauded by Defendants. *See* Compl. ¶¶ 45, 50. Rule 9(b) demands more than abstract or illustrative examples—it requires particularized facts showing how each named Plaintiff personally encountered and relied upon the alleged misrepresentations. *See Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 850 (N.D. Cal. 2012) (Rogers, J.) (dismissing fraud-based claims where plaintiff "fail[ed] to provide the particulars of her own experience" reviewing or relying on misrepresentations).

Requiring specificity is particularly relevant and important here, where content and the nature of that content is relevant not just to any standing inquiry but also to the plausibility of the

---

*Lathing Co. v. Cypress Ins. Co.*, 3 Cal. App. 3d 995, 999 (1970) (fraud plaintiff must show "he has sustained some pecuniary damage or injury" as a result of the fraud); *Casillas v. Berkshire Hathaway Homestate Ins. Co.*, 79 Cal. App. 5th 755, 762 (2022) ("[I]njury to the plaintiff's personal property or legal interest therein...*is* an element of the action" for trespass to chattels.").



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

underlying claims. Plaintiffs fail to specify when each individual visited each respective Website. Instead, the Complaint merely alleges that Plaintiffs accessed the Websites at some point within the "past four years." *See* Compl., ¶105 (de Ayora); ¶114 (Wiley); ¶123 (Gershzon); ¶132 (Nino). These vague allegations are especially problematic because the cookie banners were implemented and updated at different times across individual sites, and the Websites' code, content, and features are dynamic rather than fixed. *See supra*, at pg. 3 n 2. Without precise information regarding the timing of Plaintiffs' visits, Defendants are unable to adequately assess or respond to the claims. *See, e.g., Boris v. Wal-Mart Stores, Inc.*, 35 F. Supp. 3d 1163, 1174–75 (C.D. Cal. 2014), aff'd, 649 F. App'x 424 (9th Cir. 2016) (finding Rule 9(b) not satisfied where the plaintiff failed to identify when he viewed Wal-Mart's website or relied on its contents, which were subject to change over time).

### C. Plaintiffs' Common Law Privacy Claims Fail (Counts I and II).

Plaintiffs fail to state either an invasion of privacy or intrusion upon seclusion claim. When claims for invasion of privacy and intrusion upon seclusion are brought together on the same factual basis, courts conduct a combined inquiry because of the similarities in their analyses. *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022) (Breyer, J.). To establish these common law privacy claims, Plaintiffs must sufficiently allege both that: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020); *see also Popa*, 2025 WL 2448824, at *5. As courts have recognized, "[t]he California Constitution and the common law set a high bar for an invasion of privacy claim." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014) (Koh, J.). Plaintiffs fail to meet either prong—and cannot do so—given the innocuous nature of the Websites and their limited interactions.

#### 1. *Plaintiffs cannot allege a reasonable expectation of privacy.*

As outlined above, Plaintiffs cannot establish they had a reasonable expectation of privacy given that they failed to allege that any of ***their own information*** was actually disclosed or collected during their visits. While Plaintiffs do allege that certain cookies were ***capable*** of collecting certain information, which they broadly define as "Private Communications," *see* Compl., ¶39, without any facts connecting the "Private Communications" to Plaintiffs, these generalized allegations are

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

irrelevant. *See Jones v. Peloton Interactive, Inc.* 720 F. Supp. 3d 940, 950–51 (S.D. Cal. 2024) (granting motion to dismiss finding no legally protected privacy interest in the contents of internet-connected chats where plaintiff did not allege she shared sensitive and confidential information and instead vaguely alleged a chat *could* include private or sensitive information).

Moreover, simply labeling information as "private" in the Complaint does not make it so. Plaintiffs must allege facts showing why it would be reasonable to expect complete privacy when visiting public Websites of popular chain restaurants, or how any generalized browsing data could plausibly constitute private communications. *See Popa*, 2025 WL 2448824, at *5 (distinguishing generalized non-sensitive information collected by a pet store website with allegations against websites that could potentially collect sensitive "medical or financial information."); *see also Heeger v. Facebook, Inc.*, 2019 WL 7282477, at *4 (N.D. Cal. Dec. 27, 2019) (Donato, J.) (dismissing privacy claim where plaintiff only made bareboned and vague allegation that Facebook collected his "private" location data). Plaintiffs also claim that the types of information (again not specifically associated with Plaintiffs' visits) are "personal information," as defined under the California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.140. *See* Compl., ¶ 163. But the mere fact that certain categories of information are regulated under the CCPA does not mean that their collection constitutes a privacy violation. *See White v. Soc. Sec. Admin.*, 111 F. Supp. 3d 1041 (N.D. Cal. 2015) (Tigar, J.) (finding disclosure of sensitive social security numbers cannot overcome the high bar for an invasion of privacy claim).

Even if Plaintiffs did allege the collection of their own information (they did not), Courts have routinely held that website visitors have no reasonable expectation of privacy in the very type of browsing information purportedly at issue in this Complaint, most of which is information that an internet user's device "automatically send[s] … to the website's server." *Khamooshi*, 2025 WL 1408896, at *3 (citing *U.S. v. Forester*, 512 F.3d 500, 510 (9th Cir. 2008)); *see also, e.g., In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108–09 (9th Cir. 2014) (finding no reasonable expectation of privacy in the URL of a website or in basic identification information); *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 198 (N.D. Cal. 2019) (Davila, J.) (no reasonable expectation of privacy in geolocation data); *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1206 (S.D. Cal. 2024) (no

invasion of privacy for collection of user's account name, IP address, geographic location, and referral site URL).

2. *Nothing Defendants Did Was Highly Offensive.*

Even assuming Plaintiffs had a reasonable expectation of privacy in their unspecified browsing data, their common law privacy claims still fail because they do not allege facts showing that any such collection was "highly offensive." Courts in this district have consistently held that "data collection and disclosure to third parties that is 'routine commercial behavior' is not a 'highly offensive' intrusion of privacy." *Hammerling*, 615 F. Supp. 3d at 1090 (collecting cases); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (Koh, J.) (finding no egregious breach of social norms ***"[e]ven assuming this information was transmitted without Plaintiffs' knowledge and consent"***) (emph. added); *In re Google Inc. Priv. Pol'y Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (Grewal, J.) (collection of browsing histories "[does] not plausibly rise to the level of intrusion necessary to establish an intrusion claim.").

The data collection practices alleged in the Complaint—even if conducted for advertising purposes—are analogous to a department store tracking foot traffic or a grocery store linking purchase habits to customer phone numbers. Such conduct is routine and not actionable under common law. *See Popa*, 2025 WL 2448824, at *5 (rejecting claims that defendant's monitoring of a *pet store website* was "highly offensive" holding that its "seems most similar to a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales."); *see also Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App .4th 986, 992 (2011) ("Here, the supposed invasion of privacy essentially consisted of [Defendant] obtaining plaintiff's address without his knowledge or permission, and using it to mail him coupons and other advertisements. ***This conduct is not an egregious breach of social norms, but routine commercial behavior***.") (emph. added). Indeed, courts have declined to find an invasion of privacy even where far more sensitive data was allegedly collected and disclosed. *See, e.g., Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1128 (N.D. Cal. 2008) (Conti, J.), *aff'd*, 380 F. App'x 689 (9th Cir. 2010) (holding that alleged disclosure of Social Security numbers "do[es] not constitute an egregious breach" of social norms).

**D. <u>Plaintiffs' CIPA Claims Fails (Count III and IV).</u>**

*1. <u>Plaintiff Ayora and Wiley's CIPA claims are time barred.</u>*

A claim is subject to dismissal as untimely when the running of the statute of limitations is apparent on the face of the complaint. *See Holt v. Cnty. of Orange*, 91 F. 4th 1013, 1017 (9th Cir. 2024). CIPA imposes a one-year statute of limitations, which begins to run at the time of the alleged collection. *See Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 136 (N.D. Cal. 2020) (Koh, J.). Here, Plaintiffs Ayora and Wiley ***concede*** in the Complaint that they became aware of the alleged CIPA violations on October 15, 2023, and July 22, 2023, respectively—when their counsel informed them of the purported privacy breaches. *See* Compl., ¶¶ 141, 147. Despite this knowledge, and while represented by sophisticated counsel, Plaintiffs waited nearly two years to file suit—well beyond the one-year limitations period. Accordingly, their CIPA claims are clearly time-barred and must be dismissed.

Equitable tolling cannot save Plaintiff Ayora and Wiley's CIPA claims. California's equitable tolling doctrine applies "occasionally and in special situations" to "soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having a day in court." *Addison v. State of California*, 21 Cal. 3d 313, 316 (1978). Plaintiffs must plead "facts showing the potential applicability of the equitable tolling doctrine" to survive a motion to dismiss. *Cervantes v. City of San Diego*, 5 F.3d 1273, 1277 (9th Cir. 1993); *see also Hinton v. Pac. Enters.*, 5 F.3d 391, 395 (9th Cir. 1993) ("The burden of alleging facts which would give rise to tolling falls upon the plaintiff."). Namely, they must allege facts establishing three elements: (i) timely notice, (ii) lack of prejudice to the defendant, ***and*** (iii) reasonable and good faith conduct on behalf of the Plaintiffs. *Saint Francis Mem'l Hosp. v. State Dep't of Pub. Health*, 9 Cal. 5th 710, 725 (2020). Plaintiffs have failed to allege sufficient facts demonstrating that equitable tolling applies.

Here, Plaintiff Ayora and Wiley allege that their claims (including CIPA) should be "equitably tolled" because Defendants had notice of the claims based on Plaintiffs' "demand letter" and the filing of arbitration proceedings. *See* Compl., ¶¶ 146, 152. However, Plaintiffs were ***not required*** to ***initiate arbitration*** against Defendants before bringing their claims in court. In fact, Plaintiffs' counsel readily agreed with the Court during the hearing on their Petition to Confirm the

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Arbitration Award that nothing "prohibit[ed them] … from [filing a complaint in federal court]." *See* Declaration of Kamran B. Ahmadian ("Ahmadian Decl."), ¶ 3, Exh. G, July 18, 2025 Hearing Tr. at 5:3-20. Moreover, the issues implicated in the prior arbitrations were not identical to the claims advanced in this litigation—Plaintiffs initiated the arbitrations for the ***sole purpose*** of establishing that the underlying claims were not subject to arbitration. *See id.*, at 26:7-12 ("I mean that's …what was primarily litigated [in arbitration] was whether or not the cookie banner created an agreement to arbitrate[.]"); *see also*, Compl., Exh. D; *see also McDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal. 4th 88, 102 n.2 (2008) (holding that the second element requires that "the facts of the two claims be identical or at least so similar that the defendant's investigation of the first claim will put [it] in a position to fairly defend the second.").

Arbitration was a deliberate litigation tactic by Plaintiffs and their counsel—intended to pressure Defendants into settlement while delaying the filing of their claims in court. Tellingly, even after the arbitrations concluded, Plaintiffs waited ***another two months*** before filing this action. If Plaintiffs were concerned about the statute of limitations, they could—and should—have sought a tolling agreement, as their counsel has done in other matters. *See e.g., Haleon US Inc.*, 2025 WL 2494368, at *3. Plaintiffs have failed to allege any facts demonstrating that they acted reasonably and in good faith—both of which are necessary to support equitable tolling. Thus, equitable tolling is inapplicable, and Plaintiffs' claims are untimely and should be dismissed with prejudice.

*2. Plaintiffs' CIPA §631(a) wiretapping claim fails.*

California Penal Code Section 631(a) prohibits a defendant from engaging in one of three activities: (1) "intentional wiretapping," (2) "willfully attempting to learn the contents or meaning of a communication in transit over a wire," or (3) using or "attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." Section 631(a) also includes a fourth basis for liability, for anyone "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the other three bases for liability." Cal. Penal Code § 631(a). And because CIPA is a penal statute, Plaintiffs must allege scienter. *See Doe I*, 741 F. Supp. 3d at 844 ("CIPA liability only extends to willful or intentional conduct."). Although the Complaint is not entirely clear, Plaintiffs appear to assert their

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

CIPA wiretapping claim under the fourth aiding and abetting prong. *See* Compl., ¶ 194. To establish liability under this theory, Plaintiffs must first plausibly allege that a third party committed an underlying violation of one of the first three clauses of § 631(a). *See Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) (Alsup, J.) ("An aiding-and-abetting defendant's liability is based entirely on whether [a third party] violated Section 631(a) in some way."). Here, Plaintiffs fail to allege a predicate violation under Section 631(a).

***Clause 1:*** Plaintiffs cannot allege a predicate violation of the first clause of § 631(a) because it does not apply to online conduct. *See Gutierrez v. Converse Inc.*, 2025 WL 1895315, at *1 (9th Cir. July 9, 2025) (affirming summary judgment where no evidence the defendant "made an unauthorized connection through a telephone wire")*; Valenzuela v. Keurig Green Mountain, Inc.*, 674 F.Supp.3d 751, 755 (N.D. Cal. 2023) (Corley, J.) (first clause of "Section 631(a)'s plain text does not prohibit the non-telephonic conduct"). While Plaintiffs cite cases in their Complaint purportedly applying Section 631(a) to "new technologies," *see* Compl., ¶ 190, these cases only apply to the ***second*** clause of § 631(a), not the first. *See e.g., Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (Koh, J.).

***Clause 2:*** The second clause of Section 631(a) is violated only where a third party "***reads, or attempts to read, or to learn the contents*** or meaning of any message, report, or communication ***while the same is in transit***." *Jones v. Tonal Sys., Inc.*, 2024 WL 4357558 at *4 (S.D. Cal. Sept. 30, 2024) (emph. added); *see also Lau v. Gen Digit. Inc.*, 2024 WL 1880161, at *1 (N.D. Cal. Apr. 3, 2024) (Lin, J.) (wiretapping concerns "the unauthorized *interception* of *communications*, not any subsequent storage and/or use") (emph. added). Put simply, the alleged third-party eavesdropper must: (1) read or learn the content of communications; (2) while it is *en route* to the intended recipient. *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002); Plaintiffs fail to allege both of these essential elements.

First, Plaintiffs have not alleged that they transmitted ***any communications***, let alone communications with ***contents*** that could have been intercepted. *See Brodsky*, 445 F. Supp. 3d at 127 (Section 631 prohibits only the "unauthorized access of the contents of any communication"). Under CIPA, "contents" refers specifically to the intended message conveyed, not to metadata or

technical details generated during transmission. *See In re Zynga Privacy Litigation*, 750 F.3d 1098, 1106 (9th Cir. 2014). Although Plaintiffs repeatedly assert that the allegedly transmitted data constitutes "Private Communications" and therefore qualifies as "content," *see* Compl., ¶ 142, courts have consistently held that data such as browsing history, page views, and similar information constitutes unprotected record information, and not content. *See Brodsky*, 445 F. Supp. 3d at 127 (holding text messages are content, but "usernames, passwords, and geographic location information are not"); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021) (holding that "keystrokes, mouse clicks, pages viewed, and shipping and billing information ... [and] the date and time of the visit, the duration of the visit, Plaintiff's IP address, her location at the time of the visit, her browser type, and the operating system on her device" are not "content" under 631(a)). Plaintiffs' conclusory claim that "user input data"—such as search queries, names, demographic details, email addresses, locations, or payment information—qualifies as a "communication" under the statute is likewise unpersuasive. Even assuming arguendo that such data could constitute content, Plaintiffs ***fail to allege that they personally entered any such information on any Website***. Thus, their generalized assertions are insufficient. *See* Fed. R. Civ. P. 9(b); *Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024) (dismissing § 631(a) claim where plaintiffs alleged only that their "interactions" were intercepted, without identifying the contents of any communication).

Second, Plaintiffs fail to plausibly allege that any communication was intercepted while "in transit." As the Ninth Circuit has made clear, interception under § 631(a) requires acquisition of the communication ***during transmission***. *See Konop*, 302 F.3d at 878 ("This conclusion is consistent with the ordinary meaning of 'intercept,' which is 'to stop, seize, or interrupt in progress or course before arrival.'"). The Complaint contains no factual allegations explaining how a third party acquired, let alone read or attempted to read, any of Plaintiffs' "communications" during transmission. Instead, Plaintiffs rely on conclusory assertions that an interception occurred. Courts have consistently held that such boilerplate allegations are insufficient. *See Rodriguez v. Google LLC*, 2022 WL 214552, at *1–2 (N.D. Cal. 2022) (Seeborg, C.J.) ("Using the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible Google

is intercepting their data in transit."); *Rosenow v. Facebook, Inc.*, 2020 WL 1984062, at *7 (S.D. Cal. 2020) (dismissing wiretap claim where allegations of interception "in transit" were conclusory); *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (dismissing wiretap claim because the "conclusory allegation that Vizio intercepted their electronic communications 'during transmission'" was only supported by "vague allegations about how Vizio's data collection occurs in real-time.").[5] Because Plaintiffs have failed to allege a viable violation of § 631(a), their derivative aiding and abetting claim against Defendants necessarily fails. *See Ring LLC*, 718 F. Supp. 3d at 1003 (dismissing claim under Section 631(a)'s fourth clause where plaintiff failed to establish "underlying third-party violation" of preceding clauses).

Even if Plaintiffs did plausibly plead the predicate violations of Clause 2 and 3 (they do not), to state an aiding and abetting claim under CIPA Plaintiff must also plausibly allege that Defendants caused Plaintiffs' browsers to store the Third Parties' cookies and to transmit information with "knowledge of the conduct that will violate the statute and a purpose of aiding, agreeing with, or employing the third party to commit those acts." *Smith v. YETI Coolers, LLC*, 2024 WL 4539578, at *4 (N.D. Cal. Oct. 21, 2024) (Lin, J.); *see also Heiting v. Taro Pharms. USA, Inc*., 709 F. Supp. 3d 1007, 1019 (C.D. Cal. 2023) (dismissing CIPA complaint where plaintiff did "not allege facts demonstrating Defendant acted with the requisite knowledge or intent to aid and abet [a third party's] purported CIPA violation."). Plaintiffs do not—and cannot—plausibly allege that Defendants knowingly deployed cookie technologies with the intent to violate CIPA. The technologies at issue—including the cookie management tools used by Defendants—are standard, commercially available solutions developed by well-established companies such as Meta, Google, and Truyo. These tools are designed for legitimate business purposes, including cookie opt-out management, analytics, and advertising—not for unlawful surveillance. Indeed, Plaintiffs themselves acknowledge that the cookies were deployed for standard commercial purposes—namely, advertising and analytics. *See* Compl., ¶ 44. Without factual allegations showing that

[5] Because Plaintiffs fail to allege a predicate violation of the first two clauses, they cannot allege a predicate violation of third clause of § 631(a). *See Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1003 (N.D. Cal. 2024) (Martínez-Olguín, J.) (holding that because Plaintiffs "failed to allege…violation of the first or second clauses, [they have] also failed to plead a violation of the third clause.").



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Defendants intended to intercept communications or assist others in doing so, Plaintiffs' claim cannot survive.

### 3. *Plaintiffs' CIPA §638.51 Pen Register Claim Fails*

It is a violation of CIPA to "install or use a pen register or a trap and trace device without first obtaining a court order." Cal. Penal Code § 638.51(a). CIPA defines a pen register as a "device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, ***but not the contents of a communication***." Cal. Penal Code. § 638.50(b) (emph. added). As an initial matter, Plaintiffs have undermined their own claim by conceding in their Complaint that some of the data collected by cookies includes the "content" of their communications. *See* Compl., ¶ 209. This admission is dispositive. As outlined above, if content is collected, there can be no pen register claim as a matter of law. *See* Cal. Penal Code. § 638.50(b). "While pleading in the alternative is allowed, Plaintiff cannot plead contradictory facts." *See Segen v Rickey*, 2008 WL 590505, at *4 (N.D. Cal. Feb. 29, 2008) (Jenkins, J.). Plaintiffs' pen register theory fails for this reason—and several others.

*First*, the plain language of Section 638.51 makes clear that the online cookie technology at issue cannot qualify as an illegal pen register device. Plaintiffs fail to identify what specific internet component they believe constitutes the pen register—whether it is the code embedded in Defendants' Websites or the cookie placed on Plaintiffs' browsers that performs the data collection. This ambiguity underscores the disconnect between the statutory definition and Plaintiffs' novel theory. Moreover, it is clear that pen registers are limited to devices used by law enforcement to conduct telephonic surveillance by capturing ***outgoing telephone calls***. Indeed, the numerous references to telephones and telephone numbers in Section 638.52 demonstrate that a pen register as used in Section 638.51 apply only to the interception of specific, targeted *telephonic communications*, and not to IP addresses or other data captured by general website advertising technology. *See* Cal. Penal Code § 638.52(d)(1)-(3) (requiring that a court order "authorizing or approving the installation and use of a pen register" shall specify, *inter alia*, the "identity, if known, of the person to whom is leased or in whose name is listed the ***telephone line to which the pen***

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

***register … is to be attached***" and the "number and, if known, physical location of the ***telephone line to which the pen register … device is to be attached***[.]") (emphasis added). To hold otherwise would lead to absurd results where a party could be held liable for using a pen register or trap and trace device without a court order when an order could never be issued because the technology does not involve a telephone line or number. Because the trackers at issue here do not involve telephonic communications and cannot be connected to a telephone line, a court order could not be obtained, and thus, Section 638.51 does not and cannot apply.

*Second*, the legislative history of Section 638.51 further confirms that the California Legislature intended the statute to only apply to telephone-tracking technology. The Legislative Counsel's Digest preceding the bill states that A.B. 929 "would clarify that any location information obtained... is limited to the information that can be determined from the ***telephone number***." *See* RJN, Exh. F, California Assembly Bill No. 929, California 2015-2016 Regular Session, at pg. 1. Given that Sections 638.51 and 638.52 were added in 2015, when website tracking tools were already commonplace, and the Legislature still chose to use language expressly about "telephone lines," Plaintiff cannot plausibly argue that the Legislature was unaware of IP addresses or other Internet communications when it passed the amendment. Moreover, Section 638.51 took its language directly from the Federal Pen Register Act, which applies only to "devices that are attached to a telephone line." *In re Application of U.S. of Am. For an Order Authorizing Use of a Cellular Tel. Digit. Analyzer*, 885 F. Supp. 197, 200 (C.D. Cal. 1995).

*Third*, Plaintiffs' interpretation of CIPA would criminalize commonplace commercial practices in ways the statute does not demand and the Legislature never intended. In *Licea v. Hickory Farms LLC*, California Superior Court Judge Stephen Pfahler held that "public policy strongly disputes Plaintiff's potential interpretation of privacy laws as one rendering every single entity voluntarily visited by a potential plaintiff, thereby providing an IP address for purposes of connecting [to] the website, as a violator." No. 23STCV26148, 2024 WL 1698147, at *4 (L.A. Super. Ct. Mar. 13, 2024). "Such a broad based interpretation would potentially disrupt a large swath of internet commerce without further refinement as [to] the precise basis of liability." *Id.* The *Licea* decision is one among a growing number of courts who are declining to extend CIPA in the

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

novel ways that Plaintiffs attempt here. *See e.g., Aviles v. LiveRamp, Inc.*, No. 24STCV19869, 2025 WL 487196, at *2–3 (L.A. Super. Ct. Jan. 28, 2025) (website beacon was neither a pen register nor a trap-and-trace device). This Court should reject Plaintiffs' invitation to read-in to this criminal statute a *de facto* criminalization of the entire Internet.

Lastly, as discussed above with Plaintiffs' wiretap claims, because CIPA is a criminal statute, Plaintiff must establish scienter. *See Taro Pharms. USA, Inc.*, 709 F. Supp. 3d at 1019. Here, Plaintiffs have not and cannot allege that Defendants had any intent to utilize an illegal pen register device, and that failure dooms their CIPA claim.

**E. <u>Plaintiffs' Common-Law Fraud/Misrepresentation Claim Fails (Count V).</u>**

In California, the elements of a cause of action for fraud are: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 717 (N.D. Cal. 2011) (Ware, C.J.), *aff'd,* 572 F. App'x 494 (9th Cir. 2014) (citing *Engalla v. Permanente Med. Grp.*, 15 Cal. 4th 951, 974 (1997)). As discussed in detail above, Plaintiffs have failed to plead any conduct with respect to *their own* experience, knowledge by Defendants of any errant or unintended collection of data and/or portions of the incorporated Privacy Policies and cookie banners supporting any claimed misrepresentation or fraud by Defendants. *See supra*, Section V.A; *see also U.S. v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003) (a district court may consider certain materials, such as documents incorporated by reference in the complaint, without converting the motion to dismiss into a motion for summary judgment). Nor have Plaintiffs alleged actual reliance, knowledge by Defendants or damage with specificity. *See supra*, Section IV(B)(1). Plaintiffs' "formulaic recitation of the elements" of fraud—knowledge of falsity, intent to defraud, and induced reliance—lack factual support and cannot surmount the *Twombly/Iqbal* standard, let alone the heightened pleading standard under Rule 9(b). *See Twombly*, 550 U.S. at 555; Compl ¶ 165-168. Plaintiffs' fraud claim thus should be dismissed.

**F. <u>Plaintiffs' Unjust Enrichment Claim is Barred as a Matter of Law.</u>**

Plaintiffs' unjust enrichment claim is improper and must be dismissed with prejudice. California law does not recognize unjust enrichment as a standalone cause of action, as it is merely

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

synonymous with restitution. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015); *see also Hooked Media Grp. v. Apple Inc.*, 55 Cal. App. 5th 323, 336 (2020). Even if construed as a quasi-contract claim for restitution—where a benefit is unjustly conferred through mistake, fraud, coercion, or request—Plaintiff must identify the specific benefit received and retained by Defendants. *See California Crane Sch., Inc. v. Google LLC*, 722 F. Supp. 3d 1026, 1042 (N.D. Cal. 2024) (Pitts, J.) (int. quot. omitted). Here, the Complaint fails to allege any such benefit; the Websites are free and publicly accessible. Moreover, restitution cannot be claimed absent a sufficiently pled actionable misrepresentation. *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1120 (N.D. Cal. 2016) (Corley, M.J.). As discussed above, Plaintiff has not alleged fraud with the requisite particularity. "[W]ithout the other claims, plaintiffs' claim for unjust enrichment fails." *Hoey v. Sony Elecs. Inc.*, 515 F. Supp. 2d 1099, 1106 (N.D. Cal. 2007) (Whyte, J.).

### G. <u>Plaintiffs' Trespass to Chattels Claim Should Be Dismissed.</u>

Under California law, a trespass to chattels claim exists only "where an intentional interference with the possession of personal property causes injury." *Best Carpet Values, Inc. v. Google LLC*, 90 F.4th 962, 968 (9th Cir. 2024) (quoting *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1350–51 (2003)). "[I]n order to prevail on a claim for trespass based on accessing a computer system, the plaintiff must establish: (1) defendant intentionally and without authorization interfered with plaintiff's possessory interest in the computer system; and (2) defendant's unauthorized use proximately resulted in damage." *Bui-Ford v. Tesla, Inc.*, 2024 WL 694485, at *7 (N.D. Cal. Feb. 20, 2024) (Tigar, J.) (cit. omitted). A claim for trespass to chattels "does not encompass, and should not be extended to encompass, an electronic communication that neither damages the recipient computer system nor impairs its functioning." *Hamidi*, 30 Cal. 4th at 1347, 1353; *see also In re iPhone*, 844 F. Supp. 2d at 1069 (the sort of harm required for a trespass claim is a "significant reduction in service constituting an interference with the intended functioning of the system.").

Here, Plaintiffs allege that Defendants "intentionally caused third party software code to be stored" on Plaintiffs' devices, which "interfered" with Plaintiffs' ability to use their devices. Compl., ¶ 239. Such conclusory allegations of "intent" are insufficient and nevertheless belied by the allegation that cookies were placed on Plaintiffs' browsers automatically. *Id.*, ¶ 30 ("Defendant

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

failed to prevent cookies from being transmitted…"). Plaintiffs do not otherwise allege what their browser settings were, what cookies attached to *their devices* (something they should know if it truly interfered) and thus cannot sustain a claim that Defendants placed cookies on their device intentionally without authorization. Furthermore, as set forth in Section V.A.4, Plaintiffs fail to allege *any* actual damage or impaired function of their unidentified devices. As Plaintiffs' trespass to chattels claim should be dismissed. *See Motorola Mobility LLC*, 2025 WL 1939957, at *15 (dismissing trespass to chattels claim based on virtually identical allegations); *Haleon US Inc.*, 2025 WL 2494368, at *14 (same).

### H. Class Allegations Should Be Dismissed or Stricken Pursuant to Rule 12(f).

The Supreme Court has acknowledged that in certain cases the viability of a proposed class may be determined at the pleading stage. *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *see, e.g., Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 998 (N.D. Cal. 2009) (Fogel, J.) (granting motion to strike class allegations); *Hospevian v. Apple Inc*., 2009 WL 5069144, at *6 (N.D. Cal. Dec. 17, 2009) (Fogel, J.) (same); *Brazil v. Dell Inc*., 585 F. Supp. 2d 1158, (N.D. Cal. 2008) (Whyte, J.) (same). Where, as here, the Complaint demonstrates on its face that a class action cannot be maintained, courts have granted motions to strike class allegations in order "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sanders*, 672 F. Supp. 2d. at 990–91. While some courts have noted that granting a motion to strike class allegations "is only appropriate where the defendant presents an argument that completely precludes certification of any class, not just the class currently defined in the complaint," *Rice-Sherman v. Big Heart Pet Brands, Inc.*, 2020 WL 1245130, at *15 (N.D. Cal. Mar. 16, 2020) (Orrick, J.), the class allegations in the Complaint here are precisely the type that demand immediate scrutiny at the pleading stage.

Plaintiffs' proposed class—defined as "all persons who browsed the Websites in the State of California after clicking or selecting the 'Decline' button in the popup cookies consent banner from April 29, 2021 to present"—is facially overbroad and inherently unworkable. *See* Compl., ¶ 143. As an initial matter, in an apparent attempt to avoid a fail-safe definition, the class lacks any requirement that cookies continue to fire and transmit user content or private information ***after*** a

user declined consent. This lack of specificity only highlights the individualized inquiries that would overwhelm any attempt at class certification. For example, there is no objective method to determine whether a website visitor was located *in California* at the time of browsing. Additionally, during many of the years covered by the class definition, Defendants did not even employ a cookie banner an Plaintiff's definition presumes incorrectly that all of the Websites functioned in the exact same manner. Cookies are inherently transient and involve a number of user-specific factors—such as browser type, device settings, cache-clearing habits, and interactions with cookie banners—which creates countless variations in user experience. Moreover, as Plaintiffs readily concede, there are arbitration agreements at issue on these Websites meaning some of the website visitors they intend to include in the putative class—particularly those that made a purchase or signed up for a Rewards program—would be bound by those arbitration terms. These differences make it impossible to assess class membership or alleged harm without an individualized analysis. When a non-sensitive website is involved, as is the case here, the collection of arguably highly "sensitive information" would occur only in rare, idiosyncratic scenarios—such as a Kosher Plaintiff ordering a non-Kosher meal at Arby's during Passover.

Put simply, the proposed class could never be proven in any way other than self-serving say-so and individual device examination.[6] Given the overbroad class definition that necessarily warrants highly individualized inquiry, this case presents precisely the circumstances where striking class allegations at the pleading stage is proper.

## VI. CONCLUSION

Plaintiffs' Complaint is riddled with fundamental and incurable defects. Accordingly, Defendants respectfully request that the Court dismiss the Complaint in its entirety with prejudice. In the alternative, Defendants request that Plaintiffs' overbroad class allegations be dismissed and/or stricken.

\\

[6] Cookie banners, including the one employed by Defendants, typically function by deploying a cookie to the user's browser associated with the user's selection choice that is recognized in subsequent visits to the same website, by the same device on the same browser. This cookie can be cleared like any other cookie if a user clears its browser's cache.

Dated: October 1, 2025,

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: */s/Bethany G. Lukitsch*
Bethany G. Lukitsch
Alexis Cruz
Kamran B. Ahmadian

*Attorneys for Defendants*
INSPIRE BRANDS, INC., ARBY'S RESTAURANT GROUP, INC., JIMMY JOHN'S FRANCHISOR SPV, LLC, SONIC INDUSTRIES SERVICES, LLC, and DUNKIN' BRANDS, INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES