**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
Kali R. Backer (State Bar No. 342492)
kali@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

Patrick J. Branson (*pro hac vice*)
patrick@gutridesafier.com
305 Broadway, 7th Floor
New York, NY 10007
Telephone: 415-639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN PAUL DE AYORA, CHRISTINE WILEY, MIKHAIL GERSHZON, AND GEORGE NINO as individuals, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>INSPIRE BRANDS, INC., ARBY'S RESTAURANT GROUP, INC., JIMMY JOHN'S FRANCHISOR SPV, LLC, SONIC INDUSTRIES SERVICES, LLC, DUNKIN' BRANDS, INC.,<br><br>Defendants. | Case No. 3:25-CV-3645-AGT<br><br>PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT<br><br>Hon. Alex G. Tse<br><br>Hearing Date: December 5, 2025<br>Hearing Time: 10:00 AM<br>Courtroom: Courtroom A |

**TABLE OF CONTENTS**


I. INTRODUCTION ....... 1

II. FACTUAL BACKGROUND ....... 3

A. Defendants Falsely Told Plaintiffs and Other Users That They Could "Decline" Cookies on the Websites. ....... 3

B. Defendants Intentionally Designed the Websites and Cookie Banners. ....... 5

C. Defendants Intentionally Aided the Third Parties' Wrongful Collection of Plaintiffs' and Class Members' Data, By Which Both Defendants and the Third Parties Profited. ....... 6

III. ARGUMENT ....... 7

A. Plaintiffs Plead a Concrete Injury-in-fact, Demonstrating Article III Standing. ....... 7

B. Plaintiffs' Fraud and Misrepresentation Claims Satisfy Rule 9(b). ....... 11

C. Plaintiffs Ayora and Wiley's CIPA Claims are not Time Barred ....... 12

D. Defendants' 12(b)(6) Arguments Fail. ....... 13

1. Plaintiffs have adequately pled privacy and intrusion upon seclusion claims. ....... 13

2. Plaintiffs state a wiretapping claim. ....... 15

3. Plaintiffs properly plead a "pen register" claim under section 638.51. ....... 18

E. Plaintiff Adequately Alleges Fraud/Misrepresentation Claims. ....... 20

F. Plaintiffs' Unjust Enrichment Claim Properly Pled. ....... 21

G. Plaintiffs Sufficiently Plead Trespass to Chattels. ....... 21

H. Plaintiffs' Class Allegations Should not be Stricken ....... 23

I. Plaintiffs Request Leave to Amend If Necessary. ....... 25

IV. CONCLUSION ....... 25

## TABLE OF AUTHORITIES

**Cases**

*A.B. v. Google LLC*,
737 F. Supp. 3d 869 (N.D. Cal. 2024) ........ 15

*A.J. v. LMND Med. Grp.*,
No. 24-cv-03288-RFL, 2024 U.S. Dist. LEXIS 194480 (N.D. Cal. Oct. 25, 2024)........ 26

*Abselet v. Hudson Labor Sols., Inc.*,
804 F. App'x 448 (9th Cir. 2020) ........ 15

*ASARCO, LLC v. Union Pac. R.R. Co.*,
765 F.3d 999 (9th Cir. 2014) ........ 14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........ 28

*Blake v. Dierdorff*,
856 F.2d at 1369 (9th Cir. 1988)........ 25

*Boddie v. Signature Flight Support Corp.*,
No. 19-cv-03044-DMR, 2019 U.S. Dist. LEXIS 130858 (N.D. Aug. 5, 2019) ........ 28, 29

*Briskin v. Shopify, Inc.*,
135 F.4th 739 (9th Cir. 2025) ........ 12

*Brown v. Natures Path Foods, Inc.*,
No. 21-cv-05132-HSG, 2022 U.S. Dist. LEXIS 42760 (N.D. Cal. Mar. 10, 2022) ........ 13, 14

*Bruton v. Gerber Prod. Co.*,
703 F. App'x 468 (9th Cir. 2017) ........ 26

*Byars v. Tire*,
654 F. Supp. 3d 1020 (C.D. Cal. Feb. 3, 2023) ........ 21

*Cholakyan v. Mercedes-Benz USA, LLC*,
796 F. Supp. 2d 1220 (C.D. Cal. 2011) ........ 30

*DeSoto v. Yellow Freight Sys.*,
957 F.2d 655 (9th Cir. 1992) ........ 32

*Doe v. Amgen, Inc.*,
No. 2:23cv7448-MCS-SSC, 2024 U.S. Dist. LEXIS 144579 (C.D. Cal. Aug. 13, 2024)...... 19, 20

*eBay, Inc. v. Bidder's Edge, Inc.*,
100 F. Supp. 2d 1058 (N.D. Cal. 2000) ........ 27

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ........ 7

*Fields v. Wise Media, LLC*,
No. 12-CV-05160 WHA, 2013 U.S. Dist. LEXIS 136914, 2013 WL 5340490 (N.D. Cal. Sept. 24, 2013) ........ 27

*Frenzel v. Aliphcom*,
No. 14-cv-03587-WHO, 2015 U.S. Dist. LEXIS 88751 (N.D. Cal. July 7, 2015)........ 31

*Gabrielli v. Haleon US Inc.*,
No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503 (N.D. Cal. Aug. 29, 2025) ........ passim

*Gabrielli v. Motorola Mobility LLC*,
No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836 (N.D. Cal. July 14, 2025)........ passim

*Gamez v. Toyota Motor Sales, U.S.A., Inc.*,
No. 2:23-cv-01464-DAD-KJN, 2024 U.S. Dist. LEXIS 81246 (E.D. Cal. May 3, 2024) ........... 32

*Graf v. Zynga Game Network, Inc. (In re Zynga Privacy Litig.)*,
750 F.3d 1098 (9th Cir. 2014) ........................................................................................ 21

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023)................................................................ 24

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......................................................................... 16

*Harper v. Charter Communs., LLC*,
No. 2:19-cv-00902 WBS DMC, 2020 U.S. Dist. LEXIS 33054 (E.D. Cal. Feb. 25, 2020)......... 29

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) ................................................................................................... 16

*Hill v. Nat'l Collegiate Athletic Ass'n*,
865 P.2d 633 (Cal. 1994) ............................................................................................... 17

*In re Arris Cable Modem Consumer Litig.*,
327 F.R.D. 334 (N.D. Cal. 2018)..................................................................................... 11

*In re Facebook Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ................................................................................... passim

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 784 (N.D. Cal. 2019) ............................................................... 10, 18, 26

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......................................................................... 27

*In re Meta Pixel Tax Filing Cases*,
No. 22-cv-07557-PCP, 2025 U.S. Dist. LEXIS 152615 (N.D. Cal. Aug. 6, 2025)............... 24, 25

*In re NVIDIA GPU Litig.*,
No. C 08-04312 JW, 2009 U.S. Dist. LEXIS 108500 (N.D. Cal. Nov. 19, 2009) ...................... 30

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) .......................................................................... 23

*In re Wal-Mart Stores, Inc.*,
505 F. Supp. 2d 609 (N.D. Cal. 2007) ............................................................................ 28

*Intel Corp. v. Hamidi*,
30 Cal.4th 1342 (2003) ................................................................................................... 27

*Jackson v. Linkedin Corp.*,
744 F. Supp. 3d 986 (N.D. Cal. 2024) ............................................................................ 22

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) ......................................................................... 8, 21

*Jessop v. Giggle, Inc.*,
2015 U.S. Dist. LEXIS 181277, 2015 WL 11622421 (S.D. Cal. Feb. 2, 2015).......................... 32

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ............................................................................ 26

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ........................................................................................ 13

*Khamooshi v. Politico LLC*,
2025 U.S. Dist. LEXIS 92788 (N.D. Cal. May 13, 2025) ..................................................... 9

*Kirola v. City & County of San Francisco*,
860 F.3d 1164 (9th Cir. 2017) .......... 11

*Kohler v. Flava Enters.*,
No. 10-CV-0730 IEG (NLS), 2010 U.S. Dist. LEXIS 84033 (S.D. Cal. Aug. 13, 2010) .......... 14

*Kotlarsz v. Integrity Vehicle Servs., Inc.*,
No. 8:24-cv-00569-FWS-JDE, 2024 U.S. Dist. LEXIS 213565 (C.D. Cal. Sep. 3, 2024) .......... 19

*Lasko v. Caliber Home Loans*,
2022 U.S. App. LEXIS 6215, 2022 WL 728820 (9th Cir. Mar. 10, 2022) .......... 14

*Mason v. Spring EQ LLC*,
No. 5:24-cv-01833 MWC (AGRx), 2025 U.S. Dist. LEXIS 31895 (C.D. Cal. Jan. 22, 2025) .......... 29

*McDonald v. Antelope Valley Cmty. Coll. Dist.*,
45 Cal. 4th 88 (2008) .......... 15

*Microsoft Corp. v. Baker*,
582 U.S. 23 (2017) .......... 29

*Mirmalek v. Los Angeles Times Commc'ns LLC*,
No. 24-CV-01797-CRB, 2024 U.S. Dist. LEXIS 227378 (N.D. Cal. Dec. 12, 2024) .......... 24

*Neubronner v. Milken*,
6 F.3d 666 (9th Cir. 1993) .......... 14

*Opperman v. Path, Inc.*,
205 F. Supp. 3d 1064 (N.D. Cal. 2016) .......... 18

*Ortiz v. Amazon.com LLC*,
No. 17-cv-03820-JSW, 2017 WL 11093812 (N.D. Cal. Oct. 10, 2017) .......... 30

*Paulk v. Student Transp. of Am., Inc.*,
No. CV 24-3436-JFW(JPRx), 2024 U.S. Dist. LEXIS 216594 (C.D. Cal. July 25, 2024) .......... 29

*Popa v. Microsoft Corporation*,
No. 24-14, 2025 U.S. App. LEXIS 21946 (9th Cir. Aug. 26, 2025) .......... 9

*Revitch v. New Moosejaw, LLC*,
No. 18-cv-06827-VC, 2019 U.S. Dist. LEXIS 186955 (N.D. Cal. Oct. 23, 2019) .......... 18, 19

*Rice-Sherman v. Big Heart Pet Brands, Inc.*,
No. 19-cv-03613-WHO, 2020 U.S. Dist. LEXIS 46197 (N.D. Cal. Mar. 16, 2020) .......... 3, 31

*Rodas v. Monetary Mgmt. of Cal.*,
No. 2:14-cv-01389-TLN-AC, 2015 U.S. Dist. LEXIS 39579 (E.D. Cal. Mar. 26, 2015) .......... 30

*Rodriguez v. Ford Motor Co.*,
No. 3:23-cv-00598, 2024 U.S. Dist. LEXIS 218685 (S.D. Cal. Dec. 3, 2024) .......... 19

*Rodriguez v. Google LLC*,
No. 20-cv-04688-RS, 2021 U.S. Dist. LEXIS 98074 (N.D. Cal. May 21, 2021) .......... 18

*Rodriguez v. Google LLC*,
No. 20-cv-04688-RS, 2022 U.S. Dist. LEXIS 13476 (N.D. Cal. Jan. 25, 2022) .......... 22

*Rosenow v. Facebook, Inc.*,
No. 19-cv-1297-WQH-MDD, 2020 U.S. Dist. LEXIS 73513 (S.D. Cal. Apr. 27, 2020) .......... 22

*SBCW Consulting Inc. v. TSYS Merch. Sols., LLC*,
No. 2:24-cv-03193-SB-AGR, 2024 U.S. Dist. LEXIS 195586 (C.D. Cal. Oct. 28, 2024) .......... 29

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
806 F.2d 1393 (9th Cir. 1986) .......... 32

*Shah v. Capital One Fin. Corp.*,
No. 24-cv-05985-TLT, 2025 U.S. Dist. LEXIS 42677 (N.D. Cal. Mar. 3, 2025) ........................ 26

*Shahnaz Zarif v. Hwareh.com, Inc.*,
2025 U.S. Dist. LEXIS 26519 (S.D. Cal Feb 12, 2025) ........................ 20

*Six v. IQ Data Int'l, Inc.*,
129 F.4th 630 (9th Cir. 2025) ........................ 7

*Smith v. Google, LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024) ........................ 12

*Smith v. Yeti Coolers, LLC*,
No. 24-cv-01703-RFL, 2024 U.S. Dist. LEXIS 194481 (N.D. Cal. Oct. 21, 2024) ........................ 20

*Sony Biotechnology, Inc. v. Chipman Logistics & Relocation*,
No. 17-CV-1292-AJB-WVG, 2017 U.S. Dist. LEXIS 134440 (S.D. Cal. Aug. 22, 2017) .......... 16

*Supermail Cargo, Inc. v. U.S.*,
68 F.3d at 1206 (9th Cir. 1995) ........................ 15

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........................ 2, 7

*Valentine v. Crocs*,
2023 U.S. Dist. LEXIS 245728 (N. D. Cal. April 26, 2023); ........................ 29

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ........................ 22

*Vinole v. Countrywide Home Loans, Inc.*,
571 F.3d 935 (9th Cir. 2009) ........................ 30

*Webb v. Circle K Stores Inc.*,
2022 U.S. Dist. LEXIS 200682, 2022 WL 16649821 (D. Ariz. Nov. 3, 2022) ........................ 32

*Williams v. Facebook, Inc.*,
384 F. Supp. 3d 1043 (N.D. Cal. 2018) ........................ 18

*Yastrab v. Apple Inc.*,
No. 5:14-cv-01974-EJD, 2015 U.S. Dist. LEXIS 37119 (N.D. Cal. Mar. 23, 2015) ........................ 30

**Statutes**

Cal. Penal Code § 638.50(b) ........................ 19

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................ 2

Fed. R. Civ. P. 12(f) ........................ 23

Fed. R. Civ. P. 9(b) ........................ 11, 20

## I. INTRODUCTION

As companies develop increasingly invasive and integrated means of extracting and aggregating consumer data, consumers often rely on website's representations that they may browse free from the watchful eyes of third parties. In this case, the privacy that Defendants promised to visitors of their websites was false. When Plaintiffs accessed Defendants' Websites,[1] they were presented with a cookie consent banner that states that the Websites use cookies but expressly gives users the option to control how they are tracked and how their personal data is used. Defendants assure visitors that they can choose to "Decline" all cookies—as shown in the following exemplar screenshot from the Arby's Website:




Clicking "Decline," however, meant nothing. In truth, Defendants' Websites unlawfully and intentionally allowed third parties to place non-essential tracking cookies on the devices of Plaintiffs and every other visitor to its websites, before, and ***even after*** Plaintiffs and many users explicitly declined third-party tracking cookies. As a result, Defendants enabled third parties to track and record Plaintiffs' and other visitors' "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data" against their consent. Class Action Complaint, ECF 35 ("CAC" or "Complaint") ¶ 3.

Plaintiffs brought the instant action seeking to hold Defendants accountable for this outrageous invasion of their privacy and to stop Defendants from engaging in this unlawful conduct. Defendants now move to dismiss, claiming that Plaintiffs lack standing, have not adequately alleged their claims, and that certain Plaintiffs' claims are time-barred. *See, generally,* Motion to Dismiss, ECF 45 ("Motion"). Two other courts in this District have already denied in large part motions to dismiss

[1] www.arbys.com, or the "Arby's Website"; www.inspirebrands.com, or the "Inspire Brands Website"; www.baskinrobbins.com, or the "Baskin Robbins Website"; www.dunkindonuts.com, or the "Dunkin Website"; www.jimmyjohns.com, or the "Jimmy John's Website;" and order.sonicdrivein.com, or the "Sonic Drive-In Website," each a "Website" and, collectively, the "Websites")

based on similar claims and arguments. *See, generally, Gabrielli v. Haleon US Inc.*, No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503, at *15 (N.D. Cal. Aug. 29, 2025); *Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836, at *16–17 (N.D. Cal. July 14, 2025). The gravamen of Defendants' arguments is that Plaintiffs merely allege how the Websites work as a general matter but have not alleged that cookies were placed on Plaintiffs' devices or that their data and communications were transferred to third parties. Mot. at 1–2. This argument is illusory. The Complaint, of course, alleges that Defendants wrongfully permitted third parties to place cookies on Plaintiffs' devices and browsers and that, as a result, Plaintiffs' private information was transmitted to third parties. Plaintiffs support their allegations with a fulsome description of how the Websites operated to dupe consumers into a false sense of security and then proceeded to allow third parties to attach cookies to Plaintiffs' and Class members' devices and browsers and transmit their private communications to those third parties without Plaintiffs' and Class members' consent. Turning logic on its head, Defendants argue that a description of how the Websites functioned for all users somehow cuts *against* Plaintiffs' allegations regarding their personal experiences. This is simply wrong.

First, Plaintiffs have Article III standing because they plead a concrete injury—an invasion of privacy. Common law has long recognized invasions of privacy as cognizable injuries. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). Here, the tracking cookies, which allowed third parties to discern copious personal information from Plaintiffs, establishes a concrete injury sufficient to show Plaintiffs' Article III standing.

Second, Defendants' 12(b)(6) arguments mostly rely on Defendants' misguided reasoning that Plaintiffs' allegations regarding how the Websites functioned for *all* users somehow undermines Plaintiffs' allegations regarding their own experiences. But Defendants cannot ignore the well pleaded facts—that Defendants told Plaintiffs they could "Decline" cookies, that Defendants lied and permitted those cookies anyway, and that, as a result, Plaintiffs' (and those similarly situated) private communications were transmitted to third parties. These central facts describe a pervasive, offensive invasion of all users' privacy implemented using misrepresentations intended to lull users into a false sense of privacy.

Third, Plaintiffs Ayora and Wiley's CIPA claims are equitably tolled because they informed Defendants of their claims and filed arbitration proceedings against Defendants. Defendants have, accordingly, had notice of the claims and have suffered no prejudice as a result.

Finally, Defendants ask this Court to strike Plaintiffs' class allegations based on several factual arguments not present in the Complaint as well as the bald assertion that the proposed class is overbroad. Defendants' arguments, however, are belied by the very case they cite. *See Rice-Sherman v. Big Heart Pet Brands, Inc.*, No. 19-cv-03613-WHO, 2020 U.S. Dist. LEXIS 46197, at *42 (N.D. Cal. Mar. 16, 2020) ("[s]triking class allegations at the pleading stage is only appropriate where the defendant presents an argument that completely precludes certification of *any class*, not just the class currently defined in the complaint . . . because the shape and form of a class action evolves only through the process of discovery." (cleaned up)).

In sum, Defendants' arguments are based not on the facts alleged in the Complaint nor the law applicable to this case—but on Defendants' selective reading of both. The Court should deny the motion in its entirety.

## II. FACTUAL BACKGROUND

### A. Defendants Falsely Told Plaintiffs and Other Users That They Could "Decline" Cookies on the Websites.

Like many companies, Defendants Inspire Brands, Inc., Arby's Restaurant Group, Inc., Jimmy John's Franchisor SPV, LLC, Sonic Industries Services, LLC, and Dunkin' Brands, Inc. (collectively, "Defendants") designed their Websites to include resources and programming scripts from third parties that enable those parties to place cookies—small text files sent by a website server to a user's web browser and stored locally on the user's device—and other similar tracking technologies on visitors' browsers and devices to transmit cookies along with user data. CAC ¶ 2. Defendants, however, offer consumers a choice to browse *without* having such cookies and other tracking technologies placed on their browsers, allowing consumers to use the Websites without being tracked, followed, and targeted by third party data brokers or advertisers. *Id.*

When consumers visit the Websites, Defendants display to them a popup cookie consent banner. *Id.* ¶ 1. Defendants' cookie banners state that the Websites use cookies but expressly give users the option to control how they are tracked and how their personal data is used. *Id.* Defendants

assure visitors that they may choose to "Decline" cookies as shown in the example screenshot below.




The cookie consent banner states "We use cookies on our website. By clicking Accept you consent to the use of all cookies. You can access our Privacy Policy and change your preferences by clicking the Cookie Settings link."[2] *Id*. If visited, the "Privacy Policy" discloses the types of cookies used by the Websites, as well as a description of the types of data collected using those cookies. *Id*. ¶¶ 43–44. The banners then purport to provide users the opportunity to "Decline" cookies. *Id*. ¶ 45.

The representation that users could "Decline" cookies was false. Instead, even when users clicked "Decline" cookies, Defendants nevertheless permitted third parties to place on Plaintiffs' and Class members' devices and browsers the very cookies they had declined. *Id*. ¶ 48. Once placed, these cookies allowed Plaintiffs' and Class members' data to be transmitted to third parties in the manner and for purposes alleged in the Complaint and as described below—including for purposes Defendants described in their Privacy Policies. *Id*. ¶ 43–44, 48.

Even after users elect to "Decline" cookies, Defendants surreptitiously enabled an enormous number of third parties—including Google LLC (DoubleClick and Google Analytics), Meta Platforms, Inc. (Facebook), ByteDance Ltd. (TikTok), Microsoft Corporation (Microsoft Clarity), Snap Inc. (SnapChat), and Pinterest, Inc. (Pinterest), and many more (the "Third Parties")—to place and/or transmit tracking cookies on the Websites. *Id*. ¶ 2.

The cookies Defendants wrongfully permitted the Third Parties to place on Plaintiffs' devices and browsers—despite Plaintiffs' express rejection and despite Defendants' express representation to the contrary—permitted the Third Parties to track and collect data in real time regarding Plaintiffs' behaviors and communications, including their browsing history, IP addresses, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data (the "Private Communications"). *Id*. ¶¶ 3, 39, 49.

[2] As substantially identical statement appears on the cookie banner for each Website. CAC ¶ 45.

In particular, both Plaintiffs accessed and browsed the Websites on one or more occasions. *Id.* ¶¶ 105, 114, 123, 132. Even before the popup cookie banner appeared on their screens, Defendants programmed the Websites to enable the Third Parties to place cookies and tracking technologies on their devices and transmit their data to Third Parties without Plaintiffs' knowledge. *Id.* ¶¶ 110, 119, 128, 137. Then, after Plaintiffs clicked "Decline" cookies, they browsed the Websites in reliance on the promises and representations Defendants made in the cookie banners. *Id.* ¶¶ 111, 120, 129, 138. Despite Plaintiffs' clear declination of cookies, Defendants continued to permit the placement of cookies and the transmission of their data to the Third Parties. *Id.* This allowed the Third Parties to track and collect Plaintiffs' Private Communications and data as they browsed the Websites. *Id.*; *see also* CAC ¶¶ 3, 39, 49 (describing user data and communications transmitted by the third party cookies Defendants permitted to be placed when users browsed the Websites).

**B. Defendants Intentionally Designed the Websites and Cookie Banners.**

Defendants voluntarily—i.e. intentionally—integrated "third-party resources" from the Third Parties into the Websites' programming. *Id.* ¶¶ 35, 42. Defendants chose to install or integrate the Websites with resources from the Third Parties that, among other things, use cookies. *Id.* ¶ 42. Thus, when Plaintiffs and other Class members visited the Websites, both first-party cookies and third-party cookies were placed on their devices and/or transmitted to Defendants and the Third Parties. *Id.* Defendants intentionally incorporated into the Websites the software code that caused placement of the cookies. *Id.* Defendants control the software code of the Websites—meaning they have complete control over whether first-party and third-party cookies are placed on users' devices and/or transmitted to third parties. *Id.* During the time period in which Plaintiffs accessed the Websites, the Websites—which, again, Defendants developed, maintain, and control—permitted the Third Parties to place, store, and/or transmit third-party tracking cookies on Plaintiffs' devices and browsers. *Id.* ¶ 49.

The Websites allow visitors to browse and purchase Defendants' products and services. As they interact with the Websites (e.g., by entering data into forms, clicking on links, and making selections), Website users communicate Private Communications to Defendants. *Id.* ¶ 53. The third-party cookies stored on and/or loaded from users' devices when they interact with the Websites are transmitted to the Third Parties, enabling them to, in real time, surreptitiously track and collect a

Website users' Private Communications. *Id*. ¶ 54. Third-party cookies include an identifier that allows the third-party to recognize and differentiate individual users across websites (including the Website) and across multiple browsing sessions. *Id*. ¶ 53.

### C. Defendants Intentionally Aided the Third Parties' Wrongful Collection of Plaintiffs' and Class Members' Data, By Which Both Defendants and the Third Parties Profited.

Defendants' use of the third-party resources on the Websites is done pursuant to agreements between Defendants and the Third Parties. *Id.* ¶ 35. Defendants intentionally designed the Websites with code that allows Third Parties to place cookies and send data directly to themselves—allowing the Third Parties to, simultaneous with Plaintiffs' activity on the Websites, analyze and aggregate the wrongfully collected data for their own purposes and financial gain. *Id*. ¶ 4.

Third-party cookies are used for a variety of purposes, including (i) analytics (e.g., tracking and analyzing visitor behavior, user engagement, and effectiveness of marketing campaigns); (ii) personalization (e.g., remembering a user's browsing history and purchase preferences to enable product recommendations); (iii) advertising/targeting (e.g., delivering targeted advertisements based on an aggregated profile of the user's behavior, preferences, and demographics); and (iv) social media integration (i.e. sharing users' activities with social media platforms). *Id*. ¶ 40. Ultimately, third-party cookies are utilized to boost website performance and revenue through the collection, utilization, and dissemination of user data. *Id*.

Defendants' Privacy Policies state that they use cookies to enhance its sales and marketing. For example, Arby's Privacy Policy states: "We use tracking tools for many reasons, including to engage in interest-based advertising. Interest-based advertising or 'online behavioral advertising' is serving advertising content to you based on information gathered from you over time across multiple sites and other platforms." *Id*. ¶ 44. It further states that "We work with third parties who help gather this information. These third parties might link your name or email address to other information they collect. That might include past purchases made offline or online. Or, it might include online usage information." *Id*. Each Defendant makes similar disclosures in their respective Privacy Policies. CAC ¶ 43 n.2.

## III. ARGUMENT

### A. Plaintiffs Plead a Concrete Injury-in-fact, Demonstrating Article III Standing.

Invasions of privacy have long been recognized at common-law as concrete injuries. *TransUnion*, 594 U.S. at 425; *see also Six v. IQ Data Int'l, Inc.*, 129 F.4th 630 (9th Cir. 2025) (quoting *TransUnion*). This right to privacy "encompass[es] the individual's control of information concerning his or her person." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) (citation omitted). As a result, the Ninth Circuit has held specifically that violations of CIPA suffice to confer Article III standing. *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 598–99 (9th Cir. 2020) ("[T]he legislative history and statutory text demonstrate that . . . the California legislature intended to protect . . . historical privacy rights when [it] passed CIPA.").

Plaintiffs allege that Defendants' invaded their privacy—causing them a concrete injury—when Defendants intentionally permitted the Third Parties to place cookies on Plaintiffs' browsers and devices in order to "collect, track, and compile users' Private Communications, including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers," and more. CAC ¶¶ 3, 39–42, 49, 51–54, 111, 120, 128, 138.

In *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 602–03 the Ninth Circuit held that users had "standing to bring claims for invasion of privacy, intrusion upon seclusion, as well as claims under the Wiretap Act and CIPA, because they adequately alleged privacy harms."
The Ninth Circuit found that "[v]iolations of the right to privacy have long been actionable at common law," and that "[a] right to privacy 'encompass[es] the individual's control of information concerning his or her person.'" *Id*. at 598. The statutory claims – which are the same as those brought here – simply codify the right to privacy and give rise to a concrete harm. *Id*.

For this reason, the two courts to address claims nearly identical to those here (i.e., they allege that users' privacy was violated when a cookie banner falsely asserted that users could reject cookies) held that the plaintiffs had standing under Article III. *See Motorola*, No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836, at *16–17 (considering substantially similar allegations and holding that "[plaintiff's] allegations that Motorola deprived him control of personal information regarding his

digital activity and profile are sufficient to establish a concrete injury to his right to privacy and confer standing."); *Haleon*, No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503, at *15 (same, citing *Motorola*). Because Plaintiff alleges an invasion of privacy, which suffices for Article III, Defendants' other arguments regarding the loss of value in their data and reduction of storage and value of their computing devices are completely irrelevant. *See James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 955–56 (N.D. Cal. 2023) (finding sufficient specificity where Plaintiff alleged that Oracle intercepted, e.g., information about the webpages they viewed and searches they conducted because "[t]his makes it unlikely that Plaintiffs are simply implicating record information."); *see id.* ("Moreover . . . Plaintiffs have alleged that the collection of information is not anonymized. At the very least, Plaintiffs have made sufficient allegations to create a question of fact as to whether there is sufficiently personal information to support standing.").

Defendants rely on *Popa v. Microsoft Corporation*, No. 24-14, 2025 U.S. App. LEXIS 21946, at *24–25 (9th Cir. Aug. 26, 2025) to argue that it held that "generalized allegations about the tracking of plaintiff's interactions with a retail website . . . were not sufficient to establish harm." Mot. at 8. In *Haleon*, Judge Orrick considered and rejected the exact argument Defendants make here.[3]. *Haleon*, 2025 U.S. Dist. LEXIS 169503, at *18–19. There, the court found that the tracking technologies in at issue in *Popa* "are . . . distinguishable, both in users' interactions with them and their capabilities" from those at issue here. *Id.* at *20. For example "Popa never purported to have expressly 'reject[ed]' the tracking technology at issue." *Id.* And while "the session-replay technology [in *Popa*] was not alleged to track anything beyond her interactions with the website she chose to visit, and the information gathered was only alleged to be used by the owner of that website," the plaintiff in *Haleon*—like Plaintiffs here—"alleges that the cookies . . . store[d] on users' devices allow third

[3] Similarly, *Khamooshi* is distinguishable because none of the plaintiffs there alleged that they "rejected" cookies; they merely contended that they did not consent to the disclosure of their IP addresses. *Khamooshi v. Politico LLC*, 2025 U.S. Dist. LEXIS 92788, at *7–8 (N.D. Cal. May 13, 2025). The court rejected the notion that the plaintiffs had any privacy interest in information they "voluntarily" handed over, unlike here, where Plaintiffs believed based on Defendants' *own representations* that they were not handing any data over to Third-Parties. *Id.* Plaintiffs here, however, have alleged that their information was taken *involuntarily* after Defendants expressly promised not to do so. *See Haleon*, 2025 U.S. Dist. LEXIS 169503, at *16 (distinguishing *Khamooshi*).This is a distinction with a difference – a big difference.

parties 'to track and collect data in real time regarding . . . user input data,' which includes '[t]he information the user entered into the Websites' form fields, including search queries, the user's name, age, gender, email address, location, and/or payment information, demographic information,' and also 'device information, session information, and/or geolocation data.'" *Id.* (citation omitted). Further, as is the case here, the court in *Haleon* found *Popa* distinguishable because "Haleon's website explains what its cookies are capable of," i.e. that the cookies were used to "count visits and traffic sources so *Haleon* can measure and improve the performance of its website[s]," and for "tracking users' browsers across other sites and building up a profile of users' interests." *Id.* at *20–21 (cleaned up); *compare* CAC ¶¶ 38–40, 43–44, 55–98, 100 (alleging similar disclosures from the Websites regarding the capabilities of cookies). Ultimately, the court in *Haleon* determined that the plaintiffs "allegations are sufficient to show Article III standing." *Id*. This Court should do the same, for much the same reasons.

***Loss of Value or Control in Data***. Defendants further argue that Plaintiffs have not alleged a loss of value or control in their data. But Defendants ignore that the loss in *value* of data is a separate issue from the loss of *control* of that data. Plaintiffs have plainly alleged a loss of *control* in the data, which is *independently* sufficient to provide standing under Article III. *See, e.g., In re Facebook, Inc., Consumer Priv. User Profile Litig.,* 402 F. Supp. 3d 784 (N.D. Cal. 2019), ("courts have often held that this particular type of intangible injury—disclosure of sensitive private information, even without further consequence—gives rise to Article III standing").

To the extent Defendants contend that further specifics are necessary, they are wrong. Plaintiffs have alleged that their *own* personal data was appropriated despite their express wishes otherwise. CAC ¶¶ 111, 120, 129, 138. As other courts have found, these allegations suffice. *See Motorola*, 2025 U.S. Dist. LEXIS 133836, at *16–17 (considering substantially similar allegations and holding that "[plaintiff's] allegations that Motorola deprived him control of personal information regarding his digital activity and profile are sufficient to establish a concrete injury to his right to privacy and confer standing."); *Haleon*, No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503, at *15 (same, citing *Motorola*).

Because Plaintiffs allege a loss of control injury sufficient for Article III, the Court need not address Defendants' arguments as to the value of the data, as explained above. But, even so, as the

Ninth Circuit recognized in *In re Facebook Inc. Internet Tracking Litig.*, "California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss." 956 F.3d at 596 (citation omitted). "In other words, California law requires disgorgement of unjustly earned profits regardless of whether a defendant's actions caused a plaintiff to directly expend his or her own financial resources or whether a defendant's actions directly caused the plaintiff's property to become less valuable." *Id*. "[T]o establish standing, Plaintiffs must allege they retain a stake in the profits garnered from their personal browsing histories," (*id*.) as Plaintiffs here have done (CAC ¶ 234). And, critically to Defendants' argument that Plaintiffs had no interest in selling their data, "[u]nder California law, this stake in unjustly earned profits exists regardless of whether an individual planned to sell his or her data or whether the individual's data is made less valuable." *In re Facebook Inc. Internet Tracking Litig*., 956 F.3d at 601. Accordingly, at a minimum, Plaintiffs have adequately pleaded an entitlement to Defendants' profits from their personal data sufficient to confer Article III standing.

***Reduction in Storage and Value of Computing Devices***. For the same reasons, Defendants' arguments as to the reduction of storage and value of computing devices are irrelevant because Plaintiffs allege other injuries that give rise to Article III standing. Even setting that aside, their position improperly conflates standing with damages. *In re Arris Cable Modem Consumer Litig*., 327 F.R.D. 334, 351 (N.D. Cal. 2018) ("However, "[w]hether the plaintiffs can prove liability is one question; whether they are claiming a sufficient Article III injury is another."); *see Kirola v. City & County of San Francisco*, 860 F.3d 1164, 1175 (9th Cir. 2017) ("The district court seems to have improperly conflated [plaintiff's] standing with whether [plaintiff] would prevail on the merits.").

***Inspire Brands, Inc***. Finally, Defendants argue that Plaintiffs do not have standing to sue Defendant Inspire Brands, Inc. Mot. at 6. This is incorrect. Defendant Inspire is the owner of the other Defendants. As shown by the Arby's Privacy Policy quoted in the Complaint, the "We" in the Policy—that is, the entities which "collect personal information about users," "have third parties that collect personal information," "use information you make available to us when you interact with us, our affiliates, and other third parties to decide what content is relevant to you," and "work with third parties who help gather this information"—includes "Inspire Brands and our brands and affiliates." CAC ¶ 44.

Indeed, the Complaint alleges actions by Defendants—including Inspire—because Inspire claims to have engaged in the very conduct at issue in this litigation. Thus, Defendants' claims that Plaintiffs have not connected Inspire to the conduct alleged in the Amended Complaint when Inspire claims to have engaged in such conduct rings hollow. *See Briskin v. Shopify, Inc*., 135 F.4th 739, 762 (9th Cir. 2025) (holding that collective pleading of defendants was appropriate where plaintiff alleged "one course of conduct jointly pursued by three closely related corporate defendants" and "[t]he remainder of the SAC is highly detailed as to the technology used.").

**B. Plaintiffs' Fraud and Misrepresentation Claims Satisfy Rule 9(b).**

It is black letter law that Rule 9(b) applies to fraud-based claims. But nothing extends Rule 9(b) to statutory or invasion of privacy claims, such as those asserted here, which have no element of fraud or deception. Defendants contend Rule 9(b) applies to "all" the claims, but they wholly fail to cite any authority supporting that proposition. Courts, in fact, reject the notion. *See Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1198 (N.D. Cal. 2024) (finding Rule 9(b) to be inapplicable to wiretapping claims since "Plaintiffs' statutory claims here do not sound in fraud.")

In any event, the Rule 9(b) analysis here is straight-forward. Rule 9(b) requires plaintiffs to plead "'the who, what, when, where, and how' of the misconduct charged." *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1124 (9th Cir. 2009). "Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *Brown v. Natures Path Foods, Inc*., No. 21-cv-05132-HSG, 2022 U.S. Dist. LEXIS 42760, at *7–8 (N.D. Cal. Mar. 10, 2022). In *Motorola*, the court found substantially similar allegations of fraud sufficient to satisfy Rule 9(b). No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836, at *36–37 ("The complaint states that the "who" is Motorola; the "what" are misrepresentations by Motorola through the popup banner offering users the option to "Reject All non-essential cookies;" the "when" is the multiple occasions that Gabrielli visited Motorola's website between February 2022 and January 2024; the "where" is on Motorola's website; and the "how" is through the storage of cookies on users' devices that transmit personal information about the users. These allegations satisfy the "who, what, when, and where" of Rule 9(b)" (citations omitted)). So too here. Despite Defendants' assertion to the contrary, Plaintiffs have pleaded "the who, what, when, where, and how" of Defendants' fraud. They allege that Defendants (the who),

fraudulently stated that users could "Decline" cookies (the what), during the class period (when), on the Websites (where), and that this fraudulent statement appeared on the cookie consent banner (the how). *E.g.*, CAC ¶¶ 1–3, 45, 47–49, 105–12, 114–21, 123–30, 132–39 (alleging fraud); ¶¶ 35–39, 42–43 (alleging intentional conduct); ¶¶ 109, 118, 127, 136 (alleging reliance); ¶¶ 112–13, 121–22, 130–31, 139–40 (alleging injury). Plaintiffs further allege that the statement that they could "Decline" cookies was false and misleading because Defendants had in fact already permitted the Third Parties to place cookies on Plaintiffs' browsers and continued to do so even after Plaintiffs clicked "Decline." Plaintiffs further allege that Defendants acted intentionally and with knowledge (*id*. ¶¶ 35–39, 42–43), Plaintiffs relied on the misrepresentations to their detriment (*id*. ¶¶ 109, 118, 127, 136), and were injured as a result (*id*. ¶¶ 112–13, 121–22, 130–31, 139–40).

Defendants argue that further specificity is required as to the specific timing of their visits to the Websites, but *Motorola* disagreed. The allegations here plainly "give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Brown*, No. 21-cv-05132-HSG, 2022 U.S. Dist. LEXIS 42760, at *7 (quoting *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (quotation marks and citation omitted)). That is sufficient.

### C. Plaintiffs Ayora and Wiley's CIPA Claims are not Time Barred

Defendants further argue that Plaintiff Ayor's and Plaintiff Wiley's CIPA claims are time barred.[4] The statute of limitations is an affirmative defense. *See Lasko v. Caliber Home Loans*, 2022 U.S. App. LEXIS 6215, at *1 (9th Cir. Mar. 10, 2022). Plaintiffs are "not required to plead around anticipated affirmative defenses, including the statute of limitations." *Kohler v. Flava Enters.*, No. 10-CV-0730 IEG (NLS), 2010 U.S. Dist. LEXIS 84033, at *3 (S.D. Cal. Aug. 13, 2010). As such, "[d]ismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint." *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014). Defendants' burden is extraordinarily high: dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Supermail Cargo, Inc. v. U.S.*, 68 F.3d at 1206 (9th

[4] Defendants do not challenge timeliness as to the other Plaintiffs, or any non-CIPA cause of action.

Cir. 1995). "As a result, the defense generally cannot be asserted on a Rule 12(b)(6) motion." *A.B. v. Google LLC*, 737 F. Supp. 3d 869, 877–78 (N.D. Cal. 2024).

Defendants cannot meet their burden. Under California law, "[a] plaintiff seeking the benefit of equitable tolling must show three elements: 'timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff.'" *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal. 4th 88, 102 (2008)). Here, Plaintiffs Ayora and Wiley's provided timely notice—demonstrated through Plaintiff Ayora's demand letter, Wiley's notification to Defendants of her claims, and the arbitration proceedings. *See Abselet v. Hudson Labor Sols., Inc.*, 804 F. App'x 448, 450 (9th Cir. 2020) (a demand letter may equitably estop tolling of a statute of limitations when that letter provides "(i) timely notice; (ii) lack of prejudice to the defendant; and (iii) reasonable and good faith conduct by the plaintiff"); *see also* CAC ¶¶ 141–46; 147–52. Defendants have not argued prejudice, nor could they. Finally, Plaintiffs' conduct was reasonable and done in good faith. Defendants indicate that, somehow, seeking an efficient determination of whether Plaintiffs' claims were subject to an arbitration agreement in arbitration—Defendants' preferred method of dispute resolution—cuts against a showing of good faith. Mot. at 16. But Defendants at all times understood that Plaintiffs sought a determination that their claims were not subject to arbitration *so that they could file the instant lawsuit in federal court*. *See* CAC ¶¶ 142, 144, 148, 150. Plaintiffs then did exactly that—surprising no one. Accordingly, Plaintiff Ayora and Plaintiff Wiley's actions equitably tolled the statute of limitations and their CIPA claims are not time-barred.[5]

### D. Defendants' 12(b)(6) Arguments Fail.

#### 1. Plaintiffs have adequately pled privacy and intrusion upon seclusion claims.

Claims for common law invasion of privacy and intrusion upon seclusion consist of two key elements: (1) an intentional intrusion into a matter as to which the plaintiff has a reasonable expectation of privacy, and (2) the intrusion must be "highly offensive." *In re Facebook, Inc. Internet*

---

[5] Plaintiffs also allege that their claims were tolled, in part, based on the delayed discovery rule. CAC ¶¶ 141, 147. Defendants do not challenge these allegations and, accordingly, have waived that argument. *Sony Biotechnology, Inc. v. Chipman Logistics & Relocation*, No. 17-CV-1292-AJB-WVG, 2017 U.S. Dist. LEXIS 134440, at *5 n.3 (S.D. Cal. Aug. 22, 2017) ("Because this argument was not raised in its motion to dismiss, the argument is waived").

*Tracking Litig.*, 956 F.3d at 606; *see also Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 285–97 (2009).

Here, Plaintiffs had a reasonable expectation of privacy in their private communications on the Websites because Defendants represented to them that their browsing activity and Private Communications would remain private if they elected to "decline" cookies. *Facebook Tracking*, 956 F.3d at 603–04 (finding a reasonable expectation of privacy from "allegations that Facebook allegedly compiled highly personalized profiles from sensitive browsing histories and habits."); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) (finding a reasonable expectation of privacy where Google collected a "large amount of personal information from users' smartphones").

Defendants argue that Plaintiffs do not allege a reasonable expectation of privacy because they do not allege that their information was actually disclosed or collected. Mot. at 12. This is simply untrue—and a similar argument has already been rejected by two other courts in this district. *See Motorola*, No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836, at *27 (N.D. Cal. July 14, 2025) (rejecting similar argument that plaintiff only alleges what Motorola's cookies could track); *Haleon*, No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503, at *23 (same). Indeed, as in *Motorola* and *Haleon*, the Complaint clearly contains such allegations. *See, e.g.*, CAC ¶¶ 1–3, 43–45, 48–50, 105–12, 114–21, 123–30, 132–39. And to the extent Defendants argue that Plaintiffs' allegations must be more specific, the Ninth Circuit has explicitly rejected such an argument. *Facebook Tracking*, 956 F.3d at 603 rejecting "Facebook['s] argu[ment] that Plaintiffs need to identify specific, sensitive information that Facebook collected, and that their more general allegation that Facebook acquired 'an enormous amount of individualized data' is insufficient. However, both the nature of collection and the sensitivity of the collected information are important."). Indeed, the manner in which the data was collected is also significant. *Id.* Here, Defendants affirmatively mislead Plaintiffs and Class members into believing that their browsing would be private through misrepresentation and deceit—violating social norms. Defendants' suggestion that Plaintiffs and Class members had no reasonable expectation of privacy when Defendants promised them to expect privacy asks this Court to believe that such deceit does not violate social norms. This Court should reject such a cynical position.

Likewise, Plaintiffs have shown that Defendants' intrusion was highly offensive. "Determining whether a defendant's actions were "highly offensive to a reasonable person" requires a holistic

consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive. *Facebook Tracking*, 956 F.3d at 606 (citation omitted).

Ultimately, the question of whether an intrusion is "highly offensive" is one that cannot be resolved on the pleadings because it is fact-intensive and entails weighing the "extent and gravity of the invasion." *Hill v. Nat'l Collegiate Athletic Ass'n*, 865 P.2d 633 (Cal. 1994); *see also Motorola*, No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836, at *26 (finding that it was premature to dismiss substantially similar claims based on a determination of how offensive or serious the privacy intrusion is); *Haleon,* No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503, at *22 (agreeing with *Motorola*); *Facebook Tracking*, 956 F.3d at 606 (stressing the uniquely subjective nature of the "highly offensive inquiry before concluding it "cannot be resolved at the pleading stage"); *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2021 U.S. Dist. LEXIS 98074, at *28 (N.D. Cal. May 21, 2021) ("[n]or is the offensiveness of Google's putative misconduct any less a matter of 'public policy,' or any more susceptible to 'resol[ution] at the pleading stage,' than that ascribed to *Facebook*"); *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019) ("[u]nder California law, courts must be reluctant to reach a conclusion at the pleading state about how offensive or serious the privacy intrusion is"); *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1078 (N.D. Cal. 2016) ("[t]he offensiveness inquiry is fact-specific"); *Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 U.S. Dist. LEXIS 186955, at *9 (N.D. Cal. Oct. 23, 2019) ("a jury could conclude" that the intrusion into plaintiff's identity and browsing habits "is a highly offensive breach of norms"); *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1054 (N.D. Cal. 2018) (whether conduct rises to the level of highly offensive "is indeed a factual question best left for a jury"). Here, the jury is entitled to consider all of the circumstances around Defendants' conduct, including the fact that they lied about not tracking visitors, to determine whether Defendants' invasion of privacy was highly offensive.

**2. Plaintiffs state a wiretapping claim.**

Plaintiffs allege a wiretapping claim under the fourth prong of Section 631(a) which prohibits aiding others who "unlawfully do, or permit, or cause to be done" either "(1) intentional wiretapping, (2) willfully attempting to learn the contents or meaning of a communication in transit over a wire,

[i.e., eavesdropping,] and (3) attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Rodriguez v. Ford Motor Co.*, No. 3:23-cv-00598, 2024 U.S. Dist. LEXIS 218685, at *12 (S.D. Cal. Dec. 3, 2024) (cleaned up).

Here, Plaintiffs allege that Defendants have aided the Third Parties in their CIPA violations. Defendants' arguments to the contrary, that Plaintiffs have not adequately alleged intent, the contents of their communications, or that such communications were intercepted in transit, are spurious.

First, Plaintiffs have adequately alleged intent. Decisions from this Circuit consistently hold that the intent element is satisfied by pleading that Defendants intentionally (i.e., not accidentally) "enable[d] a third party's eavesdropping on or interception of the communication." *See, e.g.*, *Doe v. Amgen, Inc.*, No. 2:23cv7448-MCS-SSC, 2024 U.S. Dist. LEXIS 144579, at *5 (C.D. Cal. Aug. 13, 2024); *Revitch*, 2019 U.S. Dist. LEXIS 186955, at *4 ("[T]he complaint adequately alleges that [Defendant] violated section 631 by enabling [a third party's] wrongdoing); *Kotlarsz v. Integrity Vehicle Servs., Inc.*, No. 8:24-cv-00569-FWS-JDE, 2024 U.S. Dist. LEXIS 213565, at *22 (C.D. Cal. Sep. 3, 2024) ("it was the [D]efendant's website on which the [third party] operated."). And, regardless of specific intent, courts routinely find plaintiffs' privacy allegations sufficient when plaintiff alleges that Defendant intended the *act* which "enable[d]" the privacy violation. *See, e.g., Doe*, 2024 U.S. Dist. LEXIS 144579, at *5. Here, it is even more egregious because Defendants expressly promised that they would not act as they did.

The intent requirement in the analogous Wiretap Act is also instructive. "The Ninth Circuit has rejected that the word 'intentionally' in the Wiretap Act 'must be read to require a defendant to know that [its] conduct is unlawful . . . Rather, the statute only requires 'an intentional act, defined as an act that is being done on purpose.'" *Shahnaz Zarif v. Hwareh.com, Inc.*, 2025 U.S. Dist. LEXIS 26519, at *20 (S.D. Cal Feb 12, 2025). Defendants rely on *Smith v. Yeti Coolers, LLC*, No. 24-cv-01703-RFL, 2024 U.S. Dist. LEXIS 194481, at *11 (N.D. Cal. Oct. 21, 2024), to support its interpretation of CIPA's intent requirement. *Yeti* is factually distinct: there, unlike here, the plaintiff alleged that the website owner was liable for aiding a third-party payment processor to "incorporate[] customers' financial information into its fraud prevention system, which it then markets to merchants without customers' consent" in violation of the statute. *Id.* at *1. The court concluded that the plaintiff failed

to allege that the defendant was "acting with the third party in order to have the third party perform acts that violate the statute." *Id*. at *12. In other words, the court found that the defendant did not intend to enable the third party to collect user information (which plaintiff alleged violated the statute); it intended only to enable the third party to process payments for its Website. Here, Defendants intentionally chose to integrate the Third Parties' software that placed and transmitted cookies into its Websites to obtain user data for advertising and analytics functions. CAC ¶ 35. Defendants did not disable this software or prevent the Third Parties from obtaining user data even after representing to Plaintiffs and Class members that they could "Decline" cookies. *Id*. ¶¶ 45–54. Defendants cannot claim that they did not intend to enable the Third Parties to wiretap and eavesdrop on users' Personal Communications since they installed the Third Party code on its Websites to do exactly that. *See Haleon*, No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503, at *29 (finding intent alleged under CIPA when it was alleged that "Haleon intentionally operated its website and assisted third parties in gathering Gabrielli's information.").

As to Defendants' argument that Plaintiffs have not alleged that they transmitted communications to the Websites, courts have consistently refused to require plaintiffs to plead the exact communications they had with websites. *See, e.g., Byars v. Tire*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. Feb. 3, 2023) (stating that "[t]here is no requirement that [plaintiff] specifically allege the exact contents of her communications with Goodyear"; "[plaintiff] merely needs to show that the contents were not record information such as her name and address"); *James*, 701 F. Supp. 3d at 956 (same); *Graf v. Zynga Game Network, Inc. (In re Zynga Privacy Litig.)*, 750 F.3d 1098, 1108–09 (9th Cir. 2014) (acknowledging that, "[u]nder some circumstances, a user's request to a search engine for specific information could constitute a communication such that divulging a URL containing that search term to a third party could amount to disclosure of the contents of a communication"); *Haleon*, No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503, at *31 (substantially similar allegations that "the information collected as 'the Website user's affirmative decisions, actions, choices [and] preferences,' including 'user input data' such as 'search queries, the user's name, age, gender, email address, location, and/or payment information.'" is " more than sufficient."). Here, Plaintiffs have alleged that the communications were collected through wrongfully placed cookies on the Websites.

CAC ¶¶ 39, 53–54 (alleging Private Communications collected through wrongfully placed cookies); ¶¶ 55–98 (alleging the types of data and communications collected by the wrongfully placed Third Parties' cookies). This is sufficient.

Finally, Plaintiffs plausibly allege that the communications were intercepted while in transit. Although it is true that Plaintiffs must allege that "the interception must occur contemporaneous with the sending or receipt of the message," *see Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 759 (N.D. Cal. 2023), Plaintiffs clearly do so here. The Complaint contains several allegations describing how the Third Party Cookies at issue transmitted data in real time. CAC ¶¶ 3, 39, 49. Allegations describing the real-time transmission of communications is sufficient on a motion to dismiss. *See Jackson v. Linkedin Corp.*, 744 F. Supp. 3d 986, 994 (N.D. Cal. 2024) ("allegations regarding the manner in which the Insight Tag operates are sufficient to plausibly allege that LinkedIn at least 'read' or 'learned' the information so transmitted. Because that is sufficient to state a claim under Section 631, LinkedIn's motion to dismiss Jackson's CIPA claim is denied."). Not only have Plaintiffs explained how third-party cookies operate, they give specific examples that transmit data in real time. CAC ¶¶ 50–51. The cases Defendants cite are easily distinguished. In *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2022 U.S. Dist. LEXIS 13476, at *7–10 (N.D. Cal. Jan. 25, 2022), plaintiffs specifically alleged that Google logged their data and then subsequently transmitted it, failed to describe how Google intercepted the relevant data in real time. In *Rosenow v. Facebook, Inc.*, No. 19-cv-1297-WQH-MDD, 2020 U.S. Dist. LEXIS 73513, at *21–22 (S.D. Cal. Apr. 27, 2020), the court dismissed the wiretap claim because allegations of interception "in transit" were merely conclusory and unsupported. And in *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017), the court dismissed the wiretap because "[w]hile Plaintiffs need not prove their theory of interception on a motion to dismiss, Plaintiffs must provide fair notice to Defendants of when they believe Vizio intercepts their communications." Here, by contrast, Plaintiffs have alleged precisely when the Third Parties intercepted the communications. *See* CAC ¶¶ 50–51,

**3. Plaintiffs properly plead a "pen register" claim under section 638.51.**

CIPA Section 638.51(a) prohibits any person from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order." The statute defines a "pen register" as "a

device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). Plaintiffs adequately plead each element of this definition by alleging that the Third Parties' cookies and the corresponding software code Defendants installed that allows the Third Parties to attach cookies operate as "pen registers" because they are processes that record users' IP address and user-agent information, which is not the content of the electronic communications being transmitted from users' computers or smartphones to the Websites.

In their motion, Defendants assert that Plaintiffs' allegations fail because (1) pen registers are limited to telephonic devices and (2) "some of the data collected by cookies includes the 'content' of their communications." Mot. at 20–22.

As to Defendants' argument that pen registers are limited to telephonic devices, "this argument has been considered and rejected multiple times." *Haleon*, No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503, at *32; *Motorola*, No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836, at *30 (Motorola argues that the legislative history of Section 638.51—which discusses pen registers in relation to telephones—indicates that the statute applies only to telephones. The Court disagrees."). Indeed, as the court held in *Greenley v. Kochava, Inc.*,

> the Court cannot ignore the expansive language in the California Legislature's chosen definition. The definition is specific as to the type of data a pen register collects—"dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted," but it is vague and inclusive as to the form of the collection tool—"a device or process." *See* Cal. Penal Code § 538.50(b). This indicates courts should focus less on the form of the data collector and more on the result. Thus, the Court applies the plain meaning of a "process" to the statute. A process can take many forms. Surely among them is software that identifies consumers, gathers data, and correlates that data through unique "fingerprinting." (Am. Compl. ¶¶ 67, 74.) Thus, the Court rejects the contention that a private company's surreptitiously embedded software installed in a telephone cannot constitute a "pen register."

684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023); *see also Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-CV-01797-CRB, 2024 U.S. Dist. LEXIS 227378, at *7–8 (N.D. Cal. Dec. 12, 2024)

(citing *Greenley* to reject the argument that CIPA's pen register definition applies only to telephone technology and to hold that internet browser trackers can constitute pen registers).

Similarly, Defendants' argument that a pen register cannot also collect communications has been rejected by at least one court in this District. *In re Meta Pixel Tax Filing Cases*, No. 22-cv-07557-PCP, 2025 U.S. Dist. LEXIS 152615, at *8 (N.D. Cal. Aug. 6, 2025) (Pitts, J.) ("Given CIPA's purpose to protect Californians' privacy, it is highly unlikely that the Legislature intended to permit the installation and use of pen registers so long as those devices also record the contents of a third party's communications."). Moreover, Defendants' argument ignores Plaintiffs' allegations that while certain cookies capture the contents of the communications, others capture only information such as IP addresses and user-agent information. *See* CAC ¶ 209. As recognized in *In re Meta Pixel Tax Filing Cases*, even if CIPA precludes a single device from being both a wiretap and a pen register, where, as here, the Complaint alleges devices with "an array of capabilities" encompassing "various functionalities" that "operate independently from one another, . . . the process that records metadata in a pen register-like manner is a separate 'device' or 'process' from the one that collects the contents of users' communications. No. 22-cv-07557-PCP, 2025 U.S. Dist. LEXIS 152615, at *8.

**E. Plaintiff Adequately Alleges Fraud/Misrepresentation Claims.**

As explained above, Plaintiffs' fraud claims meet all of the requirements of Rule 9(b). Aside from Rule 9(b), Defendants challenge the fraud claims by contending that Plaintiffs have not alleged "knowledge by Defendants of any errant or unintended collection of data" or reliance. Mot. at 22. Both contentions are incorrect. First, in a claim for fraud, "[m]alice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). When essential information is within the other parties' knowledge, Rule 9(b) permits pleading knowledge and intent on "information and belief." *See Blake v. Dierdorff*, 856 F.2d at 1369 (9th Cir. 1988). The Complaint alleges that Defendants acted with knowledge. CAC ¶¶ 34–35, 42, 217. This is sufficient. *Haleon*, 2025 U.S. Dist. LEXIS 169503, at *36 ("Haleon argues that Gabrielli has failed to show intent. But because intent may be alleged generally, his allegations are sufficient for now." (citing Fed. R. Civ. P. 9(b)). Second, Plaintiffs have clearly alleged reliance. CAC ¶¶109, 111, 118, 120, 127, 129, 136, 138 (alleging reliance). Defendants' unadorned argument to the contrary simply ignores these allegations.

**F. Plaintiffs' Unjust Enrichment Claim Properly Pled.**

The Ninth Circuit has allowed independent claims for unjust enrichment to proceed. *See Bruton v. Gerber Prod. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017); *see also In re Facebook Consumer Priv.*, 402 F. Supp. 3d at 803 (permitting an independent unjust enrichment claim alongside valid breach of contract and fraud claims). To successfully plead unjust enrichment, "a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023). Here, Plaintiffs may bring an unjust enrichment claim because they allege that Defendants benefited from using their Private Communications and that otherwise their remedies at law are inadequate. CAC ¶¶ 43–44, 99–104 (describing ways in which Defendants benefited from the use of wrongfully-placed cookies); ¶ 235 (alleging no adequate remedy at law). Indeed, if Plaintiffs are unable to pursue their other claims, they would have not adequate legal remedy. "These allegations are all that is necessary at this stage in the proceedings." *Shah v. Capital One Fin. Corp*., No. 24-cv-05985-TLT, 2025 U.S. Dist. LEXIS 42677, at *30–31 (N.D. Cal. Mar. 3, 2025) (refusing to dismiss unjust enrichment claim in a privacy case); *see also A.J. v. LMND Med. Grp.*, No. 24-cv-03288-RFL, 2024 U.S. Dist. LEXIS 194480, at *4 (N.D. Cal. Oct. 25, 2024) (finding that plaintiffs' allegations that defendant benefitted from their information by exchanging it without their consent and that plaintiffs failed to receive the benefit of their bargain was sufficient to plead unjust enrichment).

**G. Plaintiffs Sufficiently Plead Trespass to Chattels.**

"In order to prevail on a claim for trespass based on accessing a computer system, the plaintiff must establish: (1) defendant intentionally and without authorization interfered with plaintiff's possessory interest in the computer system; and (2) defendant's unauthorized use proximately resulted in damage." *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1069–70 (N.D. Cal. 2000) (citation omitted).[6] A plaintiff may satisfy the damages element by pleading that the trespass "impaired the condition, quality, or value of the personal property." *Fields v. Wise Media, LLC*, No. 12-CV-

[6] Plaintiffs recognize that the courts in *Haleon* and *Motorola* dismissed trespass to chattels claims based on similar allegations. *Haleon*, No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503, at *37–39; *Motorola*, No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836, at *38–40. Plaintiffs, accordingly, include arguments on this issue SOLELY to preserve the issue for appeal.

05160 WHA, 2013 U.S. Dist. LEXIS 136914, 2013 WL 5340490, at *4 (N.D. Cal. Sept. 24, 2013) (citing *Intel Corp. v. Hamidi*, 30 Cal.4th 1342, 1356 (2003)). This includes where the alleged changes "establish a significant reduction in service constituting an interference with the *intended functioning* of the system." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1069 (N.D. Cal. 2012) (emphasis added).

Here, Plaintiffs easily plead each element by alleging that Defendants intentionally, and contrary to Plaintiffs' express rejections, allowed the Third Parties to put cookies on their devices and browsers. CAC ¶¶ 35, 42–44 (describing intentional conduct), ¶¶ 2–3, 46–51, 107–11, 116–20, 125–29, 134–38 (describing placement of cookies despite express rejection). Defendants argue that Plaintiffs have not alleged intent, that cookies were attached to their devices, and that Plaintiffs' devices were damages or impair. Mot. at 23–24. As discussed above, Plaintiffs' have clearly alleged intentional conduct. And Defendants' unauthorized use resulted in damage by reducing storage, disk space, and performance of Plaintiffs' and other Class members computing devices. CAC ¶ 240. This includes reducing the intended function of the system—i.e. Plaintiffs' ability to use their devices and browsers without being tracked by the Third Parties.

Plaintiffs respectfully disagree with the decisions in *Motorola*, No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836, at *39 and *Haleon,* No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503, at *39, which dismissed trespass to chattels claims based on similar allegations. Those cases reasoned that similar allegations too conclusory. *See Motorola*, 2025 U.S. Dist. LEXIS 133836, at *39; *Haleon*, 2025 U.S. Dist. LEXIS 169503, at *39. However, at the motion to dismiss stage, "[a] complaint need not contain detailed factual allegations, but facts pleaded by a plaintiff 'must be enough to raise a right to relief above the speculative level.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Here, Plaintiffs have alleged that Defendants' unauthorized use resulted in damage by reducing storage, disk space, and performance of Plaintiffs' and other Class members computing devices, in particular by reducing the intended function of the system—i.e. Plaintiffs' ability to use their devices and browsers without being tracked by the Third Parties. CAC ¶ 240. Accordingly, Plaintiffs have met the standard required at the pleading stage.

### H. Plaintiffs' Class Allegations Should not be Stricken

Motions to strike class allegations are "rarely" granted. *In re Wal-Mart Stores, Inc.*, 505 F. Supp. 2d 609, 614–15 (N.D. Cal. 2007). Courts "disfavor[]" them "because a motion for class certification is a more appropriate vehicle for arguments about class propriety." *Boddie v. Signature Flight Support Corp.*, No. 19-cv-03044-DMR, 2019 U.S. Dist. LEXIS 130858, at *4 (N.D. Aug. 5, 2019). Indeed, "[a]n order striking class allegations is 'functionally equivalent' to an order denying class certification." *Microsoft Corp. v. Baker*, 582 U.S. 23, 34 n.7 (2017).

The vast majority of courts to consider a motion to strike class allegations on the pleadings—including this one—deny them. *See Valentine v. Crocs*, 2023 U.S. Dist. LEXIS 245728, at *23 (N. D. Cal. April 26, 2023); *Mason v. Spring EQ LLC*, No. 5:24-cv-01833 MWC (AGRx), 2025 U.S. Dist. LEXIS 31895, at *11 (C.D. Cal. Jan. 22, 2025); *SBCW Consulting Inc. v. TSYS Merch. Sols., LLC*, No. 2:24-cv-03193-SB-AGR, 2024 U.S. Dist. LEXIS 195586, at *9 (C.D. Cal. Oct. 28, 2024); *Paulk v. Student Transp. of Am., Inc.*, No. CV 24-3436-JFW(JPRx), 2024 U.S. Dist. LEXIS 216594, at *8–9 (C.D. Cal. July 25, 2024); *Harper v. Charter Communs., LLC*, No. 2:19-cv-00902 WBS DMC, 2020 U.S. Dist. LEXIS 33054, at *13 (E.D. Cal. Feb. 25, 2020); *Boddie*, 2019 U.S. Dist. LEXIS 130858, at *4; *Rodas v. Monetary Mgmt. of Cal.*, No. 2:14-cv-01389-TLN-AC, 2015 U.S. Dist. LEXIS 39579, at *7–9 (E.D. Cal. Mar. 26, 2015); *Yastrab v. Apple Inc.*, No. 5:14-cv-01974-EJD, 2015 U.S. Dist. LEXIS 37119, at *23–24 (N.D. Cal. Mar. 23, 2015); *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1245 (C.D. Cal. 2011) (collecting cases and noting it is "in fact rare" to strike class allegations before a certification motion); *In re NVIDIA GPU Litig.*, No. C 08-04312 JW, 2009 U.S. Dist. LEXIS 108500, at *40–41 (N.D. Cal. Nov. 19, 2009).

The reason is two-fold: Rule 12(f) is not an appropriate means for assessing Rule 23 requirements, and, even if it were, class certification arguments are fact-intensive and require a developed evidentiary record. *See Ortiz v. Amazon.com LLC*, No. 17-cv-03820-JSW, 2017 WL 11093812, at *2 (N.D. Cal. Oct. 10, 2017) (finding that "the class allegations are not redundant, immaterial, impertinent, or scandalous" which are necessary to invoke Rule 12(f)). As the Ninth Circuit instructs, its "cases stand for the unremarkable proposition that often the pleadings alone will

not resolve the question of class certification and that some discovery will be warranted." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009).

Defendants' hastiness is evident from its own authority: their own authority explains that "[s]triking class allegations at the pleading stage is only appropriate where the defendant presents an argument that completely precludes certification of *any class*, not just the class currently defined in the complaint." *Rice-Sherman*, No. 19-cv-03613-WHO, 2020 U.S. Dist. LEXIS 46197, at *42 (emphasis in original). "This is 'because the shape and form of a class action evolves only through the process of discovery.'" *Id.* (quoting *Frenzel v. Aliphcom*, No. 14-cv-03587-WHO, 2015 U.S. Dist. LEXIS 88751, at *41 (N.D. Cal. July 7, 2015)). Defendants argue that the proposed class is inherently overbroad. Mot. at 24. But in the very case they cite, Judge Orrick declined to strike class allegations based on a contention that the class was overbroad. *Rice-Sherman*, 2020 U.S. Dist. LEXIS 46197, at *44 ("Even if the class definition is overbroad as alleged, it is premature to strike it at this stage as plaintiffs 'should at least be given the opportunity to make the case for certification based on appropriate discovery.'" (citation omitted)).

Defendants further argue that there is no way to determine whether a Website visitor was located in California. Mot. at 25. But this ignores allegations explicitly alleging otherwise. *See* CAC ¶¶ 32–34 (describing how "Defendants knew that the device or devices used by Plaintiffs and Class members to access the Websites was located in California" through the use of IP addresses). Next, Defendants argue that the cookie banner did not appear during certain portions of the class period. Mot. at 25. That, however, is a factual issue the Court cannot determine on the pleadings and certainly would not preclude certification of "any class." *Rice-Sherman*, 2020 U.S. Dist. LEXIS 46197, at *42. Indeed, the Complaint does not include *any* allegations about the non-existence of the cookie banner during the class period. This is plainly an issue for discovery, not resolution on the pleadings. Finally, though Defendants point to potential arbitration agreements for some class members, even if ultimately true, this, again, does not preclude certification of "any class"—meaning that striking the class allegations here is not appropriate. Because Plaintiffs have the "ability to modify the class definition at a later stage in the proceedings," *Gamez v. Toyota Motor Sales, U.S.A., Inc.*, No. 2:23-cv-01464-DAD-KJN, 2024 U.S. Dist. LEXIS 81246, at *16–19 (E.D. Cal. May 3, 2024), the Court

need not resort to the "extreme measure" of striking the allegations at this stage. *Jessop v. Giggle, Inc.*, 2015 U.S. Dist. LEXIS 181277, at *1 (S.D. Cal. Feb. 2, 2015); *see also Webb v. Circle K Stores Inc.*, 2022 U.S. Dist. LEXIS 200682, at *3 (D. Ariz. Nov. 3, 2022) ("[t]he proper stage for fine-tuning the class definition is certification, not pleading.")

### I. Plaintiffs Request Leave to Amend If Necessary.

If the Complaint is dismissed, "leave to amend should be granted unless the Court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Indeed, leave to amend is only really properly denied "where the amendment would be futile." *DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992). Should this Court find any claims in the Complaint insufficient, Plaintiffs request leave to amend to cure the identified deficiencies.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss must be denied.

Dated: October 31, 2025

**GUTRIDE SAFIER LLP**

*/s/Patrick J. Branson*
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
hayley@gutridesafier.com
Kali R. Backer (State Bar No. 342492)
kali@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

Patrick J. Branson (*pro hac vice*)
patrick@gutridesafier.com
305 Broadway, 7th Floor
New York, NY 10007
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*