**BAKER & HOSTETLER LLP**
Bethany G. Lukitsch (SBN 314376)
*blukitsch@bakerlaw.com*
Kamran B. Ahmadian (SBN 314566)
*kahmadian@bakerlaw.com*
Alexis Cruz (SBN 312842)
*acruz@bakerlaw.com*
1900 Avenue of the Stars | Suite 2700
Los Angeles, CA 90067-4508
Telephone: 310.820.8800
Facsimile: 310.820.8859

*Attorneys for Defendants*
INSPIRE BRANDS, INC., ARBY'S RESTAURANT GROUP, INC., JIMMY JOHN'S FRANCHISOR SPV, LLC, SONIC INDUSTRIES SERVICES, LLC, and DUNKIN' BRANDS, INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

BENJAMIN PAUL DE AYORA, CHRISTINE WILEY, MIKHAIL GERSHZON, AND GEORGE NINO as individuals, on behalf of themselves, the general public, and those similarly situated,

Plaintiffs,

v.

INSPIRE BRANDS, INC., ARBY'S RESTAURANT GROUP, INC., JIMMY JOHN'S FRANCHISOR SPV, LLC, SONIC INDUSTRIES SERVICES, LLC, and DUNKIN' BRANDS, INC.,

Defendants.

Case No.: 3:25-cv-03645-AGT

[*Assigned to Hon. Alex G. Tse*]

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

*[Filed Concurrently with Declaration of Kamran B. Ahmadian; Request for Judicial Notice; and [Proposed] Order]*

**Date: May 8, 2026**
**Time: 10:00 a.m.**
**Dept: Courtroom A**

Action Filed: 04/25/2025
Initial Complaint Filed: 08/18/2025
Amended Complaint Filed: 02/13/2026

**TO THE HONORABLE COURT, AND PLAINTIFFS AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on May 8, 2026, at 10:00 a.m., in Courtroom A of the above-entitled Court, located on the 15th Floor of the San Francisco Courthouse at 450 Golden Gate Avenue, San Francisco, California 94102, Defendants Inspire Brands, Inc., Arby's Restaurant Group, Inc., Jimmy John's Franchisor SPV, LLC, Sonic Industries Services, LLC, Dunkin' Brands, Inc. (collectively, "Defendants") will and hereby do move to dismiss with prejudice the First Amended Class Action Complaint ("FAC") of Plaintiffs Benjamin Paul de Ayora, Christine Wiley, Mikhail Gershzon, and George Nino (collectively, "Plaintiffs") [Dkt. No. 57].[1]

Defendants respectfully submits this Motion pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6) on the grounds that Plaintiffs fail to plead their fraud-based claims with sufficient particularity, Plaintiffs lack Article III standing, and Plaintiffs fail to allege sufficient facts to plead the following causes of action: (1) invasion of privacy or intrusion upon seclusion; (2) a violation of the California Invasion of Privacy Act ("CIPA"), California Penal Code section 631(a); (3) a violation of CIPA, California Penal Code section 638.51, (4) fraud, deceit, and/or misrepresentation; and (5) unjust enrichment.

This Motion is based on this Notice, the Memorandum of Points and Authorities, the Declaration of Kamran B. Ahmadian, and Request for Judicial Notice, all pleadings, papers and records on file in this Action, and such other oral argument and documentary evidence as may be presented at or before the time of adjudication of this Motion.

\\

\\

\\

\\

\\

\\

[1] The operative complaint was filed as the "second amended class action complaint" [Dkt. No. 57]. But this is simply the first amended complaint and will be referred to as such in Defendants' Motion to Dismiss.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Dated: March 20, 2026

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: */s/ Kamran B. Ahmadian*

Bethany G. Lukitsch
Kamran B. Ahmadian
Alexis Cruz

*Attorneys for Defendants*
INSPIRE BRANDS, INC., ARBY'S RESTAURANT GROUP, INC., JIMMY JOHN'S FRANCHISOR SPV, LLC, SONIC INDUSTRIES SERVICES, LLC, and DUNKIN' BRANDS, INC.

## TABLE OF CONTENTS


I. INTRODUCTION .... 1

II. STATEMENT OF ISSUES TO BE DECIDED .... 2

III. FACTUAL BACKGROUND .... 3

A. Defendants Lawfully Use Third-Party Cookies and Sufficiently Notify Visitors About Their Privacy Practices .... 3

B. Plaintiffs' Allegations About Their Own Experiences Still Lack Basic and Necessary Facts to Survive .... 4

IV. LEGAL STANDARD .... 6

V. LEGAL ARGUMENT .... 7

A. Plaintiffs Still Fail to Allege Concrete Injury to Establish Article III Standing .... 7

1. Plaintiffs Do Not Allege Sufficient Facts Regarding Defendant Inspire Brands, Inc. .... 7

2. Plaintiffs Have Not Alleged a Concrete Privacy Injury Sufficient for Standing. .... 8

3. Plaintiffs Have Not Alleged a Loss of Value Injury .... 11

B. Plaintiffs Fail to Meet the Heightened Pleading Standard of Rule 9(b) .... 12

C. Plaintiffs' Common Law Privacy Claims Fail (Counts I and II) .... 14

D. Plaintiffs' CIPA Claims Fails (Count III and IV) .... 15

1. Plaintiff De Ayora and Nino's CIPA Claims Are Time-Barred .... 15

2. Plaintiffs' CIPA §631(a) Wiretapping Claim Fails .... 17

3. Plaintiffs' CIPA Section 638.51 Pen Register Claim Fails .... 21

E. Plaintiffs' Common-Law Fraud/Misrepresentation Claim Fails (Count V) .... 23

F. Plaintiffs' Unjust Enrichment Claim Fails (Count VI) .... 24

VI. CONCLUSION .... 25


BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al-Ahmed v. Twitter, Inc.*,
648 F. Supp. 3d 1140 (N.D. Cal. 2023) (Chen, J.) ..... 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..... 6, 24

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..... 6, 24

*Boris v. Wal-Mart Stores, Inc.*,
35 F. Supp. 3d 1163 (C.D. Cal. 2014), *aff'd*, 649 F. App'x 424 (9th Cir. 2016) ..... 14

*Briskin v. Shopify, Inc.*,
135 F.4th 739 (9th Cir. 2025) ..... 7, 8

*Brodsky v. Apple, Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) (Koh, J) ..... 16, 19

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) ..... 9

*Cal. Crane Sch., Inc. v. Google LLC*,
722 F. Supp. 3d 1026 (N.D. Cal. 2024) (Pitts, J.) ..... 24

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) (Koh, J.) ..... 10

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 ..... 20

*Colgate v. JUUL Labs, Inc.*,
402 F. Supp. 3d 728 (N.D. Cal. 2019) (Orrick, J.) ..... 13

*Day v. City of Fontana*,
25 Cal. 4th 268 (2011) ..... 21

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (Chhabria, J.) ..... 17

*ESG Cap. Partners, LP v. Stratos*,
828 F.3d 1023 (9th Cir. 2016) ..... 24

*In re Facebook Priv. Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011) ..... 23

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 10, 14, 23

*Ferry v. DF Growth REIT*,
2024 WL 5011949 (S.D. Cal. Dec. 6, 2024) .......... 6

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011) .......... 11

*In re Gilead Sciences Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) .......... 6

*Griffin Indus., Inc. v. Irvin*,
496 F.3d 1189 (11th Cir. 2007) .......... 16

*Gustavson v. Wrigley Sales Co.*,
961 F. Supp. 2d 1100 (N.D. Cal. 2013) .......... 7, 8

*Hammerling v. Google*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 10, 15

*Hart v. TWC Prod. & Tech. LLC*,
526 F. Supp. 3d 592 (N.D. Cal. 2021) .......... 12

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) .......... 20

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) .......... 14

*Hoey v. Sony Elecs. Inc.*,
515 F. Supp. 2d 1099 (N.D. Cal. 2007) .......... 25

*Holland-Hewitt v. Allstate Life Ins. Co.*,
343 F.R.D. 154, 171 (E.D. Cal. 2022) .......... 7

*Holt v. Cnty. of Orange*,
91 F. 4th 1013 (9th Cir. 2024) .......... 16

*Hubbard v. Google LLC*,
*2024* WL 3302066 (N.D. Cal. July 1, 2024) .......... 12

*Jones v. Peloton Interactive, Inc.*,
720 F. Supp. 3d 940 (S.D. Cal. 2024) .......... 14

*Jones v. Tonal Sys., Inc.*,
2024 WL 4357558 (S.D. Cal. Sept. 30, 2024) .......... 18

*Khamooshi v. Politico*,
2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) .......... 11

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) .......... 18

*Lau v. Gen Digit. Inc.*,
2024 WL 1880161 (N.D. Cal. Apr. 3, 2024) .......... 18

*Lightoller v. Jetblue Airways Corp.*,
2023 WL 3963823 (S.D. Cal. June 12, 2023) .......... 9

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 11

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 6

*In re Meta Pixel Tax Filing Cases*,
793 F. Supp. 3d 1147 (N.D. Cal. 2025) .......... 21

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024) .......... 20

*Pemberton v. Rest. Brands Int'l, Inc.*,
2025 WL 3268404 (N.D. Cal. Nov. 24, 2025) .......... 24

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... *passim*

*Rodriguez v. Google LLC*,
2022 WL 214552 (N.D. Cal. 2022) .......... 19

*Rodriguez v. Ink America Intn'l Grp. LLC*,
2025 WL 4034985 (Cal. Super. Dec. 10, 2025) .......... 22

*Rosenow v. Facebook, Inc.*,
2020 WL 1984062 (S.D. Cal. 2020) .......... 19

*Ruiz v. Gap, Inc.*,
540 F. Supp. 2d 1121 (N.D. Cal. 2008) .......... 15

*Shah v. Cap. One Fin. Corp.*,
2025 WL 714252 (N.D. Cal. Mar. 3, 2025) .......... 12

*Smith v. YETI Coolers, LLC*,
2024 WL 4539578 (N.D. Cal. Oct. 21, 2024) .......... 20

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 6, 8

*Tapia Carmona v. Cnty. of San Mateo*,
2019 WL 4345973 (N.D. Cal. Sept. 12, 2019) .......... 16

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........ 8

*U.S. v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ........ 24

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ........ 19

*Vess Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ........ 12

*Wiley v. Universal Music Grp., Inc.*,
2025 WL 3654085 (N.D. Cal. Dec. 17, 2025) ........ 20, 23

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ........ 17

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........ 19

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ........ 19

**Statutes**

Cal. Pen. Code § 638.50(b) ........ 21, 23

Cal. Pen. Code § 638.51(a) ........ 21

Cal. Penal Code § 631(a) ........ *passim*

California Penal Code section 632.01 ........ 22

Civ. Proc. Code § 340 ........ 16

**Rules**

Fed. R. Civ. P. 9(b) ........ *passim*

Fed. R. Civ. P. 12(b), *et seq.* ........ 6

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

As the Court previously noted, Plaintiffs' initial lengthy 70-page complaint failed to clearly and concisely articulate the basis and grounds for their cookie-based claims against Defendants.[2] The Court expressed its confusion with the convoluted pleading and instructed that any amended complaint should clearly identify which factual allegations support which claims and against which Defendants:

> [] I'm not suggesting that you may never have a case, but what you've pled here is completely confusing. If you want to spend court resources and Defendants have to pull it apart, this is why we're here pulling it apart.
>
> …
>
> I don't know why [Plaintiffs'] complaint [can't] be as simple as, here are our plaintiffs, this is what they did. They went on to the site on this day—or maybe a date range. Whatever data that you have that you can allege appropriately, and then take that to, here are the defendants that are applied. And if you want to make the argument that you already have, that all of these defendants are, that at least it's clear what you're tracking from plaintiff to defendant. That is totally all over the place in this complaint. That you have to dance around all of it to put it all together in what you claim is a very easy case.

*See* Declaration of Kamran B. Ahmadian, ¶ 2, Exh. H, December 12, 2025 Hearing Tr. at 32:15-21; 59:15-25. The Court also cautioned Plaintiffs not to expand the pleading, emphasizing that more facts do not justify more pages. *Id.* at 40:5-9 ("But the amendment isn't going to be [a] 140-page complaint, I will tell you that. I mean, ***more facts doesn't mean more pages***—it means more facts.") (emph. added).

Plaintiffs ignored this guidance. The First Amended Class Action Complaint ("FAC") (improperly labeled as a second amended class action complaint) ***adds nearly 30 more pages*** and still fails to cure any of the fundamental deficiencies previously identified by the Court. Plaintiffs do not streamline their allegations or clarify which Plaintiffs assert which claims against which Defendants. Instead, they continue to challenge Defendants' publicly accessible, free Websites—

[2] Benjamin Paul de Ayora, Christine Wiley, Mikhail Gershzon, and George Nino are referred collectively herein as "Plaintiffs". And Inspire Brands, Inc. ("Inspire Brands"), Arby's Restaurant Group, Inc. ("Arby's"), Jimmy John's Franchisor SPV, LLC ("Jimmy John's"), Sonic Industries Services, LLC ("Sonic"), and Dunkin' Brands, Inc.'s ("Dunkin") are referred collectively herein as "Defendants".

platforms designed to help users locate restaurant locations, browse menus, place online orders, and enroll in rewards programs—using inflammatory rhetoric unsupported by meaningful factual allegations.

The FAC still provides almost no detail about *Plaintiffs' actual experiences* with the Websites. Although they now include boilerplate statements asserting that each Plaintiff visited a Website, viewed a cookie banner, and selected "Decline," they omit the most basic facts necessary to state a claim. Plaintiffs do not allege ***which*** pages they viewed, or ***what***—if any—information they entered. Nor do they allege what devices or browsers they used, their cookie or privacy settings, whether any cookies were installed or triggered ***after*** their selections, or what "personal information" or "private communications" were supposedly transmitted. Plaintiffs also fail to identify any collection of "dialing, routing, addressing, or signaling information," as CIPA's pen-register provision requires. These pleading failures are fatal under any pleading standard.

And the only facts Plaintiffs actually added regarding their visit to the Websites—select dates on which Plaintiffs allegedly visited select Websites—only confirm that certain claims based on those visits are time-barred.

Finally, the FAC's new factual allegations make clear that Plaintiffs lack standing under the Ninth Circuit's decision in *Popa v. Microsoft*. None of the information Plaintiffs allege was shared with third parties constitutes "private information." Under *Popa*, Plaintiffs therefore lack standing to pursue their claims, and dismissal is required.

Accordingly, Defendants respectfully request that the Court dismiss Plaintiffs' FAC in its entirety without leave to amend.

## II. STATEMENT OF ISSUES TO BE DECIDED

1. Do Plaintiffs allege an injury-in-fact to establish Article III or statutory standing?
2. Do Plaintiffs plead fraud, deceit, and/or misrepresentation with sufficient particularity as required under Rule 9(b)?
3. Do Plaintiffs plausibly allege each cause of action against Defendants?

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## III. FACTUAL BACKGROUND[3]

### A. Defendants Lawfully Use Third-Party Cookies and Sufficiently Notify Visitors About Their Privacy Practices

The basic facts of the FAC are simple and virtually identical to/unchanged from Plaintiffs' initial complaint. Inspire Brands is a multi-brand restaurant company whose portfolio includes Arby's, Dunkin', Jimmy John's, and Sonic restaurants, each of which independently owns and operates its own website ("Website(s)"). The precise features of each Website vary, but in general, they allow visitors to find their nearest restaurant location, view the current and seasonal menu, place online orders, and join rewards programs. Like virtually all companies, Defendants embed first-party and third-party code on their Websites for analytics, website functionality, security, advertising, and marketing purposes. *See* FAC ¶¶ 42-44. This code may deploy additional small text files of code, referred to as "cookies," that website servers may cause to be placed on an Internet user's browser. Cookies can perform a variety of functions such as helping websites operate effectively and assist website owners to personalize advertisements. Internet browsers (i.e., Chrome, Edge, Safari) and certain privacy focused add-ons (like uBlock Origin or "Incognito Mode") contain settings that users can set to ***automatically accept*** all or only certain cookies, and also to ***automatically delete*** the browser's cookie cache at the end of the browsing session, daily, weekly, monthly (or whenever the system is rebooted), or on-demand by the user. And cookies, including those at issue here, have an expiration date, which can vary from as soon as the browsing session ends to several years after the visit.

Starting in January 2023, although ***not required by law***, Defendants voluntarily began the roll out of a cookie management tool—including a "cookie banner" pop-up notification—to promote transparency and offer users a simple, low-burden way to opt out of certain third-party technologies used on their Websites. This was not done uniformly—e.g., the "go live" date for each Websites' cookie banner varies, the updates to code vary from banner to banner, and the

[3] As this Court already is familiar with the factual background, Defendants provide an abbreviated version of the facts, focusing on Plaintiffs' factual interactions with the Websites that this Court previously found to be deficient.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

cookie consent tool was updated for each Website at various times.[4] The FAC contains ***undated*** screenshots of the cookie banners on the Websites, and Plaintiffs do not allege they took these screenshots during their visit; instead, they were taken at an ***unidentified*** date and time, by an ***unidentified*** "Website user." *Id.* ¶¶ 1, 46, 59, 72, 85, 98. As depicted, Defendants' cookie banners provide a conspicuous link to each respective "Privacy Policy" and a link to Defendants' "Cookie Settings." *See id*. Although Plaintiffs now allege they ***and*** other ***unidentified*** Website users are presented with cookie banners, they still do not allege what the banners looked like on the Websites they encountered at the time they encountered them. *See id.* For example, Plaintiff Nino claims he visited the Arby's Website as early as 2021, yet fails to explain whether a banner was presented during this visit—which Plaintiffs cannot plausibly allege given that the cookie banners were not implemented until January 2023—and if so, what the banner looked like, other than pointing to the ***undated*** screenshot taken by ***unidentified*** user in Paragraph 46. *See id.* ¶ 205.

But even in the screenshots depicted in the FAC, Defendants' cookie banners provide conspicuous links to each respective "Privacy Policy" and to Defendants' "Cookie Settings." *Id.* ¶¶ 1, 46, 59, 72, 85, 98. The linked Privacy Policy informs visitors that Defendants use cookies on the Websites and informs them of the categories of information Defendants may collect, how it is collected, how it may be shared, and how it may be used. *See id.* ¶¶ 58, 71, 84, 97; *see also* Request for Judicial Notice ("RJN"), Exhs. A-E. Nowhere on the cookie banners or the Privacy Policies do Defendants state that they will not place (or have not already placed) cookies on a visitor's device, or that they will delete any cookies already placed on a visitor's device. *See* RJN, Exhs. A-E. And nowhere on the cookie banners do Defendants state that a visitor can decline other categories of cookies, such as essential cookies. *See id.*

### B. <u>Plaintiffs' Allegations About Their Own Experiences Still Lack Basic and Necessary Facts to Survive</u>

Despite spanning nearly 100 pages, the FAC still fails to allege any substantive facts

[4] For example, a cookie banner was first added to one of the Websites (Arby's) in January 2023, whereas a cookie banner was not added to the Jimmy John's website until ten months later. Additionally, Defendants transitioned to a different cookie consent tool starting in September 2024, however, several of the Websites were not fully converted until December 2024.





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

describing Plaintiffs' own experiences or interactions with the Websites.

Plaintiff De Ayora:

Plaintiff De Ayora alleges he visited four of the Websites—Arby's, Baskin Robbins, Dunkin, and Jimmy John's—"multiple times between 2021 and May 2023." FAC ¶¶ 170-75. Yet a cookie banner ***did not exist*** on these Websites for *at least* half that period. *See*, *supra*, at 4 n 5. Further, Plaintiff De Ayora does not (i) identify the device(s) or browser(s) he used to visit the Websites, (ii) state whether his cookie settings were set to automatically accept some or all cookies and/or automatically delete cookies at some discrete point in time, or (iii) allege that he clicked and viewed the "Privacy Policy" conspicuously linked on each Website's cookie banner. *See generally* FAC. Other than asserting that he clicked the cookie banner, De Ayora does not describe with any specificity the actions he took on any Website. *See id.* ¶¶ 176-79.

Plaintiff De Ayora does not allege which pages he viewed, how long he browsed, whether he made a purchase, or whether he entered any information—such as his name, email address, or other data—into any field. *See generally id.* Nor does he allege that he used a search function or transmitted any messages or communications through any Website. *Id.* He likewise fails to allege what cookies were supposedly placed or triggered after he made his privacy selections, or what information any cookie allegedly collected. *Id.*

Finally, Plaintiff De Ayora does not allege that he suffered any concrete harm from any alleged misrepresentation. He alleges only that he would not have visited the free Websites or "would have interacted with the Websites differently." *Id.* ¶ 180. In other words, De Ayora alleges no facts showing any loss in the value of his personal information.

Plaintiff Wiley:

Plaintiff Wiley alleges that she visited three of the Websites—Jimmy John's, Baskin Robbins, and Dunkin—in January 2025, April 2025, and September 2024, respectively. *Id.* ¶¶ 184-86. And the only specific date of her visit to Jimmy John's Website occurred well after July 22, 2023, when she first learned of Defendants' alleged privacy violations from her counsel. *See id.* ¶ 222. The remainder of her allegations merely echo those of Plaintiff De Ayora and fail to provide comparable details regarding any user content she may have entered, her device and browser





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

settings, browsing sessions, cookies, or any alleged injury.

Plaintiffs Gershzon and Nino:

Similarly, Plaintiff Gershzon, who allegedly visited Baskin Robbins and Arby's Websites (*see id.* ¶¶ 195-96), and Plaintiff Nino, who claims to have visited all of the Websites (*see id.* ¶¶ 205-09), offer ***no*** specific facts about their respective visits. Notably, Plaintiff Nino alleges he visited Arby's Website in August and/or September 2021, when a cookie banner did not exist on the Website, and not a single other specific date of his purported visit to Arby's Website.

## IV. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), the Court must dismiss any action that lacks subject matter jurisdiction. At the core of the Court's jurisdictional inquiry is Article III's standing requirement. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-60 (1992). The "'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (quoting *Lujan*, 504 U.S. at 560-61). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* Where, as here, a case is "at the pleading stage, the plaintiff must clearly allege facts demonstrating[] each element." *Ferry v. DF Growth REIT*, 2024 WL 5011949, at *3 (S.D. Cal. Dec. 6, 2024) (cit. omitted).

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that threadbare allegations and conclusory statements are insufficient to withstand scrutiny). Pleadings that contain "no more than conclusions … are not entitled to the assumption of truth" that would be otherwise applicable on a motion to dismiss. *Iqbal*, 556 U.S. at 679. Thus, the Court need not "accept as true… allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

## V. LEGAL ARGUMENT

### A. Plaintiffs Still Fail to Allege Concrete Injury to Establish Article III Standing

#### 1. Plaintiffs Do Not Allege Sufficient Facts Regarding Defendant Inspire Brands, Inc.

To establish Article III standing, Plaintiffs must allege facts connecting each defendant to the harm they claim to have suffered. *See Holland-Hewitt v. Allstate Life Ins. Co.*, 343 F.R.D. 154, 171 (E.D. Cal. 2022) ("[A]bsent a showing that she was directly injured by [defendant], Plaintiff does not have the requisite standing to sue [defendant].") (citing *Henry v. Circus Casinos*, 223 F.R.D. 541, 544 (D. Nev. 2004) ("[T]o establish Article III standing in a class action ... for every named defendant there [must] be at least one named plaintiff who can assert a claim directly against that defendant.")). The Court previously found Plaintiffs failed to allege sufficient facts to plausibly implicate Inspire Brands or its Website, www.inspirebrands.com, because no named Plaintiff alleged ever visiting Inspire's Website or reading the privacy statements on the Websites of the other Defendants that supposedly include Inspire Brands. *See* Order Granting Defendants' Motion to Dismiss [Dkt. No. 53] (the "Order") at 2.

Plaintiffs' newly added allegations cannot save their claims against Inspire Brands. The FAC now alleges Inspire Brands provides and manages "shared technology infrastructure and services related to user data collection and privacy compliance," meaning Inspire Brands necessarily oversees and administers privacy practices across all the Websites. *See* FAC ¶ 11. But this is insufficient to confer standing as to Inspire Brands. *See Gustavson v. Wrigley Sales Co.,* 961 F. Supp. 2d 1100, 1132-33 (N.D. Cal. 2013) (Koh, J.) (dismissing parent company where the complaint alleges only an existence of a parent-subsidiary relationship, without specifying how, if at all, the parent controlled or had any role in subsidiary's production and marketing process).

As the Court previously noted, *see* Order at 2, this case is distinguishable from *Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025), in which the Ninth Circuit Court permitted claims against a parent and its subsidiaries because the complaint specifically "describe[d] each company's role in the alleged data collection and monetization scheme." *Id.* at 762. Notably, the plaintiff in *Briskin* alleged the ***parent itself*** collected the personal data and characterized its subsidiary as

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

"subprocessor of user data." *See id.* at 748. Here, by contrast, Plaintiffs do not allege that Inspire Brands itself collects any personal data, or that its subsidiary Defendants act "as a subprocessor of user data" to impute any unlawful collection and use of personal data on Inspire Brands. *See id.* Instead, Plaintiffs merely reiterate generic descriptions of Inspire Brands' corporate structure and the relationships among the various entity Defendants without alleging ***facts*** showing that Inspire Brands plays any role in the data collection or monetization practices of the individual Websites.

Although Plaintiffs additionally allege that the privacy policies for each of the Websites direct users with questions or requests related to privacy to an Inspired-controlled email address, that allegation does not—and cannot—confer standing. At most, it demonstrates that Inspire Brands and its subsidiaries work as a "collective scale of the enterprise," which is insufficient to confer standing. *See* FAC ¶ 11 (https://inspirebrands.com/about-us/, incorporated by reference). Absent facts specifically showing how Inspire Brands controls the data allegedly collected from each subsidiary's Website, or otherwise participates in the data collection process, Plaintiffs have not plausibly alleged that Inspire Brands engaged in the misconduct alleged in the FAC. Accordingly, Inspire Brands must be dismissed. *See Gustavson*, 961 F. Supp. 2d at 1133.

2. Plaintiffs Have Not Alleged a Concrete Privacy Injury Sufficient for Standing.

Plaintiffs still also fail to allege any concrete privacy injury sufficient to establish Article III standing. As the Court previously noted, Plaintiffs' standing depends on whether "suffered an injury in fact that is concrete, particularized, and actual or imminent." *See* Order 3 (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)); *see also Popa v. Microsoft Corp.*, 153 F.4th 784, 793 (9th Cir. 2025) (confirming *Spokeo* and *Transunion* require "a plaintiff to demonstrate more than just a statutory violation when evaluating whether a plaintiff has alleged a concrete injury."). A harm is "concrete" ***only if*** the injury bears a "close relationship" to a harm "traditionally" recognized as providing a basis for a lawsuit. *TransUnion,* 594 U.S. at 426. Naked assertions of harm that are "traditionally recognized as providing a basis for American courts" are not enough. *Id.* at 417. Thus, to establish Article III standing, Plaintiffs must "identify the specific personal information" that "implicates a protectable privacy interest" that was intercepted by or

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

improperly disclosed to a third party. *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *1 (C.D. Cal. Apr. 5, 2023) (finding lack of Article III standing where "[p]laintiff does not identify any personal or sensitive information she disclosed on the website"); *Popa,* F.4th at 793; *Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) ("Plaintiff has failed to adequately allege that she suffered any concrete harm that bears a close relationship to the right to control personal information, meaning Plaintiff has failed to establish an injury in fact.").

Defendants recognize that the Court previously found that Plaintiffs sufficiently alleged a concrete privacy injury and therefore Article III standing. *See* Order at 5. However, with the benefit of the Court's guidance and the updated allegations regarding their own limited interactions with the Websites, Defendants respectfully submit that further consideration of Article III standing in light of *Popa* is warranted.

In its prior Order, the Court distinguished this case from *Popa* on the grounds that referring URLs reveal "historical data and information about where Plaintiffs came from," which the Court found to be beyond what would be observable to a store clerk tasked with monitoring shoppers. Order at 4. But a referring URL does not operate in that manner. As Plaintiffs themselves concede, a referring URL identifies ***only*** the immediately preceding webpage. *See* FAC ¶ 40 ("**Referring URL**: Information about the website that referred the user to the Websites."). It does ***not*** track a chain of prior websites or any pages viewed before the user's most recent navigation. In that sense, it is no different from a store clerk noting that a shopper walked in from the neighboring storefront in a strip mall, or observing a shopper move from one aisle to the next. The clerk sees only the customer's immediate prior location—not every store, aisle, or activity that preceded it.

Because Plaintiffs identify no collection of sensitive information in the FAC, their allegations mirror those found insufficient in *Popa,* where the Ninth Circuit emphasized that no "embarrassing, invasive, or otherwise private information" was allegedly captured. *Popa*, 153 F.4th at 791. Merely labeling information as "private" in the FAC does not make it so. Plaintiffs still fail to explain (nor can they) how browsing through quick-serve restaurant websites, which are arguably even more innocuous than the pet store website at issue in *Popa*, implicates any egregious or protected privacy interest. *See id.* (distinguishing generalized non-sensitive information

collected by a pet store website with allegations against websites that could potentially collect sensitive "medical or financial information."). Nor do they allege they input ***any*** content during their visits at all, let alone specific content that could give rise to a concrete privacy injury.

Plaintiffs rely on alleged misrepresentations to assert a reasonable expectation of privacy in the data they claim Defendants collected and transmitted—a theory the Court previously identified as central to its analysis. But Defendants are unaware of any authority holding that an alleged affirmative misrepresentation about tracking, *standing alone*, is sufficient to create a reasonable expectation of privacy. To the contrary, the cases the Court relied on in its prior Order evaluated both (1) the amount, sensitivity, or nature of the alleged data collection and (2) the alleged misrepresentation. *See Hammerling v. Google*, 615 F. Supp. 3d 1069, 1089-90 (N.D. Cal. 2022) (Breyer, J.) (Plaintiffs have plausibly alleged a reasonable expectation of privacy because Google allegedly collected ***potentially sensitive data*** while users might not expect that Google was tracking them.") (emph. added); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 603, 605 (9th Cir. 2020) ("*In re Facebook*") (finding reasonable expectation of privacy based on Facebook's alleged collection of "an ***enormous amount*** of individualized data" constituting an individual's "comprehensive browsing history" by collecting "URLs of third-party websites … ***operating outside of Facebook's platform***," including sensitive data about plaintiff's visits to sensitive or embarrassing websites) (emph. added); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 629 (N.D. Cal. 2021) (Koh, J.) (considering "the amount of data collected, the sensitivity of the data collected, and the nature of the data collection" and "Google's representations"). Consistent with these cases, *Popa* likewise assessed both the collection mechanism ***and*** the type of data collected in concluding that no privacy injury occurred. *Popa*, 153 F.4th at 786, 791.

Here, only a purported misrepresentation has been alleged—and even that allegation is thin. The FAC does not allege any ***facts*** showing that the amount, sensitivity, and/or nature of the data collected here, and how it was collected, has in any way resulted in the supposed "egregious privacy violations." Because Plaintiffs allege no collection of private or sensitive information, the data-collection practices described in the FAC—even if undertaken for advertising purposes—are analogous to a department store tracking customer foot traffic or a grocery store linking purchases

to phone numbers. Courts routinely recognize such conduct as ordinary commercial behavior that is not actionable under common law and is therefore insufficient to establish any cognizable privacy injury. *See id.* at 791; *see also Khamooshi v. Politico*, 2025 WL 2822879, at *1 (N.D. Cal. Oct. 2, 2025) (Kim, M.J.) (relying on *Popa* in holding plaintiffs have failed to allege a concrete privacy injury sufficient to establish Article III standing). This interpretation of *Popa* also aligns with California law, which similarly treats routine commercial data practices as non-egregious. *See, e.g., Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011) ("Here, the supposed invasion of privacy essentially consisted of [Defendant] obtaining plaintiff's address without his knowledge or permission and using it to mail him coupons and other advertisements. ***This conduct is not an egregious breach of social norms, but routine commercial behavior***.") (emph. added). Under this reading of *Popa*, Plaintiffs do not and cannot allege a concrete injury and therefore lack standing to assert their claims against Defendants.

3. Plaintiffs Have Not Alleged a Loss of Value Injury

In its prior Order, the Court did not reach Defendants' argument that Plaintiffs failed to allege an injury based on diminution in the value of their personal information because it found a privacy injury sufficient to confer standing. If the Court now determines that Plaintiffs have not plausibly alleged a privacy injury, Plaintiffs' alternative "loss of value" theory likewise cannot establish standing.

To plead a viable loss-of-value theory, Plaintiffs must allege what economic value the allegedly transmitted information held to them and how Defendants' conduct diminished that value. Plaintiffs do neither. *See, e.g.*, *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1032 (N.D. Cal. 2012) (Koh, J.) (Plaintiffs failed to allege facts showing how he was "foreclosed from capitalizing on the value of his personal data."). Here, Plaintiffs merely assert, in conclusory fashion, that their information diminished in value. *See* FAC ¶ 275. They do not allege any facts showing that ***their own*** information had independent economic value or that any alleged loss of control over that information caused them ***personal economic harm***. Courts consistently reject the notion that a generalized loss of value or control over unspecified personal information, without more, suffices to establish a cognizable injury. *See, e.g.*, *Hubbard v. Google LLC*, 2024 WL 3302066, at *9 (N.D.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Cal. July 1, 2024) (Van Keulen, M.J.) (granting motion to dismiss for lack of injury where plaintiffs did not allege facts explaining ***how*** defendant's collection and use of plaintiffs' information reduced the value of that information).

It is irrelevant that Plaintiffs allege Defendants ***can*** monetize collected data or increase revenue from it, because Plaintiffs do not allege that ***they themselves*** sought—or ever intended—to monetize their data. *See Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 603 (N.D. Cal. 2021) (Tigar, J.) ("That the information has external value, but no economic value to plaintiff, cannot serve to establish that plaintiff has personally lost money or property."); *Shah v. Cap. One Fin. Corp.*, 2025 WL 714252, at *7 (N.D. Cal. Mar. 3, 2025) (Thompson, J.) ("[E]ven if a company made money off of the sharing or use of a plaintiff's information, that company's gain of money does not equal a plaintiff's loss of money or property"). Indeed, the FAC itself confirms that Plaintiffs had no interest in selling their data at all. Plaintiffs allege that the information at issue is so private and personal that they suffered injury merely because third parties purportedly learned it—an allegation fundamentally incompatible with any claim that the information had personal economic value to Plaintiffs.

### B. <u>Plaintiffs Fail to Meet the Heightened Pleading Standard of Rule 9(b)</u>

All of Plaintiffs' claims are subject to—and fail to satisfy—the heightened pleading standard under Rule 9(b) for claims that "sound in fraud." *See* Fed. R. Civ. P. 9(b). As set out in the opening allegations of the FAC, Plaintiffs' claims all arise from the alleged affirmative misrepresentation of Defendants: purportedly telling Website users they could entirely avoid tracking and data sharing while browsing the Websites and purposefully not honoring users' wishes. *See, e.g.*, FAC ¶¶ 2, 5, 181. As the Court noted, where, as here, a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct," the pleaded claims "sound in fraud" and are each subject to the heightened pleading requirements of Rule 9(b). Order at 6-7; *see also Vess Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003). The Court found that Plaintiffs' initial complaint had not provided Defendants with adequate notice of the "when" or "where" at issue here and, on that basis, dismissed all of Plaintiffs' claims for failure to comply with Rule 9(b). *See* Order at 6-8.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Despite the Court's clear guidance and a full opportunity to cure, Plaintiffs' FAC still falls well short of Rule 9(b)'s requirement to "state with particularity the circumstances constituting fraud or mistake." *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 744 (N.D. Cal. 2019) (Orrick, J.). Specificity is especially critical because the content and timing is relevant not just to any standing inquiry, but also to the plausibility of the underlying claims. Although Plaintiffs attempt to cure this defect, they still fail to give Defendants notice of the exact fraudulent conduct at issue. For example, Plaintiff Nino alleges that he visited Baskin Robbins, Dunkin, and Jimmy John's Websites "multiple times between 2023 and 2024." FAC ¶¶ 206-09. Similarly, Plaintiff De Ayora alleges he visited all Websites, other than Inspire Brand's, "multiple times between 2021 and May 2023." These broad time ranges do not identify when they allegedly encountered any alleged misrepresentation.

This lack of specificity is especially problematic because the Websites—and their cookie banners—changed over time. The cookie banners were implemented and updated at different times across individual sites, and the Websites' code, content, and features are dynamic rather than fixed. Plaintiff Nino's allegations regarding the Arby's Website illustrates the problem. Plaintiff Nino alleges he visited the site frequently, including in August or September of 2021. *See id.* ¶ 205. But the Arby's website did not have a cookie banner until January 2023. Although Defendants already raised this point in their initial Motion to Dismiss (*see* Dkt. No. 45, at 3 n. 2), the FAC offers no allegation that Plaintiff Nino accessed Arby's Website at any point ***after*** the banner's introduction. Likewise, Plaintiff De Ayora's alleged visitation dates span over more than two years—a period during which a cookie banner may not have existed at all. Plaintiffs cannot plausibly base a claim predicated on an alleged misrepresentation in a banner that did not exist at the time of their visits.

Plaintiffs' allegations also fail where visits allegedly occurred ***after*** Plaintiffs already knew of the purported misrepresentation. Plaintiff Wiley alleges she visited Dunkin's Website in September 2024, and Baskin Robins and Jimmy John's Websites in 2025—long after she learned about the alleged collection on July 22, 2023. *See* FAC ¶ 222. Plaintiff Wiley does not allege specifically "when" she was first deceived or how she relied on any misrepresentation in continuing to browse Defendants' Websites. Absent specific, plausible allegations identifying "when"

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Plaintiffs visited the Websites of after the banner's implementation when they allegedly saw and relied on those banners, Defendants cannot meaningfully assess or respond to Plaintiffs' claims. Rule 9(b) requires more. *See, e.g., Boris v. Wal-Mart Stores, Inc.*, 35 F. Supp. 3d 1163, 1174-75 (C.D. Cal. 2014), *aff'd*, 649 F. App'x 424 (9th Cir. 2016) (finding Rule 9(b) not satisfied where the plaintiff failed to identify when he viewed Wal-Mart's website or relied on its contents, which were subject to change over time).

**C. <u>Plaintiffs' Common Law Privacy Claims Fail (Counts I and II)</u>**

The analysis for an invasion of privacy and intrusion upon seclusion mirrors the standing analysis.[5] *See*, *supra*, Section V.A.2; *In re Facebook*, 956 F.3d at 601; *see also Popa*, F.4th at 791. To determine whether a plaintiff sufficiently alleges these claims, courts consider whether (1) there exists a reasonable expectation of privacy and (2) the intrusion was highly offensive. *In re Facebook.*, 956 F.3d at 601; *see also Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009) ("[T]he right to privacy in the California Constitution sets standards similar to the common law tort of intrusion."). It comes as no surprise that the result is the same for both inquiries; Plaintiffs fail to establish an actionable invasion of privacy claim—and cannot do so—given the innocuous nature of the Websites and their limited interactions.

Plaintiffs have not established that they or any other Website user possessed a reasonable expectation of privacy as to the information collected. *See*, *supra*, Section V.A.2. Even assuming that the third-party cookies at issue collected the categories of information that Plaintiffs claims—such as IP addresses, page visits, and general "browsing activity" (they did not)—that information cannot identify any Plaintiff as a particular Website visitor. Courts routinely reject privacy claims based on this type of non-identifying, non-sensitive data. *See Jones v. Peloton Interactive, Inc.*, 720 F. Supp. 3d 940, 950-51 (S.D. Cal. 2024) (granting motion to dismiss finding no legally protected privacy interest in the contents of internet-connected chats where plaintiff did not allege she shared sensitive and confidential information and instead vaguely alleged a chat ***could*** include private or sensitive information). Yet Plaintiffs again squander an opportunity to cure this fatal

[5] Defendants renew their challenge to these claims given that Plaintiffs have failed to meet Rule 9(b). *See* Order at 9-11.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

defect by asserting a misrepresentation without explaining how any allegedly collected information is private or sensitive in any meaningful way. The FAC adds no facts showing that Plaintiffs clicked on, entered, searched for, or transmitted any information that could plausibly be embarrassing, confidential, or personal. Without such allegations, Plaintiffs cannot establish a legally protected privacy interest, and their claims fail as a matter of law.

Additionally, any "data collection and disclosure to third parties" was merely a "'routine commercial behavior' [that] is not a 'highly offensive' intrusion of privacy." *Hammerling*, 615 F. Supp. 3d at 1090 (collecting cases). Again, Plaintiffs cannot save their privacy claims by cloaking them in purported (***and unspecified***) fraud or false statements. *See id.* (finding plaintiffs failed to plead "highly offensive" invasion of privacy because Google's representation regarding data collection was at most ambiguous, and plaintiffs did not allege how Google could collect or collected private information). The data collection practices alleged in the FAC—even if conducted for advertising purposes—are analogous to a department store tracking foot traffic or a grocery store linking purchase habits to customer phone numbers. Such conduct is routine and not actionable under common law. *See* Section V.A.2; *Popa*, F.4th at 791 (rejecting claims that defendant's monitoring of a ***pet store website*** was "highly offensive" holding that its "seems most similar to a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales."). Indeed, courts have declined to find an invasion of privacy even where far more sensitive data was allegedly collected and disclosed. *See, e.g., Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1128 (N.D. Cal. 2008) (Conti, J.), *aff'd*, 380 F. App'x 689 (9th Cir. 2010) (holding that alleged disclosure of Social Security numbers "do[es] not constitute an egregious breach" of social norms).

**D. Plaintiffs' CIPA Claims Fails (Count III and IV)**

1. Plaintiff De Ayora and Nino's CIPA Claims Are Time-Barred

As the Court noted in its prior Order, Defendants may raise a defense of statute of limitations by a motion to dismiss when "the running of the statute is apparent on the face of the complaint." Order at 12 (citing *A.B. by & Through Turner v. Google LLC*, 737 F. Supp. 3d 869, 877-78 (N.D. Cal. 2024) (Pitts, J.)); *see also Holt v. Cnty. of Orange*, 91 F. 4th 1013, 1017 (9th Cir. 2024). CIPA

imposes a statute of limitations of one year, which begins to run at the time of the alleged collection. *See Brodsky v. Apple, Inc.*, 445 F. Supp. 3d 110, 134 (N.D. Cal. 2020) (Koh, J); Civ. Proc. Code § 340.

In the initial complaint, Plaintiffs offered only vague allegations that they visited the Websites "on one or more occasions during the last four years." *See* Complaint (Dkt. No. 35) ¶¶ 106 (Plaintiff de Ayora); 114 (Plaintiff Wiley); 123 (Plaintiff Gershzon); 132 (Plaintiff Nino). This time, however, Plaintiffs plead themselves ***out*** of their claims by alleging more specific visit dates. The Court should not ignore the specific dates Plaintiffs now allege simply because Plaintiffs offered them in an attempt to revive previously dismissed claims. *See Tapia Carmona v. Cnty. of San Mateo*, 2019 WL 4345973, at *9 (N.D. Cal. Sept. 12, 2019) (Koh, J.) ("General, conclusory allegations need not be credit … when they are belied by more specific allegations of the complaint.") (quoting *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995); *see also Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007) ("Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations.").

Plaintiff Nino affirmatively pleads "ingredients of an impenetrable defense" as to his CIPA claims by alleging he visited Arby's Website around August and/or September 2021. *See* FAC ¶ 205. Accordingly, the one-year statute of limitations for Plaintiff Nino's CIPA claim against Arby's expired one year later in August or September 2022—***years before*** August 2025 when the initial complaint was filed. Plaintiff Nino also alleges he visited Baskin Robbins, Dunkin, and Jimmy John's Websites multiple times "between 2023 and 2024." Even assuming the first visit to these Websites occurred at the end of 2023, the one-year statute of limitations for CIPA expired at the end of 2024—***months before*** August 2025. Although Plaintiffs attempt to hedge by characterizing these dates as merely illustrative, the FAC contains no factually specific interactions between Plaintiff Nino and the Websites outside of these identified dates. Accordingly, Plaintiff Nino's CIPA claims as to all of his visits to Defendants' Websites are time-barred.

Plaintiff De Ayora's CIPA claims against Baskin Robbins, Dunkin', and Jimmy John's are also time-barred. The Court previously concluded that equitable tolling applies to Plaintiff De

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Ayora's CIPA claims against Inspire Brands and Arby's because his arbitration demand named only those entities. Order at 10. The FAC does not allege new facts showing timely notice to the remaining Defendants. Instead, Plaintiff De Ayora now alleges that he visited the Baskin Robbins, Dunkin, Sonic, and Jimmy John's Websites multiple times between 2021 and May 2023—confirming that the one-year statute of limitations expired no later than ***May 2024***. His CIPA claims against those Defendants are therefore time-barred and should be dismissed.

To the extent Plaintiff Nino and De Ayora's unjust enrichment claims are premised on these untimely CIPA claims, they also fail. *See Al-Ahmed v. Twitter, Inc.,* 648 F. Supp. 3d 1140, 1155 n.1 (N.D. Cal. 2023) (Chen, J.) (the statutes of limitations for unjust enrichment, promissory estoppel, and civil conspiracy are based on the underlying wrong).

2. <u>Plaintiffs' CIPA §631(a) Wiretapping Claim Fails</u>

California Penal Code section 631(a) prohibits a defendant from engaging in one of three activities: (1) "intentional wiretapping," (2) "willfully attempting to learn the contents or meaning of a communication in transit over a wire," or (3) using or "attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." Section 631(a) also includes a fourth basis for liability, for anyone "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the other three bases for liability." Cal. Pen. Code § 631(a). And because CIPA is a penal statute, Plaintiffs must allege scienter. *See Doe I v. Google LLC*, 741 F. Supp. 3d 828, 844 (Chhabria, J.) ("CIPA liability only extends to willful or intentional conduct."). Although the FAC is not entirely clear, Plaintiffs appear to assert their CIPA wiretapping claim under the fourth aiding and abetting prong. *See* FAC ¶ 269. To establish liability under this theory, Plaintiffs must first plausibly allege that a third party committed an underlying violation of one of the first three clauses of Section 631(a). *See Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) (Alsup, J.) ("An aiding-and-abetting defendant's liability is based entirely on whether [a third party] violated Section 631(a) in some way."). Here, Plaintiffs fail to allege a predicate violation under Section 631(a).

The second clause of Section 631(a) is violated only where a third party "***reads, or attempts***

***to read, or to learn the contents*** or meaning of any message, report, or communication ***while the same is in transit***." *Jones v. Tonal Sys., Inc.*, 2024 WL 4357558, at *4 (S.D. Cal. Sept. 30, 2024) (emph. added); *see also Lau v. Gen Digit. Inc.*, 2024 WL 1880161, at *1 (N.D. Cal. Apr. 3, 2024) (Lin, J.) (wiretapping concerns "the unauthorized *interception* of *communications*, not any subsequent storage and/or use") (emph. added). The contemporaneity requirement is a threshold issue in determining whether the second clause can be applied to a purported violation. *See Jones*, 2024 WL 4357558, at *6-7. Put simply, the alleged third-party eavesdropper must: (1) read or learn the content of communications; (2) while it is *en route* to the intended recipient. *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). Plaintiffs fail to allege both essential elements.

*First*, Plaintiffs fail to plausibly allege that any communication was intercepted while "in transit." As the Ninth Circuit has made clear, interception under Section 631(a) requires acquisition of a communication ***during transmission***. *See Konop*, 302 F.3d at 878 ("This conclusion is consistent with the ordinary meaning of 'intercept,' which is 'to stop, seize, or interrupt in progress or course before arrival.'"). Accordingly, the Court provided clear guidance on the facts required to survive a pleading challenge. *See* Order at 15 ("But none of these paragraphs include…a description of 'how the software works or how the interception occurs.'"). Plaintiffs have failed to follow those instructions, and just like their original complaint, the FAC lacks key facts about any interception that occurred ***during the transmission*** of Plaintiffs' data.

While the FAC now adds an entire section purporting to explain how third parties allegedly intercepted user communications "while in transit" (FAC ¶¶ 152-63), these new allegations are insufficient. Plaintiffs concede that the third parties operate on data only ***after*** it is transmitted from the user's browser (*id.* ¶ 157), and that any reading and analysis of incoming information occurs "immediately upon receipt" to validate or filter data (*id.* ¶ 155). Thus, under Plaintiffs' own allegations, third parties interpret information only when they receive it—***not*** while it is in transit. And Plaintiffs' repeated invocation of the term "intercept" or "real-time" cannot save this claim either. Courts have consistently held that such boilerplate allegations are insufficient. *See Rodriguez v. Google LLC*, 2022 WL 214552, at *1-2 (N.D. Cal. 2022) (Seeborg, C.J.) ("Using the

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible Google is intercepting their data in transit."); *Rosenow v. Facebook, Inc.*, 2020 WL 1984062, at *7 (S.D. Cal. 2020) (dismissing wiretap claim where allegations of interception "in transit" were conclusory); *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (dismissing wiretap claim because the "conclusory allegation that Vizio intercepted their electronic communications 'during transmission'" was only supported by "vague allegations about how Vizio's data collection occurs in real-time.").

*Second*, setting aside Plaintiffs' continued failure to plead interception in transit, their wiretapping claim fails for the independent reason that they do not allege transmitting ***any communications***, let alone communications with ***contents*** that could have been intercepted. *See Brodsky*, 445 F. Supp. 3d at 127 (Section 631 prohibits only the "unauthorized access of the contents of any communication."). The Court did not reach this separate defect in its prior Order, as the lack of allegations regarding interception in transit was dispositive. *See* Order at 15. Plaintiffs were nevertheless on notice of this defect from Defendants' initial motion to dismiss, and the FAC adds nothing to address it. The continued absence of any alleged transmitted communication is fatal to their claim.

Under CIPA, "contents" refers specifically to the intended message conveyed, not to metadata or technical details generated during transmission. *See In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Although Plaintiffs repeatedly assert that the allegedly transmitted data constitutes "Private Communications" and therefore qualifies as "content," *see* FAC ¶ 142, courts have consistently held that data such as browsing history, page views, and similar information constitutes unprotected record information, and not content. *See Brodsky*, 445 F. Supp. 3d at 127 (holding text messages are content, but "usernames, passwords, and geographic location information are not."); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021) (holding that "keystrokes, mouse clicks, pages viewed, and shipping and billing information ... [and] the date and time of the visit, the duration of the visit, Plaintiff's IP address, her location at the time of the visit, her browser type, and the operating system on her device" are not "content" under 631(a)).

Defendants do not dispute that some Courts have recognized that "website interactions," "user input data," "shopping behaviors," and potentially "referring URLs" ***could*** convey what users were searching for or what they wanted to do on Defendants' Websites and thus involve the "contents" of users' communications with their Websites. *See, e.g., Wiley v. Universal Music Grp., Inc.*, 2025 WL 3654085, at *7 (N.D. Cal. Dec. 17, 2025) (Pitts, J.). But even assuming such information could constitute "communications," Plaintiffs ***fail to allege that they personally entered any such information on any of Defendants' Websites***. While Plaintiffs repeatedly allege that Defendants enabled third parties to track the information of "Website users," they do not provide a single fact demonstrating how any Plaintiffs personally interacted with any of the Websites—such as entering search queries, names, demographic details, email addresses, locations, or payment information—on ***any*** Website. The FAC does not otherwise allege that, in interacting with Defendants' Websites, Plaintiffs personally engaged in any communications with the Websites whose content could have been intercepted. Thus, their generalized assertions are insufficient. *See* Fed. R. Civ. P. 9(b); *Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024) (dismissing Section 631(a) claim where plaintiffs alleged only that their "interactions" were intercepted, without identifying the contents of any communication).

Because Plaintiffs have failed to allege a viable violation of Section 631(a), their derivative aiding and abetting claim against Defendants necessarily fails. *See Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1003 (dismissing claim under Section 631(a)'s fourth clause where plaintiff failed to establish "underlying third-party violation" of preceding clauses).

Even if Plaintiffs did plausibly plead predicate violations for Clauses 2 and 3 (they do not), to state an aiding and abetting claim under CIPA, Plaintiffs must also plausibly allege that Defendants caused Plaintiffs' browsers to store third parties' cookies and to transmit information with "knowledge of the conduct that will violate the statute and a purpose of aiding, agreeing with, or employing the third party to commit those acts." *Smith v. YETI Coolers, LLC*, 2024 WL 4539578, at *4 (N.D. Cal. Oct. 21, 2024) (Lin, J.); *see also Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1019 (C.D. Cal. 2023) (dismissing CIPA complaint where plaintiff did "not allege facts demonstrating Defendant acted with the requisite knowledge or intent to aid and abet

[a third party's] purported CIPA violation."). Plaintiffs do not—and cannot—plausibly allege that Defendants knowingly deployed cookie technologies with the intent to violate CIPA. The technologies at issue, including Defendants' cookie-management tools, are standard, commercially available products offered by well-established companies such as Meta, Google, and Truyo. These tools serve legitimate business functions, including cookie-preference management, analytics, and advertising—not unlawful interception or surveillance. Plaintiffs' own allegations confirm this point. They acknowledge that Defendants deployed the cookies for ordinary commercial purposes, namely advertising and analytics. *See, e.g.*, FAC ¶ 44. Absent factual allegations showing that Defendants intended to intercept communications or knowingly assisted third parties in doing so, Plaintiffs fail to state an aiding-and-abetting claim under CIPA.

3. <u>Plaintiffs' CIPA Section 638.51 Pen Register Claim Fails</u>

CIPA also precludes "a person…[from] install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order." Cal. Pen. Code § 638.51(a). Under CIPA, a "pen register" is "a device or process that records or decodes dialing, routing, addressing, or signaling information, . . . but not the contents of a communication." Cal. Pen. Code § 638.50(b). Plaintiffs assert that third-party cookies and related software code qualify as pen register devices.

In construing a statute, "California courts 'determine the Legislature's intent so as to effectuate the law's purpose.'" *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1153 (N.D. Cal. 2025) (Pitts, J.) (quoting *Skidgel v. Cal. Unemp. Ins. Appeals Bd.*, 12 Cal. 5th 1, 14 (2021)). If the statutory terms remain ambiguous, California courts examine "extrinsic sources" and "select the construction that comports most closely with the apparent intent of the Legislature … and to avoid an interpretation that would lead to absurd consequences." *Day v. City of Fontana*, 25 Cal. 4th 268, 272 (2011). As the Court acknowledged, and as Judge Chhabria recently commented, CIPA's language is opaque. *See* Order at 15 (citing *Doe v. Eating Recovery Ctr. LLC*, No. 23-CV-05561, 2025 WL 2971989, at *1 (N.D. Cal. Oct. 17, 2025) ("The language of CIPA is a total mess.")). Indeed, there is significant ambiguity as to the application and scope of the definition of pen register and trap and trace device as defined in Penal Code section 638.50. Given that ambiguity, it is appropriate to examine extrinsic sources to adopt the interpretation that most





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

closely aligns with the Legislature's intent.

The legislative history indicates that CIPA's provisions ***do not*** concern the analytical tools employed here. The Legislative Counsel's Digest preceding the bill states that A.B. 929 "would clarify that any location information obtained... is limited to the information that can be determined from the ***telephone number***." RJN, Exh. F California Assembly Bill No. 929, California 2015-2016 Regular Session, at pg. 1. (emph. added). The bill does not mention IP addresses or other data. And, given that A.B. 929 was enacted in 2015, when the Internet and website tracking software were both known and widespread, Plaintiffs cannot plausibly argue that the Legislature was unaware of IP addresses or other internet communications when it passed the law. Specifically, the Legislature has expressly referenced "Internet" or "online" communications and services when extending protections beyond traditional telephonic technologies. For example, the Legislature added California Penal Code section 632.01 in 2017, extending the statute to "Internet Web sites and social media" and "the contents of a confidential communication with a health care provider …." *See* Cal. Pen. Code §632.01. When the Legislature has carefully employed a term in one place and has excluded in another, it should not be implied where excluded. *See Rodriguez v. Ink America Intn'l Grp. LLC*, 2025 WL 4034985 (Cal. Super. Dec. 10, 2025) (int. quot. and cit. omitted).

Additionally, pending legislation—Senate Bill 690—is confirmation from the Legislature that CIPA was never intended to regulate the routine website-tracking technologies at issue here. In explaining the purpose of S.B. 690, Democratic Senator Anna Caballero stated:

> I rise today to present SB 690, a Bill to protect California businesses from ***a wave of abusive and predatory lawsuits that are threatening jobs, innovation, and the very ability to do business in our state***… California already has the strongest privacy law in the nation, the California Consumer Protection Act, or CCPA. Back in 2018, this Legislature passed CCPA to give consumers real control over their data using a modern opt out approach. ***Suing under CIPA for activity that's already governed by the CCPA goes against legislative intent, creates confusion, punishes compliance, and doesn't make Californians any safer.*** A private settlement doesn't create stronger protections for consumer or clearer rules for business.

RJN, Exh. G, *Assembly Public Safety Committee*, Tuesday, July 1, 2025, California State Assembly (emph. added). This legislative intent leaves no room for doubt—CIPA was never meant to apply





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

to online tracking or analytics tools. Instead, the Legislature deliberately chose to regulate internet-based data collection through the California Consumer Privacy Act ("CCPA") and the California Privacy Rights Act ("CPRA"), which establish comprehensive, modern, and technology-specific rights and compliance obligations. Allowing plaintiffs to shoehorn those same tools into CIPA's pen-register provisions would directly contradict legislative intent and produce precisely the confusion and punishment of compliance the Legislature sought to prevent when it passed the CCPA.

Even if cookies qualify as pen register devices, Plaintiffs fail to identify not only their communications with Defendants' Websites, but also the ***specific dialing, routing, addressing, or signaling information*** for outgoing communications that were purportedly tracked. *See Wiley*, 2025 WL 3654085, at *9 ("[T]he problem with plaintiffs' pen register claim is that they have not alleged that *they* ever communicated with the website. In the absence of any allegation that they communicated with the websites, they cannot allege that the "dialing, routing, addressing, or signaling information" relating to any such communication was unlawfully tracked."). As discussed above, the FAC is completely devoid of any factual allegations regarding what allegedly collected information constitutes ***Plaintiffs' own*** communications with the Websites. *See generally* FAC. And, not surprisingly, in the absence of any allegations that they personally communicated with the Websites, Plaintiffs cannot allege what specific "dialing, routing, addressing, or signaling information" for those alleged outgoing communications were tracked. *See* Cal. Pen. Code § 638.50(b). Because Plaintiffs do not provide the requisite information, their pen register claims should be dismissed.

### E. <u>Plaintiffs' Common-Law Fraud/Misrepresentation Claim Fails (Count V)</u>

In California, the elements of a cause of action for fraud are: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 717 (N.D. Cal. 2011) (Ware, C.J.), *aff'd,* 572 F. App'x 494 (9th Cir. 2014) (citing *Engalla v. Permanente Med. Grp.*, 15 Cal. 4th 951, 974 (1997)). As discussed in detail above, Plaintiffs have failed to plausibly plead (1) the "when" of their Website

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

visits that would have given a rise to a fraud/misrepresentation claim, (2) any conduct with respect to ***their own*** experience, (3) knowledge by Defendants of any errant or unintended collection of data, and/or (4) portions of the incorporated Privacy Policies and cookie banners supporting any claimed misrepresentation or fraud by Defendants. *See*, *supra*, Section V.B; *see also U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (a district court may consider certain materials, such as documents incorporated by reference in the complaint, without converting the motion to dismiss into a motion for summary judgment). Nor have Plaintiffs alleged actual reliance, knowledge by Defendants, or damage with the required specificity. *See*, *supra*, Section IV(B)(1). Plaintiffs' "formulaic recitation of the elements" of fraud—knowledge of falsity, intent to defraud, and induced reliance—lack factual support and cannot surmount the *Twombly/Iqbal* standard, let alone the heightened pleading standard under Rule 9(b). *See Twombly*, 550 U.S. at 555; FAC ¶¶ 292-96. Plaintiffs' fraud claim thus should be dismissed.

### F. Plaintiffs' Unjust Enrichment Claim Fails (Count VI)

Unjust enrichment claims may proceed as a standalone cause of action ***only when*** pled as quasi-contract claims. *See, e.g.*, *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038-39 (9th Cir. 2016); *Pemberton v. Rest. Brands Int'l, Inc.*, 2025 WL 3268404, at *8-9 (N.D. Cal. Nov. 24, 2025) (Corley, J.) (permitting unjust enrichment claim under quasi-contract theory). The Court previously dismissed this claim because the initial Complaint was not adequately pled under Rule 9(b) and therefore failed to establish "the requisite relationship" between Defendants' fraud and unjust enrichment (i.e., that Defendants have unjustly conferred a benefit through fraud). *See* Order at 9; *see also See Cal. Crane Sch., Inc. v. Google LLC*, 722 F. Supp. 3d 1026, 1042 (N.D. Cal. 2024) (Pitts, J.) (int. quot. omitted).

The FAC does not cure this deficiency, as it adds no new allegations that plausibly support this theory. It remains devoid of ***facts*** demonstrating that Defendants have been unjustly conferred ***any*** benefit—the Websites are free and publicly accessible. Further, as discussed above, Plaintiffs missed another opportunity to allege fraud with the requisite particularity. *See*, *supra,* Sections V.B; V.E. Accordingly, Plaintiffs' unjust enrichment claim should be dismissed with prejudice. *Hoey v. Sony Elecs. Inc.*, 515 F. Supp. 2d 1099, 1106 (N.D. Cal. 2007) (Whyte, J.) ("[W]ithout the

other claims, plaintiffs' claim for unjust enrichment fails.").

## VI. <u>CONCLUSION</u>

Despite the Court's directive to streamline Plaintiffs' allegations and enhance the clarity of their complaint, the FAC instead got longer without adding any substantive or necessary factual allegations that could revive any of Plaintiffs' claims. Indeed, the new allegations merely underscore that the FAC is plagued with fundamental and incurable defects. Accordingly, Defendants respectfully request that the Court dismiss the FAC in its entirety with prejudice.

Dated: March 20, 2026

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: */s/Kamran B. Ahmadian*
Bethany G. Lukitsch
Kamran B. Ahmadian
Alexis Cruz

*Attorneys for Defendants*
INSPIRE BRANDS, INC., ARBY'S RESTAURANT GROUP, INC., JIMMY JOHN'S FRANCHISOR SPV, LLC, SONIC INDUSTRIES SERVICES, LLC, and DUNKIN' BRANDS, INC.