**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

Patrick J. Branson (*pro hac vice*)
patrick@gutridesafier.com
305 Broadway, 7th Floor
New York, NY 10007
Telephone: 415-639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN PAUL DE AYORA, CHRISTINE WILEY, MIKHAIL GERSHZON, AND GEORGE NINO as individuals, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>INSPIRE BRANDS, INC., ARBY'S RESTAURANT GROUP, INC., JIMMY JOHN'S FRANCHISOR SPV, LLC, SONIC INDUSTRIES SERVICES, LLC, DUNKIN' BRANDS, INC.,<br><br>Defendants. | Case No. 3:25-CV-3645-AGT<br><br>PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT<br><br>Hon. Alex G. Tse<br><br>Hearing Date: December 5, 2025<br>Hearing Time: 10:00 AM<br>Courtroom: Courtroom A |

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 3

A. Defendants Falsely Told Plaintiffs and Other Users That They Could "Decline" Cookies on the Websites. ..... 3

B. Defendants Intentionally Designed the Websites and Cookie Banners. ..... 5

C. Defendants Intentionally Aided the Third Parties' Wrongful Collection of Plaintiffs' and Class Members' Data, By Which Both Defendants and the Third Parties Profited. ..... 6

III. ARGUMENT ..... 7

A. Plaintiffs Plead a Concrete Injury-in-fact, Demonstrating Article III Standing. ..... 7

B. Plaintiffs' Fraud and Misrepresentation Claims Satisfy Rule 9(b). ..... 11

C. Plaintiffs Adequately Plead Their Common Law Privacy Claims (Counts I and II). ..... 13

D. Plaintiffs Ayora and Nino's CIPA Claims are not Time Barred ..... 14

E. Defendants' CIPA § 631(a) Wiretapping Arguments Fail. ..... 16

1. Plaintiffs Adequately Allege the In Transit Element of Their CIPA Wiretapping Claims. ..... 16

2. Plaintiffs Adequately Allege the Contents of the Intercepted Communications ..... 19

3. Plaintiffs Adequately Allege Defendants' Intent ..... 20

4. Plaintiffs properly plead a "pen register" claim under section 638.51. ..... 21

F. Plaintiff Adequately Alleges Fraud/Misrepresentation Claims. ..... 23

G. Plaintiffs' Unjust Enrichment Claim Properly Pled. ..... 23

H. Plaintiffs Request Leave to Amend If Necessary. ..... 24

IV. CONCLUSION ..... 24

# TABLE OF AUTHORITIES

**Cases**

*A.B. v. Google LLC*,
737 F. Supp. 3d 869 (N.D. Cal. 2024) ........ 18

*A.J. v. LMND Med. Grp.*,
No. 24-cv-03288-RFL, 2024 U.S. Dist. LEXIS 194480 (N.D. Cal. Oct. 25, 2024) ........ 29

*ASARCO, LLC v. Union Pac. R.R. Co.*,
765 F.3d 999 (9th Cir. 2014) ........ 18

*Azoulai v. BMW of N. Am. LLC*,
No. 16-cv-00589-BLF, 2017 U.S. Dist. LEXIS 57121 (N.D. Cal. Apr. 13, 2017) ........ 10

*Beheshta Mahboob v. Educ. Credit Mgmt. Corp.*,
No. LA CV21-08585-JAK-GJS, 2023 U.S. Dist. LEXIS 245751 (C.D. Cal. Dec. 20, 2023) ..... 16

*Blake v. Dierdorff*,
856 F.2d at 1369 (9th Cir. 1988) ........ 28

*Briskin v. Shopify, Inc.*,
135 F.4th 739 (9th Cir. 2025) ........ 11

*Brown v. Google LLC*,
525 F.Supp.3d 1049 (C.D. Cal. March 12, 2021) ........ 17

*Brown v. Natures Path Foods, Inc.*,
No. 21-cv-05132-HSG, 2022 U.S. Dist. LEXIS 42760 (N.D. Cal. Mar. 10, 2022) ........ 12, 13

*Bruton v. Gerber Prod. Co.*,
703 F. App'x 468 (9th Cir. 2017) ........ 28

*Byars v. Tire*,
654 F. Supp. 3d 1020 (C.D. Cal. Feb. 3, 2023) ........ 23

*Cal. Sportfishing Prot. All. v. Shiloh Grp., LLC*,
268 F. Supp. 3d 1029 (N.D. Cal. 2017) ........ 10

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) ........ 19

*Cooper v. Pickett*,
137 F.3d 616 (9th Cir. 1997) ........ 13

*D'Angelo v. Penny Opco, LLC,*
No. 23-cv-0981-BAS-DDL, 2023 U.S. Dist. LEXIS 191054 (S.D. Cal Oct. 24, 2023) ........ 20

*DeSoto v. Yellow Freight Sys.*,
957 F.2d 655 (9th Cir. 1992) ........ 29

*Doe v. Amgen, Inc.*,
No. 2:23cv7448-MCS-SSC, 2024 U.S. Dist. LEXIS 144579 (C.D. Cal. Aug. 13, 2024) ........ 24

*Doe v. Fullstory*,
712 F. Supp. 3d (N.D. Cal. 2024) ........ 17

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) ........ 20

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ........ 8

*Esparza v. UAG Escondido A1 Inc.*,
2024 U.S. Dist. LEXIS 24429 (S.D. Cal. Feb. 12, 2024) ........ 20, 22

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (2005) .......... 16

*Gabrielli v. Haleon US Inc.*,
No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503 (N.D. Cal. Aug. 29, 2025 .......... passim

*Gabrielli v. Motorola Mobility LLC*,
No. 24-cv-9533, 2025 WL 1939957 (N.D. Cal. July 14, 2025 .......... passim

*Graf v. Zynga Game Network, Inc. (In re Zynga Privacy Litig.)*,
750 F.3d 1098 (9th Cir. 2014) .......... 23

Greenley v. Kochava, Inc.,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......... 26, 27

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 15

*Hill v. Nat'l Collegiate Athletic Ass'n*,
865 P.2d 633 (Cal. 1994) .......... 15

*In re Facebook Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 8, 12, 15

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 784 (N.D. Cal. 2019) .......... 11, 28

*In re GlenFed, Inc. Secs. Litig.*,
42 F.3d 1541 (9th Cir. 1994) .......... 13

*James v. Walt Disney Co.*,
701 F. Supp. 3d (N.D. Cal 2023) .......... 23

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 28

*Khamooshi v. Politico LLC*,
2025 U.S. Dist. LEXIS 92788 (N.D. Cal. May 13, 2025) .......... 9

*Kohler v. Flava Enters.*,
No. 10-CV-0730 IEG (NLS), 2010 U.S. Dist. LEXIS 84033 (S.D. Cal. Aug. 13, 2010) .......... 18

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) .......... 22

*Kotlarsz v. Integrity Vehicle Servs., Inc.*,
No. 8:24-cv-00569-FWS-JDE, 2024 U.S. Dist. LEXIS 213565 (C.D. Cal. Sep. 3, 2024) .......... 24

*Lasko v. Caliber Home Loans*,
2022 U.S. App. LEXIS 6215 (9th Cir. Mar. 10, 2022) .......... 18

*Mirmalek v. Los Angeles Times Commc'ns LLC*,
No. 24-CV-01797-CRB, 2024 U.S. Dist. LEXIS 227378 (N.D. Cal. Dec. 12, 2024) .......... 27

*Neubronner v. Milken*,
6 F.3d 666 (9th Cir. 1993) .......... 13

*Popa v. Microsoft Corporation,*
153 F.4th 784 (9th Cir. 2025) .......... 8, 9

*Revitch v. New Moosejaw, LLC*,
No. 18-cv-06827-VC, 2019 U.S. Dist. LEXIS 186955 (N.D. Cal. Oct. 23, 2019) .......... 24

*Rodriguez v. Ford Motor Co.*,
No. 3:23-cv-00598, 2024 U.S. Dist. LEXIS 218685 (S.D. Cal. Dec. 3, 2024) .......... 19

*Rodriguez v. Google LLC*,
No. 20-cv-04688-RS, 2021 U.S. Dist. LEXIS 98074 (N.D. Cal. May 21, 2021)........................ 16

*Ronconi v. Larkin*,
253 F.3d 423 (9th Cir. 2001) ........................................................................................ 13

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
806 F.2d 1393 (9th Cir. 1986) ...................................................................................... 29

*Shah v. Capital One Fin. Corp.*,
No. 24-cv-05985-TLT, 2025 U.S. Dist. LEXIS 42677 (N.D. Cal. Mar. 3, 2025)........................ 29

*Shahnaz Zarif v. Hwareh.com, Inc.*,
2025 U.S. Dist. LEXIS 26519 (S.D. Cal Feb 12, 2025) ........................................................ 24

*Six v. IQ Data Int'l, Inc.*,
129 F.4th 630 (9th Cir. 2025) ........................................................................................ 8

*Smith v. Yeti Coolers, LLC*,
No. 24-cv-01703-RFL, 2024 U.S. Dist. LEXIS 194481 (N.D. Cal. Oct. 21, 2024)..................... 25

*St. Aubin v. Carbon Health Techs., Inc.*,
No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067 (N.D. Cal. Oct. 1, 2024)............ 20, 21, 22

*Supermail Cargo, Inc. v. U.S.*,
68 F.3d (9th Cir. 1995) ................................................................................................ 18

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)........................................................................................................ 2

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ....................................................................... 20, 22

**Statutes**

Cal. Penal Code § 631(a) ................................................................................ 18, 19, 20

Cal. Penal Code § 638.50.................................................................................................. 27

Cal. Penal Code § 638.50(b) .............................................................................................. 26

Cal. Penal Code § 638.51(a) .............................................................................................. 25

**Rules**

Fed. R. Civ. P. 12(b) ........................................................................................................ 3

Fed. R. Civ. P. 9(b) ................................................................................................... passim

## I. INTRODUCTION

In its December 22, 2025 Order granting Defendants' Motion to Dismiss (ECF No. 50) (the "Order"), this Court identified discrete deficiencies which Plaintiffs have addressed on amendment. In once again moving to dismiss, Defendants have chosen to ignore or misconstrue Plaintiffs' amended allegations rather than deal with them directly. To be clear, Plaintiffs have added allegations showing the significant role Defendant Inspire played in the wrongful conduct alleged; included specific time periods during when Plaintiffs visited the Websites; identified the specific misrepresentations—i.e., the specific cookie banner—they relied on when rejecting cookies; and added a detailed description of the third party software used to intercept and read Plaintiffs' communications in real time. Rather than deal with these allegations directly, Defendants retread previously rejected arguments and otherwise misconstrue the facts and law to support their motion. This Court should reject these attempts and deny Defendants' motion to dismiss.

Although aspects of this case may be highly technical, the basic premise is simple: the privacy that Defendants promised to visitors of their websites was false. When Plaintiffs accessed Defendants' Websites,[1] they were presented with a cookie consent banner that states that the Websites use cookies but expressly gives users the option to control how they are tracked and how their personal data is used. Defendants assure visitors that they can choose to "Decline" all cookies—as shown in the following exemplar screenshot from the Arby's Website:




Clicking "Decline," however, meant nothing. In truth, Defendants' Websites unlawfully and intentionally allowed third parties to place non-essential tracking cookies on the devices of Plaintiffs and every other visitor to their Websites both before and after Plaintiffs and those similarly situated explicitly declined third-party tracking cookies. As a result, Defendants enabled third parties to track

[1] www.arbys.com, or the "Arby's Website"; www.baskinrobbins.com, or the "Baskin Robbins Website"; www.dunkindonuts.com, or the "Dunkin Website"; www.jimmyjohns.com, or the "Jimmy John's Website;" and order.sonicdrivein.com, or the "Sonic Website," each a "Website" and, collectively, the "Websites").

and record Plaintiffs' and other visitors' "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data" against their consent. Am. Compl. ¶ 3.

Defendants once again move to dismiss by claiming that Plaintiffs lack standing, have not adequately alleged their claims, and that certain Plaintiffs' claims are time-barred. *See, generally,* Motion. The gravamen of Defendants' arguments is that Plaintiffs' additional allegations lack the granular specificity Defendants would prefer. This argument is illusory. The Amended Complaint, of course, alleges that Defendants wrongfully permitted third parties to place cookies on Plaintiffs' devices and browsers and that, as a result, Plaintiffs' private information was transmitted to third parties. Plaintiffs support their allegations with a fulsome description of how the Websites operated to dupe consumers into a false sense of security and then proceeded to allow third parties to attach cookies to Plaintiffs' and Class members' devices and browsers and transmit their private communications to those third parties without Plaintiffs' and Class members' consent.

First, Plaintiffs have Article III standing because they plead a concrete injury—an invasion of privacy. Common law has long recognized invasions of privacy as cognizable injuries. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). Here, the tracking cookies, which allowed third parties to discern copious personal information from Plaintiffs, establishes a concrete injury sufficient to show Plaintiffs' Article III standing. This includes Defendant Inspire, which, as alleged, worked in tandem with the other Defendants to design the privacy functionality of the Websites and actively managed Website privacy practices. Indeed, Defendant Inspire coordinated the privacy functionality of the Websites.

Second, Defendants' Rule 9(b) arguments—on which most of their motion is based—ignore the allegations, attempt to introduce unverified facts outside the pleadings, and otherwise seek a level of specificity not required even under Rule 9(b). In the Order, the Court found that Plaintiffs had not sufficiently alleged the "when" and "where" aspects of Rule 9(b) because Plaintiffs only alleged that they visited the Websites during a four-year period and based on Defendants' factual representations—facts which were not present in the complaint—that the cookie banner changed over time. Plaintiffs

have now amended to include specific time periods during which they visited the Websites and point to the specific cookie banner they viewed. Thus, Defendants are sufficiently on notice of the specific statements which Plaintiffs alleged are misleading. Defendants ignore this, and double down on their claim that they cannot possibly know which cookie banner is at issue—which is simply untrue—and repeat their attempt to bring in facts outside the pleadings—which is improper.

Third, Plaintiffs Ayora and Nino's CIPA claims are equitably tolled based on the delayed discovery rule and fraudulent concealment. Defendants' arguments to the contrary ignore the many allegations that Plaintiffs were not aware of—and could not have become aware of—Defendants' conduct when it occurred. Defendants also ask this Court to infer in Defendants' favor that these Plaintiffs learned of Defendants' misconduct in a manner that would cause Plaintiffs' claims to be untimely. But Defendants are not entitled to this inference on a 12(b) motion and can point to no allegations that would create a complete statue of limitations defense on the face of the Amended Complaint.

Finally, Defendants remaining 12(b) arguments rely on semantic slight-of-hand and outright ignoring Plaintiffs' allegations. Regarding the CIPA wiretapping claims, Plaintiffs have specifically alleged that the contents of their communications where intercepted and read in real time by third parties. Defendants' only true arguments against these allegations rely on picking out a single word in an allegation describing how contents of communications were read in real time by the third parties. That Defendants had to rely on cherry-picked phrases from the allegations betrays their positions' lack of merit. Regarding the CIPA pen register claims, Defendants have outright chosen to ignore the allegations in the Amended Complaint regarding the "dialing, routing, addressing, or signaling information" obtained through the wrongfully placed cookies. This Court, however, should not.

In sum, Defendants' arguments are based not on the facts alleged in the Amended Complaint nor the law applicable to this case—but on Defendants' selective reading of both. The Court should deny the Motion in its entirety.

## II. FACTUAL BACKGROUND

### A. Defendants Falsely Told Plaintiffs and Other Users That They Could "Decline" Cookies on the Websites.

Like many companies, Defendants Inspire Brands, Inc., Arby's Restaurant Group, Inc., Jimmy

John's Franchisor SPV, LLC, Sonic Industries Services, LLC, and Dunkin' Brands, Inc. (collectively, "Defendants") designed their Websites to include resources and programming scripts from third parties that enable those parties to place cookies—small text files sent by a website server to a user's web browser and stored locally on the user's device—and other similar tracking technologies on visitors' browsers and devices to transmit cookies along with user data. ECF No. 57 ("Am. Compl.") ¶ 2. Defendants, however, offer consumers a choice to browse *without* having such cookies and other tracking technologies placed on their browsers, allowing consumers to use the Websites without being tracked, followed, and targeted by third party data brokers or advertisers. *Id.*

When consumers visit the Websites, Defendants display to them a popup cookie consent banner. *Id.* ¶ 1. Defendants' cookie banners state that the Websites use cookies but expressly give users the option to control how they are tracked and how their personal data is used. *Id.* Defendants assure visitors that they may choose to "Decline" cookies as shown in the example screenshot below.




The cookie consent banner states "We use cookies on our website. By clicking Accept you consent to the use of all cookies. You can access our <u>Privacy Policy</u> and change your preferences by clicking the Cookie Settings link."[2] *Id.* If visited, the "Privacy Policy" discloses the types of cookies used by the Websites, as well as a description of the types of data collected using those cookies. *Id.* ¶¶ 44–45. The banners then purport to provide users the opportunity to "Decline" cookies. *Id.* ¶¶ 46, 59, 72, 85, 98.

The representation that users could "Decline" cookies was false. Instead, even when users clicked "Decline" cookies, Defendants nevertheless permitted third parties to place on Plaintiffs' and Class members' devices and browsers the very cookies they had declined. *Id.* ¶ 49. Once placed, these cookies allowed Plaintiffs' and Class members' data to be transmitted to third parties in the manner and for purposes alleged in the Complaint and as described below—including for purposes Defendants

[2] A substantially identical statement appears on the cookie banner for each Website. Am. Compl. ¶ 46.

described in their Privacy Policies. *Id.* ¶ 44–45, 49.

Even after users elect to "Decline" cookies, Defendants surreptitiously enabled an enormous number of third parties—including Google LLC (DoubleClick and Google Analytics), Meta Platforms, Inc. (Facebook), ByteDance Ltd. (TikTok), Microsoft Corporation (Microsoft Clarity), Snap Inc. (SnapChat), and Pinterest, Inc. (Pinterest), and many more (the "Third Parties")—to place and/or transmit tracking cookies on the Websites. *Id.* ¶ 2.

The cookies Defendants wrongfully permitted the Third Parties to place on Plaintiffs' devices and browsers—despite Plaintiffs' express rejection and despite Defendants' express representation to the contrary—permitted the Third Parties to track and collect data in real time regarding Plaintiffs' behaviors and communications, including their browsing history, IP addresses, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data (the "Private Communications"). *Id.* ¶¶ 3, 40, 50, 63, 76, 89, 102.

In particular, both Plaintiffs accessed and browsed the Websites on one or more occasions—as detailed in the Amended Complaint. *Id.* ¶¶ 170, 172–75, 182, 184–86, 193, 195–96, 203, 205–09. Even before the popup cookie banner appeared on their screens, Defendants programmed the Websites to enable the Third Parties to place cookies and tracking technologies on their devices and transmit their data to Third Parties without Plaintiffs' knowledge. *Id.* ¶¶ 178, 189, 199, 212. Then, after Plaintiffs clicked "Decline" cookies, they browsed the Websites in reliance on the promises and representations Defendants made in the cookie banners. *Id.* ¶¶ 179, 190, 200, 213. Despite Plaintiffs' clear declination of cookies, Defendants continued to permit the placement of cookies and the transmission of their data to the Third Parties. *Id.* This allowed the Third Parties to track and collect Plaintiffs' Private Communications and data as they browsed the Websites. *Id.*; *see also* Am. Compl. ¶¶ 3, 40, 50, 63, 76, 89, 102 (describing user data and communications transmitted by the third party cookies Defendants permitted to be placed when users browsed the Websites).

**B. Defendants Intentionally Designed the Websites and Cookie Banners.**

Defendants voluntarily—i.e. intentionally—integrated "third-party resources" from the Third Parties into the Websites' programming. *Id.* ¶¶ 36, 43. Defendants chose to install or integrate the

Websites with resources from the Third Parties that, among other things, use cookies. *Id*. ¶ 41. Thus, when Plaintiffs and other Class members visited the Websites, both first-party cookies and third-party cookies were placed on their devices and/or transmitted to Defendants and the Third Parties. *Id*. Defendants intentionally incorporated into the Websites the software code that caused placement of the cookies. *Id*. Defendants control the software code of the Websites—meaning they have complete control over whether first-party and third-party cookies are placed on users' devices and/or transmitted to third parties. *Id.* During the time period in which Plaintiffs accessed the Websites, the Websites—which, again, Defendants developed, maintain, and control—permitted the Third Parties to place, store, and/or transmit third-party tracking cookies on Plaintiffs' devices and browsers. *Id*. ¶ 50, 63, 76, 89, 102.

The Websites allow visitors to browse and purchase Defendants' products and services. As they interact with the Websites (e.g., by entering data into forms, clicking on links, and making selections), Website users communicate Private Communications to Defendants. *Id*. ¶¶ 54, 67, 80, 93, 106. The third-party cookies stored on and/or loaded from users' devices when they interact with the Websites are transmitted to the Third Parties, enabling them to, in real time, surreptitiously track and collect a Website users' Private Communications. *Id*. ¶ 55. Third-party cookies include an identifier that allows the third-party to recognize and differentiate individual users across websites (including the Website) and across multiple browsing sessions. *Id*. ¶ 52.

### C. Defendants Intentionally Aided the Third Parties' Wrongful Collection of Plaintiffs' and Class Members' Data, By Which Both Defendants and the Third Parties Profited.

Defendants voluntarily—i.e., intentionally—integrated "third-party resources" from the Third Parties into the Websites' programming. *Id*. ¶¶ 36, 43, 57, 70, 83, 96. Defendants chose to install or integrate the Websites with resources from the Third Parties that, among other things, use cookies. *Id*. ¶ 43, 57, 70, 83, 96. Thus, when Plaintiffs and other Class members visited the Websites, both first-party cookies and third-party cookies were placed on their devices and/or transmitted to Defendants and the Third Parties. *Id*. Defendants intentionally incorporated into the Websites the software code that caused placement of the cookies. *Id*. Defendants control the software code of the Websites—meaning they have complete control over whether first-party and third-party cookies are placed on

users' devices and/or transmitted to third parties. *Id.* During the time period in which Plaintiffs accessed the Websites, the Websites—which, again, Defendants developed, maintain, and control—permitted the Third Parties to place, store, and/or transmit third-party tracking cookies on Plaintiffs' devices and browsers. *Id*. ¶ 50, 63, 76, 89, 102.

The Websites allow visitors to browse and purchase Defendants' products and services. As they interact with the Websites (e.g., by entering data into forms, clicking on links, and making selections), Website users communicate Private Communications to Defendants. *Id*. ¶¶ 54, 67, 80, 93, 106. The third-party cookies stored on and/or loaded from users' devices when they interact with the Websites are transmitted to the Third Parties, enabling them to, in real time, surreptitiously track and collect a Website users' Private Communications. *Id*. ¶¶ 55, 68, 81, 94, 107. Third-party cookies include an identifier that allows the third-party to recognize and differentiate individual users across websites (including the Website) and across multiple browsing sessions*. Id*. ¶¶ 54, 67, 80, 93, 106.

## III. ARGUMENT

### A. Plaintiffs Plead a Concrete Injury-in-fact, Demonstrating Article III Standing.

As this Court held previously,

> Plaintiffs plead that Defendants caused cookies and tracking technologies to be placed on their devices without their knowledge. And Plaintiffs plead that their 'browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data' were obtained by third parties using those cookies. As argued by Plaintiffs this is sufficient.

Order at 3 (citing *Gabrielli v. Motorola Mobility LLC*, No. 24-cv-9533, 2025 WL 1939957, at *10 (N.D. Cal. July 14, 2025

)) (internal citations omitted). The facts on which this Court held that Plaintiffs sufficiently alleged standing have not changed. Nor should the Court's conclusion here. Indeed, invasions of privacy have long been recognized as common law as concrete injuries. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021); *see also Six v. IQ Data Int'l, Inc.*, 129 F.4th 630 (9th Cir. 2025) (quoting *TransUnion*). This right to privacy "encompass[es] the individual's control of information concerning his or her person." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) (citation omitted). As a result, the Ninth Circuit has held specifically that violations of CIPA suffice to confer Article III standing. *In*

*re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 598–99 (9th Cir. 2020) ("[T]he legislative history and statutory text demonstrate that . . . the California legislature intended to protect . . . historical privacy rights when [it] passed CIPA.").

As this Court also previously held, Plaintiffs have sufficiently alleged that Defendants' invaded their privacy—causing them a concrete injury—when Defendants intentionally permitted the Third Parties to place cookies on Plaintiffs' browsers and devices in order to "collect, track, and compile users' Private Communications, including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers," and more. Order at 3–5; Am. Compl. ¶¶ 3, 40–43, 57, 70, 83, 96, 50, 63, 76, 89, 102, 52–55, 64–68, 77–81, 90–94, 103–07, 179, 190, 199, 213; *see also Motorola*, No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836, at *16–17; *Gabrielli v. Haleon US Inc*., No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503, at *15 (N.D. Cal. Aug. 29, 2025).

Defendants' retread of their *Popa v. Microsoft Corporation,* 153 F.4th 784 (9th Cir. 2025) arguments similarly fail. This Court previously distinguished *Popa* because "the information allegedly collected here is more intrusive than that considered in *Popa.*" Order at 4. Further, this Court held that Plaintiffs' prior complaint "alleged facts sufficient to show that the alleged collection of data could be highly offensive." *Id*. at 5. Indeed, other courts have reached the same conclusion as this one. In *Haleon*, Judge Orrick considered and rejected the exact argument Defendants make here.[3] *Haleon*, 2025 U.S. Dist. LEXIS 169503, at *18–19. There, the court found that the tracking technologies at issue in *Popa* "are . . . distinguishable, both in users' interactions with them and their capabilities" from those at issue here. *Id*. at *20. For example "Popa never purported to have expressly 'reject[ed]'

[3] Similarly, *Khamooshi* is distinguishable because none of the plaintiffs there alleged that they "rejected" cookies; they merely contended that they did not consent to the disclosure of their IP addresses. *Khamooshi v. Politico LLC*, 2025 U.S. Dist. LEXIS 92788, at *7–8 (N.D. Cal. May 13, 2025). The court rejected the notion that the plaintiffs had any privacy interest in information they "voluntarily" handed over, unlike here, where Plaintiffs believed based on Defendants' *own representations* that they were not handing any data over to Third-Parties. *Id*. Plaintiffs here, however, have alleged that their information was taken *involuntarily* after Defendants expressly promised not to do so. *See Haleon*, 2025 U.S. Dist. LEXIS 169503, at *16 (distinguishing *Khamooshi*).This is a distinction with a difference – a big difference.

the tracking technology at issue." *Id.* And while "the session-replay technology [in *Popa*] was not alleged to track anything beyond her interactions with the website she chose to visit, and the information gathered was only alleged to be used by the owner of that website," the plaintiff in *Haleon*—like Plaintiffs here—"alleges that the cookies . . . store[d] on users' devices allow third parties 'to track and collect data in real time regarding . . . user input data,' which includes '[t]he information the user entered into the Websites' form fields, including search queries, the user's name, age, gender, email address, location, and/or payment information, demographic information,' and also 'device information, session information, and/or geolocation data.'" *Id.* (citation omitted). Further, as is the case here, the court in *Haleon* found *Popa* distinguishable because "Haleon's website explains what its cookies are capable of," i.e., that the cookies were used to "count visits and traffic sources so *Haleon* can measure and improve the performance of its website[s]," and for "tracking users' browsers across other sites and building up a profile of users' interests." *Id.* at *20–21 (cleaned up); *compare* Am. Compl. ¶¶ 39–41, 44–45, 108–51, 164 (alleging similar disclosures from the Websites regarding the capabilities of cookies). Ultimately, the court in *Haleon* determined that the plaintiffs "allegations are sufficient to show Article III standing." *Id.* The facts upon which this Court distinguished *Popa* have not changed. Thus, this Court should reject Defendants' request for reconsideration.

Defendants further argue that Plaintiffs do not have standing to sue Defendant Inspire Brands, Inc. Mot. at 7. This too is incorrect. To be clear, this is not a case about a visit to Inspire's corporate website, or some misrepresentation contained in the Website's privacy policies.[4] Nor is Inspire named in this suit simply because it is the parent company of the other Defendants. As alleged in the Amended Complaint, not only is Defendant Inspire the owner of the other Defendants, it was, and is, an active

[4] Defendants request that this Court to take judicial notice the privacy policies of the Websites, as well as certain legislative history. ECF No. 61-2. As the Court need not rely on these documents to decide the Motion, Defendants' request should be denied as moot. *Cal. Sportfishing Prot. All. v. Shiloh Grp., LLC*, 268 F. Supp. 3d 1029, 1039 (N.D. Cal. 2017) ("The court does not rely on Exhibits Q and R in considering the motions, and therefore denies Defendants' requests regarding these two exhibits as moot."). To the extent the Court relies on the privacy policies, only the existence, not the truth, of those documents is properly subject to judicial notice. *See Azoulai v. BMW of N. Am. LLC*, No. 16-cv-00589-BLF, 2017 U.S. Dist. LEXIS 57121, at *10 (N.D. Cal. Apr. 13, 2017); *Cal. Sportfishing Prot. All.*, 268 F. Supp. 3d at 1038 ("Courts cannot take judicial notice of the contents of documents for the truth of the matters asserted therein when the facts are disputed.").

participant in the coordination, design and operation of the Websites—including the implementation and management of the Website's privacy practices.

The Amended Complaint alleges that Inspire is *directly* and *substantially* involved in the operation of each of the Websites, including by providing and managing shared technology infrastructure and services related to user data collection and privacy compliance. Am. Compl. ¶ 11. Indeed, Inspire publicly boasts that it *operates* its restaurant brands through integrated, enterprise-wide, technology-enabled platforms. *Id*. (citing https://inspirebrands.com/about-us/ (last visited January 29, 2026)). Consistent with Inspire's representations, and further supporting the plausibility of Plaintiffs' allegations, the privacy policies for each of the Websites direct users to an Inspire-controlled email address. *Id*. This shows how Inspire—far from being simply a parent company—oversees, controls, and is otherwise directly involved in privacy practices across the Websites.

In short, the Amended Complaint names Inspire because it engaged in the very conduct at issue in this litigation. Thus, Defendants' claims that Plaintiffs have not connected Inspire to the conduct alleged in the Amended Complaint when Inspire claims to have engaged in such conduct rings hollow. *See Briskin v. Shopify, Inc*., 135 F.4th 739, 762 (9th Cir. 2025) (holding that collective pleading of defendants was appropriate where plaintiff alleged "one course of conduct jointly pursued by three closely related corporate defendants" and "[t]he remainder of the SAC is highly detailed as to the technology used.").

Finally, Defendants argue that Plaintiffs have not alleged a loss of value or control in their data. But Defendants ignore that the loss in *value* of data is a separate issue from the loss of *control* of that data. Plaintiffs have plainly alleged a loss of *control* in the data, which is *independently* sufficient to provide standing under Article III. *See, e.g., In re Facebook, Inc., Consumer Priv. User Profile Litig.,* 402 F. Supp. 3d 784 (N.D. Cal. 2019), ("courts have often held that this particular type of intangible injury—disclosure of sensitive private information, even without further consequence—gives rise to Article III standing").

To the extent Defendants contend that further specifics are necessary, they are wrong. Plaintiffs have alleged that their *own* personal data was appropriated despite their express wishes otherwise. Am. Compl. ¶¶ 178–79, 189–90, 199–200, 212–13. As other courts have found, these allegations suffice.

*See Motorola*, 2025 U.S. Dist. LEXIS 133836, at *16–17 (considering substantially similar allegations and holding that "[plaintiff's] allegations that Motorola deprived him control of personal information regarding his digital activity and profile are sufficient to establish a concrete injury to his right to privacy and confer standing."); *Haleon*, No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503, at *15 (same, citing *Motorola*).

Because Plaintiffs allege a loss of control injury sufficient for Article III, the Court need not address Defendants' arguments as to the value of the data, as explained above. But, even so, as the Ninth Circuit recognized in *In re Facebook Inc. Internet Tracking Litig.*, "California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss." 956 F.3d at 596 (citation omitted). "In other words, California law requires disgorgement of unjustly earned profits regardless of whether a defendant's actions caused a plaintiff to directly expend his or her own financial resources or whether a defendant's actions directly caused the plaintiff's property to become less valuable." *Id*. "[T]o establish standing, Plaintiffs must allege they retain a stake in the profits garnered from their personal browsing histories," (*id.*) as Plaintiffs here have done (Am. Compl. ¶ 309). And, critically to Defendants' argument that Plaintiffs had no interest in selling their data, "[u]nder California law, this stake in unjustly earned profits exists regardless of whether an individual planned to sell his or her data or whether the individual's data is made less valuable." *In re Facebook Inc. Internet Tracking Litig*., 956 F.3d at 601. Accordingly, at a minimum, Plaintiffs have adequately pleaded an entitlement to Defendants' profits from their personal data sufficient to confer Article III standing.

### B. Plaintiffs' Fraud and Misrepresentation Claims Satisfy Rule 9(b).

"The Ninth Circuit has interpreted Rule 9(b) to require that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Brown v. Natures Path Foods, Inc.*, No. 21-cv-05132-HSG, 2022 U.S. Dist. LEXIS 42760, at *7 (N.D. Cal. Mar. 10, 2022) (Gilliam, J.) (quoting *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (quotation marks and citation omitted)). "In short, a fraud claim must state "the who, what, when, where, and how" of the alleged conduct, *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997),

and "set forth an explanation as to why [a] statement or omission complained of was false and misleading." *In re GlenFed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (*en banc*), superseded by statute on other grounds as stated in *Ronconi v. Larkin*, 253 F.3d 423, 429 & n.6 (9th Cir. 2001). "Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *Brown v. Natures Path Foods, Inc.*, No. 21-cv-05132-HSG, 2022 U.S. Dist. LEXIS 42760, at *7–8 (N.D. Cal. Mar. 10, 2022) (Gilliam, J.).

In the Order, this Court held that Plaintiffs' initial complaint failed to sufficiently allege the "when" and "where" of Defendants' misrepresentations because counsel for Defendants represented that the Websites' cookie banners changed during the class period. Order at 8. The Amended Complaint addresses the concerns of the Court by specifying the time periods during which Plaintiffs visited each Website and by specifying the banners—i.e. the specific misrepresentations—seen by each Plaintiff. Am. Compl. ¶¶ 172–75 (Ayora); 184–86 (Wiley); 195–96 (Gershzon); 205–09 (Nino). Defendants' argument that more is required is incorrect. And their attempts to bring in additional facts and speculations outside the Amended Complaint are improper. Specifically, Defendants complain that the time periods alleged by Plaintiffs are too broad because the banners purportedly changed over time. But the time periods alleged by Plaintiffs are supplemented by allegations of the specific cookie banners with which each Plaintiff was presented. *Id*.

Thus, the Rule 9(b) analysis here is straight-forward. Despite Defendants' assertion to the contrary, Plaintiffs have pleaded "the who, what, when, where, and how" of Defendants' fraud. They allege that Defendants (the who), fraudulently stated that users could "Decline" cookies (the what), during the times specified in the complaint (when), on the cookie banners identified by Plaintiffs (where), and that this fraudulent statement appeared on the cookie consent banner (the how). *E.g.*, Am. Compl. ¶¶ 1–3, 46, 56, 69, 82, 95, 48–50, 61–63, 74–76, 87–89, 100–02, 170–80, 182–91, 193–201, 203–14 (alleging fraud); ¶¶ 36–40, 43–44, 57–58, 70–71, 83–84, 96–97 (alleging intentional conduct); ¶¶ 177, 188, 198, 211 (alleging reliance); ¶¶ 180–81, 191–92, 201–02, 214–15 (alleging injury). Plaintiffs further allege that the statement that they could "Decline" cookies was false and misleading because Defendants had in fact already permitted the Third Parties to place cookies on Plaintiffs' browsers and continued to do so even after Plaintiffs clicked "Decline." Plaintiffs further allege that Defendants acted intentionally and with knowledge (*id*. ¶¶ 36–40, 43–44, 57–58, 70–71, 83–84, 96–

97), Plaintiffs relied on the misrepresentations to their detriment (*id.* ¶¶ 177, 188, 198, 211), and were injured as a result (*id.* ¶¶ 180–81, 191–92, 201–02, 214–15). *See Motorola*. No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836, at *36–37 ("The complaint states that the "who" is Motorola; the "what" are misrepresentations by Motorola through the popup banner offering users the option to "Reject All non-essential cookies;" the "when" is the multiple occasions that Gabrielli visited Motorola's website between February 2022 and January 2024; the "where" is on Motorola's website; and the "how" is through the storage of cookies on users' devices that transmit personal information about the users. These allegations satisfy the "who, what, when, and where" of Rule 9(b)" (citations omitted)).

**C. Plaintiffs Adequately Plead Their Common Law Privacy Claims (Counts I and II)**

Defendants essentially restate their previously rejected arguments regarding Plaintiffs' common law privacy claims. As this Court held, Plaintiffs sufficiently pleaded that their own information was disclosed or collected during their visits without their knowledge. Order at 9–10 (citing Compl. ¶ 110, 119, 128, 137) *compare* Am. Compl. ¶¶ 178, 189, 199, 212. Indeed, Defendants' only explanation for re-raising these arguments is their contention that Plaintiffs do not satisfy Rule 9(b). Mot. at 14 n.5. As discussed above, this is incorrect.

Thus, the reasoning on which this Court first found that Plaintiffs' common law privacy claims were otherwise sufficient still applies. That is, Plaintiffs had a reasonable expectation of privacy in their private communications on the Websites because Defendants themselves represented that their browsing activity and Private Communications would remain private if they elected to "DECLINE" cookies. *Facebook Tracking*, 956 F.3d at 603–04 (finding a reasonable expectation of privacy from "allegations that Facebook allegedly compiled highly personalized profiles from sensitive browsing histories and habits."); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) (finding a reasonable expectation of privacy where Google collected a "large amount of personal information from users' smartphones"). And Plaintiffs' have alleged what information was collected with the requisite specificity. *See, e.g., Facebook Tracking*, 956 F.3d at 603 (rejecting "Facebook['s] argu[ment] that Plaintiffs need to identify specific, sensitive information that Facebook collected, and that their more general allegation that Facebook acquired 'an enormous amount of individualized

data' is insufficient. However, both the nature of collection and the sensitivity of the collected information are important.").

Likewise, Plaintiffs have shown that Defendants' intrusion was highly offensive, or at least, is a fact-intensive inquiry that cannot be resolved on the pleadings. *See id.*, 956 F.3d at 606 ("Determining whether a defendant's actions were 'highly offensive to a reasonable person" requires a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive.") (citation omitted). That is because, ultimately, the question of whether an intrusion is "highly offensive" is one that cannot be resolved on the pleadings because it is fact-intensive and entails weighing the "extent and gravity of the invasion." *Hill v. Nat'l Collegiate Athletic Ass'n*, 865 P.2d 633 (Cal. 1994); *see also Motorola*, No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836, at *26 (finding that it was premature to dismiss substantially similar claims based on a determination of how offensive or serious the privacy intrusion is); *Haleon*, No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503, at *22 (agreeing with Motorola); *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2021 U.S. Dist. LEXIS 98074, at *28 (N.D. Cal. May 21, 2021) ("[n]or is the offensiveness of Google's putative misconduct any less a matter of 'public policy,' or any more susceptible to 'resol[ution] at the pleading stage,' than that ascribed to Facebook"). Here, a jury is entitled to consider all of the circumstances around Defendants' conduct, including the fact that they lied about not tracking visitors, to determine whether Defendants' invasion of privacy was highly offensive.

**D. Plaintiffs Ayora and Nino's CIPA Claims are not Time Barred**

Defendants next argue that Plaintiff Ayora's and Plaintiff Nino's CIPA claims are time barred based on the flawed assumption that the statute of limitations for their claims began at the time of their visits to the Websites.[5] Here, however, both the discovery rule and the fraudulent concealment doctrine tolled CIPA's one-year statute of limitations. The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Beheshta Mahboob v. Educ. Credit Mgmt. Corp.*, No. LA CV21-08585-JAK-GJS, 2023 U.S. Dist. LEXIS 245751, at *40 (C.D. Cal. Dec. 20, 2023) (quoting *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th

[5] Defendants do not challenge timeliness as to the other Plaintiffs, or any non-CIPA cause of action.

797, 807 (2005)). Plaintiffs have alleged they do not know how the Websites are programmed and that determining whether Defendants are placing unauthorized cookies and transmitting data to third parties requires specialized software developer training. Am. Compl. ¶¶ 171, 181 (Ayora), 183, 192 (Wiley), 194, 202 (Gershzon), 204, 215 (Nino). Thus, they could not have discovered the violation at the time of their visit, and Plaintiffs' claims should be tolled. *See Doe v. Fullstory*, 712 F. Supp. 3d at 1255–56 (N.D. Cal. 2024) (discovery rule applied where plaintiff alleged that defendant had exclusive knowledge of its platform, and the highly technical nature of the violation all but ensured that Plaintiff could not discover the violation at all).

Separately, fraudulent concealment tolls Plaintiffs' claims when "(1) the defendant took affirmative acts to mislead the plaintiff; (2) the plaintiff did not have actual or constructive knowledge of the facts giving rise to its claim; and (3) the plaintiff acted diligently in trying to uncover the facts giving rise to its claim." *Brown v. Google LLC*, 525 F.Supp.3d 1049 (C.D. Cal. March 12, 2021) at 1070 (internal quotation marks and citation omitted). Plaintiffs demonstrate these requirements: they allege Defendants affirmatively misrepresented to Website visitors that users can "DECLINE" cookies and tracking technologies. *See, e.g.,* Am. Compl. ¶ 49, 62, 75, 88, 101 ("Defendant's representations, however, were false."). Because of this affirmative misrepresentation, and Plaintiffs Ayora's and Nino's lack of technical expertise, Plaintiffs Ayora and Nino acted diligently in bringing this action after learning of Defendant's privacy violations on the Arby's, Baskin Robbins, Dunkin, and Jimmy Johns Websites (Nino) and the Baskin Robbins, Dunkin', and Jimmy John's Websites (Ayora). *Id*. Indeed, Plaintiffs' invocation of the fraudulent concealment doctrine is stronger than it was in *Fullstory* because Plaintiffs have "allege[d] facts with respect to . . . the source of [Defendant's] fraudulent concealment;" namely, the affirmative misrepresentation that website users could truly "Decline" cookies and tracking technologies. *See Fullstory*, 712 F. Supp. 3d at 1256. As such, Defendants' fraudulent concealment tolled the statute of limitations for Plaintiffs Ayora and Nino.

Defendants simply cannot show that Plaintiffs Nino and Ayora were aware of the violations at the time of their visits to the Websites. This is fatal to their argument because statute of limitations is an affirmative defense. *See Lasko v. Caliber Home Loans*, 2022 U.S. App. LEXIS 6215, at *1 (9th Cir. Mar. 10, 2022). Plaintiffs are "not required to plead around anticipated affirmative defenses,

including the statute of limitations." *Kohler v. Flava Enters.*, No. 10-CV-0730 IEG (NLS), 2010 U.S. Dist. LEXIS 84033, at *3 (S.D. Cal. Aug. 13, 2010). As such, "[d]ismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint." *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014). Defendants' burden is extraordinarily high: dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Supermail Cargo, Inc. v. U.S.*, 68 F.3d at 1206 (9th Cir. 1995). "As a result, the defense generally cannot be asserted on a Rule 12(b)(6) motion." *A.B. v. Google LLC*, 737 F. Supp. 3d 869, 877–78 (N.D. Cal. 2024). Here, where there exist allegations in the Amended Complaint showing an inability to discover the violations of Plaintiffs' privacy, where there exist allegations of fraudulent concealment, and there are no allegations showing that Plaintiffs' Nino and Ayora became aware of the violations in a manner that would make their claims untimely, Defendants' statute of limitations argument fails.

### E. Defendants' CIPA § 631(a) Wiretapping Arguments Fail.

Plaintiffs allege a wiretapping claim under the fourth prong of Section 631(a) which prohibits aiding others who "unlawfully do, or permit, or cause to be done" either "(1) intentional wiretapping, (2) willfully attempting to learn the contents or meaning of a communication in transit over a wire, [i.e., eavesdropping,] and (3) attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Rodriguez v. Ford Motor Co.*, No. 3:23-cv-00598, 2024 U.S. Dist. LEXIS 218685, at *12 (S.D. Cal. Dec. 3, 2024) (cleaned up). Here, Plaintiffs allege that Defendants have aided the Third Parties in their CIPA violations. In their motion, Defendants argue that Plaintiffs have not adequately alleged that such communications were intercepted in transit, the specific contents of the communications, or intent. Each argument lacks merit.

#### 1. Plaintiffs Adequately Allege the In Transit Element of Their CIPA Wiretapping Claims.

In determining that Plaintiffs' initial complaint failed to adequately plead the "in transit" element of their CIPA wiretapping claim, this Court held that the initial complaint lacked a "description of 'how the software works or how the interception occurs.'" Order at 15 (citing *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1001 (N.D. Cal. 2024). In the Amended Complaint, Plaintiffs have

added multiple paragraphs describing in detail how the software works to intercept communications in transit—complete with screenshots describing real time data flow and availability of communications sent from consumers devices. Am. Compl. ¶¶ 152–63. These allegations demonstrate how the cookies placed on Plaintiffs' and other users' devices operated as a real time listening device—intercepting and reading their private communications, which were meant only to be between Plaintiffs' and Defendants'—and contemporaneously reading and processing them. This is more than sufficient.

CIPA § 631(a) states unlawful wiretapping occurs when anyone "willfully and without consent of all parties to the communication, or in any unauthorized manner, ***reads, or attempts to read, or to learn*** the contents or meaning of any message, report, or communication while the same is in transit . . . ***or who uses, or attempts to use***, in any manner, or for any purpose, or to communicate in any way, ***any information so obtained*** . . . ." Cal. Penal Code § 631(a) (emphasis added).

Here, Plaintiffs have alleged that "the interception [] occur[s] contemporaneous[ly] with the sending or receipt of the message," through alleging "real time" analysis of Plaintiffs' information. *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 759 (N.D. Cal. 2023); *see also Doe v. Tenet Healthcare Corp*., 789 F. Supp. 3d 814, 838 (E.D. Cal. 2025) ("[A]llegations that [communications] are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement."). Thus, Plaintiffs have alleged that their communications were tapped "in transit" sufficient to sustain their CIPA claims. *See, e.g., St. Aubin v. Carbon Health Techs., Inc*., No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067, at *17 (N.D. Cal. Oct. 1, 2024). Not only have Plaintiffs explained how third-party cookies operate, they give specific examples that transmit data in real time. Am. Compl. ¶¶ 4, 40, 51–52, 64–65, 77–78, 90–91, 103–04, 108–51, 152–63. Plaintiffs' wiretapping claims under CIPA § 631(a) survive because Plaintiffs' "allegations that [communications] are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement" at the pleadings phase. *Esparza v. UAG Escondido A1 Inc*., 2024 U.S. Dist. LEXIS 24429, at *3 (S.D. Cal. Feb. 12, 2024). Ruling otherwise would require Plaintiffs to prove their case before discovery. *D'Angelo v. Penny Opco, LLC, No. 23-cv-0981-BAS-DDL,* 2023 U.S. Dist. LEXIS 191054, at *8 (S.D. Cal Oct. 24, 2023);

*see also St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *15 ("A pleading standard [requiring explanation of how and when interception occurs] would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant and its third-party recorder.").

Defendants' arguments to the contrary rely on a selective reading of the Amended Complaint and semantic slight-of-hand. First, Defendants argue that the communications must be intercepted "during transmission"—which Defendants interpret to mean that a communication must be stopped along its path, read, and then passed on. This reading makes absolutely no sense in the context of a wiretapping statute. Indeed, the Amended Complaint makes clear that Plaintiffs' and other users' communications are intercepted and read by the third parties *in real time*. This is exactly an "in transit" interception.

Further, Defendants argue that Plaintiffs have not alleged in transit interception because the third parties "operate on the data only ***after*** it is transmitted from a user's browser." Mot. at 18. Defendants cherry-pick the word "after" while ignoring the crucial context of the sentence: "To accomplish each of the functions described above, the Third Parties employ real-time stream processing platforms specifically designed to operate on data 'in flight'—that is, after it is transmitted from a user's browser but before it is committed to the Third Parties' storage." Am. Compl. ¶ 157. While Defendants choose to ignore what Plaintiffs actually allege, the Court should not. Moreover, Defendants claim that because the third parties interpret information "only when they receive it," they do not interpret it in transit. This is mere semantics. It would be impossible for third parties to interpret something before receiving it. What Defendants miss is that the communications were in transit *to Defendants*, but were intercepted and read in real time by the third parties.

Thus, Plaintiffs' allegations that the communications were *intercepted* "in real time" or "contemporaneous[ly] with the sending or receipt of the message" are sufficient to establish the "in transit" element on a motion to dismiss. *See Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 759 (N.D. Cal. 2023) (noting statutory claim can be pled by explaining how messages are "intercepted in real time"); *St. Aubin v. Carbon Health Techs., Inc.,* No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067, at *15 (N.D. Cal. Oct. 1, 2024) ("while . . . in transit" means

"contemporaneously"). Further, simultaneous interception and duplication of communications meet CIPA's "in transit" element: "allegations that [communications] are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement." *Esparza v. UAG Escondido A1 Inc.*, 2024 U.S. Dist. LEXIS 24429, at *3 (S.D. Cal. Feb. 12, 2024). Put differently, "the key to the interception analysis is whether the plaintiff alleges that the transmission [to the intercepting third party's servers] was simultaneous." *St. Aubin*, 2024 U.S. Dist. LEXIS 179067 at *17. Plaintiffs have done so here.

Defendant urges this Court to apply holdings born from disparate facts to dismiss Plaintiffs' claims. The Court should not be duped. For example, *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002), involved an attempt to sue an airline for wiretap violations where the airline read posts that had been made to an online bulletin board on an earlier date. The Ninth Circuit held that reading a communication that had been made at an earlier date did not count as interception while the post was "in transit." That is not the issue here, where the Amended Complaint squarely alleges that each of the Third Parties "reads" the communication to create profiles of the Plaintiffs and other users for use in targeted advertising by additional third parties. Am. Compl. ¶¶ 152–63. This is not a case where the third parties act merely as "a passive tape recorder" to allow Defendant to read back the contents communicated at a later date. Rather, Plaintiffs allege that each Third Party takes the intercepted communication and derives useful information from it for their own purposes.

**2. Plaintiffs Adequately Allege the Contents of the Intercepted Communications**

As to Defendants' argument that Plaintiffs have not alleged that they transmitted communications to the Websites, courts have consistently refused to require plaintiffs to plead the exact communications they had with websites. *See, e.g., Byars v. Tire*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. Feb. 3, 2023) (stating that "[t]here is no requirement that [plaintiff] specifically allege the exact contents of her communications with Goodyear"; "[plaintiff] merely needs to show that the contents were not record information such as her name and address"); *James v. Walt Disney Co.*, 701 F. Supp. 3d at 956 (N.D. Cal 2023) (same); *Graf v. Zynga Game Network, Inc. (In re Zynga Privacy Litig.)*, 750 F.3d 1098, 1108–09 (9th Cir. 2014) (acknowledging that, "[u]nder some circumstances, a

user's request to a search engine for specific information could constitute a communication such that divulging a URL containing that search term to a third party could amount to disclosure of the contents of a communication"); *Haleon*, No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503, at *31 (substantially similar allegations that "the information collected as 'the Website user's affirmative decisions, actions, choices [and] preferences,' including 'user input data' such as 'search queries, the user's name, age, gender, email address, location, and/or payment information.'" is "more than sufficient."). Here, Plaintiffs have alleged that the communications were collected through wrongfully placed cookies on the Websites. Am. Compl. ¶¶ 40, 54–55, 67–68, 80–81, 93–94, 106–07 (alleging Private Communications collected through wrongfully placed cookies); ¶¶ 108–51 (alleging the types of data and communications collected by the wrongfully placed Third Parties' cookies). This is sufficient.

**3. Plaintiffs Adequately Allege Defendants' Intent**

Plaintiffs have adequately alleged intent. Decisions from this Circuit consistently hold that the intent element is satisfied by pleading that Defendants intentionally (i.e., not accidentally) "enable[d] a third party's eavesdropping on or interception of the communication." *See, e.g.*, *Doe v. Amgen, Inc.*, No. 2:23cv7448-MCS-SSC, 2024 U.S. Dist. LEXIS 144579, at *5 (C.D. Cal. Aug. 13, 2024); *Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 U.S. Dist. LEXIS 186955, at *4 (N.D. Cal. Oct. 23, 2019) ("[T]he complaint adequately alleges that [Defendant] violated section 631 by enabling [a third party's] wrongdoing); *Kotlarsz v. Integrity Vehicle Servs., Inc.*, No. 8:24-cv-00569-FWS-JDE, 2024 U.S. Dist. LEXIS 213565, at *22 (C.D. Cal. Sep. 3, 2024) ("it was the [D]efendant's website on which the [third party] operated."). And, regardless of specific intent, courts routinely find plaintiffs' privacy allegations sufficient when plaintiff alleges that Defendant intended the *act* which "enable[d]" the privacy violation. *See, e.g., Doe*, 2024 U.S. Dist. LEXIS 144579, at *5. Here, it is even more egregious because Defendants expressly promised that they would not act as they did.

The intent requirement in the analogous Wiretap Act is also instructive. "The Ninth Circuit has rejected that the word 'intentionally' in the Wiretap Act 'must be read to require a defendant to know that [its] conduct is unlawful . . . Rather, the statute only requires 'an intentional act, defined as an act that is being done on purpose.'" *Shahnaz Zarif v. Hwareh.com, Inc.*, 2025 U.S. Dist. LEXIS 26519, at

*20 (S.D. Cal Feb 12, 2025). Defendants rely on *Smith v. Yeti Coolers, LLC*, No. 24-cv-01703-RFL, 2024 U.S. Dist. LEXIS 194481, at *11 (N.D. Cal. Oct. 21, 2024), to support its interpretation of CIPA's intent requirement. *Yeti* is factually distinct: there, unlike here, the plaintiff alleged that the website owner was liable for aiding a third-party payment processor to "incorporate[] customers' financial information into its fraud prevention system, which it then markets to merchants without customers' consent" in violation of the statute. *Id.* at *1. The court concluded that the plaintiff failed to allege that the defendant was "acting with the third party in order to have the third party perform acts that violate the statute." *Id.* at *12. In other words, the court found that the defendant did not intend to enable the third party to collect user information (which plaintiff alleged violated the statute); it intended only to enable the third party to process payments for its website. Here, Defendants intentionally chose to integrate the Third Parties' software that placed and transmitted cookies into their Websites to obtain user data for advertising and analytics functions. Am. Compl. ¶ 36. Defendants did not disable this software or prevent the Third Parties from obtaining user data even after representing to Plaintiffs and Class members that they could "Decline" cookies. *Id.* ¶¶ 46–55 (Arby's), 56–68 (Baskin Robbins), 69–81 (Dunkin'), 82–94 (Jimmy Johns), 95–107 (Sonic). Defendants cannot claim that they did not intend to enable the Third Parties to wiretap and eavesdrop on users' Private Communications since they installed the Third Party code on its Websites to do exactly that. *See Haleon*, No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503, at *29 (finding intent alleged under CIPA when it was alleged that "Haleon intentionally operated its website and assisted third parties in gathering Gabrielli's information.").

**4. Plaintiffs properly plead a "pen register" claim under section 638.51.**

CIPA Section 638.51(a) prohibits any person from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order." The statute defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). Plaintiffs adequately plead each element of this definition by alleging that the Third Parties' cookies and the corresponding software code Defendants installed that allows the Third Parties to attach cookies operate as "pen

registers" because they are processes that record users' IP address and user-agent information, which is not the content of the electronic communications being transmitted from users' computers or smartphones to the Websites.

As in their first motion, Defendants assert that Plaintiffs' allegations fail because pen registers are limited to telephonic devices. But "this argument has been considered and rejected multiple times." *Haleon*, No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503, at *32; *Motorola*, No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836, at *30 (Motorola argues that the legislative history of Section 638.51—which discusses pen registers in relation to telephones—indicates that the statute applies only to telephones. The Court disagrees."). Indeed, as the court held in *Greenley v. Kochava, Inc.*,

> the Court cannot ignore the expansive language in the California Legislature's chosen definition. The definition is specific as to the type of data a pen register collects—"dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted," but it is vague and inclusive as to the form of the collection tool—"a device or process." *See* Cal. Penal Code § 538.50(b). This indicates courts should focus less on the form of the data collector and more on the result. Thus, the Court applies the plain meaning of a "process" to the statute. A process can take many forms. Surely among them is software that identifies consumers, gathers data, and correlates that data through unique "fingerprinting." (Am. Compl. ¶¶ 67, 74.) Thus, the Court rejects the contention that a private company's surreptitiously embedded software installed in a telephone cannot constitute a "pen register."

684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023); *see also Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-CV-01797-CRB, 2024 U.S. Dist. LEXIS 227378, at *7–8 (N.D. Cal. Dec. 12, 2024) (citing *Greenley* to reject the argument that CIPA's pen register definition applies only to telephone technology and to hold that internet browser trackers can constitute pen registers).

Next, Defendants argue that Plaintiffs fail to identify "the ***specific dialing, routing, addressing, or signaling information*** for outgoing communications that were purportedly tracked." Mot. at 23. This is untrue. Plaintiffs adequately plead each element of this definition by alleging that the Third Parties' cookies and the corresponding software code Defendants installed that allows the Third Parties to attach cookies operate as "pen registers" because they are processes that record users' IP address and user-agent information, which is not the content of the electronic communications being transmitted from users' computers or smartphones to the Websites. *See* Am. Compl. ¶¶ 33–34

(describing how the Third Parties obtained Private Communications from Plaintiffs including, among other things, their IP addresses); ¶¶ 282–84 (alleging that Defendants designed the Website to enable the Third Parties to place cookies on Plaintiffs' and Class members' browsers and devices to transmit Plaintiffs' and Class members' IP address and user-agent information); ¶ 119 (data sent to Google contains the user's IP address and a unique identifier); ¶ 127 (unique Facebook user identifier); ¶ 133, 135 (data sent to TikTok contains the user's IP address and unique user identifier); ¶ 146 (data sent to Microsoft contains unique user identifier). Accordingly, Plaintiffs have pled a cause of action under § 638.50 of CIPA.

**F. Plaintiff Adequately Alleges Fraud/Misrepresentation Claims.**

As explained above, Plaintiffs' fraud claims meet all of the requirements of Rule 9(b). Aside from Rule 9(b), Defendants challenge the fraud claims by contending that Plaintiffs have not alleged "knowledge by Defendants of any errant or unintended collection of data" or reliance. Mot. at 22. Both contentions are incorrect. First, in a claim for fraud, "[m]alice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). When essential information is within the other parties' knowledge, Rule 9(b) permits pleading knowledge and intent on "information and belief." *See Blake v. Dierdorff*, 856 F.2d at 1369 (9th Cir. 1988). The Complaint alleges that Defendants acted with knowledge. Am. Compl. ¶¶ 35–36, 43, 57, 70, 83, 96, 292. This is sufficient. *Haleon*, 2025 U.S. Dist. LEXIS 169503, at *36 ("Haleon argues that Gabrielli has failed to show intent. But because intent may be alleged generally, his allegations are sufficient for now." (citing Fed. R. Civ. P. 9(b)). Second, Plaintiffs have clearly alleged reliance. Am. Compl. ¶¶ 177, 179, 188, 190, 198, 200, 211, 213 (alleging reliance). Defendants' unadorned argument to the contrary simply ignores these allegations.

**G. Plaintiffs' Unjust Enrichment Claim Properly Pled.**

The Ninth Circuit has allowed independent claims for unjust enrichment to proceed. *See Bruton v. Gerber Prod. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017); *see also In re Facebook Consumer Priv.*, 402 F. Supp. 3d at 803 (permitting an independent unjust enrichment claim alongside valid breach of contract and fraud claims). To successfully plead unjust enrichment, "a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *Katz-Lacabe v.*

*Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023). Here, Plaintiffs may bring an unjust enrichment claim because they allege that Defendants benefited from using their Private Communications and that otherwise their remedies at law are inadequate. Am. Compl. ¶¶ 44–45, 57–58, 71, 84, 97 (describing ways in which Defendants benefited from the use of wrongfully-placed cookies); ¶ 310 (alleging no adequate remedy at law). Indeed, if Plaintiffs are unable to pursue their other claims, they would have not adequate legal remedy. "These allegations are all that is necessary at this stage in the proceedings." *Shah v. Capital One Fin. Corp.*, No. 24-cv-05985-TLT, 2025 U.S. Dist. LEXIS 42677, at *30–31 (N.D. Cal. Mar. 3, 2025) (refusing to dismiss unjust enrichment claim in a privacy case); *see also A.J. v. LMND Med. Grp.*, No. 24-cv-03288-RFL, 2024 U.S. Dist. LEXIS 194480, at *4 (N.D. Cal. Oct. 25, 2024) (finding that plaintiffs' allegations that defendant benefitted from their information by exchanging it without their consent and that plaintiffs failed to receive the benefit of their bargain was sufficient to plead unjust enrichment).

### H. Plaintiffs Request Leave to Amend If Necessary.

If the Complaint is dismissed, "leave to amend should be granted unless the Court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co*., 806 F.2d 1393, 1401 (9th Cir. 1986). Indeed, leave to amend is only really properly denied "where the amendment would be futile." *DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992). Should this Court find any claims in the Complaint insufficient, Plaintiffs request leave to amend to cure the identified deficiencies.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss must be denied.

//

//

//

Dated: April 17, 2026

**GUTRIDE SAFIER LLP**

*/s/Patrick J. Branson*
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
hayley@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

Patrick J. Branson (*pro hac vice*)
patrick@gutridesafier.com
305 Broadway, 7th Floor
New York, NY 10007
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*