**BAKER & HOSTETLER LLP**
Bethany G. Lukitsch (SBN 314376)
Kamran B. Ahmadian (SBN 314566)
Jaein Cho (SBN 360090)
1900 Avenue of the Stars | Suite 2700
Los Angeles, CA 90067-4508
Telephone: 310.820.8800
Facsimile: 310.820.8859
*blukitsch@bakerlaw.com*
*kahmadian@bakerlaw.com*
*jcho@bakerlaw.com*

*Attorneys for Defendants*
INSPIRE BRANDS, INC., ARBY'S RESTAURANT GROUP, INC., JIMMY JOHN'S FRANCHISOR SPV, LLC, SONIC INDUSTRIES SERVICES, LLC, and DUNKIN' BRANDS, INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BENJAMIN PAUL DE AYORA, CHRISTINE WILEY, MIKHAIL GERSHZON, AND GEORGE NINO as individuals, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>INSPIRE BRANDS, INC., ARBY'S RESTAURANT GROUP, INC., JIMMY JOHN'S FRANCHISOR SPV, LLC, SONIC INDUSTRIES SERVICES, LLC, DUNKIN' BRANDS, INC.,<br><br>Defendants. | CASE NO.: 3:25-cv-03645-AGT<br><br>[*Assigned to Magistrate Judge Alex G. Tse*]<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**Date: May 29, 2026**<br>**Time: 10:00 a.m.**<br>**Dept: Courtroom A**<br><br>Action Filed: April 25, 2025 |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## TABLE OF CONTENTS

I. INTRODUCTION ........ 1
II. PLAINTIFFS LACK ARTICLE III STANDING ........ 2
A. Inspire Brands Must be Dismissed with Prejudice. ........ 5
III. PLAINTIFFS' ALLEGATIONS FAIL TO SATISFY RULE 9(B) ........ 6
IV. PLAINTIFFS' COMMON LAW PRIVACY CLAIMS FAIL ........ 7
V. PLAINTIFFS' CIPA CLAIMS FAIL ........ 8
A. Plaintiffs Ayora and Nino's CIPA Claims Are Time Barred ........ 8
B. Plaintiffs' Wiretapping (CIPA § 631) Claim Is Not Sufficiently Pled ........ 10
C. Plaintiffs' Pen Register (CIPA § 638.51) Claim Is Not Sufficiently Pled ........ 13
VI. PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS ........ 15
VII. CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.J. v. LMND Med. Grp., Inc.*, 2024 WL 4579143 (N.D. Cal. Oct. 25, 2024) .......... 15

*Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733 (9th Cir. 2008) .......... 10

*Bradshaw et al. v. Lowe's Cos., Inc.*, 2025 WL 3171740 (S.D. Cal. Nov. 12, 2025) .......... 4

*Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025) .......... 5

*DellaSala v. Samba TV, Inc.*, 2025 WL 3034069 (N.D. Cal. Oct. 30, 2025) .......... 4

*Doe v. Amgen*, 2024 WL 3811251 (C.D. Cal. Aug. 13, 2024) .......... 12

*Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109 (N.D. Cal. 2025) .......... 8, 11, 13

*Doe v. FullStory*, 712 F. Supp. 3d 1244 (N.D. Cal. 2024) .......... 9

*ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023 (9th Cir. 2016) .......... 15

*In re Facebook, Inc.*, 956 F.3d 589 (9th Cir. 2020) .......... 3, 7

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 784 (N.D. Cal. 2019) .......... 5

*Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852 (N.D. Cal. 2025) .......... *passim*

*Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957 (N.D. Cal. July 14, 2025) .......... 7

*Garcia v. Blackhawk Network, Inc.*, 2026 WL 925028 (C.D. Cal. Apr. 1, 2026) .......... 2, 8

*Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......... 13, 14

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Gutierrez v. Converse Inc.*,
2025 WL 1895315 (9th Cir. July 9, 2025) .......... 14

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 8

*Herzman v. Smile Brands Inc.*,
2026 WL 1110698 (S.D. Cal. Apr. 23, 2026) .......... 3

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) .......... 9

*Jones v. Tonal Sys., Inc.*,
751 F. Supp. 3d 1025 (S.D. Cal. 2024) .......... 8

*Kotlarsz v. Integrity Vehicle Servs., Inc.*,
2024 WL 4800695 (C.D. Cal. Sep. 3, 2024) .......... 12

*Mahboob v. Educ. Credit Mgmt. Corp.*,
2023 WL 12014957 (C.D. Cal. Dec. 20, 2023) .......... 9

*Mirmalek v. L.A. Times Commc'ns LLC*,
2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) .......... 14

*Morilha v. Alphabet Inc.*,
2024 WL 5205542 (N.D. Cal. Dec. 23, 2024) .......... 8

*Neubronner v. Milken*,
6 F.3d 666 (9th Cir. 1993) .......... 7

*O'Neill v. Cal. Physicians' Serv.*,
2025 WL 3207416 (N.D. Cal. Nov. 17, 2025) .......... 9

*Oganyan v. Biolife Plasma Servs. L.P.*,
2025 WL 2979619 (E.D. Cal. Oct. 22, 2025) .......... 4

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... *passim*

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......... 12

*Rodriguez v. Culligan*,
2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) .......... 4

*Rodriguez v. Ink Am. Int'l Grp. LLC*,
2025 WL 4034985 (Cal. Super. Dec. 10, 2025) .......... 14

*Shah v. Capital One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) .......... 15

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) .......... 13

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp*.,
802 F. Supp. 2d 1125 (C.D. Cal. 2011) .......... 7

*Thibodeaux v. Teamsters Local 853*,
263 F. Supp. 3d 772 (N.D. Cal. 2017) .......... 9

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) .......... 11

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) .......... 6

*Wiley v. Universal Music Grp., Inc.*,
2025 WL 3654085 (N.D. Cal. Dec. 17, 2025) .......... 11, 14

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) .......... 7

*Zarif v. Hwareh.com, Inc.*,
789 F.Supp.3d 880 (S.D. Cal. 2025) .......... 13

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 10

**Other Authorities**

Fed. R. Civ. Proc. 9(b) .......... *passim*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## I. INTRODUCTION

Plaintiffs' Opposition underscores, rather than cures, the fundamental pleading deficiencies in their FAC as identified in Defendants' Motion to Dismiss Plaintiffs' FAC ("Motion"). Instead of following the Court's express instruction to bolster and streamline their allegations, Plaintiffs compounded the confusion by layering additional vague, conclusory assertions onto those already pled, producing an even longer amended complaint. The Opposition argues in the abstract that the FAC includes the additional factual allegations the Court requested, yet Plaintiffs repeatedly fail to identify where—within nearly 100 pages—any such specific allegations actually appear. That is because they do not appear at all.

Plaintiff Ayora's allegations illustrate the problem. Nowhere in the paragraphs purporting to describe his "personal experience" with the Websites (FAC ¶¶ 170–181) does he allege a single, concrete visit to any of the four Websites during a two-and-a-half-year period—a period that even predates Arby's deployment of a cookie banner. He does not allege, for instance, that on a particular date he visited the Arby's website, encountered a specific cookie banner, declined certain cookies, navigated to a certain page, entered particular search terms—perhaps looking for a certain roast beef sandwich—or that, despite his cookie banner selection certain specific technologies intercepted his communication with Arby's. Just as its predecessor, the FAC remains "completely confusing," forcing both the Court and Defendants to "pull it apart" and speculate about what Plaintiffs might be alleging. The Opposition does not even attempt to rebut this failure. Rule 9(b) does not permit pleading by vagary or conjecture. Because Plaintiffs have again failed to cure the deficiencies the Court specifically identified, their claims cannot survive a motion to dismiss.

Plaintiffs still fail to plead a concrete privacy injury to establish Article III standing. Under *Popa v. Microsoft*, courts must examine the *type of data* allegedly collected, not merely that it was collected without consent or as Plaintiffs allege under false pretenses. Simply labeling information as "Private Communications" and providing generic categories (*see* FAC ¶ 40) does not make the data "embarrassing, invasive or otherwise private." That distinction is precisely why *Popa* requires plaintiffs to plead what personal or private information was collected—not merely assert that it was. Plaintiffs still do not provide a single specific example of a "Private Communication."

Although Plaintiffs argue that tracking cookies allowed third parties to discern their "copious personal information" (Opp. at 2), they cannot identify a single paragraph in the FAC that provides the factual support. Indeed, Plaintiffs concede that they have not pled the exact communications they had with the Websites. *See* Opp. at 19–20 (citing only to paragraphs unrelated to "Plaintiffs' Experiences.").

Even if Plaintiffs could establish Article III standing—which they cannot—each of their claims independently fails. Plaintiffs still do not allege the "when" and "where" of any misrepresentation or specific communication and therefore cannot satisfy Rule 9(b)'s heightened pleading standard. They also fail to allege that they engaged in any protected "communications," fail to allege that any communication was intercepted while in transit, and fail to allege the requisite scienter. And, Plaintiffs' pen register claim stretches CIPA far beyond its text, settled precedent, and legislative intent. Having failed to cure these fundamental pleading defects despite multiple opportunities, Plaintiffs' claims should be dismissed with prejudice.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## II. PLAINTIFFS LACK ARTICLE III STANDING

Plaintiffs argue that simply alleging the collection of data from Defendants' Websites and its transmission to third parties without their consent constitutes a concrete privacy injury sufficient to establish Article III standing. *See* Opp. at 7. That argument, however, squarely conflicts with controlling Ninth Circuit authority, which makes clear that alleging data collection alone, even without consent, is ***not enough***. *See Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025). If it were sufficient, the plaintiff in *Popa*—who alleged that a website collected more than thirty categories of her information during a single visit without her consent—would have had standing. *See id.* at 786, 796. The *Popa* court confirmed that courts must look beyond the mechanism to ***the type of data collected*** in determining whether a cognizable privacy harm occurred. *See id.* at 786, 791; *see also Garcia v. Blackhawk Network*, *Inc*., 2026 WL 925028, at *6 (C.D. Cal. Apr. 1, 2026) ("In order to satisfy *Popa*'s standing requirement, Plaintiff must allege facts that indicate: (1) Defendant used tracking technologies that collected especially sensitive or wide-reaching information; and (2) those tracking technologies were actually installed on Plaintiff's computer.").

Plaintiffs therefore must allege not only what data they personally disclosed during their

visits to the Websites, but also that the data collected constituted "embarrassing, invasive, or otherwise private information." *See Popa*, 153 F.4th at 791. Plaintiffs have failed to do either and therefore lack Article III standing. *See e.g., Herzman v. Smile Brands Inc.*, 2026 WL 1110698, at *4 (S.D. Cal. Apr. 23, 2026) ("[T]he complaint contains no allegations explaining what information Plaintiff disclosed to Defendant when he made this appointment … Without this information the Court cannot assess whether the information disclosed cause a sufficient concrete harm that is similar to the highly offensive interferences or disclosures that were actionable at common law.") (int. quot. omitted).

The Ninth Circuit's requirement that plaintiffs must allege highly sensitive or invasive data collection to obtain standing is not new. In *In re Facebook, Inc.*, 956 F.3d 589 (9th Cir. 2020)—a case Plaintiffs repeatedly cite—the Ninth Circuit held that a concrete privacy injury was alleged based on the highly invasive and sensitive nature of the information collected. *See id.* at 598. The court reached that conclusion only after weighing multiple factors, including the volume of data collected, the mechanism of collection (an affirmative misrepresentation), and the type and nature of the data itself (highly sensitive information). *Id.* The allegations in *In re Facebook* not only differ materially from those here, but they illustrate precisely why standing is lacking in this case. There, Facebook allegedly tracked users ***across the internet*** and ***collected highly sensitive browsing history reflecting visits to deeply personal and potentially embarrassing websites***. *See id.* Plaintiffs allege nothing of the sort here. Nor can they. At most, they claim that Defendants collected and shared information about visits to one—or even several—fast-food restaurant websites. Plaintiffs allege no facts showing what information they provided during those visits, that they bought something, or any data whatsoever, let alone how that information is personal, sensitive, or embarrassing, non-record information. Absent such allegations, *Popa* makes clear that Plaintiffs have not alleged a concrete privacy injury.

Rather than confront *Popa* directly, Plaintiffs rely on a single district court decision involving over-the-counter healthcare products to narrow its reach and distinguish it on the facts. *See* Opp. at 8–9 (citing *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852 (N.D. Cal. 2025)). The *Haleon* decision is unpersuasive and, at a minimum, factually distinguishable. There, the court



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

reasoned that because the websites involved ***healthcare products***—unlike the pet food website in *Popa*—the information users entered was "likely more sensitive." *Id.* at 867. This case concerns fast-food restaurant websites, which more closely resemble the innocuous pet store website in *Popa* than the healthcare-focused sites in *Haleon*.

Plaintiffs also emphasize that the *Haleon* court distinguished *Popa* based on users' interactions with the websites and the capabilities of the technology involved. *See* Opp. at 8–9. But that distinction targets the wrong inquiry. Alleged promises not to track—or what the technologies were capable of doing or theoretically could collect—do not establish standing. The sole relevant question is what data Plaintiffs allege Defendants *actually collected* from them during their visits. Respectfully, Plaintiffs' boilerplate allegations in Paragraph 40 about general categories of information that could plausibly be collected about them or anyone else that visits one of the Websites do not suffice. Rule 9(b) requires more. For example, Plaintiff Ayora evaded arbitration (*see* Petition to Confirm Arbitral Award, Dkt. No. 1) by alleging that he never created an account. If that were true, he would not have entered his birthday into the account-creation form—the sole location on Arby's website where users provide that information. Ultimately, Paragraph 40 is boilerplate, appears verbatim in these copycat complaints, and should be disregarded for purposes of this Court's standing analysis.

Because Plaintiffs allege nothing about their interactions with the Websites or any data actually collected ***from them*** (*see* FAC ¶¶ 170–227), they fail to allege a concrete privacy injury. *See also Oganyan v. Biolife Plasma Servs. L.P.*, 2025 WL 2979619, at *4 (E.D. Cal. Oct. 22, 2025) ("Plaintiffs also do not sufficiently allege any *actual* injury. Rather, they allege that the third-party trackers have the *capability* to use these pieces of information[.]"); *Rodriguez v. Culligan*, 2025 WL 3064113, at *3 (S.D. Cal. Nov. 3, 2025) ("Rodriguez's failure to demonstrate anything more than an alleged statutory violation is [] fatal to her claim."); *DellaSala v. Samba TV, Inc.*, 2025 WL 3034069, at *5 (N.D. Cal. Oct. 30, 2025) (relying on *Popa* and dismissing privacy claim because plaintiffs "have not plausibly alleged a highly offensive violation of a privacy interest"); *Bradshaw et al. v. Lowe's Cos., Inc.*, 2025 WL 3171740, at *5–6 (S.D. Cal. Nov. 12, 2025) ("Whether the *conduct* at issue has a historical analog does not answer the question of whether the plaintiff has



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

suffered a concrete injury. Rather, the answer…depends on 'whether an individual plaintiff has suffered a *harm* that has traditionally been actionable[.]'") (citing *Popa*, 153 F.4th at 791)).

Accordingly, Plaintiffs' FAC should be dismissed in its entirety for lack of standing.[1]

**A. Inspire Brands Must be Dismissed with Prejudice.**

Plaintiffs identify no facts in the FAC that would connect Inspire Brands to the alleged misconduct in this case. Plaintiffs argue that their allegation that Inspire Brands operates its restaurant brands through "shared technology infrastructure and services related to user data collection and privacy compliance" necessarily establishes that Inspire Brands oversees and administers privacy practices across all the Websites. Opp. at 10. That conclusory allegation is insufficient—particularly under Rule 9(b). To proceed, Plaintiffs must allege that Inspire Brands itself collected personal data through other Defendants acting as its sub-processors. *See Briskin v. Shopify, Inc.,* 135 F.4th 739, 748 (9th Cir. 2025). They do not.

At most, Plaintiffs describe the corporate relationships between Inspire Brands and its subsidiaries. The fact that the privacy policies direct users to an Inspire-controlled email address shows only that Inspire Brands and its subsidiaries sometimes operate at an enterprise level. *See* FAC ¶ 11 (https://inspirebrands.com/about-us/, incorporated by reference). That allegation falls far short of plausibly alleging that Inspire Brands engaged in the challenged conduct including a wiretap—namely, collecting and tracking Plaintiffs' data. *Compare with Briskin*, 135 F.4th 739 at 761 (finding defendants were engaged in "one course of conduct jointly pursued by three closely related corporate defendants" where the complaint described each company's role in the alleged data collection and monetization scheme). Because Plaintiffs allege no facts linking Inspire Brands itself to the purported data collection, they lack standing to sue Inspire Brands, and the Court should dismiss those claims with prejudice.

[1] Plaintiffs have not alleged a loss of value or control to establish standing. *See* Opp. at 10-11. Whether framed as separate theories of harm or not, Plaintiffs' Opposition fails to allege *any facts* showing that *their data* has independent economic value or was subject to their exclusive control. Plaintiffs' reliance on *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 784 (N.D. Cal. 2019) is misplaced. *Id.* at 10. Not only is that case factually distinguishable, but as discussed above, Plaintiffs have not alleged a loss of control of any of *their own information*, let alone over "sensitive information." Moreover, Plaintiffs conflate their loss-of-value theory of harm with their unjust enrichment claim. *See* Opp. at 11. Whether Defendants were unjustly enriched (they were not) is a separate question. The relevant inquiry is whether Plaintiffs have shown harm through the alleged loss of value of unpled, nonspecific personal information. They have not.

## III. PLAINTIFFS' ALLEGATIONS FAIL TO SATISFY RULE 9(B)

Plaintiffs' Opposition incorrectly suggests (through its heading) that only the fraud and misrepresentation claims must satisfy the heightened pleading standard. That is wrong. As the Ninth Circuit has long held—and this Court has already recognized—when a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct," ***all pleaded claims*** "sound in fraud," and are therefore subject to Rule 9(b)'s heightened pleading requirements. *See* Order at 6–7; *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003). Accordingly, Plaintiffs' failure to plead their claims with the particularity required by Rule 9(b) warrants dismissal of *all their claims*. *See* Order at 8 (dismissing all of Plaintiffs' claims for failure to allege the "when" and "where").

Plaintiffs contend that adding vague, generalized allegations regarding the "when" and "where" of the alleged misrepresentations satisfies Rule 9(b). *See* Opp. at 12. It does not. Plaintiffs themselves concede—and this Court has already recognized—that the Websites and their cookie banners changed over time. *See* FAC ¶ 181 ("…Plaintiff Ayora does not know how the Arby's, Baskin Robbins, Dunkin, and Jimmy John's Websites are programmed, ***which can change over time***…."); Order at 8 ("Given that the cookie banners were changed during the accused period, the Court finds that Plaintiffs have not adequately given Defendants notice of the 'when' or the 'where' here."). Plaintiffs claim they have supplemented the broad time ranges in the initial complaint with more exact time periods and allegations identifying the specific cookie banners each Plaintiff allegedly encountered. Opp. at 12. However, the allegations in the FAC are far from clear. For example, the FAC offers no explanation of how Plaintiff Nino could have been presented with a popup cookie consent banner as shown and described in Paragraph 46, when such banner did not exist in 2021 when he claims to have visited the Arby's Website. Nor does the Opposition address the fact that several of the visits allegedly occurred ***after*** Plaintiffs already learned of the purported misrepresentation (*see* Mot. at 13–14), and hence Plaintiffs could not have been deceived by or relied upon such misrepresentation.[2]

[2] Having failed to address these arguments, Plaintiffs have waived this issue. *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[F]ailure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue." (cleaned up)).



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Moreover, Plaintiffs' reliance on *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957 (N.D. Cal. July 14, 2025) is misplaced. *See* Opp. at 13. *Motorola* involved a single website that remained unchanged during the relevant period. *See Motorola,* 2025 WL 1939957, at *14. Here, by contrast, Plaintiffs allege visits to five different Websites over broad timeframes, even though those Websites displayed and updated cookie banners at different times. The FAC's lack of specificity still fails to "give [D]efendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993). For these reasons, the FAC must be dismissed.

## IV. PLAINTIFFS' COMMON LAW PRIVACY CLAIMS FAIL

Plaintiffs' Opposition again sidesteps the central deficiency in the FAC: Plaintiffs allege no facts showing that Defendants collected ***personal or sensitive data*** from them during their visits to the Websites. California law imposes an extremely high bar for invasion of privacy claims—one that Plaintiffs cannot meet, even at the pleading stage, without concrete allegations of sensitive data collection. *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014) ("The California Constitution sets a 'high bar' for establishing an invasion of privacy claim.") (cit. omitted). Rather than address that requirement, Plaintiffs claim a vague expectation of privacy in their undefined "browsing activity and Private Communications" with a public website, supposedly arising from Defendants' alleged "promises" not to collect such information. *See* Opp. at 13. But even in *In re Facebook*, a case Plaintiffs heavily rely on, the court emphasized that it was the extraordinary volume and sensitive nature of the data collected, not merely the existence of an alleged misrepresentation in a privacy notice, that was central to creating an actionable invasion of privacy claim. *See In re Facebook*, 956 F.3d at 602–05.

Even if Plaintiffs could establish that the alleged representations created a reasonable expectation of privacy in their unspecified, non-record browsing data, their common-law privacy claims still fail because they do not—and cannot—plead facts satisfying the second required element: that Defendants' conduct was "highly offensive." *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022). Courts find the use of tracking technology "highly



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

offensive" only in limited and extreme circumstances, such as when it captures especially sensitive information (e.g., health or financial data) or when it broadly tracks a user's activity across multiple websites in a manner that renders the intrusion egregious. *See e.g., Blackhawk Network*, 2026 WL 925028, at *6. Plaintiffs allege neither. The Opposition points to ***no facts*** in the FAC showing that Defendants collected sensitive information or engaged in broad, invasive tracking. *See* Opp. at 14. Indeed, Plaintiffs never explain how browsing fast-food restaurant websites is personally identifying or sensitive at all. *See Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1114, n.3 (N.D. Cal. 2025) (distinguishing innocuous shopping activity, such as for a football jersey, from browsing that reveals highly intimate information).

Instead, Plaintiffs argue that the Court cannot resolve this issue at the pleading stage. Opp. at 14. That is simply wrong. Courts routinely dismiss privacy claims as a matter of law where the alleged conduct does not rise to the level of a highly offensive intrusion. *See e.g.*, *Morilha v. Alphabet Inc.,* 2024 WL 5205542, at *4 (N.D. Cal. Dec. 23, 2024) (dismissing privacy claim at the pleading stage where alleged disclosure of IP addresses and geolocation data was not sufficiently egregious); *Jones v. Tonal Sys., Inc.*, 751 F. Supp. 3d 1025, 1043–44 (S.D. Cal. 2024) (finding no actionable intrusion absent allegations that data collected through a website chat feature was embarrassing or socially stigmatizing).

Because Plaintiffs' allegations fall well short of the required "highly offensive" threshold, their common law privacy claims fail as a matter of law and must be dismissed.

## V. <u>PLAINTIFFS' CIPA CLAIMS FAIL</u>

### A. <u>Plaintiffs Ayora and Nino's CIPA Claims Are Time Barred</u>

As for Plaintiff Ayora, he expressly alleges that he learned of Defendants' purported privacy violations from his counsel ***in October 2023***—nearly two years before Plaintiffs filed the initial Complaint. FAC ¶ 216. Although the Court previously addressed the availability of equitable tolling for Ayora's CIPA claims against Inspire Brands and Arby's based on a prior arbitration demand, *see* Order at 10, Ayora's explicit admission of knowledge in 2023 means his CIPA claims against the remaining Defendants are clearly time-barred. As for Plaintiff Nino, the Opposition attempts to salvage his untimely claims by invoking the delayed discovery rule and

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

fraudulent concealment. *See* Opp. at 14–16. Both arguments fail as a matter of law.

To invoke the delayed discovery rule, a plaintiff must plead specific facts in the complaint showing both (1) the time and manner of discovery and (2) the inability to have made early discovery despite reasonable diligence. *See Mahboob v. Educ. Credit Mgmt. Corp.*, 2023 WL 12014957, at *14 (C.D. Cal. Dec. 20, 2023); *O'Neill v. Cal. Physicians' Serv.*, 2025 WL 3207416, at *6 (N.D. Cal. Nov. 17, 2025) ("Conclusory allegations of diligence cannot suffice.") (cit. omitted). Plaintiff Nino offers no facts explaining how or when he learned of his claims, nor does he allege any facts showing that he exercised reasonable diligence but could not have discovered any of the alleged conduct earlier. Without these facts, the delayed discovery rule does not apply. *See Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 903 (N.D. Cal. 2023) (plaintiff failed to plead sufficient facts to invoke the delayed discovery rule).[3]

The doctrine of fraudulent concealment also does not salvage Plaintiff Nino's claims. As discussed above, the FAC fails to satisfy Rule 9(b)'s heightened pleading standard, which applies with full force to allegations of fraudulent concealment. *See Thibodeaux v. Teamsters Local 853*, 263 F. Supp. 3d 772, 778 (N.D. Cal. 2017) (requiring plaintiff to "plead allegations of fraudulent concealment with particularity, including facts showing his lack of constructive knowledge and his diligence.") (cleaned up). The FAC offers only isolated visit dates or sweeping time ranges, and alleges no specifics about when cookie banners appeared, which cookies allegedly fired, what data was transmitted, or how any transmission occurred. Absent these particulars—facts necessary to show both a lack of constructive knowledge and the exercise of diligence—Plaintiff Nino cannot invoke fraudulent concealment to toll the statutes of limitations.

Further, Plaintiffs' failure to plead the facts necessary to overcome the statute of limitations—despite having been on notice since Defendants' initial motion that limitations posed a fatal defect—weighs against granting leave to amend. *See Abagninin v. AMVAC Chem. Corp.,* 545 F.3d 733, 742 (9th Cir. 2008) ("Leave to amend may also be denied for repeated failure to cure

[3] Plaintiffs rely on *Doe v. FullStory*, 712 F. Supp. 3d 1244 (N.D. Cal. 2024), to argue that delayed discovery is warranted because the technology at issue allegedly makes the violations difficult to uncover. *See* Opp. at 15. But Plaintiff Nino undercuts that argument by expressly alleging that users can analyze website activity using tools already built into his browser. *See* FAC ¶ 215. At a minimum, Nino must allege facts explaining when and how he discovered the alleged violations and what reasonable steps he took to uncover them earlier.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

deficiencies by previous amendment.”).

**B. <u>Plaintiffs’ Wiretapping (CIPA § 631) Claim Is Not Sufficiently Pled</u>**

Plaintiffs proceed solely under CIPA’s fourth prong for aiding and abetting liability. *See* Opp. at 16. The FAC, however, does not sufficiently allege an underlying predicate violation by a third party such that derivative liability can be attached to Defendants. Specifically, Plaintiffs have failed to allege that a third party intercepted—meaning they read or attempted to read—the contents of Plaintiffs’ communications while they were in transit. The arguments advanced in their Opposition entirely miss the point.

*<u>Plaintiffs Do Not Allege the “Contents” of “Communications”</u>*

Plaintiffs argue that they need not plead the precise communications they made on the Websites, so long as the content allegedly intercepted was more than mere record information. *See* Opp. at 19–20. But even accepting that premise (the Court should not), Plaintiffs still fail to allege a threshold fact: that they personally sent ***any communications*** to the Websites at all—let alone communications that have “contents” capable of interception. *See In re Zynga Priv. Litig*., 750 F.3d 1098, 1102, 1107–08 (9th Cir. 2014) (rejecting the notion that descriptive urls created after clicking a link on a website constitutes a communication with contents under ECPA, CIPA’s federal analog). The Opposition does not identify (and cannot identify) a single allegation in the FAC describing how any Plaintiff personally interacted with and input *any* information into any Website. Plaintiffs do not allege that they entered search queries, names, demographic information, email addresses, location data, payment information, birthday or any other substantive content. In short, ***they plead no personal input or interaction whatsoever***. That failure renders many of Plaintiffs’ cited authorities inapposite. In each of those cases, the plaintiffs affirmatively alleged specific user input communications they personally made on the website at issue. *See* Opp. at 19–20 (citing *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 956 (N.D. Cal. 2023) (plaintiffs alleged interception of searches they conducted on the website); *Byars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023) (plaintiff alleged that communications sent through a website chat feature were intercepted)). Ultimately, Plaintiffs rely on generalized assertions about the capabilities of third-party cookies and boilerplate categories—but that is not enough. Absent

allegations about ***their own user input communications***, their claims fail as a matter of law. *See Wiley v. Universal Music Grp., Inc.*, 2025 WL 3654085, at *7 (N.D. Cal. Dec. 17, 2025) ("In the absence of any allegation that plaintiffs themselves interacted with the websites in a manner that involved communications whose contents could have been intercepted, they fail to plead the elements of a valid wiretapping claim.").

*Plaintiffs Do Not Allege a Contemporaneous Interception*

As explained above, the FAC does not allege that Plaintiffs sent any communications to the Websites. Without them, Plaintiffs cannot plead a contemporaneous interception. Moreover, given that Plaintiffs again do not allege what cookies were installed or triggered after their interactions with the Websites, it is unclear what third party they are alleging performed the interception. Given these deficiencies, the FAC's newly added allegations still fail to satisfy the "in transit" requirement. *See* Opp. at 17.

In an effort to obscure the issue, Plaintiffs mischaracterize Defendants' argument by claiming that Defendants contend an interception requires "stopping" a communication mid-stream, reading it, and then forwarding it. *See* Opp. at 18. Defendants make no such argument. Rather, Plaintiffs must allege facts plausibly showing that an interception occurred—that is, that a third party read or attempted to read the contents of a communication in real time and contemporaneously with its transmission akin to hearing a telephone conversation in real time. *See* Mot. at 18–19. As courts have recognized, "[r]eading or learning the contents of a communication requires 'some effort at understanding the substantive meaning' of the communication." *Eating Recovery Ctr.*, 806 F. Supp. 3d at 1117 (cit. omitted). The Opposition identifies no factual allegations explaining how any third party read—or even attempted to read—the contents of Plaintiffs' communications during transmission. *See id.* at *6; *see also Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023) ("But this complaint is entirely speculative. How do these third parties interface with Defendant's chat platform other than via 'code'? It is impossible to infer from the complaint. Thus, Plaintiff's simultaneity claims are just too conclusory to survive…").

Nor could it, because Plaintiffs fail to identify any specific third-party interceptor that read or attempted to read their specific communication. *See* FAC ¶¶ 152–63 (vague, generalized

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

allegations about how third-party website technologies operate in the abstract, with loose distinguishment between certain technologies like Meta, Google, and Pinterest from others). Notably, the cases Plaintiffs rely on are readily distinguishable. In each, the plaintiff alleged that a *specific* third-party intercepted communications in real time through a website's chat feature. *See* Opp. at 17 (citing *Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241, at *3 (S.D. Cal. Feb. 12, 2024) (alleging that third-party CarNow intercepted plaintiff's chat communications); *D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *1 (S.D. Cal. Oct. 24, 2023) (alleging that third-party Vergic intercepted plaintiff's chat communications)). In contrast, Plaintiffs' otherwise broad, conclusory and boilerplate assertions that their communications were *potentially* "intercepted" in "real time" by one of the many third party listed in the FAC are insufficient.

<u>*Plaintiffs Do Not Allege Intent*</u>

*Finally*, Plaintiffs fail to allege sufficient facts to show Defendants intended to aid and abet a third party's illegal wiretapping of Plaintiff's communications. Plaintiffs distort *Doe v. Amgen*, 2024 WL 3811251 (C.D. Cal. Aug. 13, 2024), *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019), and *Kotlarsz v. Integrity Vehicle Servs., Inc.*, 2024 WL 4800695 (C.D. Cal. Sep. 3, 2024) to suggest that allegations of intentional enabling of third-party cookies suffice to establish the intent requirement. *See* Opp. at 20. But ***none*** of these cases held that the intent element is satisfied by such conclusory allegations—they never addressed the issue. Instead, they simply found that enabling third-party misconduct *could* state a claim under Section 631's fourth prong without analyzing whether the requisite criminal intent was established. *See Amgen*, 2024 WL 3811251, at *2 (finding that as a party to its own communication, defendant cannot be liable under Section 631(a) unless plaintiff shows defendant enabled third party's eavesdropping or interception); *Revitch*, 2019 WL 5485330, at *2 (same); *Kotlarsz*, 2024 WL 4800695, at *7 (finding plaintiff failed to plead facts linking defendant to the website sufficient to make aiding and abetting allegations plausible). *Haleon* is likewise inapposite, as the court relied on *Zarif v. Hwareh.com, Inc.*, 789 F.Supp.3d 880 (S.D. Cal. 2025)—as Plaintiffs do here—without considering that *Zarif* did not involve an aiding and abetting liability under Section 631(a) and hence does not provide clear guidance as to what intent is required in this context. *See Haleon,* 815 F. Supp. 3d at 870.

Plaintiffs' attempt to distinguish *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933 (N.D. Cal. 2024) ("*YETI*") similarly fails. Here, as in *YETI*, Plaintiffs allege no facts showing that Defendants acted "with the third party *in order to* have the third party perform acts that violate the statute." *Id.* at 942. The *YETI* court made clear that this requires "both knowledge of the conduct that will violate the statute and a purpose of aiding, agreeing with, or employing the third party to commit those acts." *Id.* Plaintiffs' allegation that Defendants "intentionally chose to integrate the Third Parties' software" (Opp. at 21) is insufficient to satisfy the intent requirement. The alleged violation arises from a malfunction of the cookie-management tool—not from the mere integration of third-party software. Plaintiffs' theory would require the Court to infer that a business using standard cookie-management tools for legitimate purposes intended those tools to malfunction and thereby facilitate unlawful surveillance. That inference defies common sense and yields an untenable result.

### C. <u>Plaintiffs' Pen Register (CIPA § 638.51) Claim Is Not Sufficiently Pled</u>

Simply put, Section 638.51 does not extend to the website-tracking scenario at issue in this case. As Judge Chhabria recently emphasized, by bringing these types of claims, Plaintiffs seek to apply "CIPA's already-obtuse language" to new internet technologies that were never contemplated by the California Legislature. *See Eating Recovery Ctr. LLC,* 806 F. Supp. 3d at 1112 ("The language of CIPA is a total mess. It was a mess from the get-go, but the mess gets bigger and bigger as the world continues to change[.]"). Contrary to Plaintiffs' contention, the statutory context—and CIPA's structure as a whole—makes clear that "pen register" cannot reasonably encompass the factual scenario involving cookies here.

The Opposition sidesteps this argument, claiming it "has been considered and rejected multiple times." *See* Opp. at 22 (cleaned up). Yet each of the cases cited by Plaintiffs merely relies on the "expansive" definitions of "pen registers" and "electronic communication" to conclude that Section 638.51 *could plausibly* apply to website technology. *See, e.g., Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023) ("[T]he Court cannot ignore the expansive language in the California Legislature's chosen definition."); *Mirmalek v. L.A. Times Commc'ns LLC*, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) (relying on *Greenley*); *Haleon*, 815 F. Supp. 3d at



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

871 (relying on *Greenley* and *Mirmalek*). But none of these decisions meaningfully examine legislative history to confirm their interpretation aligns with legislative intent or the factual scenario pled here.

Plaintiffs also make no effort to reconcile the fundamental differences between the Legislature's intent underlying CIPA and the distinct policy objectives behind the CCPA and CPRA. The term "pen register" should be afforded its commonsense meaning within the context of the statutory scheme and its legislative history. Section 638.51 does not apply to website cookies in this context—and the Legislature in 2015 never intended it to. *See Gutierrez v. Converse Inc.*, 2025 WL 1895315, at *3 (9th Cir. July 9, 2025) ("If the California legislature wanted to apply [CIPA] to the internet, it could do so by amending … or adding to CIPA's statutory scheme."); *see also Rodriguez v. Ink Am. Int'l Grp. LLC*, 2025 WL 4034985, at *4 (Cal. Super. Dec. 10, 2025) (finding that "Penal Code § 638 does not clearly apply to the web functions at issue in this case and [refusing] to expand the interpretation of the statute in ways not clearly intended by the Legislature").

Even assuming CIPA's pen register provisions apply to website tracking technologies (they do not), Plaintiffs' claims still fail because the FAC does not allege the specific "dialing, routing, addressing, or signaling information" for outgoing communications that was tracked. *See Universal Music Grp.,* 2025 WL 3654085, at *9 ("[T]hey must identify not only their communications with UMG's websites but also the specific 'dialing, routing, addressing, or signaling information' for outgoing communications that was tracked."). For example, in the classic pen-register scenario, the device is used to capture outgoing dialing, routing, and addressing information from a known telephone number. For that reason, when law enforcement seek a court order authorizing attachment of a pen register, they must identify the specific phone number that the device will track. By analogy, Plaintiffs' theory assumes that Defendants attached a third party cookie to a known IP address or device identifier to track a website visitor's outgoing "calls"—that is, dialing, routing, and addressing information. But Plaintiffs never allege these mechanics, let alone identify any ***outgoing*** dialing, routing, or addressing information they themselves transmitted. Defendants do not argue that Plaintiffs must plead every technical detail. Plaintiffs

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

must, however, allege at least some routing information tied to ***their own communications*** with the Websites that fits within the statutory framework. They do not, and that omission is fatal. Plaintiffs' continued failure to cure this defect warrants dismissal with prejudice.

## VI. PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS

Defendants' initial Motion did not dispute that Plaintiffs could bring a claim for unjust enrichment as a standalone claim—however, it can proceed ***only when*** pled as quasi-contract claims. *See, e.g.*, *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038–39 (9th Cir. 2016). Yet Plaintiffs fail to add any quasi-contract claims that plausibly support this theory. Nor do Plaintiffs explain how Defendants benefited from using their information when the Websites are free and publicly accessible. Instead, they speculate Defendants *could* use the information for marketing or advertising. *See* Opp. at 24. But how Defendants *could* benefit does not mean that they in fact *did* benefit. The cases Plaintiffs cite, which involve payment or use not alleged here, do not save their claim. *See A.J. v. LMND Med. Grp., Inc.,* 2024 WL 4579143, at 4 (N.D. Cal. Oct. 25, 2024) (plaintiffs alleged they paid for defendants' services); *Shah v. Capital One Fin. Corp.,* 768 F. Supp. 3d 1033, 1041–42, 1052 (N.D. Cal. 2025) (plaintiffs alleged that after using defendant's website, they received targeted marketing ads). Because the FAC remains devoid of any facts showing Defendants profited from *their* data, the unjust enrichment claim fails and must be dismissed.[4]

## VII. CONCLUSION

For the foregoing reasons, Defendants respectfully request that Plaintiffs' FAC be dismissed in its entirety with prejudice.

\\

\\

\\

\\

\\

\\

[4] Plaintiffs' Fraud and Misrepresentation claim also fails Plaintiffs' Opposition merely repeats the flawed assertion that general allegations about Defendants' purportedly false representations satisfy Rule 9(b)'s heightened pleading standard. As detailed in Section III, *supra*, they do not.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**BAKER & HOSTETLER LLP**

By: /s/ *Kamran B. Ahmadian*
Bethany G. Lukitsch
Kamran B. Ahmadian
Jaein Cho

*Attorneys for Defendants*
INSPIRE BRANDS, INC., ARBY'S RESTAURANT GROUP, INC., JIMMY JOHN'S FRANCHISOR SPV, LLC, SONIC INDUSTRIES SERVICES, LLC, and DUNKIN' BRANDS, INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES