UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| BENJAMIN PAUL DE AYORA, et al., | Case No.  25-cv-03645-AGT |
| Plaintiffs, | |
| v. | **ORDER ON MOTION TO DISMISS SECOND AMENDED COMPLAINT[1]** |
| INSPIRE BRANDS, INC., et al., | Re: Dkt. No. 61 |
| Defendants. | |

For the second time, defendants Inspire Brands, Inc. (Inspire); Arby's Restaurant

Group, Inc. (Arby's); Jimmy John's Franchisor SPV, LLC (Jimmy John's); Sonic Industries

Services, LLC (Sonic);[2] and Dunkin' Brands, Inc. (Dunkin')[3] (collectively, Defendants)

move to dismiss. Dkt. 61. Plaintiffs Benjamin Paul de Ayora, Christine Wiley, Mikhail

---

[1] Plaintiffs filed their first amended complaint at dkt. 54, miscaptioned as the "Second Amended Complaint." Plaintiff then refiled another version at dkt. 57, without leave or explanation. In response to the Court's order (dkt. 66), Plaintiffs responded that they neglected to a file a redline at dkt. 54, as required by the Court's standing order, and attempted to refile at dkt. 57 with the redline. Dkt. 67. However, the redline was again not included at dkt. 57. *Id.* Plaintiffs now move to strike the latter filed complaint at dkt. 57. *Id.* The two versions are identical. *Id.* Defendants request that their motion to dismiss be applied to whichever version is operative and take no position on how to clarify the operative pleading. Dkt. 68. As such, the Court strikes dkt. 57. The amended complaint at dkt. 54 will be the operative complaint. And although the caption is incorrect, the operative complaint will be referred to as the Second Amended Complaint (or SAC); there will be no first amended complaint on the docket nor by reference.

[2] Sonic is again not separately listed in the SAC as a party defendant. *See* Dkt. 54 ¶¶ 6–14. *See also* dkt. 35 ¶¶ 6–13. However, the SAC does include allegations against Sonic. *See, e.g.*, dkt. 54 ¶ 98.

[3] Dunkin' is alleged to operate both the Dunkin' website and that of Baskin Robbins. Dkt. 54 ¶ 14.

Gershzon, and George Nino (collectively, Plaintiffs) oppose. Dkt. 64. Finding this motion suitable for decision without a hearing, *see* Civil L.R. 7-1(b), the Court grants in part and denies in part the motion to dismiss for the reasons that follow. Plaintiffs may file a second amended complaint consistent with this order by **July 10, 2026**.

### 1. Plaintiffs Have Standing to Sue Inspire

The Court previously found no standing to sue Inspire. Dkt. 50. Defendants now ask the Court to dismiss Inspire with prejudice. Dkt. 61 at 15–16 & 33.[4] Defendants argue that Plaintiffs fail to plausibly allege that Inspire itself engaged in the misconduct. *Id.* at 16.

Plaintiffs contend that Inspire is both the owner, and directly and substantially involved in the operation of each of the websites. Dkt. 64 at 14–15. *See also* dkt. 54 ¶ 11. Inspire allegedly provides and manages "shared technology infrastructure and services related to user data collection and privacy compliance," for example, by operating its brands via "integrated, enterprise-wide, technology-enabled platforms." Dkt. 54 ¶ 11. The websites' privacy policies each direct users to an Inspire email address. *Id.*

Plaintiffs defend their complaint against Inspire and heavily rely upon *Briskin v. Shopify, Inc.* which, as Defendants argue, is distinguishable. 135 F.4th 739 (9th Cir. 2025); dkt. 61 at 15–16. In *Briskin*, the defendant companies collected, validated, and processed customers' payments for goods purchased on contracting merchants' websites and meanwhile they collected customers' information. 135 F.4th at 747. More specifically, the plaintiff alleged that, as he made a purchase online, he unknowingly handed over his personal information to the parent company Shopify, Inc., and provided the data to its subsidiary and subprocessor, Shopify USA. *Id.* at 748. Another subsidiary, Shopify Payments, contracted

---

[4] Page numbers in this order correspond to the ECF generated page numbers.

"separately with Shopify merchants to provide payment software." *Id.* The plaintiff sued the parent and both subsidiaries, and the Ninth Circuit on appeal found that the complaint satisfied Federal Rule of Civil Procedure 8 because it "generally describe[d] each company's role in the alleged data collection and monetization scheme." *Id.* at 762.

Here, there is no allegation that Inspire collects any data, but the privacy policies found at each website refer to Inspire's email address. While that may not describe how Inspire captures and uses data, it is plausible that a plaintiff knows Inspire participated in the privacy policy and the information or data governed by that policy. At this pleading stage, Plaintiffs have standing to sue Inspire.

### 2.  Plaintiffs Now Meet Rule 9(b)'s Heightened Pleading Standard

Previously, the Court found that Plaintiffs didn't meet the heightened pleading standing set out in Rule 9(b). Dkt. 50 at 6–8. Plaintiffs failed to provide a sufficiently specific date range and Defendants represented that the cookie banners changed during the accused period. The Court concluded that Plaintiffs failed to plead facts showing "when" or "where" the fraud occurred as required. *Id.* at 7–8; *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."). Because all of Plaintiffs' claims were subject to Rule 9(b), the Court dismissed all claims with leave to amend. Dkt. 50 at 8.

In the SAC, Plaintiffs provide more specific date ranges and specify which version of the cookie banner they saw. *See, e.g.*, dkt. 54 ¶¶ 172–75. Defendants argue that the provided time ranges are too broad to identify when each plaintiff encountered an alleged misrepresentation. Dkt. 61 at 21. Defendants reiterate that the cookie banners changed over time, and were implemented at different times on different sites. *Id.*

Although Plaintiffs have not specified the precise moment in time when they encountered the cookie banner, they have alleged a date range and — crucially — identified a specific version of the cookie banner. *See, e.g.*, dkt. 54 ¶¶ 172–75. Because Plaintiffs now each rely on a specific version of each cookie banner, it's not fatal at the pleading stage that the cookie banners changed over time. These facts and circumstances may again become relevant in a subsequent summary judgment motion or trial. For now, as argued by Plaintiffs, dkt. 64 at 17, Plaintiffs have specified which misrepresentations they rely upon and therefore have provided sufficient notice to Defendants of "when" and "where" the fraud allegedly occurred.[5]

Defendants' motion to dismiss under Rule 9(b) is therefore denied.

### 3.   Plaintiffs State a Fraud Claim (Claim Five)

In California, the "indispensable elements of a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages." *Vess*, 317 F.3d at 1105 (cleaned up).

Defendants argue that Plaintiffs lack factual support for their fraud claims. Dkt. 61 at 31–32. They fail to plead any conduct addressing Plaintiffs' own experiences or "portions of the incorporated Privacy Policies and cookie banners supporting any claimed misrepresentation or fraud." *Id.* But Plaintiffs plead that each of them declined cookies based on the applicable cookie banner and were tracked regardless. *See* dkt. 54 ¶¶ 170–215. That is sufficient.

---

[5] Defendants argue, dkts. 61 at 21 & 65 at 11, that some of the websites didn't have a cookie banner during the alleged time period. But these arguments are not dispositive under Rule 9(b), which only requires a party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Defendants can use the time period and version of the cookie banner cited to discern which alleged misrepresentations are at issue.

Defendants also argue that Plaintiffs don't sufficiently allege knowledge, reliance, or damages. Dkt. 61 at 32. Responding, dkt. 64 at 28, Plaintiffs point to allegations that Defendants acted with knowledge, dkt. 54 ¶¶ 35, 43, 57, 70, 83, 96, & 292, and that Plaintiffs justifiably relied. *Id.* ¶¶ 177, 179, 188, 190, 198, 200, 211, & 213. Furthermore, Plaintiffs plead damages. *Id.* ¶¶ 299–300. This is sufficient for the pleading stage.

Defendants' motion to dismiss Plaintiffs' fraud claim is denied.[6]

### 4. Plaintiffs State an Unjust Enrichment Claim (Claim Six)

Previously, the Court dismissed Plaintiffs' unjust enrichment claim, noting that Plaintiffs had failed to plead under Rule 9(b) and therefore failed to establish a relationship between their fraud and unjust enrichment claims. *See* dkt. 50 at 8–9.

Defendants move again to dismiss Plaintiffs' unjust enrichment claim, arguing that Plaintiffs fail to plead any facts showing that Defendants were unjustly conferred any benefit. Dkt. 61 at 32. To succeed on an unjust enrichment claim in California, "a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016).

In opposition, Plaintiffs point to allegations that Defendants benefitted from using Plaintiffs' communications. Dkt. 64 at 29. For example, Plaintiffs cite the Arby's privacy policy, which explains that the website uses tracking technologies "to understand user behavior such as assisting [Arby's] to see what pages people visit on [Arby's] sites, protecting against security and fraud, facilitating and measuring the effectiveness of advertisements and web searches." Dkt. 54 ¶ 44. Similar policies exist on the other accused websites. *See*

---

[6] Defendants also again argue that Plaintiffs cannot plead around Rule 9(b). Dkt. 61 at 31–32. That is unpersuasive for the reasons stated above.

*id.* ¶ 58 (Baskin Robbins) ("We provide this information to show you relevant and person-alized advertisements (targeted advertising) and for analytics, data strategy, consultation on, development or improvement of products and services, marketing, advertising, and related services."); *id.* ¶ 71 (Dunkin'); *id.* ¶ 84 (Jimmy John's); *id.* ¶ 97 (Sonic). Plaintiffs also allege that third-party cookies, which Plaintiffs allege Defendants deployed here, "are utilized to enhance website performance and generate revenue data collection and targeted advertis-ing." *Id.* ¶ 41.

These facts are sufficient to state a claim for unjust enrichment at this pleading stage. *See Pemberton v. Rest. Brands Int'l, Inc.*, No. 25-CV-03647-JSC, 2025 WL 3268404, at *8 (N.D. Cal. Nov. 24, 2025) (denying motion to dismiss unjust enrichment claim where a plaintiff "allege[d] Defendants' 'misrepresent[ed] that users could opt out' of cookies and tracking technologies, then transmitted cookies and collected his Private Communications as he browsed the site in reliance on that misrepresentation, and used those cookies 'to boost website performance and revenue,' including through advertising"). Defendants' motion to dismiss the unjust enrichment claim is denied.[7, 8]

### 5. Plaintiffs State Common-Law Privacy Claims (Claims One and Two)

In this second motion to dismiss, Defendants renew their arguments for dismissal of Plaintiffs' common-law privacy claims. Defendants contend that the Plaintiffs lack standing and fail to state these claims. Dkt. 61 at 16–19 & 22–23. For the reasons stated in the Court's prior order, dkt. 50, Defendants' motion to dismiss the common-law privacy claims is

---

[7] Defendants also argue that Plaintiffs fail to clear the Rule 9(b) hurdle. Dkt. 61 at 32. As found above, Plaintiffs have cleared Rule 9(b).
[8] In reply, Defendants argue that the websites are free and that, just because they could use information for marketing or advertising, doesn't mean they did. Dkt. 65 at 20. This argu-ment is speculative and unsupported by citation to authority. The Court does not accept De-fendants' argument as true at the pleading stage.

denied.[9]

### 6. Plaintiff Ayora's CIPA Claims Against Baskin Robbins, Dunkin', and Jimmy John's (Claims Three and Four) Are Time-Barred

Ayora's claims against Baskin Robbins, Dunkin', and Jimmy John's were time-barred on the face of the original complaint. *See* dkt. 50 at 12. The Court found that he failed to show timely notice to these defendants and therefore was ineligible for tolling. *Id.* The undersigned then dismissed Ayora's California Invasion of Privacy Act (CIPA) claims against Baskin Robbins, Dunkin', and Jimmy John's with leave to amend. *Id.*

Defendants argue that Ayora has failed to save his CIPA claims. Dkt. 61 at 24–25. In the amended pleading, Ayora again fails to plead timely notice to Baskin Robbins, Dunkin', or Jimmy John's. He pleads only that his claims were equitably tolled by his demand letter and filing of the JAMS arbitration proceeding. Dkt. 54 ¶ 221. However, he also pleads that the demand letter went only to Inspire, *id.* ¶ 217, and the arbitration demand named only Inspire and Arby's. *Id.* ¶ 219. So, Ayora again fails to show notice to Baskin Robbins, Dunkin', or Jimmy John's of his CIPA claims against them. Without that requisite notice the Court has no basis to toll Ayora's CIPA claims.

In opposition, Plaintiffs argue that they could not have discovered the violations at the time of their visits and that Defendants affirmatively misled them. Dkt. 64 at 19–20. Therefore, the statute of limitations should be tolled under the fraudulent concealment doctrine and delayed discovery rule. *Id.* But these doctrines don't help Ayora where he explicitly pleads that he learned of the violations on or around October 15, 2023, dkt. 54 ¶ 216,

---

[9] Defendants also renew their argument that Plaintiffs have not shown a loss of value injury. Dkt. 61 at 19–20. Because the Court finds that Plaintiffs have stated sufficient loss of privacy injuries, the Court need not review this argument. *See* dkt. 50 at 5 n.6.

meaning that the statute of limitations ran out on his claims on or around October 15, 2024.
*See Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 134 (N.D. Cal. 2020) (statute of limitations applicable to CIPA is one year).

Given that Ayora had notice and an opportunity to cure the deficiency, and failed to do so, his CIPA claims against Baskin Robbins, Dunkin', and Jimmy John's are dismissed with prejudice.

### 7.    Plaintiff Nino's CIPA Claims (Claims Three and Four) Are Time-Barred in Part

Plaintiff Nino pleads that he visited the Arby's website "frequently, including in or around August and/or September 2021," and visited the Baskin Robbins, Dunkin', Jimmy John's, and Sonic websites each "multiple times between 2023 and 2024." Dkt. 54 ¶¶ 205–10.

Defendants move to dismiss these claims as time-barred. Dkt. 61 at 24. They first argue that Nino's CIPA claim against Arby's expired in August or September of 2022. *Id.* Plaintiffs argue that Nino's claim is tolled under the delayed discovery rule and the fraudulent concealment doctrine because he wasn't aware of the alleged violations at the time of his visit to the website. Dkt. 64 at 19–20.

Regarding the delayed discovery rule, as Defendants highlight in reply, dkt. 65 at 14, an invoking plaintiff must show "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Javier v. Assurance IQ, LLC,* 649 F. Supp. 3d 891, 901 (N.D. Cal. 2023) (emphasis omitted). Nino does not explain when he discovered the alleged fraud, and pleads no facts showing the manner of discovery. Nor does he plead any inability to discover the fraud despite diligence. The delayed discovery

rule can't save Nino's CIPA claim against Arby's.

Defendants generally allege that Nino cannot invoke fraudulent concealment. Dkt. 65 at 14. To do so, Nino must allege "(1) the defendant took affirmative acts to mislead [him]; (2) [he] did not have 'actual or constructive knowledge of the facts giving rise to [the] claim'; and (3) [he] acted diligently in trying to uncover the facts giving rise to [his] claim." *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1070 (N.D. Cal. 2021). Again, as noted above and as Defendants argue regarding the delayed discovery rule, dkt. 65 at 14, Nino does not plead any facts showing that he acted diligently in trying to uncover the facts which gave rise to his claim. Plaintiffs' mere assertion of diligence in opposition, dkt. 64 at 20, is insufficient. As such, his assertion of fraudulent concealment must also fail. His CIPA claims against Arby's therefore are time-barred.

Next, Defendants argue that Nino's claims against Baskin Robbins, Dunkin', Jimmy John's, and Sonic are time-barred. Dkt. 61 at 24. Assuming that the first visit occurred at the end of 2023, Defendants contend that the statute of limations ran by the end of 2024. *Id.* But "a complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Supermail Cargo, Inc. v. U.S.,* 68 F.3d 1204, 1207 (9th Cir. 1995). 2023 to 2024 includes one year prior to the filing of the initial complaint in this lawsuit in August of 2025. *See* dkt. 35. It's possible that Nino's CIPA claims against Baskin Robbins, Dunkin', Jimmy John's, and Sonic are timely. *See Wiley v. Universal Music Grp., Inc.*, No. 25-CV-03095-PCP, 2025 WL 3654085, at *3 (N.D. Cal. Dec. 17, 2025) ("The 'last four years' includes the past two years or one year, so it is entirely possible, from the face of the complaint, that Wiley's claims are timely. Therefore, plaintiffs have adequately alleged that their claims are timely.").

Defendants' motion to dismiss Nino's CIPA claims as untimely is denied as to Nino's claims against Baskin Robbins, Dunkin', Jimmy John's, and Sonic, but the motion is granted with leave to amend as to Nino's claim against Arby's.

### 8. Plaintiffs Fail to State a Claim for Wiretapping in Violation of CIPA (Claim Three)[10]

The Court previously dismissed this claim, finding that Plaintiffs had not sufficiently alleged that their communications were intercepted while in transit. Dkt. 50 at 13–15. Defendants now argue that — if Plaintiffs have alleged interception in transit, which Defendants dispute — Plaintiffs fail to allege transmitting any communications with contents. Dkt. 61 at 27–28.

Courts analyzing CIPA claims apply the same definitions for the federal Wiretap Act where appropriate. *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 517 (C.D. Cal. 2021). The Ninth Circuit has held that the "contents" of an online communication under federal wiretap law "refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) (finding that contents transmitted by Facebook.com did not include a user's Facebook ID and browsing history when automatically gathered).

Courts have found record information to include "webpage titles, webpage keywords, the date and times of website visits, IP addresses, page visits, purchase intent signals, and add-to-cart actions," *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 944 n.9

---

[10] This claim is brought on behalf of all Plaintiffs but Wiley, *see* dkt. 54 ¶¶ 258–77, and is subject to the Court's above findings that certain claims by Ayora and Nino are time barred.

(N.D. Cal. 2023), and "button clicks, mouse movements, scrolling, resizing, touches (for mobile browsers), key presses, page navigation, changes to visual elements in the browsers, network requests . . . ." *Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024).

By contrast, courts have found that "search queries . . . in the form of 'full-string URLs' containing their [protected health information] and [personally identifying information]," *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 837–38 (E.D. Cal. 2025), or chat conversations held over a website are contents, not record information. *Byars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023).

In this case, Plaintiffs allege that the cookies track in real time Plaintiffs' browsing activities and private communications, such as browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behavior, device information, referring URL, session information, user identifiers, and geolocation data. Dkt. 54 ¶ 40. As Plaintiffs argue, some of this information could constitute contents. Dkt. 64 at 24–25. *See also Walsh v. Dollar Tree Stores, Inc.*, No. 25-CV-01601-SVK, 2025 WL 2939229, at *16 (N.D. Cal. Oct. 16, 2025) (finding same).

Defendants argue that Plaintiffs fail to allege transmitting any communications, let alone communications with contents. Dkt. 61 at 27. Plaintiffs respond that they have sufficiently pled that communications were collected via cookies wrongfully placed. Dkt. 64 at 24–25.

The Court agrees with Defendants that Plaintiffs fail to allege that their contents, as opposed to mere record information, were tracked. Here, Plaintiffs allege that Defendants tracked them after Plaintiffs attempted to decline cookies, but don't allege engaging in any

communications with the websites or otherwise generating any content. In the absence of any allegation that plaintiffs themselves interacted with the websites in a manner that involved communications whose contents could have been intercepted, they fail to plead the elements of a valid wiretapping claim.[11] *See D'Antonio v. Smith & Wesson Inc.*, 820 F. Supp. 3d 928, 936 (N.D. Cal. 2026) (finding same); *Ortiz v. Foris Dax, Inc.,* No. 25-CV-08950-EMC, 2026 WL 1430720, at *6 (N.D. Cal. May 21, 2026) (same); *Walsh*, 2025 WL 2939229, at *16 (same).

This claim is dismissed with leave to amend.

### 9. Plaintiffs State a Claim for Use of a Pen Register in Violation of CIPA (Claim Four)[12]

CIPA prohibits installing or using "pen registers" without prior court approval. *See* Cal. Penal Code § 638.51(a). A pen register is "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." *Id.* § 638.50(b).

Defendant argues that Plaintiffs fail to allege the specific "dialing, routing, addressing, or signaling information" tracked. Dkt. 61 at 31. Plaintiffs disagree, pointing out that they plead that their IP addresses and "user-agent information" were tracked. Dkt. 64 at 27–28.

---

[11] Plaintiffs do plead that "their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data, were surreptitiously obtained by the Third Parties via these cookies." Dkt. 54 ¶ 53. But this allegation is without any further factual support. As such, this bare allegation fails to "nudge[ ] [Plaintiffs'] claims . . . across the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).
[12] This claim may proceed only on behalf of the Plaintiffs who timely asserted it.

"[D]ialing, routing, addressing, or signaling information" refers to information that an intermediary might use to transmit a communication from its sender to its intended recipient, such as the "originating number" in the traditional telephone context. *In re Meta Android Priv. Litig.*, No. 25-CV-04674-RFL, 2026 WL 1279416, at*8 (N.D. Cal. May 11, 2026) (citing Cal. Penal Code § 638.50(c) (defining trap and trace device)). *See also In re Zynga Priv. Litig.*, 750 F.3d at 1108 ("pen registers . . . capture only the telephone numbers that are dialed and not the calls themselves").

In a more modern context, such information might include "IP addresses, MAC addresses, network headers, or which cell tower communicated with a cell phone." Josh A. Goldfoot, *The Pen-Trap Statute and the Internet*, 6 Va. J. Crim. L. 1, 13 (2018). *See also In re Zynga*, 750 F.3d at 1108 ("[W]e have allowed the warrantless collection of email and IP addresses under the same reasoning because email and IP addresses constitute addressing information and do not necessarily reveal any more about the underlying contents of communication than do phone numbers.") (cleaned up).

Here, Plaintiffs allege that their IP addresses were tracked. Dkt. 54 ¶ 35, ¶ 40, & ¶¶ 282–83. An IP address "is a unique numerical label assigned to each device connected to a network that uses the Internet Protocol for communication . . . [which can] identify the network a device is on and the specific device within that network . . . [and] reveal geographical locations, such as country, city, or region, through IP geolocation databases." *Id.* ¶ 34. As such, the Court finds that Plaintiffs have sufficiently alleged the "dialing, routing, addressing, or signaling information" required. *See Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 929 (N.D. Cal. 2024) ("Construing the pleadings in the light most favorable to Plaintiff, the IP addresses collected by the Trackers fall within the statutory definition of 'addressing'

information."); *Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-CV-01797-CRB, 2024 WL 5102709, at *4 (N.D. Cal. Dec. 12, 2024) ("Plaintiff sufficiently alleges that the Trackers record addressing information in the form of IP addresses.").

Defendants' motion to dismiss the pen register claim is denied.[13]

### 10. Conclusion

Plaintiff Ayora's claims under CIPA against Baskin Robbins, Dunkin', and Jimmy John's are dismissed with prejudice. Plaintiff Nino's CIPA claims against Arby's are dismissed without prejudice. Plaintiffs' wiretapping claim is dismissed without prejudice. Defendants' motion to dismiss is otherwise denied. Plaintiffs may file any amended complaint by **July 10, 2026**.[14]

**IT IS SO ORDERED.**

Dated: June 8, 2026

_____
Alex G. Tse
United States Magistrate Judge

---

[13] Defendants renew their argument that cookies do not qualify as pen registers. Dkt. 61 at 29–31. The Court previously considered this argument and was not persuaded by it. *See* dkt. 50 at 15–17. Nor is the Court persuaded to revisit its analysis.

[14] For clarity, that amended pleading will be captioned the Third Amended Complaint. *See* footnote 1 of this order.