**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

Patrick J. Branson (*pro hac vice*)
patrick@gutridesafier.com
305 Broadway, 7th Floor
New York, NY 10007
Telephone: 415-639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN PAUL DE AYORA, CHRISTINE WILEY, MIKHAIL GERSHZON, AND GEORGE NINO as individuals, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>INSPIRE BRANDS, INC., ARBY'S RESTAURANT GROUP, INC., JIMMY JOHN'S FRANCHISOR SPV, LLC, SONIC INDUSTRIES SERVICES, LLC, DUNKIN' BRANDS, INC.,<br><br>Defendants. | Case No. 3:25-CV-3645-AGT<br><br>PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THIRD AMENDED CLASS ACTION COMPLAINT<br><br>Hon. Alex G. Tse<br><br>Hearing Date: October 9, 2026<br>Hearing Time: 2:00 PM<br><br>Courtroom: Courtroom A, 15th Floor |

**TABLE OF CONTENTS**


I. INTRODUCTION ....................1

II. FACTUAL BACKGROUND ....................2

A. Defendants' Mislead Website Users and Transmitted Their Communications to Third Parties. ....................2

B. The Court's Ruling on Defendants' Motion to Dismiss the SAC ....................3

III. ARGUMENT ....................4

A. Plaintiff Nino's CIPA Claims Are Not Time Barred ....................4

B. Defendants' CIPA § 631(a) Wiretapping Arguments Fail. ....................6

1. Plaintiffs Adequately Allege the Contents of the Intercepted Communications ....................7

2. The Contents of Communication Are Intercepted While In Transit. ....................9

C. Plaintiffs Plead a Concrete Injury-in-fact, Demonstrating Article III Standing. ....................12

D. The Court Should Deny Defendants Request for a More Definite Statement ....................16

E. Evidence Beyond the Pleadings Should Not Be Considered ....................16

F. Plaintiffs Request Leave to Amend If Necessary. ....................17

IV. CONCLUSION ....................17

## TABLE OF AUTHORITIES

**Cases**

*A.B. v. Google LLC*,
737 F. Supp. 3d 869 (N.D. Cal. 2024) ........ 4

*ASARCO, LLC v. Union Pac. R.R. Co.*,
765 F.3d 999 (9th Cir. 2014) ........ 4

*Boxall v. Sequoia Union High School District*,
464 F. Supp. 1104 (N.D. Cal. 1979) ........ 16

*Brown v. Google LLC*,
525 F.Supp.3d 1049 (C.D. Cal. March 12, 2021) ........ 6

*Bureerong v. Uvawas*,
922 F. Supp. 1450 (C.D. Cal. 1996) ........ 16

*Byars v. Tire*,
654 F. Supp. 3d 1020 (C.D. Cal. Feb. 3, 2023) ........ 9

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) ........ 9

*D'Angelo v. Penny Opco, LLC*,
*No. 23-cv-0981-BAS-DDL,* 2023 U.S. Dist. LEXIS 191054 (S.D. Cal Oct. 24, 2023) ........ 11

*DeSoto v. Yellow Freight Sys.*,
957 F.2d 655 (9th Cir. 1992) ........ 17

*Doe v. Fullstory*,
712 F. Supp. 3d (N.D. Cal. 2024) ........ 5, 6

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ........ 13

*Esparza v. UAG Escondido A1 Inc.*,
2024 U.S. Dist. LEXIS 24429 (S.D. Cal. Feb. 12, 2024) ........ 11, 12

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (2005) ........ 4, 5

*Gabrielli v. Haleon US Inc.*,
815 F. Supp. 3d 852 (N.D. Cal. 2025) ........ 5, 8, 14

*Gabrielli v. Haleon US Inc.*,
No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503 (N.D. Cal. Aug. 29, 2025) ........ 14, 15

*Gabrielli v. Motorola Mobility LLC*,
No. 24-cv-9533, 2025 WL 1939957 (N.D. Cal. July 14, 2025) ........ 13, 14

*In re American Continental Corp./ Lincoln Savings & Loan Securities Litigation*,
102 F.3d 1524 (9th Cir.1996) ........ 16

*In re Facebook Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 13

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........ 8

*In re Zynga Privacy Litig.*,
750 F.3d (9th Cir. 2014) ........ 8

*Izzetov v. Tesla Inc.*,
No. 5:19-cv-03734-EJD, 2020 U.S. Dist. LEXIS 60261 (N.D. Cal. Apr. 6, 2020) ........ 16

*Jackson v. Linkedin Corp.*,
744 F. Supp. 3d 986 (N.D. Cal. 2024) ........ 11

*James v. Walt Disney Co.*,
701 F. Supp. 3d (N.D. Cal 2023) ........ 9

*Javier v. Assurance IQ LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) ........ 5

*Jolly v. Eli Lilly & Co.*,
44 Cal. 3d 1103 (1988) ........ 4

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d (N.D. Cal. 2023) ........ 15

*Khamooshi v. Politico LLC*,
2025 U.S. Dist. LEXIS 92788 (N.D. Cal. May 13, 2025) ........ 14

*Kohler v. Flava Enters.*,
2010 U.S. Dist. LEXIS 84033 (S.D. Cal. Aug. 13, 2010) ........ 4

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ........ 12

*Lasko v. Caliber Home Loans*,
2022 U.S. App. LEXIS 6215 (9th Cir. Mar. 10, 2022)........ 4

*Mitchell v. Sonesta Int'l Hotels Corp.*,
2024 U.S. Dist. LEXIS 186701 (C.D. Cal. Oct. 4, 2024)........ 10

*O'Neill v. Cal. Physicians' Serv.*,
2025 U.S. Dist. LEXIS 226056 (N.D. Cal. Nov. 17, 2025)........ 5

*Ovando v. Cnty. of Los Angeles*,
159 Cal. App. 4th 42 (2008) ........ 4

*Popa v. Microsoft Corporation,*
153 F.4th 784 (9th Cir. 2025) ........ 14

*Ribas v. Clark*,
38 Cal. 3d at 359 (1985) ........ 10

*Rodriguez v. Ford Motor Co.*,
No. 3:23-cv-00598, 2024 U.S. Dist. LEXIS 218685 (S.D. Cal. Dec. 3, 2024) ........ 7

*Sagan v. Apple Computer, Inc.*,
874 F. Supp. 1072 (C.D. Cal. 1994) ........ 16

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
806 F.2d 1393 (9th Cir. 1986) ........ 17

*Silver v. Stripe Inc.*,
2021 U.S. Dist. LEXIS 141090 (N.D. Cal. July 28, 2021)........ 15

*Six v. IQ Data Int'l, Inc.*,
129 F.4th 630 (9th Cir. 2025) ........ 13

*Smith v. Rack Room Shoes, Inc.*,
No. 24-cv-06709-RFL, 2025 U.S. Dist. LEXIS 70510 (N.D. Cal. Apr. 4, 2025) ........ 9

*St. Aubin v. Carbon Health Techs., Inc.,*
No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067 (N.D. Cal. Oct. 1, 2024)........ 5, 11, 12

*Supermail Cargo, Inc. v. United States*,
68 F.3d 1204 (9th Cir. 1995) ........ 4, 6

*Tavernetti v. Superior Court of San Diego Ctny.*,
22 Cal. 3d 187 (1978) .......... 10

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021).......... 1, 13

*United States v. Jones*,
565 U.S. 400 (2012).......... 15

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) .......... 12

*Walsh v. Dollar Tree Stores, Inc.*,
2025 U.S. Dist. LEXIS 204652 (N.D. Cal. Oct. 16, 2025).......... 7, 10

*Woodard v. City of Menlo Park*,
No. CV 09-3331 SBA, 2009 U.S. Dist. LEXIS 1123945 (N.D. Cal. Nov. 10, 2009).......... 16

*Yoon v. Lululemon United States*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 9

**Statutes**

Cal. Penal Code § 631.......... 11

Cal. Penal Code § 631(a) .......... 6, 9, 10, 11

**Rules**

Fed. R. Civ. P. 12(e) .......... 16

## I. INTRODUCTION

In its June 8, 2026 Order granting in part and denying in part Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 69) (the "Second MTD Order"), this Court identified discrete deficiencies which Plaintiffs have addressed on amendment in their Third Amended Complaint. In moving to dismiss, Defendants begin with an argument this Court has already rejected—twice. Defendants then proceed to ignore or misconstrue Plaintiffs' amended allegations establishing the timeliness of Plaintiff Nino's claims against Arby's and the sufficiency of Plaintiffs' CIPA wiretapping claims. This Court should reject these attempts and deny Defendants' motion to dismiss.

First, Plaintiffs have Article III standing because they plead a concrete injury—an invasion of privacy. Common law has long recognized invasions of privacy as cognizable injuries. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). Here, the tracking cookies, which allowed third parties to discern copious personal information from Plaintiffs, establishes a concrete injury sufficient to show Plaintiffs' Article III standing. This Court has now considered this argument twice and found that Plaintiffs have established standing. *See* ECF No. 50 (the "First MTD Order) at 3; Second MTD Order at 6–7. And Defendants have raised no new arguments for why the Court should deviate from its prior rulings.

Second, Plaintiff Nino has sufficiently alleged facts regarding the manner of his discovery of the conduct alleged in the TAC and alleged reasonable diligence. Defendants claim that for Plaintiff Nino to have been reasonably diligent, he needed to have used Chrome Developer tools—a function not familiar to the ordinary internet user—to analyze his real time website browsing on the Arby's Website. But this would require the Court to conclude that Plaintiff Nino had a reason to suspect that Defendants' did not honor his opt out choices, and that a diligent internet user would know of Chrome Developer tools, know how to use them, check their real time network activity, and understand that third party cookies were being attached as the user browsed the Website. This argument strains credulity. And, frankly, reeks of desperation.

Third, Plaintiffs have adequality pleaded their CIPA wiretapping claims. The TAC has added allegations describing Plaintiffs activities on the Websites. ECF No. 73 ("TAC") ¶¶ 172–75 (Ayora); 184–86 (Wiley); 195–96 (Gershzon); 205 (Nino). And the TAC also explains how such activities

resulted in the transmission of Plaintiffs' communications to the Third Parties. *Id.* ¶¶ 178–79 (Ayora); 189-90 (Wiley); 199–200 (Gershzon); 212–13 (Nino). Plaintiffs have also included allegations describing how these communications were intercepted and read in real time by the Third Parties. Defendants' arguments against these allegations rely on twisted semantic logic and an overly narrow interpretation of "reading" under CIPA.

Finally, this Court should reject Defendants' request for a more definite statement. The Third Amended Complaint clearly lays out allegations as to each Defendant, each Website, and each Plaintiff. Defendants complain that the TAC added allegations related to Plaintiffs Ayora and Wiley's visits to the Baskin Robbins, Dunkin', and Jimmy John's Websites because Plaintiffs Ayora's and Wiley's CIPA claims against Defendants Dunkin' and Jimmy Johns were dismissed with prejudice. Second MTD Order at 7–10. This, however, ignores that Plaintiffs Ayora and Wiley have timely CIPA claims against Defendant Inspire, which worked with Defendants Dunkin' and Jimmy Johns to cause the conduct alleged in the TAC. Defendants also complain that the TAC's causes of action section does not break out each Defendant and Plaintiff separately, but ignores the rest of the TAC which clearly identifies which Defendants are connected to which Websites.

In sum, Defendants' arguments are based not on the facts alleged in the TAC nor the law applicable to this case—but on Defendants' selective reading of both. The Court should deny the Motion in its entirety.

## II. FACTUAL BACKGROUND

As the Court reviewed the facts of this case in ruling on Defendants' prior motion to dismiss, Plaintiffs briefly summarize the facts.

### A. Defendants' Mislead Website Users and Transmitted Their Communications to Third Parties.

When consumers visit the Websites, Defendants display to them a popup cookie consent banner. TAC ¶ 1. Defendants' cookie banners state that the Websites use cookies but expressly give users the option to control how they are tracked and how their personal data is used. *Id.* Defendants assure visitors that they may choose to "Decline" cookies as shown in the example screenshot below.




The representation that users could "Decline" cookies was false. Instead, even when users clicked "Decline" cookies, Defendants nevertheless permitted third parties to place on Plaintiffs' and Class members' devices and browsers the very cookies they had declined. *Id.* ¶ 49. Once placed, these cookies allowed Plaintiffs' and Class members' data to be transmitted to third parties in the manner and for purposes alleged in the TAC and as described below—including for purposes Defendants described in their Privacy Policies. *Id.* ¶ 44–45, 50, 63, 76, 89, 102.

The cookies Defendants wrongfully permitted the Third Parties to place on Plaintiffs' devices and browsers—despite Plaintiffs' express rejection and despite Defendants' express representation to the contrary—permitted the Third Parties to track and collect data in real time regarding Plaintiffs' behaviors and communications, including their browsing history, IP addresses, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data (the "Private Communications"). *Id.* ¶¶ 3, 40, 50, 63, 76, 89, 102.

**B. The Court's Ruling on Defendants' Motion to Dismiss the SAC**

In ruling on Defendants' motion to dismiss the Second Amended Complaint, this Court held that Plaintiffs have standing to sue Defendant Inspire, met Rule 9(b)'s standard for their claims, and sufficiently pleaded claims for fraud, unjust enrichment, common law privacy violations, and CIPA pen register violations. *See generally*, Second MTD Order. The Court granted Defendant's motion with leave to amend for Plaintiff Nino's CIPA claims against Arby's based on the statute of limitations and Plaintiffs' CIPA wiretapping claims based on the Court's conclusion that Plaintiffs failed to allege that contents of their communication were intercepted. *Id.*

On amendment, Plaintiffs added allegations to address Plaintiff Nino's discovery of the basis for his CIPA claims and added details of their activity on the Websites to establish that contents of communications were intercepted.

## III. ARGUMENT

### A. Plaintiff Nino's CIPA Claims Are Not Time Barred

Statute of limitations is an affirmative defense. *See Lasko v. Caliber Home Loans*, 2022 U.S. App. LEXIS 6215, at *1 (9th Cir. Mar. 10, 2022). Plaintiffs are "not required to plead around anticipated affirmative defenses, including the statute of limitations." *Kohler v. Flava Enters.*, 2010 U.S. Dist. LEXIS 84033, at *3 (S.D. Cal. Aug. 13, 2010). As such, "[d]ismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint." *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014). Defendants' burden is extraordinarily high: dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995). "As a result, the defense generally cannot be asserted on a Rule 12(b)(6) motion." *A.B. v. Google LLC*, 737 F. Supp. 3d 869, 877–78 (N.D. Cal. 2024).

Both the discovery rule and the fraudulent concealment doctrine tolled CIPA's one-year statute of limitations. To invoke the delayed discovery doctrine, a plaintiff must plead facts to show the "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005). The delayed discovery doctrine "delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action." *Id.* at 807. A plaintiff has inquiry notice "when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110 (1988). "[P]laintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation." *Fox*, 35 Cal. 4th at 807. "The question when a plaintiff actually discovered or reasonably should have discovered the facts for purposes of the delayed discovery rule is a question of fact unless the evidence can support only one reasonable conclusion." *Ovando v. Cnty. of Los Angeles*, 159 Cal. App. 4th 42, 61 (2008).

Plaintiff Nino learned of Defendants' violations on or about March 31, 2025, through counsel. TAC ¶ 228. Plaintiff Nino has alleged that he had no basis to suspect that his injury was caused by

wrongdoing: he does not know how the Arby's Website is programmed and determining whether Defendants are placing unauthorized cookies and transmitting data to third parties requires specialized software developer training. TAC ¶¶ 204, 215, 228. Moreover, there was no basis to suspect wrongdoing in the face of Defendants' affirmative statement that it would honor his privacy choices. TAC ¶¶ 46, 48, 205. Thus, he could not have discovered the violation at the time of his visit, and Plaintiffs' claims should be tolled. *See Doe v. Fullstory*, 712 F. Supp. 3d at 1255–56 (N.D. Cal. 2024) (discovery rule applied where plaintiff alleged that defendant had exclusive knowledge of its platform, and the highly technical nature of the violation all but ensured that Plaintiff could not discover the violation at all); *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 869 (N.D. Cal. 2025) ("*Haleon*") (applying discovery rule to similar allegations).

Defendants argue that Plaintiff Nino "fails to plead any facts regarding the manner of that discovery or what he did during the years between his 2021 visit to the Arby's Website and his counsel's apparent investigation to uncover the alleged violation." MTD at 10–11. But that is not the standard for the delayed discovery rule. Plaintiffs are only required to conduct a "reasonable investigation" *after* becoming aware of an injury "and are charged with knowledge of the information that would have been revealed by such an investigation." *Javier v. Assurance IQ LLC*, 649 F. Supp. 3d 891, 901 (N.D. Cal. 2023) (quoting *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005)). And, courts routinely recognize that information relevant to a CIPA claim "typically resides uniquely in the custody and control of the CIPA defendant and its third-party recorder." *St. Aubin v. Carbon Health Techs., Inc.,* No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067, at *15 (N.D. Cal. Oct. 1, 2024). In *Javier*, which Defendant cites in support if their argument, the plaintiff was aware of the injury but not that the defendant was involved, despite being on notice that a third party was involved in the collection of his data. 649 F. Supp. 3d at 901. That is not the case here, where Plaintiff Nino was unaware of the violation and injury until being informed by counsel. Likewise, *O'Neill v. Cal. Physicians' Serv*. is distinguishable because there, the plaintiff became aware of the alleged conduct "no later than 2018" but waited to file her claims until 2024. 2025 U.S. Dist. LEXIS 226056, at *19 (N.D. Cal. Nov. 17, 2025).

Separately, fraudulent concealment tolls Plaintiff Nino claims because "(1) the defendant took affirmative acts to mislead the plaintiff; (2) the plaintiff did not have actual or constructive knowledge of the facts giving rise to its claim; and (3) the plaintiff acted diligently in trying to uncover the facts giving rise to its claim." *Brown v. Google LLC*, 525 F.Supp.3d 1049 (C.D. Cal. March 12, 2021) at 1070 (internal quotation marks and citation omitted). The TAC demonstrates these requirements: (1) Defendants affirmatively misrepresented to Website visitors that users can "DECLINE" cookies and tracking technologies (*see, e.g.*, TAC ¶ 49 ("Defendants Arby's and Inspire's representations, however, were false.")); and (2) Because of this affirmative misrepresentation and Plaintiff Nino's lack of technical expertise, Plaintiff Nino acted diligently in bringing this action after learning of Defendant's privacy violations on the Arby's, Website. *Id*. Indeed, Plaintiffs' invocation of the fraudulent concealment doctrine is stronger than it was in *Fullstory* because Plaintiffs have "allege[d] facts with respect to . . . the source of [Defendant's] fraudulent concealment;" namely, the affirmative misrepresentation that website users could truly "Decline" cookies and tracking technologies. *See Fullstory*, 712 F. Supp. 3d at 1256. And (3) Plaintiff Nino learned of his injury on or around March 31, 2025 (TAC ¶ 228) and promptly pursued his claims on August 18, 2025 (ECF No. 35). As such, Defendants' fraudulent concealment tolled the statute of limitations for Plaintiff Nino.

Defendants cannot show that Plaintiff Nino was aware of the violations at the time of his visits to the Arby's Website. This is fatal to Defendants' argument because it is Defendants' burden to establish that "it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Supermail Cargo, Inc.*, 68 F.3d at 1206. Here, where there exist allegations in the TAC showing an inability to discover the violations of Plaintiffs' privacy, where there exist allegations of fraudulent concealment, and there are allegations that Plaintiff Nino did not become aware of Defendants' unlawful conduct until March 31, 2025, Defendants' statute of limitations argument fails.

**B. Defendants' CIPA § 631(a) Wiretapping Arguments Fail.**

Plaintiffs allege a wiretapping claim under the fourth prong of Section 631(a) which prohibits aiding others who "unlawfully do, or permit, or cause to be done" either "(1) intentional wiretapping, (2) willfully attempting to learn the contents or meaning of a communication in transit over a wire,

[i.e., eavesdropping,] and (3) attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Rodriguez v. Ford Motor Co.*, No. 3:23-cv-00598, 2024 U.S. Dist. LEXIS 218685, at *12 (S.D. Cal. Dec. 3, 2024) (cleaned up). Here, Plaintiffs allege that Defendants have aided the Third Parties in their CIPA violations. In their motion, Defendants argue that Plaintiffs have not adequately alleged that such communications were intercepted in transit or the contents of those communications, or intent. These arguments lack merit.

#### 1. Plaintiffs Adequately Allege the Contents of the Intercepted Communications

"Contents" in CIPA "refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *Walsh v. Dollar Tree Stores, Inc.,* 2025 U.S. Dist. LEXIS 204652, at *43 (N.D. Cal. Oct. 16, 2025) ("*Dollar Tree*") (citations and quotations omitted). In the Second MTD Order, this Court acknowledged that "Plaintiffs' browsing activities and private communications, such as browsing history, visit history, website inter-actions, user input data, demographic information, interests and preferences, shopping behavior, device information, referring URL, session information, user identifiers, and geolocation data . . . could constitute contents." Second MTD Order at 11 (citing *Dollar Tree*, 2025 WL 2939229, at *16). The Court, however, concluded that Plaintiffs had not alleged that "plaintiffs themselves . . . engag[ed] in any communications with the websites or otherwise generating any content." *Id*. at 11–12.

The TAC now adds allegations regarding the contents of Plaintiffs' communications with the Websites. TAC ¶¶ 172–75, 184–86, 195–96, 205. Specifically, Plaintiffs allege that they visited the Websites to review menu offerings, promotional deals, and restaurant locations. TAC ¶¶ 172–75, 184–86, 195–96, 205–09. In so doing, they clicked links to browse menu and promotional pages and also entered information into the Websites to view location-specific information. *Id*. Plaintiffs alleged the specific user input data, including that Plaintiff Gershzon entered "San Francisco" and "94131" as search terms when looking for nearby Baskin-Robbins restaurants. TAC ¶ 196. For example, when a user views the menu on the Arbys Website, the url www.arbys.com/menu is sent to Facebook, revealing what the user was doing and searching for. *See* TAC ¶ 125. Knowing what a user is

interested in (e.g., the Arby's menu), is what allows Third Parties like Google to serve "targeted ads to web users across Google's ad network." TAC ¶ 108. As Plaintiffs allege, "by identifying users who have shown interest in certain products or content, Google's cookies cause its advertising platform to enable advertisers to show relevant ads to those users when they visit other websites within Google's ad network." *Id*. This information is the "contents" of Plaintiffs' communications. It includes user-generated material (location information input by Plaintiffs) and the URLs of the pages they visited revealed what the user was seeking to do or search for. *In re Meta Pixel Healthcare Litig*., 647 F. Supp. 3d 778, 795–96 (N.D. Cal. 2022) (URL paths can reveal substance of communication and are considered contents).

Further, Plaintiffs have alleged that the communications were collected through wrongfully placed cookies on the Websites. TAC ¶¶ 40, 54–55, 67–68, 80–81, 93–94, 106–07 (alleging Private Communications collected through wrongfully placed cookies); ¶¶ 108–51 (alleging the types of data and communications collected by the wrongfully placed Third Parties' cookies). This is sufficient.

None of Defendants' arguments to the contrary hold water. Defendants attack the "location information" allegations, arguing that "Plaintiffs identified virtually nothing" regarding user input communications. MTD at 14. But as described above, Plaintiffs allege the specific information they themselves input into the website that was intercepted and transmitted to Third Parties, i.e. city and zip code information. TAC ¶ 196. Defendant next argues that a city, zip code, address, or similar location information "is no more communicative 'addressing' header information and, at best, indicates nothing more than a desire to find nearby restaurant locations." MTD at 14. But the distinction between contents and record information turns, in part, on whether the data was input by the user user. *Haleon*, 815 F. Supp. 3d at 871 (substantially similar allegations that "the information collected as 'the Website user's affirmative decisions, actions, choices [and] preferences,' including 'user input data' such as 'search queries, the user's name, age, gender, email address, location, and/or payment information.'" is "more than sufficient."). Rather, information that would otherwise constitute record information can become content when it is the information the user communicates, rather than information automatically generated by a web browser. *In re Zynga Privacy Litig*., 750 F.3d at 1107 (9th Cir. 2014) (where a user inputs their name, address, email address, etc. into a website

form, that information is the contents of communication); *see also Yoon v. Lululemon United States*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021)(explaining CIPA protects "user-generated material" but not "routine identifiers").

Defendant's remaining arguments rely on its inaccurate premise that Plaintiffs "never explain what specific information they allegedly entered, how they provided it, or where they provided it." MTD at 15. All Plaintiffs allege that they "entered" location information into the Website. TAC ¶¶ 172–75, 184–86, 205–09. Further, Plaintiff Gershzon's allegations that she entered "San Francisco" and a zip code into the Website's search tool. Nothing further is required. Because users are not anticipating the need to remember their exact interactions with websites, courts have consistently refused to require plaintiffs to plead the exact communications they had with websites. *See, e.g.*, *Byars v. Tire*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. Feb. 3, 2023) (stating that "[t]here is no requirement that [plaintiff] specifically allege the exact contents of her communications with Goodyear"); *James v. Walt Disney Co.*, 701 F. Supp. 3d at 956 (N.D. Cal 2023) (same).

Finally, to the extent Defendants suggest that there must be an element of "sensitive" communication that is intercepted to state a CIPA wiretapping claim, the "sensitivity" of the contents of the communication is irrelevant under CIPA. CIPA only requires that there be "contents," not that the contents reveal "sensitive" information. Cal. Penal Code § 631(a) (liability for persons who aid and abet another who "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any . . . communication while the same is in transit"); *Smith v. Rack Room Shoes, Inc.*, No. 24-cv-06709-RFL, 2025 U.S. Dist. LEXIS 70510, at *11 (N.D. Cal. Apr. 4, 2025) ("detailed URLs reflecting users' queries can be 'content.'").

**2. The Contents of Communication Are Intercepted While In Transit.**

In determining that Plaintiffs' initial complaint failed to adequately plead the "in transit" element of their CIPA wiretapping claim, this Court held that the initial complaint lacked a "description of 'how the software works or how the interception occurs.'" Order at 15 (citing *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1001 (N.D. Cal. 2024)).[1] In the Amended Complaint, Plaintiffs added

[1] The Court did not reach the "in transit" element in the Second MTD Order.

multiple paragraphs describing in detail how the software works to intercept communications in transit—complete with screenshots describing real time data flow and availability of communications sent from consumers devices. ECF No. 54 ¶¶ 152–63. These allegations are retained in the TAC and demonstrate how the cookies placed on Plaintiffs' and other users' devices operated as a real time listening device—intercepting and reading their private communications, which were meant only to be between Plaintiffs' and Defendants'—and contemporaneously reading and processing them. TAC ¶¶ 152–63. This is more than sufficient.

CIPA § 631(a) states unlawful wiretapping occurs when anyone "willfully and without consent of all parties to the communication, or in any unauthorized manner, ***reads, or attempts to read, or to learn*** the contents or meaning of any message, report, or communication while the same is in transit . . . ***or who uses, or attempts to use***, in any manner, or for any purpose, or to communicate in any way, ***any information so obtained*** . . . ." Cal. Penal Code § 631(a) (emphasis added).[2]

Plaintiffs clearly allege that timing element. TAC ¶¶ 3 (the "cookies permitted the Third Parties to track and collect data in real time"), *id*. (the cookies enabled third parties "to collect user data in real time that discloses Website visitors' Private Communications"), 52, 65, 78, 91, 104 (interactions with the Website resulted in the user's browser making a large number of GET and POST HTTP requests to third party web domains), 156 ("Third Parties perform real-time analytics on user communications to determine their meaning and significance."), *see also id.* ¶¶ 152–63 (providing additional details regarding Third Party real time interception of data). Plaintiffs further

[2] Intercepting communications while in transit certainly qualifies as a violation of CIPA, but "divulging the contents of an intercepted communication is an independent act that further intrudes on the privacy of the parties to the communication," and is also "illegal under section 631, subdivision(a)." *Tavernetti v. Superior Court of San Diego Ctny.*, 22 Cal. 3d 187, 193 (1978). Federal courts have questioned whether it is necessary to plead that the interception happened "while" the transmission occurred at all. *Mitchell v. Sonesta Int'l Hotels Corp.*, 2024 U.S. Dist. LEXIS 186701, at *19–20 (C.D. Cal. Oct. 4, 2024) ("Section 631(a) relates not just to messages, reports, or communications that are 'in transit,' but also to those that are 'being sent from, or received at any place within this state.") (quoting Cal. Pen. Code § 631(a)). "[T]he California Supreme Court already indicated that a complaint survives a pleadings-based challenge and states a prima facie violation of Section 631 because it alleges that eavesdropping occurred either while the communication was 'in transit' or was 'being sent from' or 'received at' a place within California." *Id.* at *25 (citing *Ribas v. Clark*, 38 Cal. 3d at 359 (1985)). Plaintiffs have adequately alleged that Defendants did both. *See Dollar Tree*, 2025 U.S. Dist. LEXIS 204652, at *45 (concluding similar in transit allegations "are not mere 'labels and conclusions' but are well-pleaded factual allegations.")

identifies specific examples of cookies transmitting data in *real time*. *Id*. For example, Plaintiffs allege that "the Third Parties employ real-time stream processing platforms specifically designed to operate on data 'in flight'—that is, after it is transmitted from a user's browser but before it is committed to the Third Parties' storage." TAC ¶ 157. Allegations describing the real-time transmission of communications are sufficient on a motion to dismiss. *See Jackson v. Linkedin Corp.*, 744 F. Supp. 3d 986, 994 (N.D. Cal. 2024) ("allegations regarding the manner in which the Insight Tag operates are sufficient to plausibly allege that LinkedIn at least 'read' or 'learned' the information so transmitted. Because that is sufficient to state a claim under Section 631, LinkedIn's motion to dismiss Jackson's CIPA claim is denied.").

Plaintiffs' wiretapping claims under CIPA § 631(a) survive because Plaintiffs' "allegations that [communications] are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement" at the pleadings phase. *Esparza v. UAG Escondido A1 Inc.*, 2024 U.S. Dist. LEXIS 24429, at *3 (S.D. Cal. Feb. 12, 2024). Ruling otherwise would require Plaintiffs to prove their case before discovery. *D'Angelo v. Penny Opco, LLC, No. 23-cv-0981-BAS-DDL,* 2023 U.S. Dist. LEXIS 191054, at *8 (S.D. Cal Oct. 24, 2023); *see also St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *15 ("A pleading standard [requiring explanation of how and when interception occurs] would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant and its third-party recorder.").

Defendants argue that Plaintiffs have not alleged in transit interception because the third parties operate on the data only "*after it is transmitted* from a user's browser." Mot. at 16 (emphasis in original). Defendants' own premise defeats their argument. Any communication that is intercepted while "in transit" is necessarily captured after it leaves point A. Here, point A is the user's device. Point B is the Defendants' server. Before the communication reaches Defendants' server, but after it leaves the user's device, it is intercepted by Third Parties. Moreover, Defendants claim that because the third parties interpret information "only when they receive it," they do not interpret it in transit. This is mere semantics. It would be impossible for third parties to interpret something before receiving

it. What Defendants miss is that the communications were in transit *to Defendants*, but were intercepted and read in real time by the Third Parties.

Thus, Plaintiffs' allegations that the communications were *intercepted* "in real time" or "contemporaneous[ly] with the sending or receipt of the message" are sufficient to establish the "in transit" element on a motion to dismiss. *See Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 759 (N.D. Cal. 2023) (noting statutory claim can be pled by explaining how messages are "intercepted in real time"); *St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *15 ("while . . . in transit" means "contemporaneously"). Further, simultaneous interception and duplication of communications meet CIPA's "in transit" element: "allegations that [communications] are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement." *Esparza,* 2024 U.S. Dist. LEXIS 24429, at *3. Put differently, "the key to the interception analysis is whether the plaintiff alleges that the transmission [to the intercepting third party's servers] was simultaneous." *St. Aubin*, 2024 U.S. Dist. LEXIS 179067 at *17. Plaintiffs have done so here.

Defendant urges this Court to apply holdings born from disparate facts to dismiss Plaintiffs' claims. The Court should not be duped. For example, *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002), involved an attempt to sue an airline for wiretap violations where the airline read posts that had been made to an online bulletin board on an earlier date. The Ninth Circuit held that reading a communication that had been made at an earlier date did not count as interception while the post was "in transit." That is not the issue here, where the Amended Complaint squarely alleges that each of the Third Parties "reads" the communication to create profiles of the Plaintiffs and other users for use in targeted advertising by additional third parties. TAC ¶¶ 152–63. This is not a case where the third parties act merely as "a passive tape recorder" to allow Defendant to read back the contents communicated at a later date. Rather, Plaintiffs allege that each Third Party takes the intercepted communication and derives useful information from it for their own purposes.

### C. Plaintiffs Plead a Concrete Injury-in-fact, Demonstrating Article III Standing.

As this Court held previously,

> Plaintiffs plead that Defendants caused cookies and tracking technologies to be placed on their devices without their knowledge. And Plaintiffs plead that their 'browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data' were obtained by third parties using those cookies. As argued by Plaintiffs this is sufficient.

ECF No. 50 ("First MTD Order") at 3 (citing *Gabrielli v. Motorola Mobility LLC*, No. 24-cv-9533, 2025 WL 1939957, at *10 (N.D. Cal. July 14, 2025)) (internal citations omitted); First MTD Order at 6–7 ("Defendants renew their arguments for dismissal of Plaintiffs' common-law privacy claims. Defendants contend that the Plaintiffs lack standing and fail to state these claims. Dkt. 61 at 16–19 & 22–23. For the reasons stated in the Court's prior order, dkt. 50, Defendants' motion to dismiss the common-law privacy claims is denied.").

The facts on which this Court held that Plaintiffs sufficiently alleged standing have not changed. Nor should the Court's conclusion here. Indeed, invasions of privacy have long been recognized at common law as concrete injuries. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021); *see also Six v. IQ Data Int'l, Inc.*, 129 F.4th 630 (9th Cir. 2025) (quoting *TransUnion*). This right to privacy "encompass[es] the individual's control of information concerning his or her person." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) (citation omitted). As a result, the Ninth Circuit has held specifically that violations of CIPA suffice to confer Article III standing. *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 598–99 (9th Cir. 2020) ("[T]he legislative history and statutory text demonstrate that . . . the California legislature intended to protect . . . historical privacy rights when [it] passed CIPA.").

As this Court also previously held, Plaintiffs have sufficiently alleged that Defendants invaded their privacy—causing them a concrete injury—when Defendants intentionally permitted the Third Parties to place cookies on Plaintiffs' browsers and devices in order to "collect, track, and compile users' Private Communications, including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers," and more. First MTD Order at 3–5; TAC ¶¶ 3, 40–43, 57, 70, 83, 96, 50, 63, 76, 89, 102, 52–55, 64–68, 77–81, 90–94, 103–07, 179,

190, 199, 213; *see also Motorola*, 2025 U.S. Dist. LEXIS 133836, at *16–17; *Haleon*, 815 F. Supp. 3d 859-60 (N.D. Cal. Aug. 29, 2025).

Defendants' retread of their *Popa v. Microsoft Corporation,* 153 F.4th 784 (9th Cir. 2025) arguments similarly fail both factually and legally. This Court previously distinguished *Popa* because "the information allegedly collected here is more intrusive than that considered in *Popa.*" First MTD Order at 4. Defendants insist that lying to a website user by promising privacy over the exact data and communications that it then allows Third Parties to collect is not sufficient to create a privacy injury. Even if such a callous argument could be accepted, Defendants' argument that the TAC "contains no factual allegations showing that Defendants collected sensitive information, amassed a comprehensive browsing history, or engaged in data-collection practices remotely comparable to those at issue [in other cases]" is wrong. MTD at 9. The TAC alleges information that was actually taken (not just that "could" be taken, MTD at 8), including providing screenshots showing the operation of the cookies that collected the URLs and copious other data that was taken when they interacted with the Websites. TAC ¶¶ 52, 65, 78, 91, 104.

Further, this Court held that Plaintiffs' prior complaint "alleged facts sufficient to show that the alleged collection of data could be highly offensive." Second MTD Order at 5. Indeed, other courts have reached the same conclusion as this one. In *Haleon*, Judge Orrick considered and rejected the exact argument Defendants make here.[3] *Haleon*, 2025 U.S. Dist. LEXIS 169503, at *18–19. There, the court found that the tracking technologies at issue in *Popa* "are . . . distinguishable, both in users' interactions with them and their capabilities" from those at issue here. *Id*. at *20. For example "Popa never purported to have expressly 'reject[ed]' the tracking technology at issue." *Id*. And while "the

[3] Similarly, *Khamooshi* is distinguishable because none of the plaintiffs there alleged that they "rejected" cookies; they merely contended that they did not consent to the disclosure of their IP addresses. *Khamooshi v. Politico LLC*, 2025 U.S. Dist. LEXIS 92788, at *7–8 (N.D. Cal. May 13, 2025). The court rejected the notion that the plaintiffs had any privacy interest in information they "voluntarily" handed over, unlike here, where Plaintiffs believed based on Defendants' *own representations* that they were not handing any data over to Third-Parties. *Id*. Plaintiffs here, however, have alleged that their information was taken *involuntarily* after Defendants expressly promised not to do so. *See Gabrielli v. Haleon US Inc.*, No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503, at *16 (N.D. Cal. Aug. 29, 2025) (distinguishing *Khamooshi*).This is a distinction *with* a difference – a big difference.

session-replay technology [in *Popa*] was not alleged to track anything beyond her interactions with the website she chose to visit, and the information gathered was only alleged to be used by the owner of that website," the plaintiff in *Haleon*—like Plaintiffs here—"alleges that the cookies . . . store[d] on users' devices allow third parties 'to track and collect data in real time regarding . . . user input data,' which includes '[t]he information the user entered into the Websites' form fields, including search queries, the user's name, age, gender, email address, location, and/or payment information, demographic information,' and also 'device information, session information, and/or geolocation data.'" *Id*. (citation omitted). Further, as is the case here, the court in *Haleon* found *Popa* distinguishable because "Haleon's website explains what its cookies are capable of," i.e., that the cookies were used to "count visits and traffic sources so *Haleon* can measure and improve the performance of its website[s]," and for "tracking users' browsers across other sites and building up a profile of users' interests." *Id*. at *20–21 (cleaned up); *compare* TAC. ¶¶ 39–41, 44–45, 108–51, 164 (alleging similar disclosures from the Websites regarding the capabilities of cookies). Ultimately, the court in *Haleon* determined that the plaintiffs "allegations are sufficient to show Article III standing." *Id*.

Moreover, the offense extends beyond the data collected during users' and Plaintiffs' visits. As alleged, the cookies are placed and then used to track users beyond the Website visit to "consumer profiles containing detailed information about a consumer's behavior, preferences, and demographics." *Id*. ¶¶ 4, 54; *see also id.* ¶¶ 54–55, 67–68, 80–81, 93–94, 106–07 (third parties track Plaintiffs and users "across the internet and across time" to compile profiles). District courts recognize this mass accumulation of data is highly offensive, regardless of the specific type and quality. *See Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d at 942 (N.D. Cal. 2023); *Silver v. Stripe Inc*., 2021 U.S. Dist. LEXIS 141090 at *17–18 (N.D. Cal. July 28, 2021) ("volume of the collected information is also important" in determining whether "the intrusion was highly offensive."); *see also United States v. Jones*, 565 U.S. 400, 418 (2012) (Sotomayor, J., concurring) ("I for one doubt that people would accept without complaint the warrantless disclosure []of a list of every Web site they had visited in the last week, or month, or year.").

The facts upon which this Court distinguished *Popa* have not changed. Thus, this Court should reject Defendants' request for reconsideration.

**D. The Court Should Deny Defendants Request for a More Definite Statement**

Under Rule 12(e), the Court may grant a motion for a more definite statement when a pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "Motions for a more definite statement are viewed with disfavor and are rarely granted because of the minimal pleading requirements of the Federal Rules." *Sagan v. Apple Computer, Inc*., 874 F. Supp. 1072, 1077 (C.D. Cal. 1994). "Thus, a motion for a more definite statement should not be granted unless the defendant literally cannot frame a responsive pleading." *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1461 (C.D. Cal. 1996) (citing *Boxall v. Sequoia Union High School District*, 464 F. Supp. 1104, 1114 (N.D. Cal. 1979)).

Here, Defendants have not met this standard. Defendants complain that Plaintiffs "continue to lump all 'Defendants' together and plead their causes of action collectively." Mot. at 17. But the TAC states which Plaintiffs bring which causes of action (TAC at 84, 86, 88, 93, 94, 97), and states which Plaintiffs visited which Websites that form the basis for those causes of action. TAC at 12, 17, 22, 28, 34. Moreover, as evidenced by Defendants' motion to dismiss, the TAC is not "so nonsensical that the defendant cannot file any type of responsive pleading." *Izzetov v. Tesla Inc*., No. 5:19-cv-03734-EJD, 2020 U.S. Dist. LEXIS 60261, at *16 (N.D. Cal. Apr. 6, 2020) ("Defendant has not met this standard, as evidenced by the motion to dismiss brought with the motion for a more definite statement. Defendant has filed a responsive pleading; the motion to dismiss responds to the Complaint. Defendant thus cannot now claim that the Complaint is "so vague" that it cannot frame a responsive pleading.").

**E. Evidence Beyond the Pleadings Should Not Be Considered**

Defendant includes argument throughout relying on evidence beyond the pleadings. *See, e.g.*, MTD at 4, n. 4. Such evidence should not and cannot be considered. *Woodard v. City of Menlo Park*, No. CV 09-3331 SBA, 2009 U.S. Dist. LEXIS 112394, at *5 (N.D. Cal. Nov. 10, 2009) ("Because Rule 12(b)(6) review is confined to the complaint, the court may not consider material outside the pleading (e.g., facts presented in briefs, affidavits, or discovery materials)" (citing *In re American Continental Corp./Lincoln Savings & Loan Securities Litigation*, 102 F.3d 1524, 1537 (9th Cir.1996)).

For example, Defendant cites to its websites as they exist today as being "incorporated by reference," but today's Websites are not the relevant inquiry, rather it is the Websites as they existed during Plaintiffs' visits. *See* TAC ¶¶ 172–75 (Ayora, 2021–2023); 184–86 (Wiley, 2024–2025); 195–96 (Gershzon, 2024); 205–209 (Nino, 2021–2024) Similarly, Defendant claims, without evidence, that Plaintiff Nino's visits occurred during "a period [] which no cookie banner was displayed on the Website." MTD at 5. This is directly contradicted by Plaintiff Nino's allegations that during his visit, the Arby's Website presented a banner and Plaintiff Nino viewed the representation on the popup cookie consent banner that, "We use cookies on our website. By clicking Accept you consent to the use of all cookies." TAC ¶ 205. These arguments that rely on facts beyond the pleadings cannot be considered and must be stricken.

### F. Plaintiffs Request Leave to Amend If Necessary.

If the Complaint is dismissed, "leave to amend should be granted unless the Court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co*., 806 F.2d 1393, 1401 (9th Cir. 1986). Indeed, leave to amend is only really properly denied "where the amendment would be futile." *DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992). Should this Court find any claims in the Complaint insufficient, Plaintiffs request leave to amend to cure the identified deficiencies.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss must be denied.

//

//

//

//

Dated: September 4, 2026

**GUTRIDE SAFIER LLP**

*/s/Patrick J. Branson*
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
hayley@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

Patrick J. Branson (*pro hac vice*)
patrick@gutridesafier.com
305 Broadway, 7th Floor
New York, NY 10007
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*