**BAKER & HOSTETLER LLP**
Bethany G. Lukitsch (SBN 314376)
Kamran B. Ahmadian (SBN 314566)
Alexis Cruz (SBN 312842)
1900 Avenue of the Stars | Suite 2700
Los Angeles, CA 90067-4508
Telephone: 310.820.8800
Facsimile: 310.820.8859
*blukitsch@bakerlaw.com*
*kahmadian@bakerlaw.com*
*acruz@bakerlaw.com*

*Attorneys for Defendants*
INSPIRE BRANDS, INC., ARBY'S RESTAURANT GROUP, INC., JIMMY JOHN'S FRANCHISOR SPV, LLC, SONIC INDUSTRIES SERVICES, LLC, and DUNKIN' BRANDS, INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

BENJAMIN PAUL DE AYORA, CHRISTINE WILEY, MIKHAIL GERSHZON, AND GEORGE NINO as individuals, on behalf of themselves, the general public, and those similarly situated,

Plaintiffs,

v.

INSPIRE BRANDS, INC., ARBY'S RESTAURANT GROUP, INC., JIMMY JOHN'S FRANCHISOR SPV, LLC, SONIC INDUSTRIES SERVICES, LLC, and DUNKIN' BRANDS, INC.,

Defendants.

Case No.: 3:25-cv-03645-AGT

[*Assigned to Hon. Alex G. Tse*]

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT, OR IN THE ALTERNATIVE, FOR MORE DEFINITE STATEMENT**

**Date:** **October 9, 2026**
**Time:** **2:00 p.m.**
**Dept:** **Courtroom A, 15th Floor**

Action Filed: April 25, 2025

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. PLAINTIFF NINO'S CIPA CLAIMS AGAINST ARBY'S ARE TIME-BARRED .......... 2

III. PLAINTIFFS' CIPA § 631(a) WIRETAPPING CLAIM FAILS .......... 4

A. Plaintiffs Failed to Plead "Contents" of "Communications" .......... 4

B. Plaintiffs Failed to Plead That Any Contents of Communications Were Intercepted While "In Transit" .......... 8

IV. PLAINTIFFS LACK ARTICLE III STANDING .......... 9

V. DEFENDANTS DO NOT RELY ON EVIDENCE OUTSIDE THE PLEADINGS .......... 13

VI. AT A MINIMUM, PLAINTIFFS SHOULD BE REQUIRED TO PROVIDE A MORE DEFINITE STATEMENT UNDER RULE 12(E) .......... 14

VII. CONCLUSION .......... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abagninin v. AMVAC Chem. Corp.*,
545 F.3d 733, 742 (9th Cir. 2008) .......... 4

*Annabel Kady v. Opencare, Inc.*,
2026 WL 2574336 (N.D. Cal. Aug. 31, 2026) .......... 2

*Barrales et al. v. Reckitt Benckiser LLC*,
2026 WL 2212867 (N.D. Cal. July 31, 2026) .......... 10

*Blackhawk Network, Inc.,*
2026 WL 925028 (C.D. Cal. Apr. 1, 2026) .......... 11

*Byars v. Goodyear Tire & Rubber Co.*,
654 F. Supp. 3d 1020 (C.D. Cal. 2023) .......... 6, 7

*D'Angelo v. Penny OpCo, LLC*,
2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) .......... 9

*Doe v. Fullstory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) .......... 3

*Esparza v. UAG Escondido A1 Inc.*,
2024 WL 559241 (S.D. Cal. Feb. 12, 2024) .......... 9

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (2005) .......... 2, 4

*Gabrielli v. Haleon US Inc.*,
2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) .......... 9, 12

*Heiting v. Taro Pharms. USA, Inc.*,
728 F. Supp. 3d 1112 (C.D. Cal. 2024) .......... 9

*In re Animation Workers Antitrust Litig.*,
87 F. Supp. 3d 1195 (N.D. Cal. 2015) .......... 4

*In re Facebook Inc. Internet Tracing Litig.,*
F.3d 589 (9th Cir. 2020) .......... 9

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 6

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal 2023) ........ 7

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 929 (N.D. Cal. 2023) ........ 13

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002)........ 8

*Lukovsky v. City & Cnty. of S.F.*,
533 F.3d 1044 (9th Cir. 2008) ........ 4

*Mahboob v. Educ. Credit Mgmt. Corp.*,
2023 WL 12014957 (C.D. Cal. Dec. 20, 2023) ........ 2

*Mitchell v. Sonesta Int'l Hotels Corp.*,
2024 WL 4471772 (C.D. Cal. Oct. 4, 2024)........ 8

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025)........ 9, 11, 12

*In re Zynga Privacy Litigation*,
750 F.3d 1098 (9th Cir. 2014)........ 5, 6

*Silver v. Stripe Inc.*,
2021 WL 3191752 (N.D. Cal. July 28, 2021)........ 13

*Soliman v. Philip Morris Inc.*,
311 F.3d 966 (9th Cir. 2002)........ 3

*Straight v. Edfinancial Servs.*,
2026 WL 2087412 (N.D. Cal. July 20, 2026) ........ 11

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024)........ 9

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)........ 9, 12

*U.S. v. Ritchie*,
342 F.3d 903 (9th Cir. 2003)........ 13

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ........ 9

*Wiley v. Universal Music Grp., Inc.*,
826 F. Supp. 3d 1121 (N.D. Cal. 2025) ........ 5

## I. INTRODUCTION

Plaintiffs' Opposition confirms that the Third Amended Complaint ("TAC") remains deficient despite multiple opportunities to amend and this Court's repeated guidance concerning the defects in their claims. As to Plaintiff Nino, the TAC still fails to plead facts sufficient to invoke either the delayed discovery rule or fraudulent concealment. Rather than plead facts explaining how he discovered the alleged violations or why he could not have discovered them earlier through the exercise of reasonable diligence, Plaintiff Nino relies on a single, conclusory allegation that he was unaware of his claims against Arby's until his counsel informed him of them nearly four years after his lone visit to the Website. That allegation is insufficient as a matter of law to support tolling under the delayed discovery rule.

The Opposition likewise confirms that Plaintiffs' CIPA Section 631(a) claim still rests on generalized allegations about website-tracking technologies rather than facts showing that any third party intercepted the *contents* of Plaintiffs' communications while those communications were in transit. Although the Court granted leave to amend specifically so Plaintiffs could identify what content (if any) was allegedly transmitted and intercepted, Plaintiffs allege only routine website-browsing activity and providing vague "location information." Those allegations fall far short of what is required to plead unlawful wiretapping under Section 631(a).[1]

Plaintiffs likewise fail to establish Article III standing under *Popa* because their amended allegations affirmatively demonstrate the absence of any concrete privacy injury. Plaintiffs do not allege that they entered any sensitive, personal, or otherwise private information into the Websites, much less that such information was actually collected, intercepted, or disclosed to a third party.

After three complaints, two dismissal orders, and multiple opportunities to cure these defects, Plaintiffs still have not done so. Plaintiff Nino has yet to plausibly allege timely CIPA

---

[1] Additionally, Defendants respectfully bring to the Court's attention recent legislation that may affect Plaintiffs' claim under California Penal Code § 638.51. On August 28, 2026, the California Legislature passed Senate Bill 690, which, if enacted, would eliminate the private right of action for claims arising under § 638.51 based on conduct occurring on an internet website, online application, or mobile application. The bill applies retroactively to actions commenced on or after January 1, 2025, which would encompass this case. Defendants did not raise this issue in their Motion because Senate Bill 690 had not yet been passed when the Motion was filed.

claims against Arby's, Plaintiffs' Section 631(a) claim remains legally deficient, and the TAC's new allegations only further confirm that Plaintiffs have not suffered the concrete injury necessary to establish Article III standing. Having repeatedly failed to remedy these fundamental defects, Plaintiffs should not be granted another opportunity to amend. The Court should therefore dismiss the TAC with prejudice. At a minimum, the Court should order Plaintiffs to provide a more definite statement identifying which Plaintiff asserts which claim against which Defendant, and the specific factual allegations supporting each claim.

## II. PLAINTIFF NINO'S CIPA CLAIMS AGAINST ARBY'S ARE TIME-BARRED

This Court has already held that, absent tolling, Plaintiff Nino's CIPA claims against Arby's are time-barred. *See* Dkt. No. 69 ("FAC Order") at 8–9. Plaintiff Nino's own allegations establish that his lone visit to Arby's Website occurred in late 2021, years before the filing of the original complaint, and curiously, years before the Website started using the cookie banner at issue. Accordingly, unless Plaintiff can plausibly allege a basis for tolling, his claims are untimely on the face of the TAC. To invoke the delayed discovery rule and avoid dismissal, Plaintiff Nino, not Defendants, bears the burden of alleging "specific facts to support the imposition of the delayed discovery rule[.]" *Annabel Kady v. Opencare, Inc.*, 2026 WL 2574336, at *9 (N.D. Cal. Aug. 31, 2026); *Mahboob v. Educ. Credit Mgmt. Corp.*, 2023 WL 12014957, at *14 (C.D. Cal. Dec. 20, 2023). As Plaintiff Nino concedes, that requires allegations showing both "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." Opp. at 4 (quoting *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005)). The TAC still satisfies neither requirement.

*First*, although Plaintiff Nino now identifies the purported time of discovery, he still fails to allege the manner of discovery. The TAC alleges only that he learned of the purported CIPA violations against Arby's on March 31, 2025, when his counsel allegedly "informed him" of the claims. *See* TAC ¶¶ 205, 228. That bare assertion is insufficient to invoke delayed discovery. While it provides a date, it says nothing about how the alleged violations were discovered or what led Plaintiff to discover them *at that time*. Even accepting Plaintiff Nino's assertion that he had "no basis to suspect wrongdoing" based on the representations he allegedly observed on Arby's

cookie banner, Opp. at 5, the TAC alleges no facts regarding what prompted Plaintiff to contact counsel, what information caused him to suspect wrongdoing, how counsel purportedly uncovered the alleged violations, or why those facts could not have been discovered sooner. *See Soliman v. Philip Morris Inc.*, 311 F.3d 966, 971 (9th Cir. 2002) (holding that a cause of action accrues when a plaintiff "***at least suspects*** … that someone has done something wrong to him.") (cit. omitted) (emph. added). In short, Plaintiff offers a date of discovery but no facts regarding the discovery itself. That is insufficient to invoke the delayed discovery rule.

*Second*, Plaintiff Nino does not allege any facts that would demonstrate reasonable diligence during the intervening years. The Opposition's suggestion that Defendants seek to impose a duty on consumers to continuously monitor websites using Chrome Developer Tools grossly mischaracterizes the Motion. *See* Opp. at 1. Defendants do not contend that ordinary consumers must constantly inspect website source code to determine whether they may have privacy claims. Rather, Defendants reference Chrome Developer Tools for a far narrower purpose: to rebut Plaintiff Nino's conclusory assertion that the alleged violations were inherently undiscoverable absent sophisticated expert assistance. Indeed, investigative tools capable of revealing website cookie activity are readily available to the public.

For the same reason, Plaintiff's reliance on *Doe v. Fullstory* is misplaced. *See* Opp. at 5. There, the plaintiffs alleged that the defendant possessed exclusive knowledge of the challenged technology and that the highly technical nature of the alleged interception rendered the violation effectively undiscoverable absent specialized expertise. *See Doe v. Fullstory, Inc.*, 712 F. Supp. 3d 1244, 1255–56 (N.D. Cal. 2024). Those allegations supported the conclusion that the plaintiffs could not reasonably have discovered their claims earlier. Plaintiff Nino alleges no comparable facts here. He does not allege that the purported violations were inherently undiscoverable, that Arby's possessed exclusive access to information necessary to uncover them, or that specialized expertise was required to detect the alleged conduct. Instead, he alleges only that he had no reason to suspect wrongdoing during his 2021 visit and remained unaware of his claims until counsel informed him of them nearly four years later. Indeed, if Plaintiff truly had no basis to suspect wrongdoing throughout that period, that assertion only further undermines his claim that he suffered

the egregious privacy injury conclusively asserted in the TAC. In any event, delayed discovery requires more than allegations of ignorance. Plaintiff must plead specific facts showing why the alleged violations could not have been discovered earlier despite the exercise of reasonable diligence. *Fox*, 35 Cal. 4th at 808. Because the TAC contains no such allegations, Plaintiff Nino's attempt to invoke the delayed discovery rule fails.

Plaintiff Nino's attempt to invoke fraudulent concealment fares no better. In the Ninth Circuit, fraudulent concealment tolls the statute of limitations only where a defendant engages in affirmative conduct, separate and apart from the underlying wrongdoing itself, that is designed to prevent the plaintiff from timely filing suit. *See Lukovsky v. City & Cnty. of S.F.*, 533 F.3d 1044, 1052 (9th Cir. 2008) (citing *Guerrero v. Gates*, 442 F.3d 697, 706 (9th Cir. 2006)). Here, the Opposition fails to identify any such independent act of concealment. *See* Opp. at 6. Instead, Plaintiff Nino relies on the ***same conduct*** that forms the basis of his underlying claims—i.e., Arby's alleged representations in the Website cookie banner that users could "DECLINE" cookies and tracking technologies. *See id.* But Plaintiff Nino alleges no facts establishing that Arby's took ***additional*** affirmative steps to conceal the existence of his claim. *See In re Animation Workers Antitrust Litig.*, 87 F. Supp. 3d 1195, 1215 (N.D. Cal. 2015). Accordingly, Plaintiff Nino's attempt to invoke the fraudulent concealment doctrine should be rejected and his CIPA claims against Arby's should be dismissed.[2]

## III. PLAINTIFFS' CIPA § 631(a) WIRETAPPING CLAIM FAILS

### A. Plaintiffs Failed to Plead "Contents" of "Communications"

The Opposition largely repeats the TAC's new generalized allegations that Plaintiffs browsed pages on the Websites to review "menu offerings, promotional deals, and restaurant locations," clicked links to browse these pages, and searched for restaurant locations. *See* Opp. at 7. But the Ninth Circuit has already recognized that general browsing activity, including button clicks and webpage navigation, is not the same as transmitting a communication whose contents

[2] Given that Plaintiff Nino has now had multiple opportunities to cure the same statute-of-limitations deficiencies despite clear guidance from the Court, and has still failed to do so, further leave to amend is unwarranted. *See Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008) ("Leave to amend may also be denied for repeated failure to cure deficiencies by previous amendment.").



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

can be intercepted. *See In re Zynga Privacy Litigation*, 750 F.3d 1098, 1107–09 (9th Cir. 2014) (holding that URL information generated by a user's navigation of a website did not constitute the "contents" of a communication under ECPA, CIPA's federal analogue). Nor does the Opposition's example of a user visiting Arby's menu page, clicking on items, and causing the page URL to be transmitted change that analysis. *See* Opp. at 7–8. A URL identifying a webpage that a user visited reflects navigation activity, not necessarily the substance of a user's communication.

Indeed, Plaintiffs' example is materially indistinguishable from the activity at issue in *Zynga*, where users clicked links to published Ninth Circuit opinions or interacted with features within the Zynga game, causing corresponding URLs to be transmitted. *See Zynga*, 750 F.3d at 1101– 02. As *Zynga* explained, information that merely identifies a webpage or destination constitutes addressing or routing information, not the contents of a communication. *Id.* at 1109. The Ninth Circuit distinguished such information from search terms or other user-generated content that might reveal the substance of a user's communication. *Id.* ("[T]he referer header information at issue here includes only basic identification and address information, not a search term or similar communication made by the user and therefore does not constitute the contents of a communication."); *see also Wiley v. Universal Music Grp., Inc.,* 826 F. Supp. 3d 1121, 1135–36 (N.D. Cal. 2025) (finding that the alleged tracking of "website interactions," "user input data," "shopping behaviors," and potentially "referring URLs" ***could*** convey, among other things, what users were searching for or what they wanted to do on UMG's websites") (emph. added).

Plaintiffs' specific reliance on "location information" fares no better. The Opposition asserts that all Plaintiffs "entered" location information. *See* Opp. at 9. The actual allegations in the TAC, however, ambiguously state that they "entered ***or otherwise provided***" such information. *See* TAC ¶¶ 172–75, 184–86, 195–96, 205–09 (emph. added). That distinction matters. The TAC does not allege whether the information was entered into a search field, selected from a dropdown menu, submitted through a form, generated by geolocation services, or automatically transmitted by the user's device or browser. By pleading that Plaintiffs "entered or otherwise provided" location information, the TAC obscures the very facts necessary to determine whether any Plaintiff actually communicated information capable of constituting the contents under Section 631(a).



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

The Opposition likewise places significant weight on Plaintiff Gershzon's allegation that he entered "San Francisco" and "94131" into a restaurant locator.[3] *See* Opp. at 7–9; TAC ¶ 196. But those allegations do not advance Plaintiffs' claim. Plaintiffs do not allege that the terms identified Plaintiff Gershzon personally, reflected his actual location, or conveyed any information beyond the geographic area in which he wished to search for restaurants. More fundamentally, Plaintiffs' argument rests on the flawed premise that any user-entered information automatically qualifies as "content" under Section 631(a). That is not the law. The relevant inquiry is whether the allegedly intercepted information conveyed the substance or meaning of a communication, rather than serving a functional addressing, routing, or navigational purpose. *See Zynga*, 750 F.3d at 1107–09. A city name or ZIP code entered solely to locate nearby restaurants falls squarely into the latter category. It merely directs the website where to search; it does not communicate any substantive message.

Nor do the cases cited in the Opposition support the proposition that every URL, search term, or piece of information entered on a website necessarily constitutes "content" under Section 631(a). *See* Opp. at 8–9. For example, in *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022), the court, in the context of a motion for a protective order, accepted plaintiffs' expert testimony that certain "descriptive URLs" could reveal substantive information because the URLs contained both detailed path information and query-string data. By contrast, Plaintiffs identify no allegation that Defendants intercepted URLs containing user-generated search terms, substantive queries, or any comparable information from which the Court could infer that the contents of a communication were intercepted. Instead, the TAC alleges only routine website navigation and browsing activity, which *Zynga* makes clear is insufficient.

Plaintiffs next argue that their vague allegations suffice because courts have held that plaintiffs need not plead the exact contents of intercepted communications at the pleading stage. *See* Opp. at 9 (citing *Byars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020 (C.D. Cal. 2023)

---

[3] But one Plaintiff's alleged interaction with one website cannot supply the missing allegations for every other Plaintiff or every other website at issue. Even if entering a city name or ZIP code could constitute "content" under Section 631(a) (it cannot), Plaintiffs identify no comparable search terms allegedly entered by Plaintiffs de Ayora or Nino.

and *James v. Walt Disney Co*., 701 F. Supp. 3d 942 (N.D. Cal 2023)). But Defendants do not contend that Plaintiffs must reconstruct every search term or communication verbatim. The deficiency is far more basic: Plaintiffs fail to identify any communicative content at all. There is a fundamental difference between declining to require the precise wording of an identified communication and permitting a plaintiff to proceed without plausibly alleging what communication was conveyed in the first place. The TAC leaves both Defendants and the Court to guess whether Plaintiffs typed any information into a search field, selected pre-populated options, enabled location services, submitted information through a form, or merely navigated among webpages. Nor do *Byars* or *James* (cases under a Rule 8, not a 9(b) standard) permit a plaintiff to satisfy Section 631(a) through such vague and conclusory allegations. To the contrary, both cases involved allegations identifying the specific type of communication purportedly intercepted. *See Byars*, 654 F. Supp. 3d at 1027 (plaintiff alleged that he entered information into an online chat feature); *James*, 701 F. Supp. 3d at 956 (plaintiffs alleged that information was input into a website search feature). Here, by contrast, Plaintiffs do not identify any comparable communicative act.

Finally, Plaintiffs' argument that Section 631(a) does not require intercepted communications to be "sensitive" likewise misses the point. *See* Opp. at 9. Defendants do not argue that sensitivity is a formal element of a Section 631(a) claim. Rather, the Motion highlights the disconnect between Plaintiffs' broad allegations that third-party technologies captured extensive categories of sensitive personal information and the sparse allegations they offer when required to identify the contents of the communications at issue. Even after multiple amendments, Plaintiffs still only allege vague "location information" and, as to a single Plaintiff, unspecified search terms which stand in stark contrast to the sweeping allegations of extensive data collection and immeasurable privacy harms asserted in the TAC. *See* Mot. at 13–15. In short, Plaintiffs still do not identify what communicative content each Plaintiff allegedly conveyed, much less what content was purportedly intercepted. Without those basic factual allegations, Plaintiffs have not plausibly stated a claim under Section 631(a).

**B. Plaintiffs Failed to Plead That Any Contents of Communications Were Intercepted While "In Transit"**

As explained above, the TAC still fails to allege that Plaintiffs transmitted any content-bearing communications to the Websites. Without facts showing that Plaintiffs actually communicated information through the Websites, Plaintiffs cannot plausibly allege that any communication was intercepted in real time. Nor do Plaintiffs identify which cookies were triggered, what data they allegedly transmitted, or which third party supposedly performed the interception. Those omissions are fatal because Section 631(a) requires facts showing that a third party acquired the contents of a communication while "in transit." *See Konop v. Hawaiian Airlines, Inc.,* 302 F.3d 868, 878 (9th Cir. 2002).

Plaintiffs contend that Section 631(a) does not require interception during an ongoing transmission. Opp. at 10 n.2 (citing *Mitchell v. Sonesta Int'l Hotels Corp.*, 2024 WL 4471772 (C.D. Cal. Oct. 4, 2024)). But that position cannot be reconciled with the statute's text, which prohibits a defendant from reading, attempting to read, or learning the contents of a communication only "while the same is in transit." Cal. Penal Code § 631(a). Even *Mitchell* does not support Plaintiffs' expansive reading of the statute. There, the court found the "in-transit" requirement satisfied because the plaintiffs specifically alleged that their communications were duplicated and transmitted to a third party at the same moment they were sent to the website. *Mitchell*, 2024 WL 4471772, at *8. Thus, regardless of the court's discussion of *Ribas*, the allegations in *Mitchell* (unlike here) still described a contemporaneous acquisition of communications. *Id.*

No comparable allegations appear in the TAC. Instead, the TAC contains pages of generalized allegations describing, at a high level or in conclusory fashion, how various website technologies may operate in the abstract. *See* TAC ¶¶ 152–63. But generalized descriptions of third-party tracking tools are not substitutes for facts showing that a particular third party contemporaneously acquired the contents of Plaintiffs' own communications. Plaintiffs still do not identify what communication was intercepted, when the interception occurred, how the interception occurred, or which third party allegedly performed it. Instead, they ask the Court to infer interception from the mere presence of third-party code on a website. Courts routinely reject such




BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

speculation. *See Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112, 1126 (C.D. Cal. 2024); *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023) ("But this complaint is entirely speculative. How do these third parties interface with Defendant's chat platform other than via "code"? It is impossible to infer from the complaint. Thus, Plaintiff's simultaneity claims are just too conclusory to survive"); *St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *6 (N.D. Cal. Oct. 1, 2024) (dismissing Section 631(a) claim as to Google Pixel because plaintiff did not allege how and when the interception occurs).

Indeed, the only cases Plaintiffs can point to in support of their position are readily distinguishable. In each, the plaintiff alleged that a *specific* third-party intercepted communications in real time through a website's chat feature. *See* Opp. at 17 (citing *Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241, at *3 (S.D. Cal. Feb. 12, 2024) (alleging that third-party CarNow intercepted plaintiff's chat communications); *D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *1 (S.D. Cal. Oct. 24, 2023) (alleging that third-party Vergic intercepted plaintiff's chat communications)). Here, by contrast, Plaintiffs do not identify any specific contemporaneous interception by any specific third party. Instead, they rely on boilerplate allegations that one of numerous unidentified third parties may have intercepted unspecified communications in "real time." Such conjecture falls well short of pleading a viable claim under Section 631(a).

## IV. <u>PLAINTIFFS LACK ARTICLE III STANDING</u>

Plaintiffs first argue that the mere assertion of a violation of CIPA is sufficient to confer standing. *See* Opp. at 13 (citing *In re Facebook Inc. Internet Tracing Litig.* ("*In re Facebook*"), 956 F.3d 589, 598–99 (9th Cir. 2020)). But, as *Popa* recognized, this generalized approach was rejected by the Supreme Court in *TransUnion*. *Popa v. Microsoft Corp.,* 153 F.4th 784, 792 (9th Cir. 2025) (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)); *Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, at *7 (N.D. Cal. Aug. 29, 2025) ("*Haleon*") ("[Popa] explained that *TransUnion* requires a court to assess whether an individual plaintiff has suffered a harm that has traditionally been actionable in our nation's legal system.") (cleaned up). Thus, to determine whether a plaintiff has alleged sufficient privacy injury, courts must analyze what data was ***actually collected*** from each plaintiff. *Popa*, 153 F.4th at 791.

Plaintiffs further argue that because the facts underlying this Court's prior standing ruling supposedly remain unchanged, the Court should reach the same conclusion again. *See* Opp. at 13. But the TAC materially narrows what Plaintiffs actually allege. Rather than identifying specific information that was purportedly intercepted and pervasive collection, Plaintiffs now allege only that they "browsed" the Websites, "provided location information," and, in the case of Plaintiff Wiley, entered unspecified "search terms." *See, e.g.*, TAC ¶¶ 175, 184, 195, 205. Plaintiffs contend that these sparse allegations, coupled with generalized assertions about the types of information third-party cookies are capable of collecting, are sufficient to establish a concrete privacy injury. *See* Opp. at 13. That argument ignores Defendants' central point. If the information allegedly collected here materially differed from the ordinary website-interaction data found insufficient in *Popa*, Plaintiffs should be able to identify at least one example of the supposedly private or sensitive information that was actually intercepted. Even after multiple opportunities, they still cannot.

Plaintiffs likewise argue that the TAC alleges information that was actually intercepted, not merely information that could have been intercepted, because it includes screenshots purportedly showing the operation of cookies that collected URLs and other data during their interactions with the Websites. *See* Opp. at 14. But that misstates the issue. The allegations and screenshots on which Plaintiffs rely merely purport to show that the Websites were configured to transmit third-party cookie data and users' purported "Private Communications" to third parties, even after users declined tracking technologies. *See* TAC ¶¶ 52, 65, 78, 91, 104. Those allegations are untethered to Plaintiffs and say nothing about what information was actually collected from any particular Plaintiff during any particular visit. Put differently, the TAC still does not bridge the gap between theory and fact. The screenshots may illustrate what information the challenged technologies ***were capable of collecting***, but they do not identify what information was ***actually collected*** from Plaintiffs themselves. Nor do they reveal what URLs, search terms, location information, or other communications were allegedly intercepted during Plaintiffs' visits. The Court should reject Plaintiffs' request to infer their own concrete privacy injury based on speculative possibilities of harm to other individuals rather than their own experiences. *See Barrales et al. v. Reckitt Benckiser LLC*, 2026 WL 2212867, at *4 (N.D. Cal. July 31, 2026) (no standing where the complaint lacked

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

details about the named plaintiffs' specific website experiences and relied instead on generalized allegations); *Straight v. Edfinancial Servs.,* 2026 WL 2087412, at *3 (N.D. Cal. July 20, 2026).

Plaintiffs make several arguments to distinguish or sidestep *Popa* and its binding authority on these claims—all of which fail. As a threshold matter, Plaintiffs cannot avoid *Popa* merely by alleging that Defendants promised not to collect certain information. *See* Opp. at 14. The existence of such a promise does not relieve the Court of its obligation under *Popa* to examine the nature of the information allegedly collected and determine whether it was sufficiently personal, private, or sensitive to constitute a concrete privacy injury. *See Popa*, 153 F.4th at 794; *see also Blackhawk Network, Inc.,* 2026 WL 925028, at *5 (C.D. Cal. Apr. 1, 2026) ("Plaintiff has not made any allegations that the information collected, or its reach, would have been highly offensive. As in Popa, Plaintiff identifies 'no embarrassing, invasive, or otherwise private information' that was shared."). Indeed, *Popa* itself demonstrates why this argument fails. The Ninth Circuit expressly addressed whether its decision called into question its prior standing decision in *In re Facebook* and concluded that it did not. *Popa*, 153 F.4th at 794. If the mere existence of an affirmative promise not to collect or disclose information were enough to establish standing, the court could have distinguished *In re Facebook* on that basis alone. It did not. Instead, the Ninth Circuit emphasized that *In re Facebook* remained consistent with *Popa* solely because it "accounted for the individual circumstances giving rise to the plaintiffs' alleged injuries," including allegations that Facebook compiled users' personally identifiable and sensitive browsing histories. *Id.* (citing *In re Facebook*, 956 F.3d 589, 598 (9th Cir. 2020)).

Clearly, *Popa* requires courts to look beyond the alleged promise and examine the character of the information actually collected. The relevant question is not simply whether a defendant allegedly collected information it promised not to collect, but whether the information collected was personal, sensitive, or otherwise private in a manner sufficient to support a concrete injury. Thus, while an alleged promise may be part of the analysis, it is not the sum total. *Popa* still requires courts to analyze the nature of the data at issue. Here, Plaintiffs fail that test. Unlike the plaintiffs in *In re Facebook*, Plaintiffs do not allege that Defendants compiled detailed browsing histories or collected sensitive, personally identifiable information revealing their interests, activities, or online

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

behavior. Instead, after multiple opportunities to amend, Plaintiffs identify only vague "location information" and, in one instance, unspecified "search terms." These sparse allegations fall short of the sensitive and personal information that the Ninth Circuit found significant in both *Popa* and *In re Facebook*.

Plaintiffs also rely heavily on *Haleon* to distinguish *Popa*. *See* Opp. at 13–14. That reliance is misplaced. At a minimum, *Haleon* is readily distinguishable on its facts. There, the court emphasized that the websites concerned healthcare products and services, making the information users entered "likely more sensitive" than the pet-store website activity at issue in *Popa*. *Haleon*, 2025 WL 2494368, at *7. No such concern exists here. Defendants' public-facing restaurant website (like a pet store website) provides basic information about its menu, promotions, and online ordering. Unlike the healthcare- focused websites in *Haleon*, it does not solicit or involve *any* medical information.

Nor does *Haleon*'s discussion of the underlying technology rescue Plaintiffs' claims. Plaintiffs emphasize that *Haleon* distinguished *Popa* in part based on the alleged capabilities of session-replay technology, rather than the types of information cookies may collect. Opp. at 13–14. But *Popa*—and indeed *TransUnion*—require more than allegations about what technology *could* have done. A plaintiff must allege an actual, concrete injury, not merely the possibility of one. *See TransUnion*, 594 U.S. at 437. Applying *TransUnion* to the internet privacy context, the Ninth Circuit confirmed that to establish a concrete privacy harm plaintiffs must allege facts showing that ***their own*** "embarrassing, invasive, or otherwise private information" was *actually collected*. *See Popa*, 153 F.4th at 791. To the extent *Haleon* or any other decision found a concrete injury based solely on generalized allegations regarding a technology's capabilities or the hypothetical collection of mundane data, that reasoning cannot be reconciled with *Popa* or *TransUnion*. When these decisions are applied to these allegations—as this Court must—they warrant dismissal for lack of injury.

Plaintiffs further argue that the offense here extends beyond the data collected during Plaintiffs' visits because they allege the cookies are used to track users to "consumer profiles containing detailed information about a consumer's behavior, preferences, and demographics." *See*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Opp. at 15. But Plaintiffs mischaracterize how district courts approach alleged mass accumulation of data in finding it is highly offensive. For example, in *Katz-Lacabe v. Oracle Am., Inc.,* 668 F. Supp. 3d 929 (N.D. Cal. 2023), plaintiffs alleged Oracle accumulated a "vast repository of personal data," including their browsing activity, online communication, ***and offline activity***. *See id.* at 942. Further, the court found plaintiffs' allegations extended to "sensitive health and personal safety information, and race and politics." *See id.* In other words, the court considered both the amount *and* sensitivity of the collected information in finding defendant's conduct was highly offensive. *See Silver v. Stripe Inc.,* 2021 WL 3191752, at *6 (N.D. Cal. July 28, 2021) (considering the volume of collected information, including plaintiffs' web browsing histories, ***financial information, device information, and online purchase activities***).

Because Plaintiffs allege no collection of private or sensitive information, the data-collection practices described in the TAC cannot give rise to a cognizable privacy harm.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## V. DEFENDANTS DO NOT RELY ON EVIDENCE OUTSIDE THE PLEADINGS

Plaintiffs misunderstand Defendants' reference to the Websites incorporated into the TAC. Defendants cited the current Websites only to illustrate the ambiguity in Plaintiffs' allegation that, for example, Plaintiff Wiley entered unspecified "search terms," even though those Websites do not presently contain search fields. *See* Mot. at 4, n. 4. Defendants are not asking the Court to determine what features existed during Plaintiffs' visits to the Websites. Rather, because the Websites and cookie banners have changed over time, Plaintiffs must allege what they searched, where they entered those search terms, and which Website features they used. Plaintiffs cannot rely on historical website functionality while withholding the facts necessary to identify it.

The same problem applies to Plaintiff Nino's allegations. Defendants' point is not that the current Website disproves his allegation that he saw a cookie banner in 2021. Rather, the Websites' changing features underscore why Plaintiff Nino must plead sufficient facts identifying the banner he allegedly saw and the interaction on which his claims depend. The TAC's vague allegations cannot be insulated from dismissal merely because Defendants highlighted the ambiguity by referencing the very Websites Plaintiffs incorporated into their pleading. *See U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (a court may consider certain materials, such as documents

incorporated by reference in the complaint, without converting a motion to dismiss into a motion for summary judgment).

## VI. AT A MINIMUM, PLAINTIFFS SHOULD BE REQUIRED TO PROVIDE A MORE DEFINITE STATEMENT UNDER RULE 12(E)

Plaintiffs' Opposition makes the case more jumbled than clear and necessitates a more definite statement. Plaintiffs contend that the TAC identifies which Plaintiffs visited which Websites and which Plaintiffs assert each cause of action. *See* Opp. at 16. It does not. The TAC still fails to clearly identify which Plaintiff asserts which claim against which Defendant based on which Website and underlying conduct, particularly in light of the Court's prior orders dismissing certain claims against certain Defendants with prejudice. *See* Mot. at 17–18. Rather than delineating the remaining claims on a plaintiff-by-plaintiff and defendant-by-defendant basis, Plaintiffs continue to plead collectively, incorporate allegations wholesale, and assert causes of action against "Defendants" as a group. *See* TAC ¶¶ 237–311. As a result, neither Defendants nor the Court can readily determine the precise contours of the claims that remain.

Indeed, Plaintiffs' Opposition confirms the very problem Defendants identified. Plaintiffs argue that allegations regarding visits to the Baskin-Robbins, Dunkin', and Jimmy John's Websites remain relevant because Plaintiffs purportedly continue to assert claims against Inspire arising from those visits. *See* Opp. at 2. But the TAC never clearly says so.[4] It does not explain that allegations concerning those Websites are directed solely at Inspire, distinguish those claims from the CIPA claims already dismissed with prejudice, or identify the specific conduct allegedly attributable to Inspire as opposed to the Website-specific Defendants. If those limitations and distinctions exist, they should appear in the pleading itself, not emerge for the first time in opposition briefing. Plaintiffs likewise argue that the TAC need not identify each Plaintiff and Defendant within the causes of action because other portions of the complaint identify which Defendants are associated

[4] Nor could they. Plaintiffs' claims against Inspire are wholly derivative of their claims against the Restaurant Defendants, as no Plaintiff alleges that he ever visited Inspire's website, communicated with Inspire, or transmitted any information directly to Inspire. These derivative claims against Inspire, only add to the confusion of the TAC and further demonstrate why a more defined and organized pleading should be required.

with particular Websites. *See* Opp. at 2, 16. But association is not enough, particularly under Rule 9(b). Alleging that a Defendant is connected to a Website does not identify which causes of action a particular Plaintiff asserts against that Defendant, which allegations support those claims, or which claims survived the Court's prior dismissal orders. Those distinctions matter here because different claims were dismissed as to different Plaintiff-Defendant combinations, leaving a narrowed and highly specific set of claims that should be pleaded accordingly.

Nor does the fact that Defendants were able to file a motion to dismiss demonstrate that the TAC is sufficiently definite. Plaintiffs rely on *Izzetov v. Tesla Inc.* for the proposition that Rule 12(e) relief is unavailable where a defendant can otherwise respond to a complaint. *See* Opp. at 16. But Defendants were able to identify and challenge the TAC's defects only by reconstructing the operative claims from multiple sources, including the TAC, the Court's prior orders, and Plaintiffs' collective allegations. Indeed, Defendants needed to prepare a plaintiff-by-plaintiff and defendant-by-defendant chart to guide the Court precisely because the TAC does not clearly identify the remaining claims. *See* Mot., Ex. 1. A pleading is not sufficiently definite simply because a defendant might be able to piece together its meaning through independent analysis.

Ultimately, Plaintiffs seek to preserve ambiguity by pleading collectively and then clarifying in their Opposition what they supposedly intended to allege. The Federal Rules require the opposite. After three complaints and two orders substantially narrowing the case, the operative pleading should clearly identify which Plaintiffs assert which claims against which Defendants and on what factual basis. Neither Defendants nor the Court should be required to reconstruct the surviving claims from scattered allegations, prior rulings, and subsequent briefing. That is precisely the circumstance Rule 12(e) was designed to address.

## VII. CONCLUSION

For the foregoing reasons and as explained in Defendants' Motion to Dismiss, Plaintiffs' TAC should be dismissed with prejudice. In the alternative, Defendants respectfully request that this Court require Plaintiffs to file a more definite statement of their claims, identifying, for each Plaintiff, Defendant, and Website, the causes of action asserted.

\\

Dated: September 11, 2026

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: */s/ Kamran B. Ahmadian*
Bethany G. Lukitsch
Alexis Cruz
Kamran B. Ahmadian

*Attorneys for Defendants*
INSPIRE BRANDS, INC., ARBY'S RESTAURANT GROUP, INC., JIMMY JOHN'S FRANCHISOR SPV, LLC, SONIC INDUSTRIES SERVICES, LLC, and DUNKIN' BRANDS, INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES